QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Margret Caruso (Bar No. 243473)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Fax:          (650) 801-5100
margretcaruso@quinnemanuel.com

   Sam S. Stake (Bar No. 257916)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700
samstake@quinnemanuel.com

Attorneys for Defendant/Counter-Plaintiff
BABYBUS (FUJIAN) NETWORK
TECHNOLOGY CO., LTD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MOONBUG ENTERTAINMENT LIMITED and TREASURE STUDIO, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD, <br><br> Defendant. <br><br> BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD, <br><br> Counter-Plaintiff, <br><br> v. <br><br> MOONBUG ENTERTAINMENT LIMITED and TREASURE STUDIO, INC., <br><br> Counter-Defendants. | CASE NO. 4:21-CV-06536-EMC <br><br> **BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD'S NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Judge:  Honorable Edward M. Chen <br><br> Courtroom:  5, 17th Floor <br><br> Date/Time:  _____ |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT as soon as the matter may be heard, in the United States District Court for the Northern District of California, San Francisco Division, before the Honorable Edward M. Chen, Defendant/Counter-Plaintiff BabyBus (Fujian) Network Technology Co. Ltd. ("BabyBus") will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 65 for a Temporary Restraining Order and an Order to Show Cause Why a Preliminary Injunction Should Not Issue: (1) ordering Plaintiffs Moonbug Entertainment Limited and Treasure Studio, Inc. (collectively, "Moonbug") to withdraw all Digital Millennium Copyright Act ("DMCA") notifications that it served on YouTube relating to BabyBus' Super JoJo shows; (2) restraining Moonbug from serving on YouTube additional DMCA notifications relating to BabyBus' Super JoJo shows; and (3) ordering Moonbug to provide all information YouTube seeks from it so that YouTube will reinstate the suspended Super JoJo channel with the videos lodged as Exhibits 1 – 171 to the September 28, 2021 Declaration of Sam S. Stake.

This motion is made on the grounds that (1) BabyBus is likely to succeed on the merits of its counterclaim brought pursuant to 17 U.S.C. Section 512(f) because Moonbug's DMCA notices are manifestly without merit; (2) absent a temporary restraining order granted without further notice, BabyBus is likely to suffer irreparable harm; (3) the balance of equities favors BabyBus; and (4) the public interest supports an injunction. This motion is based upon the Answer and Counterclaims in this action, this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the Proposed Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, the Declaration of Naiyong Yan filed herewith along with its accompanying exhibits ("Naiyong Decl."), the Declaration of Sam Stake filed herewith with its accompanying exhibits ("Stake Decl."), and all matters with respect to which this Court may take judicial notice and such oral and documentary evidence as may be presented to the Court. The undersigned counsel for BabyBus notified Moonbug's counsel of BabyBus' intention to bring this Motion multiple times, including most recently on September 27, 2021 by phone and e-mail. Stake Decl. ¶ 10.

BabyBus hereby respectfully requests, pursuant to FRCP 65 and Civil Local Rules 7-10 and

65-1, that the Court issue a temporary restraining order and an order to show cause why a preliminary injunction should not issue.

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION .................................................................II

PRELIMINARY STATEMENT.......................................................................1

FACTUAL BACKGROUND .........................................................................3

    A.    JoJo Version 1.0:  Doudou .........................................................3

    B.    2-D Doudou's Evolution Into 3-D JoJo .......................................4

    C.    Moonbug and Its Takedown Campaign .......................................5

LEGAL STANDARDS .............................................................................6

    A.    A Temporary Restraining Order and Order To Show Cause Regarding A Preliminary Injunction Should Issue if the *Winter* Test Is Met.................................6

    B.    Moonbug Was Required To Consider BabyBus' Copyright Defenses Before Sending DMCA Notices...........................................7

    C.    Moonbug's Claims Require It To Prove That BabyBus Copied Protected Aspects of Its Works ...........................................7

ARGUMENT ........................................................................................8

I.    BABYBUS IS LIKELY TO SUCCEED ON THE MERITS ......................8

    A.    Moonbug's Claim for Alleged Copying of Physical Traits Is Likely To Fail ..........9

        1.    JoJo's Head and Body Shape .........................................9

        2.    JoJo's Hair .........................................................9

        3.    JoJo's Eyes and Eyebrows .........................................10

        4.    JoJo's Nose .........................................................11

        5.    JoJo's Mouth Does Not Infringe .................................11

        6.    JoJo's Family.......................................................11

        7.    Bright and Saturated 3-D Animation .............................13

        8.    Name ..............................................................13

    B.    Moonbug's Claim for Alleged Copying of Concepts Is Likely To Fail .................14

II.    BABYBUS AND THE PUBLIC HAVE BEEN AND WILL CONTINUE TO BE IMMINENTLY AND IRREPARABLY HARMED BY MOONBUG'S CONDUCT...........................................................................16

Case No. 4:21-cv-06536-EMC

BABYBUS' NOTICE OF MOTION AND MOTION FOR TRO AND OSC

III.  GRANTING THE REQUESTED RELIEF FURTHERS THE PUBLIC INTEREST ........17

IV.  THE BALANCE OF EQUITIES IS IN BABYBUS' FAVOR............................................17

CONCLUSION ........................................................................................................................18

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Alliance for Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011)................................................................................ 6, 7

*Apple Computer, Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994)................................................................................ 8, 13

*Aurora World, Inc. v. Ty Inc.*,
  719 F. Supp. 2d 1115 (C.D. Cal. 2009) ("*Aurora World I*")............................... 8, 9, 10

*Aurora World, Inc. v. Ty Inc.*,
  2011 WL 13176413 (C.D. Cal. Mar. 14, 2011) ("*Aurora World II*")...................... 11

*Capcom U.S.A., Inc. v. Data E. Corp.*,
  1994 WL 1751482 (N.D. Cal. Mar. 16, 1994) ...................................................... 13

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002).............................................................................. 13, 14

*Design Furnishings, Inc. v. Zen Path, LLC*,
  2010 WL 5418893 (E.D. Cal. Dec. 23, 2010)......................................................... 7

*DuMond v. Reilly*,
  2021 WL 733311 (C.D. Cal. Jan. 14, 2021)......................................................... 13, 14

*Folkens v. Wyland Worldwide, LLC*,
  882 F. 3d 768 (9th Cir. 2018)................................................................................ 16

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015)................................................................................ 17

*GoDaddy Operating Co., LLC v. Ghaznavi*,
  2018 WL 1091257 (N.D. Cal. Feb. 28, 2018)........................................................ 17

*Home Comfort Heating & Air Conditioning, Inc. v. Ken Starr, Inc.*,
  2018 WL 3816745 (C.D. Cal. July 24, 2018)......................................................... 17

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
  4 F.3d 819 (9th Cir. 1993)..................................................................................... 17

*Lenz v. Universal Music Corp.*,
  815 F.3d 1145 (9th Cir. 2016)............................................................................... 7

*Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*,
  601 F. App'x 469 (9th Cir. 2015).......................................................................... 17

*Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*,
  887 F. Supp. 1323 (N.D. Cal. 1995) ...................................................................... 7

BABYBUS' NOTICE OF MOTION AND MOTION FOR TRO AND OSC

*Miller ex rel. N.L.R.B. v. California Pac. Med. Ctr.*,
   19 F.3d 449 (9th Cir. 1993) ................................................................................. 17

*Mitchell v. 3PL Sys., Inc.*,
   2013 WL 12129617 (C.D. Cal. Apr. 8, 2013) ...................................................... 17

*Newt v. Twentieth Century Fox Film Corp.*,
   2016 WL 4059691 (C.D. Cal. July 27, 2016) ...................................................... 12

*Reflex Media, Inc. v. Pilgrim Studios, Inc.*,
   2018 WL 6566561 (C.D. Cal. Aug. 27, 2018) ...................................................... 14

*Regents of Univ. of California v. Am. Broad. Cos., Inc.*,
   747 F.2d 511 (9th Cir. 1984) ................................................................................. 17

*Santa Cruz Homeless Union v. Bernal*,
   514 F. Supp. 3d 1136 (N.D. Cal. 2021),
   *modified*, 2021 WL 1256888 (N.D. Cal. Apr. 1, 2021) .......................................... 6

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ................................................................................. 16

*Scott v. Meyer*,
   2009 WL 10673163 (C.D. Cal. Dec. 2, 2009) ...................................................... 10

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020)............................................................................. 7, 8

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ................................................................................. 16

*Thomas v. Walt Disney Co.*,
   2008 WL 425647 (N.D. Cal. Feb. 14, 2008),
   *aff'd*, 337 F. App'x 694 (9th Cir. 2009) ............................................................... 14

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ........................................................................................ 17, 18

*Winter v. Natural Resources Defense Council*,
   555 U.S. 7 (2008) ..................................................................................................... 6

**Statutes**

17 U.S.C. Section 512(f) .......................................................................... 2, 7, 8, 9

## PRELIMINARY STATEMENT

Within days of learning about BabyBus' initial public offering, Moonbug began using baseless DMCA notices to YouTube to effectively shut down BabyBus' lawful, competitive business. Moonbug's 70-plus DMCA notices were premised on numerous meritless claims, such as allegedly infringed copyright in an animated rendering of a human baby—in which its claimed character has blond hair and brown eyes, and BabyBus' character has red hair and blue eyes. Generic characteristics shared among countless, human babies—large heads, front teeth, tuft of hair, half-moon smiles, "happy state," and a "positive, eager, curious, exploring" nature (Compl. ¶ 31)—add no merit to Moonbug's claims. An order requiring Moonbug to withdraw its YouTube DMCA notifications would prevent any further irreparable harm to BabyBus, allow its channel to be reinstated, and restore BabyBus' fair competition with Moonbug.

BabyBus respects intellectual property rights. Immediately after it learned of Moonbug's copyright infringement claims on July 20, 2021, it conducted a rapid and thorough investigation. Although BabyBus disputes that the five videos Moonbug alleges in its Complaint are copies or near-copies of CoComelon works, BabyBus proactively initiated the takedown of every version of them worldwide.[1] BabyBus does not contemplate re-uploading those five videos until final judgment. Rather, BabyBus stipulates that it would upload to this reinstated channel only a set of 171 videos so plainly different from Moonbug's CoComelon's protectible elements that they cannot infringe as a matter of law.[2] These 171 videos are all BabyBus' original works, many of which feature classic children's songs such as the "ABC Song," "Row, Row, Row the Boat;" and "Twinkle, Twinkle Little Star."

BabyBus seeks this urgent, interim relief because the continued suspension of BabyBus' flagship YouTube channel threatens devastating harm to BabyBus. The scope of Moonbug's DMCA notices are grossly disproportionate to Moonbug's concerns regarding the five deactivated

---

[1] Moonbug alleges that the following five BabyBus works are copies or near-copies of CoComelon works, which address commonplace early childhood subjects: "The Boo Boo Song;" "Yes Yes Vegetables Song;" "Rainbow Ice Cream – Colors Song;" "Bath Song;" and "Car Wash Song." Compl. ¶¶ 33, 41, 51, 62.

[2] The 171 videos have been lodged with the Court and served on Moonbug. Stake Decl. ¶ 10.

videos that are the subject of its copyright claim before this Court.  Before Moonbug's takedown campaign, videos on BabyBus' flagship channel were watched an average of 27,000,000 times per day, income from YouTube exceeded $400,000 per month,[3] and 40,000 new viewers subscribed to the channel per day.  Not only has BabyBus entirely lost that income, but its viewers have been deprived of access to the Super JoJo channel.  BabyBus' subscribers and would-be subscribers are finding alternatives from other content providers, and additional channel deactivations may follow if Moonbug continues its campaign to takedown all Super JoJo channels worldwide.  The requested interim relief is necessary to prevent immense, irreparable harm to BabyBus caused by Moonbug's DMCA takedown campaign.

Injunctive relief is warranted here because BabyBus is likely to succeed on the merits of its counterclaim brought pursuant to 17 U.S.C. Section 512(f), which bars a copyright owner from knowingly and materially misrepresenting works as infringing and requires that it take into account defenses to infringement.  The timing, number, and breadth of Moonbug's DMCA notices confirm the counterclaim's strength.  At a minimum, the sprawling scope of Moonbug's copyright claim raises serious questions going to the merits.  Those serious questions, in view of the risk of severe harm to BabyBus, warrant the requested injunctive relief.

For these and the following reasons, BabyBus respectfully seeks an order (1) requiring Moonbug to withdraw the existing takedown requests relating to BabyBus' Super JoJo shows that it served on YouTube (including so that BabyBus can upload a specified set of 171 plainly non-infringing videos); (2) restraining Moonbug from serving on YouTube additional DMCA takedown notices relating to the Super JoJo 171 videos pending a preliminary injunction hearing; and (3) ordering Moonbug to provide all information YouTube seeks from it so that YouTube will reinstate the suspended Super JoJo channel with the videos lodges as Exhibits 1 – 171 to the September 28, 2021 Declaration of Sam S. Stake.

---

[3] The flagship channel brings in up to ten times the revenue as the *second* most successful Super JoJo channel.  Naiyong Decl. ¶ 8.

**FACTUAL BACKGROUND**

This action concerns the central characters from two competing shows: JoJo from BabyBus' Super JoJo and JJ from Moonbug's CoComelon. Moonbug alleges that JoJo is a copy of JJ. He is not; he is a product of a company that has been educating preschoolers and their parents for more than twelve years—and began independently creating him *before* Moonbug first published JJ in 2017. Naiyong Decl. ¶ 4; Comp. ¶ 18. The creative expression of JoJo is also significantly different from Moonbug's JJ, as shown below in Table 1.

| Table 1 | |
| :---: | :---: |
|  | |
| **BabyBus' JoJo** (Naiyong Decl. ¶ 3) | **Moonbug's JJ** (Naiyong Decl. ¶ 3) |

**A.     JoJo Version 1.0:  Doudou**

The origin of JoJo began in 2016, when BabyBus created and published a children's show on YouTube titled "Barber" featuring a baby named Doudou. Naiyong Decl. ¶ 4.[4] Doudou's look was inspired by the "New Year Doll."   *See* Table 2 below; Naiyong Decl. ¶ 4.

| Table 2 | |
| :---: | :---: |
| **BabyBus' Doudou** (Naiyong Decl. ¶ 4) | **New Year Doll** (Naiyong Decl. ¶ 4) |

---

[4]   *See also* Naiyong Decl. ¶ 4 (citing to ♫*1 Hour* ♫*background music | accompaniment HD | BabyBus  Music*,  uploaded  to  YouTube  on  Aug.  18,  2016  (available  at https://youtu.be/f1e0EP_io2o?t=1377)).

In traditional Chinese culture, families post a picture of the New Year Doll on its door during the holiday—a picture that includes a baby boy with a big head and comparatively small body, a single-color hair tuft on the top of his head, big eyes and thin, rounded eyebrows, and thin lips with a half-moon smile—just like Doudou. Naiyong Decl. ¶ 4. To protect its work, BabyBus applied for and was granted a copyright in Doudou in China. *Id.*; *id.*, Exh. A.

**B.** **2-D Doudou's Evolution Into 3-D JoJo**

Shortly after Doudou's introduction, the market trended from 2-D to 3-D animation. Naiyong Decl. ¶ 5. To meet the demand, in early 2019, BabyBus sought licenses to 3-D digital models of a baby boy and his family. *Id.* BabyBus took a license to one set of 3-D models for sale that included a baby boy who resembles Doudou. *Id.* Both have a brown monolithic swirl of hair on the top of head, brown, thin rounded eyebrows, oversized eyes with large irises and pupils, rosy cheeks, large ears, and a half-moon mouth with thin lips. *See* Table 3 below; Naiyong Decl. ¶ 5. The 3-D model set also included a sister and brother—well-suited for BabyBus since Doudou has both siblings. Naiyong Decl. ¶ 5.

**Table 3**



| **Doudou**<br>(Naiyong Decl. ¶ 5) | **Licensed 3-D Model**<br>(Naiyong Decl. ¶ 5) | **JoJo**<br>(Naiyong Decl. ¶ 5) |

Since BabyBus launched its flagship Super JoJo channel in 2019, the total number of subscribers to it exceeded 20,000,000 subscribers, and it has been viewed more than 12 billion times. *Id.* ¶ 6. Building this following took monumental investment of time and resources, including millions of dollars. *Id.*

**C.  Moonbug and Its Takedown Campaign**

Beginning on July 20, 2021, within days of learning about BabyBus' initial public offering, Moonbug launched its campaign to terminate the Super JoJo channels.  Compl. ¶ 8, n.4 (citing to article published on July 8, 2021 to support its allegation that in "July 2021, [BabyBus] applied for an initial public offering); *id.* ¶ 59 (identifying July 20, 2021 as the date of its first letter to YouTube to takedown Super JoJo content).  Only nine (of 70) takedown notices were successful, and those notices relied almost exclusively on Moonbug's copyright registration of JJ paired with identification of one or more allegedly infringing videos.  Naiyong Decl. ¶ 7.  For example, the first two takedown requests do not concern any of the five works Moonbug alleges are copies or near copies of its works.  *See* Compl. ¶¶ 33, 41, 51, 52; Naiyong Decl. ¶ 7.  Rather, they target two BabyBus works as allegedly infringing Copyright Reg. No. VAu001379978, the 2-D artwork titled "JJ" (reflecting a creation date *after* Doudou's publication), and Reg. No. VAu001322038, which is for 2-D artwork titled "Unpublished Family Characters."  *See id.* ¶ 7; *id.*, Exhs. B, C (copyright registrations).

Upon YouTube's processing of these DMCA notices, it removed the entire Super JoJo Channel.  *See* Naiyong Decl. ¶ 8.  The result is a complete loss of search-engine standing on YouTube that BabyBus built up over the past two years and damage to search-engine standing of BabyBus' other channels.  *Id.*  Before the termination of the English-language Super JoJo Channel, its videos were viewed on an average of 27 million times per day and received about 40,000 new subscribers per day.  *Id.*  With the closure, any growth has ceased, there is immense risk of harm to the Super JoJo brand, and losses are at least $400,000 to $500,000 per month.  *Id.*  BabyBus' inability to do and grow business through its flagship channel is especially harmful now, in the fourth quarter of the year, because it is the peak season of the YouTube advertising ecosystem.  *Id.*

BabyBus takes intellectual property rights seriously, and it quickly conducted a thorough investigation into Moonbug's claims.  As Moonbug acknowledged, "[w]ithin hours [of Moonbug's submission of copyright complaint to YouTube], counsel for Moonbug received an email from [BabyBus] claiming that its Super JoJo Team was 'having an urgent meeting with [its] legal department on this issue to give a response ASAP,'" then deactivated from public view the videos

about which Moonbug complained.  Compl. ¶¶ 61.

In the days since, BabyBus worked to identify a set of 171 Super JoJo works that are plainly dissimilar to CoComelon works in the hopes that the parties could come to an agreement about at least *some* videos BabyBus can use to operate its business.  Stake Decl. ¶ 8.  Many of these works feature classic songs sung with children for decades before CoComelon (or, for that matter, Moonbug) existed.  Those works include songs like "Head, Shoulders, Knees, and Toes;" "I'm a Little Teapot;" the "ABC Song;" "Itsy Bitsy Spider;" "Baa Baa Black Sheep;" "Row, Row, Row the Boat;" "Twinkle, Twinkle Little Star;" and "Old MacDonald Had a Farm."  *Id*.

BabyBus offered the set of 171 videos to Moonbug as an interim solution; BabyBus would upload only those videos to the flagship Super JoJo channel while this action pends.  Stake Decl. ¶¶ 5-8.  Meanwhile, YouTube confirmed to BabyBus that the Super JoJo channel would be restored if Moonbug withdraws its copyright notices.  Naiyong Decl., Exh. D.  BabyBus sent those videos to Moonbug on September 9 and 10, but its overture was met with unexplained delay—postponed calls and multiple-day delays responding to emails, when responses were provided at all.  Stake Decl. ¶ 9.  Moonbug's demonstrated preference to use litigation as an anticompetitive weapon rather than engage in good faith case negotiation has left BabyBus no practical choice but to file the instant motion to alleviate the catastrophic harm Moonbug's unwarranted DMCA notices are causing.

## LEGAL STANDARDS

### A.    A Temporary Restraining Order and Order To Show Cause Regarding A Preliminary Injunction Should Issue if the *Winter* Test Is Met

"The substantive standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Santa Cruz Homeless Union v. Bernal*, 514 F. Supp. 3d 1136, 1140 (N.D. Cal. 2021), *modified*, 2021 WL 1256888 (N.D. Cal. Apr. 1, 2021).  A plaintiff seeking a temporary restraining order must establish: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20-21 (2008)) (setting forth the standard for preliminary injunction);

*Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,* 887 F. Supp. 1323, 1323 (N.D. Cal. 1995) ("The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction."). Although a movant must "make a showing on all four prongs," a stronger showing on one of these four elements may offset a weaker showing on another. *Cottrell*, 622 F.3d at 1131, 1134-35. Alternatively, "serious questions going to the merits and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotation omitted).

**B.  Moonbug Was Required To Consider BabyBus' Copyright Defenses Before Sending DMCA Notices**

"Any person who knowingly materially misrepresents [in a DMCA notice] that material or activity is infringing…shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer…who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing." 17 U.S.C. § 512(f). A complainant must consider copyright defenses *before* submitting a DMCA takedown notice. In *Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016), the Ninth Circuit affirmed that a music company could be liable under Section 512(f) if it submitted a DMCA takedown notice in connection with a YouTube video that made "fair use" of a copyrighted song.

Irreparable harm from violations of Section 512(f) warrant injunctive relief. *See Design Furnishings, Inc. v. Zen Path, LLC*, 2010 WL 5418893, at *9 (E.D. Cal. Dec. 23, 2010) (granting preliminary injunction based on 512(f) and enjoining copyright owner "from notifying eBay that defendant has copyrights in the wicker patio furniture offered for sale by plaintiff and that plaintiff's sales violate those copyrights").

**C.  Moonbug's Claims Require It To Prove That BabyBus Copied Protected Aspects of Its Works**

Proof of copyright infringement requires a plaintiff to show that the defendant copied original and protected aspects of the work. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led*

*Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). In assessing a plaintiff's proof, "it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Id.* (citation omitted). That is because copyright protection extends only to expressions, not ideas, and when features "as a practical matter indispensable, or at least standard, in the treatment of a given [idea— *i.e.*, *scenes a faire*], they are treated like ideas and are therefore not protected by copyright." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1444 (9th Cir. 1994) (marks and citation omitted)

In addition, when an idea and its expression are indistinguishable, or "merged," the expression will only be protected against nearly identical copying. *Apple*, 35 F.3d at 1444. Under this "virtual identity" standard, even small differences, such as colors, facial features, or clothing, are sufficient to support a finding of non-infringement. *See, e.g.*, *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1137 (C.D. Cal. 2009) ("*Aurora World I*").

## **ARGUMENT**

Because BabyBus meets all four elements warranting injunctive relief, the Court should grant BabyBus' motion and enjoin Moonbug from further pursuing its takedown campaign.

## I. **BABYBUS IS LIKELY TO SUCCEED ON THE MERITS**

BabyBus is likely to succeed on the merits of its Section 512(f) counterclaim for Moonbug's violation of the DMCA by submitting dozens of takedown notices based on alleged infringement of its so-called "Character Works." At a minimum, the immense scope of Moonbug's notices— affecting countless creative choices and works by BabyBus—raises "serious questions" going to the merits of BabyBus' counterclaim. *Cottrell*, 622 F.3d at 1131, 1134-35. Because of the risk of immense irreparable harm to BabyBus, these serious questions compel interim injunctive relief.

Moonbug's dozens of takedown notices, construed in view of the allegations of the Complaint, are premised on two categories of alleged copying: (i) physical traits, and (ii) concepts. Both are frivolous. As to the former, Moonbug cannot possibly show virtual identity of any of the identified physical traits. Nor can it show *original* expression, as every trait identified is borrowed from previous works or is based on features naturally occurring in human babies (*e.g.*, both baby boys having a large head). As for Moonbug's "concepts," copyright protects original *expression*, not *ideas* fundamental to children's entertainment like happiness, positivity, and curiosity. Given

the clear lack of merit to Moonbug's copyright claims, BabyBus is likely to prevail on its Section 512(f) counterclaim.

**A.  Moonbug's Claim for Alleged Copying of Physical Traits Is Likely To Fail**

1.  JoJo's Head and Body Shape

Moonbug contends JoJo's and JJ's heads are substantial similarity, alleging that both have "large round square heads" with "a comparatively small body below."  Compl. ¶¶ 16, 17.

| Table 1 |
|---|
|  |
| **BabyBus' JoJo** (Naiyong Decl. ¶ 3)     **Moonbug's JJ** (Naiyong Decl. ¶ 3) |

Moonbug does not allege—and cannot show—virtual identity between either the shape of the head or its relative size of the bodies.  *Id.*  JJ's head is rounder than JoJo's head.  Compl. ¶ 24.  JoJo has a larger forehead and larger cheeks.  *Id.*  JJ's head is smaller than JoJo's relative to each respective body.  *Id.*  These significant differences in expressions render Moonbug unable to show virtual identity.  *See, e.g., Aurora World I*, 2011 WL 13176413, at *15 ("[T]here are only a limited number of sizes for the head of a stuffed animal—they can be big, small, or medium-sized, in comparison to the toy's body. It is questionable, therefore, that the large heads and small bodies of the YooHoo toys are protectable.") (citation omitted).  Moreover, this element is not an original expression, but an established trait of the genre.  *See id.*; Stake Decl., App. 1 (showing preexisting third party works of animated babies, all having large round square heads with a comparatively small body below).

2.  JoJo's Hair

Moonbug contends JoJo's and JJ's hair are substantially similar. alleging both have "monolithic, monocolor tuft of hair above [the] forehead."  Compl.  ¶ 24.  Moonbug does not

allege—and cannot show—virtual identity between JoJo's hair and JJ's hair. *Id.* JoJo's hair is *not* monolithic (like JJ's) but rather three separate tufts. JoJo's hair is red, whereas JJ's is blonde. *Id.* JoJo's hair is on the top of his head, whereas JJ's hair is closer to his forehead. *Id.* JoJo's hair is separated into strands, whereas JJ's is not. *Id.* These significant differences in expressions render Moonbug unable to show virtual identity. *Scott v. Meyer*, 2009 WL 10673163, at *4 (C.D. Cal. Dec. 2, 2009) ("First, this similarity is overstated, especially because Annora wears a single 'French braid' while Bella apparently wears several 'thick braids.' Secondly, Plaintiff may not lay claim to such common hair style, especially absent specific descriptions or distinctions."). Moreover, this, too, not an original expression, but an established trait of the genre. *See* Stake Decl., App. 1 (showing preexisting third party works of animated babies, all but one having a tuft of hair on top of his or her head).

### 3. JoJo's Eyes and Eyebrows

Moonbug contends JoJo's and JJ's eyes are substantially similar, alleging both have "extra-large eyes with large irises and pupils" and "thin rounded eyebrows." Compl. ¶ 24. Moonbug does not allege—and cannot show—virtual identity between JoJo's eyes and JJ's eyes, or between JoJo's eyebrows and JJ's eyebrows. *Id.* JoJo's eyes are bright blue and textured, whereas JJ's are brown and not textured. *Id.* JoJo's irises are larger than JJ's, and JJ's pupils are more dilated than JoJo's. *Id.* JoJo's eyebrows are thicker, and appear to have a third dimension accomplished with shadows. *Id.* JJ's eyebrows appear painted on. JoJo's eyebrows match his hair color. *Id.* JJ's eyebrows are brown, even though the hair on his head is blonde. *Id.* These significant differences in expressions render Moonbug unable to show virtual identity. *See, e.g.*, *Aurora World I*, 719 F. Supp. 2d 1115 at 1137 ("Thus, to the extent aspects of Aurora's animals were not original, but found in prior stuffed animals, they cannot be considered protectable elements. Ty has proffered a number of plush toys that predate Aurora's YooHoo & Friends that also have large eyes."). Moreover, a baby with large eyes is not an original expression, but an established trait of the genre. *See* Stake Decl., App. 1 (showing preexisting third party works of animated babies with large eyes, large irises, and large pupils in contrast to the photo with the actual baby).

### 4. JoJo's Nose

Moonbug contends JoJo's and JJ's noses are substantially similar, alleging both have "button nose with no bridge." Compl. ¶ 24. Moonbug does not allege—and cannot show—virtual identity between JoJo's nose and JJ's nose. *Id.* JJ's nose is bulbous, and JoJo's nose is not. *Id.* JJ's nose is red, and JoJo's nose is not. *Id.* JJ's nose is equidistant between his eyes and upper lip, whereas JoJo's nose is closer to his upper lip than his eyes. *Id.* These significant differences in expressions render Moonbug unable to show virtual identity. *See, e.g.*, *Aurora World, Inc. v. Ty Inc.*, 2011 WL 13176413, at *19 (C.D. Cal. Mar. 14, 2011) ("*Aurora World II*") (plaintiff raised no triable issue of fact regarding similarities in noses given differences in coloration and distinction in appearance of features). Moreover, a button nose with no bridge is not an original expression, but an established trait of the genre. *See* Stake Decl., App. 1 (showing preexisting third party works of animated babies with button noses).

### 5. JoJo's Mouth Does Not Infringe

Moonbug contends JoJo's and JJ's mouths are substantially similar, alleging both have "two front teeth" and "thin lips on a mouth mainly fashioned into a half moon smile." Compl. ¶ 24. Moonbug does not allege—and cannot show—virtual identity between JoJo's teeth and lips and JJ's teeth and lips. *Id.* JoJo's mouth is smaller and narrower than JJ's mouth in relation to their respective faces. *Id.* JoJo's mouth is a true half-moon, whereas JJ's mouth is a crescent moon. *Id.* These significant differences in expressions render Moonbug unable to show virtual identity. *See, e.g.*, *Aurora World II*, 2011 WL 13176413, at *19 (No triable fact that Aurora raised a triable issue of fact to test similarities in noses, where "[t]he stitching on Fennec's nose and mouth is pink; its mouth is obscured by its white facial hair. Bubblegum, by contrast, has a clearly visible black mouth and nose."). Moreover, this, too, not an original expression, but an established trait of the genre. *See* Stake Decl., App. 1 (showing preexisting third party works of animated babies, most with halfmoon smiles, many with teeth growing in).

### 6. JoJo's Family

Moonbug contends striking similarity between JoJo's and JJ's families, alleging they have "similar face and body shapes, similar eyes, lips, bridgeless noses and other facial features, and the

same type of chunky hair and hairstyles." Compl. ¶ 26. A simple side-by-side comparison of family members confirms they look nothing alike:



**Table 4**

JoJo Father v. JJ Father
(Naiyong Decl. ¶ 5)

JoJo Mother v. JJ Mother
(Naiyong Decl. ¶ 5)

JoJo Brother v. JJ Brother
(Naiyong Decl. ¶ 5)

JoJo Sister v. JJ Sister
(Naiyong Decl. ¶ 5)

JoJo Dog v. JJ Dog
(Naiyong Decl. ¶ 5)

Among other differences, JoJo's family has different hair-styles and hair color, facial features, smaller bone structure, and more delicate features. Naiyong Decl. ¶ 5. For the same reasons that JoJo does not (and cannot) infringe JJ, JoJo's family does not and cannot infringe JJ's family. *See also Newt v. Twentieth Century Fox Film Corp.*, 2016 WL 4059691, at *11 (C.D. Cal. July 27, 2016) ("[T]he alleged 'similarities' in style and dress (*e.g.*, jackets, coats, hats, dresses, hair styles,

eyewear, and jewelry) are too common and generic, and constitute scenes-a-faire that flow directly from characters in the music industry."); *Capcom U.S.A., Inc. v. Data E. Corp.*, 1994 WL 1751482, at *15 (N.D. Cal. Mar. 16, 1994) (finding the plaintiff could not "obtain copyright protection for the unoriginal portrayal of a stereotyped character").

### 7. <u>Bright and Saturated 3-D Animation</u>

Moonbug contends JoJo's and JJ's rendering are substantially similar, alleging they are both are rendered "using the same style of 3-D animation and in similar bright, saturated colors." Compl. ¶ 24. Bright and saturated colors are, essentially, requirements of the medium and genre and thus not protectible. Naiyong Decl. ¶ 5. *Apple*, 35 F.3d at 1444 (when similar features are "'as a practical matter indispensable, or at least standard, in the treatment of a given [idea],' they are treated like ideas and are therefore not protected by copyright.") (citation omitted); *see also id.* ("As demonstrated by Microsoft's *scenes a faire* video, overlapping windows have been the clear preference in graphic interfaces. Accordingly, protectable substantial similarity cannot be based on the mere use of overlapping windows . . . .").

### 8. <u>Name</u>

Moonbug also claims infringement of JJ's name by JoJo (Compl. ¶ 25), but it does not appear to make that claim in earnest—unsurprising, given such a claim lacks merit even where the names are the *same*. *See, e.g.*, *Cavalier v. Random House, Inc.*, 297 F.3d 815, 828 (9th Cir. 2002) ("Use of the same names does not sufficiently support infringement . . . ."); *DuMond v. Reilly*, 2021 WL 733311, at *20 (C.D. Cal. Jan. 14, 2021) ("Plaintiff has no protectable copyright interest in the mere names she chose to use for her characters in her book."). Such a claim also ignores the pervasiveness of similarity among names of animated children, like BoBo from Jugnu Kids, BuBu from Happy BuBu, YoYo from Baby YoYo.[5]

---

[5] Stake Decl. ¶ 11 (citing to Jungu Kids, http://www.jugnukids.com/ (Bobo); *Happy BuBu-Nursery Rhymes & Kids Songs*, YouTube, https://www.youtube.com/channel/UCUuDMEmhRRQA2HRKPLBbnaA (BuBu); *Baby yoyo – Nursery Rhymes*, YouTube, https://www.youtube.com/c/babyyoyonurseryrhymes (YoYo)). Moonbug similarly alleges "Both families have a dog named Bingo" (Comp. ¶ 26) but ignores the generic dog's name "Bingo" is also the name of the popular children's song "B-I-N-G-O."

**B.     Moonbug's Claim for Alleged Copying of Concepts Is Likely To Fail**

Moonbug contends JoJo's and JJ's personalities are substantially similar, alleging that "both characters are happy, positive, eager and curious boys, open to learning things and helping others, and easily coaxed through any less-than-upbeat emotions in the time it takes to sing an instructive song."  Compl. ¶ 25.  Moonbug alleges that "[e]ach boy has a wonderfully loving and helpful older brother and sister always willing to help, teach and play with him, though he sometimes struggles to keep up."  *Id.*  Moonbug alleges that "e[a]ch boy exhibits a mix of qualities suggesting both a baby and an older child" and although they both gurgle, laugh, and clap their hands like babies, and are fed in a high hair, JJ and JoJo both attend school and can sing songs with the same linguistic skill as the older characters."  *Id.*.

Moonbug further contends the families are substantially similar, alleging that "both families are unflaggingly wholesome and idealistic, with parents that are omnipresent in the home and always available to play, dance, and patiently instruct the children in necessary life skills."  Compl. ¶ 27.  Moonbug claims protectible expression in that the families both have "a mother, father, older sister and brother, and a dog named Bingo," and both have stuffed animals that come to life and play.  *Id.* ¶¶ 17, 26.

The "concepts" Moonbug describes ***are*** the young children's show genre; without them, there would be no desire for parents to show them to their young children.  For example, the "themes" of teaching children to have confidence, to overcome their fears, and to try are not only too general to be protected but are also standard topics in children's literature.  *Cavalier* , 297 F.3d at 828.  And "a young character who is inquisitive and whose curiosity leads him or her into danger can be considered a stock character" and thus not protectable.  *Thomas v. Walt Disney Co.*, 2008 WL 425647, at *5 (N.D. Cal. Feb. 14, 2008), *aff'd*, 337 F. App'x 694 (9th Cir. 2009) (granting defendant's motion to dismiss) (marks and citation omitted); *see also DuMond*, 2021 WL 733311, at *16 ("[T]hemes that are 'staples of literature' are not protectable."); *Reflex Media, Inc. v. Pilgrim Studios, Inc.*, 2018 WL 6566561, at *10 (C.D. Cal. Aug. 27, 2018) ("Though theme can be a protectable element, the theme of fun, adventure, and anticipation for the prospect of burgeoning romantic feelings between participants on the show is a generic stock theme as discussed above.").

Unsurprisingly, all of these standard, broadly-sketched, *scenes a faire* elements have clear similarities to prior works. Like the families in *The Simpsons* (1989) and *Family Guy* (1999), JoJo's family includes the classic formula of one mother, one father, three children, and one dog; even those families that vary from that formula stray very little.[6] *See, e.g.*, *Family Ties* (no dog); *Growing Pains* (no dog); *Full House* (widower); *Brady Bunch* (two sets of three children combined); *Malcolm in the Middle* (no dog).[7] Indeed, a 2018 Pew Study reported three children were seen as more "ideal" than zero to two. Stake Decl. ¶ 13. Unflagging wholesomeness also seems standard for a show aimed at preschoolers. And there is no shortage of baby characters who perform tasks more advanced than a typical baby could while still doing babyish things. *See, e.g.*, *Rugrats* (Tommy Pickles can speak and go on adventures while still drinking from a bottle); *The Incredibles* (Jack-Jack Parr is both an infant and a superhero); *The Boss Baby* (Ted Templeton cries for food, attention, and diapers by night, works in a business suit by day). Nor a shortage of animals (stuffed or otherwise) who come to life.[8] *See, e.g.*, *Winnie the Pooh*; *Toy Story*; and *Paddington Bear*.[9]

In sum, while the mixing and matching of otherwise unprotectable elements in original ways

---

[6] Stake Decl. ¶ 12 (citing to (*The Simpsons*, WIKIPEDIA, https://en.wikipedia.org/wiki/The_Simpsons; *Family Guy*, WIKIPEDIA, https://en.wikipedia.org/wiki/Family_Guy).

[7] Stake Decl. ¶ 13 (citing to *Family Ties*, WIKIPEDIA, https://en.wikipedia.org/wiki/Family_Ties; *Growing Pains*, WIKIPEDIA, to https://en.wikipedia.org/wiki/Growing_Pains; *Full House*, WIKIPEDIA, https://en.wikipedia.org/wiki/List_of_Full_House_and_Fuller_House_characters; *The Brady Bunch*, WIKIPEDIA, https://en.wikipedia.org/wiki/The_Brady_Bunch; *Malcolm in the Middle Characters*, WIKIPEDIA, https://en.wikipedia.org/wiki/List_of_Malcolm_in_the_Middle_characters).

[8] Stake Decl. ¶ 15 (citing to *Rugrats*, WIKIPEDIA, https://en.wikipedia.org/wiki/Rugrats; *The Incredibles*, WIKIPEDIA, https://en.wikipedia.org/wiki/The_Incredibles; *The Boss Baby*, WIKIPEDIA, https://en.wikipedia.org/wiki/The_Boss_Baby).

[9] Stake Decl. ¶ 16 (citing to *Winnie-the-Pooh*, WIKIPEDIA, https://en.wikipedia.org/wiki/Winnie-the-Pooh (describing Pooh's anthropomorphic nature); *Toy Story*, WIKIPEDIA, https://en.wikipedia.org/wiki/Toy_Story (detailing "[a] group of living toys, who pretend to be lifeless when humans are present"); *Paddington Bear*, WIKIPEDIA, https://en.wikipedia.org/wiki/Paddington_Bear (the character Paddington Bear is a teddy bear that exhibits the characteristics of an actual bear but also engages in human behavior by wearing human clothing and eating marmalade)).

may be protectable, all of the elements Moonbug alleges were copied are combined together in only the most predictable and *scenes a faire* ways. Thus, although Moonbug may be entitled to some thin copyright protection in its specific expressions, because BabyBus's works are not virtually identical to that expression, as explained above, Moonbug cannot prevail on copyright infringement claims regarding characters and concepts. *See, e.g.*, *Folkens v. Wyland Worldwide, LLC*, 882 F. 3d 768, 770 (9th Cir. 2018) ("We note, as we did in *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), that a collection of unprotectable elements—pose, attitude, gesture, muscle structure, facial expression, coat, and texture—may earn 'thin copyright' protection that extends to situations where many parts of the work are present in another work. But when, as here, the only areas of commonality are elements first found in nature, expressing ideas that nature has already expressed for all, a court need not permit the case to go to a trier of fact.").

## II. BABYBUS AND THE PUBLIC HAVE BEEN AND WILL CONTINUE TO BE IMMINENTLY AND IRREPARABLY HARMED BY MOONBUG'S CONDUCT

In the absence of immediate interim injunctive relief, Moonbug's wrongful, repeated, and continuing takedown notices risk imminent and irreparable harm to BabyBus—causing additional deactivations of its Super JoJo channels, harming its reputation and goodwill, harming its brands, and harming its relationship with its viewers.[10] "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

BabyBus is losing viewership (previously 27 million views per day), growth (previously gaining 40,000 new subscribers today), and revenue (earning $400k to $500k per month), and the Super JoJo Channel's removal by YouTube's represents years of lost work and years of more work to regain its previous recommended-by-YouTube status. Naiyong Decl. ¶ 8. Moreover, since the

---

[10] *See* Naiyong Decl. ¶ 10 (examples of users' confusion and disappointment); *see also* Adam Lidgett, LAW 360, *Kids' YouTube Channel CoComelon Files IP Suit Against Rival*, available at https://www.law360.com/articles/1415984/kids-youtube-channel-cocomelon-files-ip-suit-against-rival (Immediately after filing Complaint, Moonbug's counsel provides comment to media, accusing (erroneously) BabyBus of alleged "egregious infringement . . . so pervasive there can be no doubt it is the product of deliberate copying.").

termination, BabyBus has observed social media users expressing confusion or disappointment that they could not access the Super JoJo Channel. *Id.* ¶ 10. Evidence of customer complaints like these shows irreparable harm. *See, e.g.*, *Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 F. App'x 469, 474 (9th Cir. 2015) (employee "declaration reporting numerous and persistent complaints from would-be customers" and "emails and social media posts from consumers"); *GoDaddy Operating Co., LLC v. Ghaznavi*, 2018 WL 1091257, at *14 (N.D. Cal. Feb. 28, 2018) (declaration that plaintiff "has received numerous customer complaints"); *Home Comfort Heating & Air Conditioning, Inc. v. Ken Starr, Inc.*, 2018 WL 3816745, at *9 (C.D. Cal. July 24, 2018) (declaration attaching "negative online reviews and customer complaints").

These harms to viewers and BabyBus are difficult to quantify, and damages cannot adequately remedy them. "The difficulty in putting a dollar value on such intangible harms supports the . . . conclusion that they are irreparable." *Mitchell v. 3PL Sys., Inc.*, 2013 WL 12129617, at *4 (C.D. Cal. Apr. 8, 2013).

## III. GRANTING THE REQUESTED RELIEF FURTHERS THE PUBLIC INTEREST

The public interest weighs in favor of granting injunctive relief. There is a public interest in not depriving consumers of a choice of products. *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993). Injunctive relief is appropriate where, as here, "[w]ith the issuance of the [temporary restraining order] the economic voice of the consumer may still be heard; without the [temporary restraining order] the options of the consumer have already been prescribed by the [non-moving party]." *Regents of Univ. of California v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 521 (9th Cir. 1984). *Cf. Garcia v. Google, Inc.*, 786 F.3d 733, 747 (9th Cir. 2015) ("The [court's] takedown order was unwarranted and incorrect as a matter of law, as we have explained above. It also gave short shrift to the First Amendment values at stake."). Maintaining that consumer choice here would further the public interest.

## IV. THE BALANCE OF EQUITIES IS IN BABYBUS' FAVOR

Balancing the equities requires the Court to consider the "competing claims of injury and the effect on each party of granting and withholding injunctive relief." *Miller ex rel. N.L.R.B. v. California Pac. Med. Ctr.*, 19 F.3d 449, 456 (9th Cir. 1993) (citing *Weinberger v. Romero-Barcelo,*

1   456 U.S. 305 (1982)).

2       Here, the balance of equities decidedly favors issuing an injunction, as there is no legitimate

3   hardship Moonbug would suffer by being ordered to do what it should have already done:  desist in

4   issuing takedown notices for plainly non-infringing works against a competitor.  This is cemented

5   by the fact that, as noted above (Preliminary Statement, *supra*), the Super JoJo channels will not

6   include any of the allegedly-infringing works identified by Moonbug in its Complaint.  Given that

7   the requested relief is required to revive the flagship Super JoJo channel, and that the flagship

8   channel is far and away the most important channel to the franchise (bringing in up to ten times the

9   revenue as its second most successful channel, Naiyong Decl. ¶ 8), any other outcome would be

10  ruinous.

11                                   **<u>CONCLUSION</u>**

12      For the foregoing reasons, BabyBus respectfully requests a Temporary Restraining Order

13  and an Order to Show Cause Why a Preliminary Injunction Should Not Issue:  (1) ordering Moonbug

14  to withdraw all of its existing DMCA notifications that it served on YouTube relating to BabyBus'

15  Super JoJo shows;  (2) restraining Moonbug from serving on YouTube additional DMCA

16  notifications relating to BabyBus' stipulated 171 Super JoJo shows; and (3) ordering Moonbug to

17  provide all information YouTube seeks from it so that YouTube will reinstate the suspended Super

18  JoJo channel with the videos lodged as Exhibits 1 – 171 to the September 28, 2021 Declaration of

19  Sam S. Stake.

20

21

22

23

24

25

26

27

28

DATED:  September 28, 2021

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By _/s/ Sam S. Stake_

Margret Caruso (Bar No. 243473)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Fax:        (650) 801-5100
margretcaruso@quinnemanuel.com

Sam S. Stake (Bar No. 257916)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:  (415) 875-6600
Facsimile:   (415) 875-6700
samstake@quinnemanuel.com

Attorneys for Defendant/Counter-Plaintiff
BABYBUS (FUJIAN) NETWORK
TECHNOLOGY CO., LTD