1  JENNIFER KELLY (CSB No. 193416)
   jennifer@tyzlaw.com
2  RYAN TYZ (CSB No. 234895)
   ryan@tyzlaw.com
3  ERIN JONES (CSB No. 252947)
   ejones@tyzlaw.com
4  CIARA MCHALE (CSB No. 293308)
   ciara@tyzlaw.com
5  TYZ LAW GROUP PC
   4 Embarcadero Center, 14th Floor
6  San Francisco, CA 94111
   Telephone: 415.868.6900
7
   Attorneys for Plaintiffs
8  Moonbug Entertainment Limited and
   Treasure Studio, Inc.
9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12                **SAN FRANCISCO DIVISION**

13

14
   MOONBUG ENTERTAINMENT              Case No: 3:21-cv-06536-EMC
15 LIMITED and TREASURE STUDIO, INC.,
                                      **PLAINTIFFS' OPPOSITION TO**
16          Plaintiffs,               **MOTION FOR TEMPORARY**
                                      **RESTRAINING ORDER AND ORDER**
17       v.                           **TO SHOW CAUSE WHY A**
                                      **PRELIMINARY INJUNCTION**
18 BABYBUS (FUJIAN) NETWORK           **SHOULD NOT ISSUE**
   TECHNOLOGY CO., LTD,
19                                    Date:        October 7, 2021
            Defendant.                Time:        1:30 p.m.
20 ─────────────────────────────      Judge:       Hon. Edward M. Chen
   BABYBUS (FUJIAN) NETWORK           Courtroom:   5, 17th Floor
21 TECHNOLOGY CO., LTD,
                                      Complaint Filed:   August 24, 2021
22          Counter-Plaintiff,

23       v.

24 MOONBUG ENTERTAINMENT
   LIMITED and TREASURE STUDIO, INC.,
25
            Counter-Defendants.
26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................................. 1

II.  FACTUAL BACKGROUND .......................................................................... 2

     A.   Defendant's Blatant and Extensive Infringement of CoComelon ....................... 2

     B.   Moonbug's YouTube Copyright Notices and Defendant's Partial
          Response ................................................................................................. 8

     C.   YouTube's Termination of One of Defendant's Infringing Channels ............... 10

     D.   Defendant's Untimely Counter Notifications ................................................... 10

     E.   Defendant's Answer, Counterclaims, and Motion ............................................. 11

III. ARGUMENT .................................................................................................. 12

     A.   Injunctive Relief is Unavailable Under Section 512(f) of the Copyright
          Act ........................................................................................................... 12

     B.   Defendant Has Not Met its Burden for a Temporary Restraining Order ............ 14

          i.    Defendant Has Not Shown Likely Success on its 512(f) Claim ............. 15

          ii.   Defendant Has Not Shown Irreparable Harm ......................................... 19

          iii.  The Balance of Equities Tips Sharply in Moonbug's Favor .................. 20

          iv.   Injunctive Relief is Against the Public Interest ..................................... 22

IV.  THE RELIEF SOUGHT IN DEFENDANT'S PROPOSED TEMPORARY
     RESTRAINING ORDER IS IMPERMISSIBLE ........................................... 22

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**CASES**

*Al Otro Lado v. Wolf*,
   952 F.3d 999 (9th Cir. 2020) ............................................................................ 20

*All World Prof'l Travel Servs. v. Am. Airlines, Inc.*,
   282 F. Supp. 2d 1161 (C.D. Cal. 2003) ............................................................ 13

*Alliance for Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011)) .......................................................................... 15

*Associated Press v. Otter*,
   682 F.3d 821 (9th Cir. 2012) ............................................................................. 22

*Bobolas v. Does*,
   No. CV-10-2056-PHX-DGC, 2010 U.S. Dist. LEXIS 110856 (D. Ariz. Oct. 1,
   2010) ................................................................................................................... 21

*Cmty. House, Inc. v. City of Boise*,
   490 F.3d 1041 (9th Cir. 2007) ........................................................................... 21

*Consumer Op. LLC v. Frankfort News Corp*,
   No. 16-cv-05100-BLF, 2016 U.S. Dist. LEXIS 159735 (N.D. Cal. Nov. 17, 2016)...... 24

*Design Furnishings, Inc. v. Zen Path, Ltd. Liab. Co.*,
   No. CIV. 2:10-2765 WBS GGH2010, U.S. Dist. LEXIS 135819 (E.D. Cal. Dec.
   23, 2010) ....................................................................................................... 13, 14

*Epic Games, Inc. v. Apple Inc.*,
   493 F. Supp. 3d 817, 847 (N.D. Cal. 2020) ......................................... 19, 20, 22

*Epic Games, Inc. v. Apple Inc.*,
   No. 4:20-cv-05640-YGR, 2020 U.S. Dist. LEXIS 154231 (N.D. Cal. Aug. 24,
   2020) ................................................................................................................... 22

*Flynn v. Siren-Bookstrand, Inc.*,
   No. 4:13-CV-3160, 2013 U.S. Dist. LEXIS 135095 (D. Neb. Sep. 20, 2013) .............. 14

*Garcia v. Google*,
   786 F.3d 733 (9th Cir. 2015) ....................................................................... 14, 24

*Ghalehtak v. Fay Servicing, LLC*,
   No. 17-cv-05976-EMC, 2017 U.S. Dist. LEXIS 177068 (N.D. Cal. Oct. 25, 2017) ..... 13

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199, 1210 (9th Cir. 2000) ................................................................. 20

*Hosseinzadeh v. Klein*,
   276 F. Supp. 3d 34 (S.D.N.Y. 2017)................................................................... 15

*Howard v. Blue Ridge Bank,*
    371 F. Supp. 2d 1139 (N.D. Cal. 2005) ...................................................... 12

*ISE Ent'mt Corp. v. Longarzo,*
    No. CV 17-9132-MWF (JCx), 2018 U.S. Dist. LEXIS 208921 (C.D. Cal. Dec. 11,
    2018) ................................................................................................................ 16

*Ji Yun Chung v. NBGI, Inc.,*
    No. C 09-04878 MHP, 2010 U.S. Dist. LEXIS 21708 (N.D. Cal. Mar. 10, 2010) ........ 12

*Lenz v. Univ. Music Corp.,*
    815 F.3d 1145 (9th Cir. 2016) ...................................................................... 17

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ........................................................................ 22

*Mun v. Univ. of Alaska,*
    No. A03-244 CV JWS, 2005 U.S. Dist. LEXIS 14126 (D. Alaska Apr. 4, 2005) ......... 13

*Munaf v. Geren,*
    553 U.S. 674 (2008) ...................................................................................... 14

*Netlist Inc. v. Diablo Techs., Inc.,*
    No. 13-cv-05962-YGR, 2015 U.S. Dist. LEXIS 3285 (N.D. Cal. Jan. 12, 2015) .......... 25

*Ningbo Mizhihe I&E Co. v. Does,*
    No. 19 Civ. 6655 (AKH), 2020 U.S. Dist. LEXIS 76724 (S.D.N.Y. Apr. 30, 2020)15, 16

*QBAS Co. v. C Walters Intercoastal Corp.,*
    No. SACV 10-406 AG (MLGx), 2010 U.S. Dist. LEXIS 143945 (C.D. Cal. Dec.
    16, 2010) ........................................................................................................ 22

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.,*
    944 F.2d 597 (9th Cir. 1991) ........................................................................ 19

*Rossi v. Motion Picture Ass'n of Am., Inc.,*
    391 F.3d 1000 (9th Cir. 2004) .......................................................... 15, 16, 17

*See DC Comics v. Towle,*
    802 F.3d 1012 (9th Cir. 2015) ...................................................................... 18

*Spolar v. Discovery Communs., LLC,*
    No. 2:20-cv-08837-SVW-MAA, 2020 U.S. Dist. LEXIS 247006 (C.D. Cal. Oct.
    2, 2020) .......................................................................................................... 24

*Stardock Sys. v. Reiche*, No. C 17-07025 SBA,
    2018 U.S. Dist. LEXIS 222971 (N.D. Cal. Dec. 27, 2018) ...................... 19, 21, 23, 25

*Stern v. Lavender,*
    319 F. Supp. 3d 650 (S.D.N.Y. 2018) ........................................................... 17

*Stormans, Inc. v. Selecky,*
    586 F.3d 1109 (9th Cir. 2009) ...................................................................... 24

*Varnado v. Midland Funding LLC,*
    43 F. Supp. 3d 985 (N.D. Cal. 2014) ............................................................. 13

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ............................................................................................ 14

**STATUTES**

17 U.S.C. § 502(a) ............................................................................................. 13

17 U.S.C. §§ 1201–1203 .................................................................................... 13

17 U.S.C. §§ 512(j) ............................................................................................ 13

17 U.S.C. 512(f) ......................................................................................... passim

**OTHER AUTHORITIES**

Eric Goldman, *How Have Section 512(f) Cases Fared Since 2017? (Spoiler: Not Well)*,
    TECH. & MKTG. L. BLOG, Apr. 6, 2019,
    https://blog.ericgoldman.org/archives/2019/04/how-have-section-512f-cases-
    fared-since-2017-spoiler-not-well.htm .......................................................... 18

ERIC GOLDMAN, INTERNET LAW: CASES & MATERIALS 179 (Jul. 2021 version) ...................... 18

# I.  INTRODUCTION

While Defendant *says* it "respects intellectual property rights," its *actions* prove otherwise. As Plaintiffs' Complaint makes clear, Defendant copied nearly every aspect of Moonbug's CoComelon franchise and in doing so infringed thirty-six registered copyrighted works of Moonbug.  The infringement of these registered works by Defendant is so blatant and extensive that one of its distribution partners, YouTube, rightly suspended one of Defendant's video channels pursuant to its DMCA repeat infringer policy that Defendant agreed—but failed—to comply with. Now, months later, Defendant hopes its "emergency" injunction motion will sweep aside the consequences of those unlawful actions, prevent Moonbug's exercise of its statutorily protected right to enforce its intellectual property rights, and further trample on Moonbug's rights.

Defendant's motion rests on a flawed counterclaim that Moonbug violated 17 U.S.C. § 512(f).  But that section of the Copyright Act does not permit injunctions; it only allows "damages" for material misrepresentations in a copyright infringement takedown request made under the DMCA.  On this basis Defendant's motion fails.  Beyond that, Defendant's motion does not mention the requirements to succeed on a Section 512(f) claim, much less offer any evidence that Defendant is "likely" to do so.  Nor can it.  The motion does not attach Moonbug's DMCA takedown requests that led to the takedowns, identify any material misrepresentation in them, or offer any evidence that Moonbug's outside counsel in this case who submitted those notices acted with the requisite scienter (*i.e.*, bad faith).  These failures equally doom Defendant's motion.

Although the Court need not evaluate the remaining factors, the record before it shows that Defendant cannot carry its heavy burden of demonstrating irreparable harm, that the balance of equities tips in its favor, or that the injunction it seeks is in the public interest.  Indeed, Defendant's claimed harm is self-inflicted and otherwise compensable in monetary damages, as Defendant's motion tacitly acknowledges and the statute dictates.  The public has a strong interest in deterring and not rewarding repeat copyright infringers, teaching children (the viewers of these videos) right from wrong, and not having the judiciary overriding the process Congress provided for in the DMCA.  Defendant's requested injunction is also impermissibly overbroad and an unconstitutional prior restraint.  These defects are additional reasons to deny Defendant's motion.

## II.  FACTUAL BACKGROUND

### A.  Defendant's Blatant and Extensive Infringement of CoComelon

Plaintiffs Moonbug Entertainment Limited and Treasure Studio, Inc. (together, "Moonbug") own extensive intellectual property rights in the CoComelon universe.  Dkt. 1 ("Compl.") ¶ 15.  Moonbug's rights include registered copyrights in the CoComelon characters: baby JJ and his mom, dad, brother TomTom, and sister YoYo.  *Id.*¶ 20(a); Declaration of Ciara McHale ("McHale Decl.") ¶ 3, Ex. 1.  These characters were introduced on YouTube in 2017.  Compl. ¶ 18.  Moonbug also owns copyrights in hundreds of original CoComelon videos, songs, and images on YouTube and elsewhere, all featuring the well-known and recognizable CoComelon family of characters.  *Id.* ¶¶ 15, 20(c).  The CoComelon YouTube channel is ranked the #1 Kids YouTube Channel and the #1 YouTube educational channel, enjoying 117 million subscribers and over one hundred billion views of its many videos.  *Id.* ¶ 2.

Defendant built its Super JoJo YouTube business, including thirteen separate channels, by copying and exploiting every possible element of CoComelon.  *Id.* ¶ 3.  When Defendant launched its "flagship" Super JoJo English language channel in June 2019, it introduced its characters and their world through videos, many of which were created by copying, often frame-by-frame, entire CoComelon videos.  For example, on July 9, 2019, just weeks after launching its Super JoJo channel, Defendant posted a frame-by-frame copy of the CoComelon work "The Boo Boo Song," in its own, identically titled infringing video.  Compl. ¶ 35, Ex. 2; McHale Decl. Exs. 30–31.  Defendant mapped its infringing "The Boo Boo Song" to CoComelon's, copying frame-by-frame the graphics, angles, character movements and behaviors, plot, and specific sequence of events in the original CoComelon work.  *Id.* ¶ 35–41; Ex. 2.

For example, and as shown in part in the following comparison, after the baby (CoComelon's baby JJ and Defendant's infringing baby JoJo) falls and gets hurt, he seeks help from his mom.  *Id.* ¶ 37, Ex. 2 at 1–5; McHale Decl. Exs. 30–31.  The mom wipes the baby's tears, retrieves a first aid kit, and puts a band aid on the injury, then kisses the baby on the forehead as he closes his eyes.

/ / /

| CoComelon "The Boo Boo Song" | Infringing "The Boo Boo Song" |
|---|---|
|  | |
|  | |
|  | |
|  | |
| Lyrics: "A bandage and a kiss just right will help your boo boo feel alright." | Lyrics: "A bandage and a kiss will make your boo boo better." |

*Id.* Defendant's infringing "The Boo Boo Song" copies the rest of the CoComelon original work with equal frame-by-frame precision, showing the sister stub her toe, the brother fall and hurt his elbow, and, finally, one of the parents hurt their hand and seek help from all three children. Compl. ¶¶ 39–40, Ex. 2 at 6–24; McHale Decl. Exs. 17, 30.

Defendant likewise published a frame-by-frame copy of CoComelon's "Yes Yes Vegetables Song" video shortly after launching its channel. Compl. ¶ 44, Ex. 3; McHale Decl. Exs. 32–33. For example, as the following comparison shows, in the original CoComelon work and the infringing Super JoJo copy, the mom character offers the baby a series of vegetables (*e.g.*, peas) at his high chair in front of their open-layout kitchen and living area and coaxes the baby to eat the vegetable on his own, including with the help of the baby's stuffed animal friend.

| CoComelon "Yes Yes Vegetables Song" | Infringing "Yes Yes Vegetables Song" |
| --- | --- |



Compl. ¶¶ 45–49, Ex. 3; McHale Decl. Exs. 32–33. For each vegetable offering, the mom and baby follow a substantially similar sequence, with at most trivial variations. *See* Compl. ¶¶ 45–49, Ex. 3; McHale Decl. Exs. 32–33; *see also* Compl. Ex. 4 (showing Defendant's copying of CoComelon's "The Colors Song (with Popsicles)"). The above infringing videos are some of

Defendant's most popular and served as the foundation for Defendant's subsequent videos and business on YouTube. McHale Decl. Exs. 2–4 (showing hundreds of millions of views).

Many of Defendant's other videos infringe the plot, themes, dialogue, mood, setting, colors pace, sequence of events, and even song series and titles. This includes one of Defendant's first videos on its channel, posted June 21, 2019—an infringing version of CoComelon's "Bath Song." *See* Compl. ¶ 52, Ex. 5; McHale Ex. 5.



Compl. Ex. 5 at 3; *see also* Ex. 6 (showing copying of CoComelon's "Car Wash Song").

Although Defendant claims now that it "takes intellectual property rights seriously," Dkt. 22 ("Motion or Mot.") at 5, it certainly did not when developing its Super JoJo characters and settings through these frame-by-frame copies of CoComelon, nor during the many years since— making substantial advertising revenues from these and other copycat videos to the detriment of Moonbug. *See* Dkt. 23 ("Naiyong Decl.") ¶ 8. There is no question that Defendant's copying of these CoComelon works down to individual frames and sequences is not happenstance, but deliberate and willful. Compl. ¶ 50. Defendant has conceded as much, removing these infringing videos in response to Moonbug's complaints to YouTube, described further below. Compl. ¶ 62. Defendant also distributes its infringing videos on Amazon Prime. Compl. ¶ 21.

Defendant's infringing Super JoJo videos also misappropriate and copy CoComelon's original, iconic characters: baby JJ and his family. Compl. ¶¶ 23–31. In early videos, as described above, the characters were copied not only physically and conceptually, but down to their precise movements, actions and reactions in videos that copied CoComelon's frame- by-frame.

| CoComelon Family Characters | Infringing Super JoJo Family Characters |
|---|---|

| CoComelon Family Characters | Infringing Super JoJo Family Characters |
|---|---|



| CoComelon thumbnail image for "The Colors Song (with Popsicles)" | Infringing Super JoJo thumbnail image for "Rainbow Ice Cream (the Colors Song)" |
|---|---|

Compl. Ex. 2 at 21; McHale Decl. Exs. 8–9, Ex. 17 at 7–8. In later videos derived from its earlier knock-off videos discussed above, Defendant's copying continues to include the physical and conceptual characteristics that are original to the CoComelon family members, along with their setting, arrangement, and other features taken from CoComelon. Compl. ¶¶ 32–39. As the figures above show, Defendant also misses no opportunity to evoke CoComelon by mimicking CoComelon images prominently on its site, such that its copying thus extends not only to each character, but also to their naming, grouping (often in close proximity, touching, and displaying affection), and physical animation throughout CoComelon's videos. Indeed, in one of the above "thumbnail" images (teaser images used to advertise the content of a particular video), Defendant expressly mimics CoComelon by copying the CoComelon characters' rainbow popsicles, when the infringing Super JoJo video is instead about dishes of ice cream. McHale Decl. Ex. 17 at 8.

The striking similarity of Defendant's Super JoJo channels to CoComelon—including hundreds of videos containing replicated video characters, settings, song titles, lyrics, videos and images —is without a doubt the product of deliberate copying. *Id.*; Compl. ¶¶ 3, 50. Defendant has stolen every aspect of CoComelon, and every Super JoJo channel and video, including Defendant's entire Super JoJo viewership and business, was built on its copying of CoComelon. No wonder the declaration of Defendant's corporate representative submitted in support of its motion does <u>not</u> deny that Defendant accessed and copied CoComelon.

**B.**     **Moonbug's YouTube Copyright Notices and Defendant's Partial Response**

To remedy Defendant's extensive infringement on YouTube, Moonbug first turned to YouTube's policies and DMCA procedures. YouTube requires all users to agree to abide by its terms of use, which include and require adherence to its copyright policies. McHale Decl. Ex. 11 at 2. YouTube prohibits users from posting materials that infringe copyrights. *Id.* at 2, 4; *see* Ex. 12. YouTube's policies also warn its users that their accounts are subject to "strikes" and termination if DMCA complaints are received about their materials:

> If a copyright owner submits a valid DMCA complaint through our webform, we take down that video and apply a copyright strike. If a user gets three copyright strikes in 90 days, their account, along with any associated channels, will be terminated.

*Id.* Ex. 13. Once a YouTube account receives a strike, a user can request a copy of the takedown notice and resolve that strike by submitting a counternotice; otherwise, the strike remains. *Id.* Ex. 12, 15. This repeat infringer policy also states that a user who gets three strikes will also have all videos uploaded to their account removed. *Id.* For account holders like Defendant who are part of YouTube's Content Manager System program, receipt of 10 strikes across managed channels within 90 days can result in termination of the partnership and account. *See* McHale Decl. Ex. 14; Naiyong Decl. Ex. E. Defendant, to use YouTube as a distribution channel, agreed to these policies. Naiyong Decl. Ex. E; McHale Decl. Exs. 11–14.

Two months after engaging outside counsel on May 13, 2021, Moonbug prepared and then submitted on July 20, 2021[1] its first three DMCA complaints (*i.e.* takedown notices) to YouTube seeking removal of twenty-two infringing copies of Super JoJo "The Boo Boo Song" videos. Compl. ¶ 60; McHale Decl. ¶ 18, Ex. 16. Separately, Moonbug sent YouTube a 17-page letter and 80 pages of exhibits detailing the pervasive infringement present in the Super JoJo channels. Compl. ¶¶ 59-60; McHale Decl. Ex. 17. Moonbug also sent a copy of this letter and

---

[1] There is no evidence to support Defendant's repeated claim that Moonbug's infringement allegations were prompted by or have anything to do with Defendant's apparent IPO in China. On the contrary, Moonbug retained counsel, who captured the infringing videos from YouTube, well before the cited IPO announcements were released. *See* McHale Decl. ¶ 2–10.

exhibits to Defendant. Compl. ¶ 59; McHale Decl. Ex. 17. Curiously, Defendants chose not to provide a copy of these materials with its Motion, even though this letter and its exhibits set forth the detailed basis underlying Moonbug's copyright notices to YouTube and this lawsuit.

Within hours of receiving Moonbug's letter to YouTube, Defendant disabled public access to over 100 of its infringing videos on YouTube, presumably to prevent YouTube from removing the videos and issuing strikes against Defendant's account. Compl. ¶¶ 61–62. Over the next couple days, Defendant continued to remove, mark private, or edit videos it obviously understood were infringing, to further evade YouTube strikes. *Id.* ¶¶ 62, 65–66. In some cases, however, Defendant reinstated infringing Super JoJo works it initially deactivated or replaced them with different infringing works. *Id.* ¶ 65–66.

Around two weeks after Moonbug began submitting these copyright notices, YouTube began processing and acting on Moonbug's notices. Specifically, YouTube removed two infringing Super JoJo videos on July 30 and two additional infringing videos on August 6, 2021. McHale Decl. ¶¶ 20–21. Defendant submitted DMCA counter notifications for these four videos on August 11, 2021. *Id.* ¶ 22. The same day, YouTube removed five more infringing Super JoJo videos. *Id.* ¶ 23, Exs. 18–22 (takedown notices for the five videos); *Id.* ¶ 25, Exs. 23 – 27 (removals of the five videos). Because Defendant did <u>not</u> submit counter notifications for these videos, however, YouTube subsequently issued strikes against the Super JoJo English language channel pursuant to its DMCA policy. *See id.*; *see also* Ex. 12 (strikes can be resolved by counter notification). These strikes appear to be based on the five infringing videos removed on August 11, 2021 (the "Strike Videos"). *Id.* ¶¶ 23–28. Notably, Defendant does not provide the Court with these infringing videos. For example, it did not provide its "Finger Family Song" video, which infringes the characters, plot, setting, pacing, and specific sequences of CoComelon's copyrighted "Finger Family Song" video. McHale Exs. 34–35. In both videos, for instance, the baby finds his brother building or fixing a toy car and then goes to find his sister, who is making art. *Compare id.* Ex. 34 at 1:02–1:25 *with* Ex. 35 at 1:18–1:48; *compare* Ex. 34 at 1:26 – 1:50 *with* Ex. 35 1:49–2:18. This and each of the other Strike Videos (McHale Decl. Exs. 35–39) infringes Moonbug's copyrights in CoComelon's family characters, including their physical and

conceptual characteristics and their family makeup.  *See* Compl. ¶¶ 20, 23–31; *see also*, McHale Decl. Exs. 17, 30, 32.

Moonbug filed its Complaint for Copyright Infringement on August 24, 2021, and it gave YouTube notice of the lawsuit the following day.  Dkt. 1; McHale Decl. ¶ 26.

### C.    YouTube's Termination of One of Defendant's Infringing Channels

On August 26, 2021, two weeks after removal of the Strike Videos—for which Defendant did not file DMCA counter notifications—YouTube terminated the infringing Super JoJo English language channel, including hundreds of additional videos.  YouTube's termination of this channel was in accordance with its policies, described above, requiring termination after receipt of three or more strikes against an account.  McHale Decl. Exs. 11–14.  YouTube also continued to mark as removed infringing videos from the terminated channel and issue additional strikes to Defendant.  Defendant admits that it has received at least eight copyright strikes against its Super JoJo English language channel—more than twice the number required for triggering termination. Naiyong Decl. Ex. E.  Defendant also accumulated 11 strikes against its various other Super JoJo channels for similarly infringing videos.  Naiyong Decl. Ex. E.  Defendant does not dispute that it failed to file counternotices for the Strike Videos, or that it violated YouTube's policies regarding repeat infringers in accordance with the DMCA.

### D.    Defendant's Untimely Counter Notifications

Over a month *after* YouTube removed the Strike Videos (and over two weeks after termination of its channel), Defendant submitted counter notifications to YouTube requesting restoration of the Super JoJo English channel.  McHale Decl. ¶ 31, Ex. 29.  None of these counter notifications addressed Super JoJo's frame-by-frame copying, its copying of original songs and video series, or its other pervasive copying of CoComelon, but like Defendant's filings to this Court, focused narrowly on trying to differentiate specific physical features of Super JoJo's baby and family characters.  *Id.*  Yet, these counter notifications only came *after* Defendant's counsel first threatened to seek emergency relief from this Court.  McHale Decl. ¶ 30, Ex. 28.  Defendant thus appears to have submitted these counter notifications not because of their merits, but for "exhausting" its options with YouTube for purposes of this motion.  Because these counternotices

were not timely submitted in accordance with YouTube's policies and the DMCA, the strikes were not removed, and the channel remained disabled. Defendant has thus resorted to uploading its videos to a newer YouTube channel launched in May 2021, which has been gaining popularity ever since. McHale Decl. Ex. 9.

### E. Defendant's Answer, Counterclaims, and Motion

On September 29, Defendant answered Plaintiffs' Complaint. Dkt. 20. With its answer, Defendant asserted unsupported counterclaims for (1) copyright misrepresentation under 17 U.S.C. §512(f); (2) unfair competition under Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (3) common law unfair competition / misappropriation. Dkt. 20. Defendant's Answer to the Complaint does not include a defense of non-infringement of Moonbug's works. *See id.* Nor does Defendant assert a counterclaim for declaratory judgment of non-infringement. *See id.*

The same day, Defendant also filed its motion for temporary restraining order ("TRO"). *See* Mot. Defendant's Motion is based on its Section 512(f) counterclaim only and it comes over a month after its infringing channel was taken down by YouTube. Defendant proposes a TRO of stunning scope, asking the Court to (1) force Moonbug to withdraw all of its previous DMCA notifications to YouTube relating to Super JoJo; (2) prospectively restrain Moonbug from submitting *any* further DMCA notifications about infringing Super JoJo works; and (3) require Moonbug to provide to YouTube "all information YouTube seeks from it so that YouTube will" reinstate the suspended Super JoJo channel together with a set of 171 videos identified by Defendant that were removed by YouTube by virtue of the channel being disabled. Oddly, the Motion does not address or seek reinstatement of the Strike Videos, ***which are the only videos that could even be the subject of a Section 512(f) claim***. *See* Section B(i), *infra*. Instead, Defendant has tried to shift attention to reinstatement of 171 videos that were removed when its channel was terminated.[2] But YouTube removed those videos consistent with its repeat infringer

---

[2] Moonbug disputes Defendant's characterization of the 171 videos as "plainly non-infringing." Mot. at 2. To the contrary, while Moonbug's review of these videos is incomplete and preliminary, it has identified at least one video that is the same as one of the Strike Videos, several other videos that contain songs that were the subject of Moonbug's DMCA notices, and many more videos that contain characters that Moonbug has claimed are infringing.

policy aimed to stop rampant infringement like Defendant's.  McHale Ex. 12 (stating *all* videos will be removed from terminated channels).

## III.  **ARGUMENT**

### A.    **Injunctive Relief is Unavailable Under Section 512(f) of the Copyright Act**

As a threshold matter, the Court should deny the TRO because Section 512(f) does not allow for the injunctive relief Defendant seeks.  A preliminary injunction—or temporary restraining order—"is generally only available if injunctive relief is appropriate in the first instance."  *See Ji Yun Chung v. NBGI, Inc.*, No. C 09-04878 MHP, 2010 U.S. Dist. LEXIS 21708, at *6 (N.D. Cal. Mar. 10, 2010).  Because Section 512(f) does not authorize any kind of injunctive relief and only allows for damages, Defendant cannot show it is likely to succeed on its claim for such relief.  *See id.*  Accordingly, its request for a TRO must fail.

Injunctive relief is not available when a legislative act expressly allows for injunctive relief in certain provisions of a statute but omits it from the provision creating defendant's counterclaim in the same statute.  *See, e.g., Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1145 (N.D. Cal. 2005).  *Howard* illustrates this principle of statutory construction and legislative intent regarding injunctions.  The plaintiff in that case brought claims under two specific provisions of the Fair Credit Reporting Act (FCRA) that enumerated available forms of relief, but neither listed injunctive relief.  *Id.*  The court held that "the FCRA does clearly preclude injunctive relief" under such provisions because they expressly provided for only damages and attorneys' fees while "[e]lsewhere in the FCRA, injunctive relief is mentioned and available only to the FTC or other agencies enforcing the FCRA."  *Id.*  The court reasoned that "the express inclusion of injunctive relief in certain provisions of the FCRA and its omission from the provisions creating plaintiff's cause of action [was] a sufficiently 'clear command' from Congress that injunctive relief is not available to plaintiff."  *Id.*  Courts routinely apply this same reasoning and reach the same result in other statutory frameworks, finding injunctive relief unavailable when it is not authorized by the specific provisions giving rise to a cause of action.  *See, e.g., Ji Yun Chung*, 2010 U.S. Dist. LEXIS 21708, at *6–7 (Truth in Lending Act and Real Estate Settlement Procedures Act); *Mun v. Univ. of Alaska*, No. A03-244 CV JWS, 2005 U.S. Dist. LEXIS 14126, at *5–7 (D. Alaska Apr.

4, 2005) (Title VII); *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 993 (N.D. Cal. 2014) (Fair Debt Collection Practices Act and California's Rosenthal Act); *Ghalehtak v. Fay Servicing, LLC*, No. 17-cv-05976-EMC, 2017 U.S. Dist. LEXIS 177068, at *20 (N.D. Cal. Oct. 25, 2017) (Chen, J.) (California's Homeowner's Bill of Rights); *All World Prof'l Travel Servs. v. Am. Airlines, Inc.*, 282 F. Supp. 2d 1161, 1176 (C.D. Cal. 2003) (RICO Act).

The same is true for Section 512(f) of the Copyright Act: injunctive relief is not available because 512(f) enumerates the available relief and does not provide for injunctive relief. Rather, section 512(f) provides only for "damages, including costs and attorneys' fees." 17 U.S.C. § 512(f). The omission of injunctive relief is significant because the Copyright Act provides such relief elsewhere, for other claims. For example, Section 502 permits a court to "grant temporary and final injunctions . . . to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). This section does not apply to Defendant's claims, which do not aim to stop infringement. Further, the DMCA expressly affords injunctive relief in other provisions enacted alongside section 512(f), such as Section 512(j) (service provider claims) and Section 1203 (claims for violation of Section 1201 or 1202), which do not apply here. 17 U.S.C. §§ 512(j), 1201–1203. Congress' inclusion of provisions addressing injunctive relief in the DMCA and elsewhere in the Copyright Act shows that the omission of injunctive relief in section 512(f) is intentional. Accordingly, the injunctive relief Defendant seeks is unavailable under its 512(f) counterclaim. This makes sense because allowing an injunction under this section would have a chilling effect on the statutory rights afforded copyright holders, undermining Congress' intent under the DMCA to permit copyright holders to submit notices of infringement to online service providers.

Defendant cites no Ninth Circuit law to support its request for injunctive relief under Section 512(f), relying solely on an out-of-district court case that did not address the above argument or legal authority showing that an injunction is unavailable under these circumstances. Mot. at 7 (citing *Design Furnishings, Inc. v. Zen Path, Ltd. Liab. Co.*, No. CIV. 2:10-2765 WBS GGH2010, 2010 U.S. Dist. LEXIS 135819 (E.D. Cal. Dec. 23, 2010)). But *Design Furnishings* is distinguishable, as it involved a defendant who submitted notices claiming infringement of a copyright application that was rejected, for furniture whose copyrightable elements he could not

identify. *Id*. at 18. Based on those unique facts, which are inapplicable here, the court was unable to conclude the defendant could subjectively believe he owned the copyright he asserted. *Id*. Here, there is no dispute that Moonbug owns copyright registrations for its works, including for its family of characters, and that it has identified in detail how Defendant infringes those works.

In contrast, at least one other district court has denied a temporary restraining order on the basis that Section 512(f) does not authorize injunctive relief. *Flynn v. Siren-Bookstrand, Inc.*, No. 4:13-CV-3160, 2013 U.S. Dist. LEXIS 135095, at \*14 (D. Neb. Sep. 20, 2013). In *Flynn*, the court observed that plaintiff had "not identified any portion of the DMCA providing for injunctive relief to remedy or prevent violations of § 512(f), nor has the [c]ourt identified any such provision." *Id*. Because 512(f) does not authorize injunctive relief while other sections of the Copyright Act do, the Court should deny the Motion.

### B. Defendant Has Not Met its Burden for a Temporary Restraining Order

Even if Section 512(f) allowed for it, Defendant has not shown entitlement to a temporary restraining order. "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Doe*, 2020 U.S. Dist. LEXIS 205340, at \*7–\*8. "Preliminary injunctive relief, whether in the form of a temporary restraining order or a preliminary injunction, is an 'extraordinary and drastic remedy,' that is never awarded as of right." *Id*. at \*7 (quoting *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008)). To prevail, Defendant must establish that (1) it is "likely to succeed on the merits" of its § 512(f) claim, (2) it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [its] favor," and (4) "an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Moreover, and as discussed further below, the Ninth Circuit has held that injunctions restraining a party's speech before it occurs—here, restraining Moonbug from submitting future DMCA notices—are "classic examples of prior restraints" in violation of the First Amendment. *Garcia v. Google*, 786 F.3d 733, 747 (9th Cir. 2015).

Defendant fails to satisfy its burden on *any* of the four *Winter* factors, let alone all four.

i.  Defendant Has Not Shown Likely Success on its 512(f) Claim

"The first factor under *Winter* is the most important—likely success on the merits." *Id.* at 740.  Here, Defendant seeks mandatory injunctive relief, meaning that its proposed TRO would require Moonbug to take affirmative action.  *Id.*  Specifically, Defendant seeks an order forcing Moonbug to withdraw its already-submitted DMCA takedown notices to YouTube (TRO provision 1) and provide "all information" YouTube asks for to reinstate the terminated channel (TRO provision 3).  Dkt. 25.  This makes Defendant's burden on the present motion "doubly demanding":  it "must establish that the law and facts *clearly favor* [its] position, not simply that [it] is likely to succeed." *Id.* (emphasis in original).[3]

Yet Defendant's motion focuses on the merits of Moonbug's copyright claim against it, ignoring the key question: whether the law and facts *clearly favor* Defendant's success on *its section 512 counterclaim*.  They do not.  Section 512(f) only provides for liability when a person "knowingly materially misrepresents . . . that material or activity is infringing" and causes damages incurred due to a takedown.  17 U.S.C. § 512(f).  Further, the Ninth Circuit has held that a Section 512(f) claim requires a showing of subjective bad faith on the part of a copyright owner submitting a takedown notice.  *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1004–1005 (9th Cir. 2004).  "In other words, a copyright holder is not liable for misrepresentation under the DMCA if they subjectively believe the identified material infringes their copyright, even if that belief is ultimately mistaken." *Ningbo Mizhihe I&E Co. v. Does*, No. 19 Civ. 6655 (AKH), 2020 U.S. Dist. LEXIS 76724, at *6 (S.D.N.Y. Apr. 30, 2020) (quoting *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 43 (S.D.N.Y. 2017) which, in turn, cites *Rossi*).  This sets an extremely high

---

[3] Defendant misstates the applicable legal standard here, suggesting that it can satisfy its burden merely by showing "serious questions going to the merits and a balance of hardships that tips sharply toward the plaintiff" combined with a showing on the other factors misstates the applicable standard.  Mot. at 7 (citing the "sliding scale" approach in *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).  The *Alliance* case did not concern a mandatory injunction, which carries a higher burden, as confirmed in the Ninth Circuit's later decision in *Garcia*, 786 F.3d. at 740.  Further, in the *Alliance* case, the Court reversed denial of a preliminary injunction to stop action—a timber sale—because a plaintiff had shown likely success on its claim for violation of environmental protection statutes.  *Id.*  In contrast, here, Defendant has failed to even discuss the merits of its claim, focusing instead on Moonbug's claim.

bar, as *Rossi* makes clear that a 512(f) claimant must show (1) a material misrepresentation in a takedown notice that led to a takedown, and (2) that the takedown notice was submitted in subjective bad faith. *Id.* Defendant fails to address either element, much less submit any evidence that its success is "clearly favored" or even "likely." Defendant cannot meet its high burden.

First, Defendant fails to submit in support of its Motion any of Moonbug's DMCA copyright notices, nor identify even one false or misleading statement in any of them. These notices, which Defendant has or can at least access and which form the basis of its claim, are curiously absent from its Motion. *See* McHale Ex. 15 (an alleged infringer can request a copy of a takedown request against it). Defendant's failure to identify any false or misleading statement in Moonbug's takedown notices alone dooms Defendant's claim. *ISE Ent'mt Corp. v. Longarzo*, No. CV 17-9132-MWF (JCx), 2018 U.S. Dist. LEXIS 208921, at *27 (C.D. Cal. Dec. 11, 2018) (entering summary judgment dismissing 512(f) claim because of plaintiff's "failure to produce sufficient, indeed ***any***, evidence to establish a knowingly material[] misrepresentation" (emphasis in original)). Defendant's Motion also ignores the distinction between the Strike Videos (which were removed in response to Moonbug's DMCA notices) and the 171 videos it seeks to have reinstated (which were removed a result of YouTube's repeat infringer policy). The removal of the latter category was a result of Defendant's violation of YouTube's repeat infringer policy (*see* McHale Decl. Ex. 12), and thus cannot form the basis of a Section 512(f) claim.

Second, Defendant's Motion lacks any *evidence* that Moonbug acted in subjective bad faith in submitting any of its copyright notices for the infringing Super JoJo videos. *See id.*; *Ningbo Mizhihe I&E Co.*, 2020 U.S. Dist. LEXIS 76724, at *6. Moonbug engaged outside counsel more than two months before the first notices were sent to YouTube, and outside counsel prepared and sent the notices on Moonbug's behalf. McHale Decl. ¶¶ 2, 18, 23. In view of Moonbug's thorough letter to YouTube and its detailed allegations in the Complaint signed under Rule 11 by its outside counsel in this case, "[t]here is no suggestion in the record" that Moonbug's belief regarding Defendant's infringement "was other than sincere." *See Rossi*, 391 F.3d at 1005, n.8 (affirming summary judgment dismissal of section 512(f) claim because of evidence that

representations on plaintiff's website led the copyright owner to conclude in good faith that plaintiff was infringing).

Instead of focusing on the essential elements of its counterclaim, Defendant argues only that Moonbug was required to consider its defenses before submitting takedown notices, citing *Lenz v. Univ. Music Corp.*, 815 F.3d 1145 (9th Cir. 2016). This argument misses the mark for multiple reasons. First, *Lenz* held only that when a copyright owner represents that it has a good faith belief that the material it seeks to have removed was "not authorized by law," that the good faith belief must include consideration of whether the defendant's use constitutes fair use. *Id. Lenz* did not eliminate a Section 512(f) claimant's burden to identify a false or misleading element of a takedown notice that was made knowingly—that is, in subjective bad faith. Second, even looking to the requirement *Lenz* recognized, Defendant has provided no evidence whatsoever that Moonbug failed to consider fair use or any other defenses that would render Defendant's videos "authorized" by law. Nor, again, could it. Rather, Moonbug's diligence, displayed in its letter to YouTube, its takedown notices, and its Complaint, all undercut Defendant's unsupported claim. Likewise, the "timing, number, and breadth" of Moonbug's takedown notices do not "confirm the counterclaim's strength" but instead evidence *Moonbug's* thorough investigation, the strength of *its* claims, and the pervasiveness of Defendant's infringement. *Stern v. Lavender*, 319 F. Supp. 3d 650, 684 (S.D.N.Y. 2018) (entering summary judgment dismissing 512(f) counterclaim because plaintiff's copyright claim "was clearly colorable" and the evidence "uniformly support[ed]" plaintiff's good faith).

Defendant's extended explanation of why its characters do not infringe is another red herring and otherwise without merit. Again, that Defendant thinks it has a non-infringement defense—even though it did not plead one in its answer—is not a question before the Court at this time. Regardless of the strength of Moonbug's infringement claim, the only question of moment on this Motion is whether Moonbug had subjective bad faith in asserting it. *See Rossi*, 391 F.3d at 1004–1005; *Stern*, 319 F. Supp. 3d at 683 ("A copyright holder is not liable for misrepresentation under the DMCA if they subjectively believe the identified material infringes their copyright, even if that belief is ultimately mistaken" (internal citations omitted)). As

described above, Defendant has zero evidence of bad faith. And even if Defendant's non-infringement arguments mattered here, its discussion of those defenses in its Motion is incomplete and misleading. Defendant's Motion tries to downplay its infringement by improperly assessing the many infringing elements of its characters out of context in isolated, piecemeal fashion, and referring to its totally dissimilar Doudou character. As an initial matter, Moonbug's allegations in the Complaint—and underlying its DMCA notices—go beyond those isolated physical features. Rather, Moonbug alleges Defendant's holistic copying of not only individual character appearances but also their conceptual qualities, character traits, and attributes both individually and as a family. *See DC Comics v. Towle*, 802 F.3d 1012, 1020 (9th Cir. 2015). Furthermore, Defendant's Super JoJo character is far more like Moonbug's Baby JJ, including in appearance, traits, attributes, and name, than Defendant's earlier Doudou character. This is evidence of copying. Indeed, despite submitting a lengthy declaration from its corporate representative in support of its motion, Defendant's corporate witness does not state under penalty of perjury that Defendant did not access and copy Moonbug's copyrighted characters. Nor could he, given the substantial similarity between them. The facts Defendant alleges do not clearly favor its claim.

Ultimately, Defendant's failure to show likely success on its section 512(f) claim is unsurprising because such claims are almost never successful. Indeed, in the twenty-three years since section 512(f) was enacted, there have been almost no final decision in favor of a Section 512(f) plaintiff on the merits. Eric Goldman, *How Have Section 512(f) Cases Fared Since 2017? (Spoiler: Not Well)*, TECH. & MKTG. L. BLOG, Apr. 6, 2019, https://blog.ericgoldman.org/archives/2019/04/how-have-section-512f-cases-fared-since-2017-spoiler-not-well.htm (identifying as of 2017 "only two times that a [s]ection 512(f) plaintiff has achieved a final court ruling in its favor," including a default judgment order); ERIC GOLDMAN, INTERNET LAW: CASES & MATERIALS 179 (Jul. 2021 version) (section 512 plaintiffs "rarely have sufficient evidence to state a claim" and "almost never win their claims"). The result is no different here, and Defendant falls far short of the high standard to show that the law and facts *clearly favor* its Section 512 counterclaim.

ii.    Defendant Has Not Shown Irreparable Harm

Defendant has also failed to show irreparable harm.  The only harm Defendant identifies is the result of its inability to continue infringing Moonbug's works.  And the alleged harm in the form of lost revenue, viewership, and reputational harm (Mot. at 16) is not irreparable here.

First, Defendant's purported harm is not irreparable because Defendant has specifically quantified it, showing it can be redressed by damages.  Indeed, "[e]conomic injury alone does not support a finding of irreparable harm because such injury can be remedied by a damage award." *Stardock Sys. v. Reiche*, No. C 17-07025 SBA, 2018 U.S. Dist. LEXIS 222971, at *31 (N.D. Cal. Dec. 27, 2018) (citing *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).  In *Stardock*, the court denied a preliminary injunction seeking to restrain the defendant from submitting a DMCA takedown notice.  *Id.*  Judge Armstrong noted that the plaintiff's "purported injury takes the form of lost revenue and reputational harm."  *Id.* At *30. Defendant asserts similar allegations here, claiming lost revenue ("$400k to $500k per month"), viewers, and reputational harm among its audience.  Mot. at 16.  But this is not irreparable harm, especially in the case of a copyright infringer.  *See id.* (rejecting plaintiff's argument that its "reputation [was] on the line" due to "a peril of its own making"); *Epic Games, Inc. v. Apple Inc.*, 493 F. Supp. 3d 817, 847 (N.D. Cal. 2020) ("While consumers are feeling the impact of this litigation, the fact remains: these are business disputes.").  Defendant has therefore failed to show any irreparable injury that warrants injunctive relief.

Second, Defendant has other YouTube channels and employs other distribution outlets for its videos, meaning the lost channel has not ended or threatened to end its business.  As noted, Defendant recently launched a new channel on YouTube, on which it has uploaded videos. McHale Decl. Ex. 9.  That new channel is gaining subscribers quickly and the videos have numerous viewers.  *See id.* While these channels are harming Moonbug, they cut against any alleged irreparable harm to Defendant.

Third, any harm alleged by Defendant, whether irreparable or not, is due to its own willful infringement, failure to abide by YouTube's repeat infringer policy, and delay in seeking this TRO.  As Judge Gonzales Rogers recently noted, "self-inflicted wounds are not irreparable

injury." *Epic*, 493 F. Supp. at 845 (quoting *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020)). Defendant made its choice to build its Super JoJo business by copying CoComelon, and it must face the consequences. It is telling that Defendant does not genuinely dispute its widespread infringement. For example, it fails to allege that YouTube's issuance of nearly 20 strikes against its account were wrong or not in violation of YouTube policies. *See generally* Mot. Accordingly, it has no grounds to claim that YouTube's takedown of the channel, based in whole or in part upon those strikes, was incorrect or the fault of anyone other than itself. It is Defendant's infringement and failure to timely file counter notifications, and thus its failure to abide by YouTube's policies, that led to the removal of its channel. In other words, Defendant's "current predicament appears of its own making." *Epic*, 493 F. Supp. 3d at 846-848 (rejecting Epic's contention that it suffered irreparable harm from Apple's removal of Fortnite from the App Store, observing that the removal stemmed from Epic's breach of its agreement with Apple); *see also Stardock*, 2018 U.S. Dist. LEXIS 222971, at *31 (denying preliminary injunction sought under Section 512(f) on numerous grounds, including that plaintiff's harm from a potential DMCA takedown was of its own making). Defendant also inexplicably waited a month after its channel was terminated before filing its Motion, which further undercuts its unsubstantiated claim of irreparable harm. *See* McHale Decl. ¶¶ 25–28, 31. While trying to pin its delay on Moonbug's counsel, *see* Dkt. 24 ¶¶ 3–10, Defendant fails to identify anything that prevented it from filing this Motion with the urgency it now demands from this Court. It cannot do so.

> iii.     The Balance of Equities Tips Sharply in Moonbug's Favor

Defendant similarly fails to show that a balance of the equities tips in its favor. The purpose of a temporary restraining order or preliminary injunction is to "preserve the status quo ante litem pending a determination of the action on the merits." *Stardock*, 2018 U.S. Dist. LEXIS 222971, at *27 (internal quotation omitted). "Status quo ante litem" refers to the "last uncontested status that preceded the present litigation," which here refers to the status that existed ***before Defendant posted the infringing material on YouTube***. *See id*. (internal quotation omitted) (denying injunction that would protect infringement); *GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1210 (9th Cir. 2000) ("In this case, the status quo ante litem existed before Disney

began using its allegedly infringing logo."). Courts consider this principle in balancing the equities. *Id.*; *see Stardock Sys.*, 2018 U.S Dist. LEXIS 222971, at *27–*28 (stating that the plaintiff's failure to respond to defendant's argument that the requested preliminary injunction would upset the status quo, not preserve it, was "fatal to its motion for preliminary injunction").

Here, the balance of equities weighs sharply in Moonbug's favor and against Defendant's attempt to upend, not preserve, the status quo before the parties' dispute. Defendant asks the Court to impose a new, drastically different status quo, where Defendant regains full use of its primary infringing YouTube channel and puts back up 171 videos (many of which appear to be infringing and including at least one of the Strike Videos) that YouTube properly removed according to its DMCA policy and procedures. Allowing these circumstances, including preventing Moonbug from submitting any further DMCA takedown notices of Defendant's infringing materials while the litigation is pending, would be "inequitable and would turn the status quo doctrine on its head." *Id.* at *29.

Defendant's unsupported claim that restraining Moonbug in this manner would cause it "no legitimate hardship" is wrong. Moonbug is suffering, and continues to suffer, extensive harm from Defendant's infringement. Compl. ¶ 81. And Defendant's proposed TRO would permit it not only to put back up its proffered 171 videos, but also to re-post even its most egregious videos such as the "The Boo Boo Song," and "Yes Yes Vegetables," while stripping Moonbug of its statutory right to submit a copyright notice to have them taken down. This is an untenable and inequitable result. Defendant cannot continue its business of willfully infringing Moonbug's rights "and then reasonably ask the Court to hamstring" Moonbug "in its efforts to curb the alleged infringement." *See id.* at *30. This is particularly true in view of Moonbug's First Amendment right to submit takedowns to YouTube, discussed further below. *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (when a party has "raised serious First Amendment questions," the balance of hardships "tips sharply" in its favor); *Bobolas v. Does*, No. CV-10-2056-PHX-DGC, 2010 U.S. Dist. LEXIS 110856, at *17 (D. Ariz. Oct. 1, 2010) (considering "certain loss of First Amendment rights if the TRO is issued" in balancing hardships). In short, no equities favor a TRO of any kind, let alone the heavily inequitable one Defendant seeks.

iv.    <u>Injunctive Relief is Against the Public Interest</u>

The proposed TRO is also against the public interest. "[T]he public interest inquiry primarily addresses the impact on non-parties." *Epic Games*, 493 F. Supp. 3d at 851. Defendant suggests that its proposed TRO would serve the public interest in "not depriving consumers of a choice of products." Mot. at 17. This is inadequate and does not outweigh the general public's interest in private parties "resolving business disputes through normal, albeit expedited, proceedings." *See id.* (quoting *Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-05640-YGR, 2020 U.S. Dist. LEXIS 154231, at *12 (N.D. Cal. Aug. 24, 2020)). Further, it is in the public interest to protect intellectual property rights like Moonbug's from willful infringement. *See QBAS Co. v. C Walters Intercoastal Corp.*, No. SACV 10-406 AG (MLGx), 2010 U.S. Dist. LEXIS 143945, at *40 (C.D. Cal. Dec. 16, 2010) ("the public interest in intellectual property protection outweighs any minimal damage caused by precluding access to [d]efendants' product"). And "it is always in the public interest to prevent the violation of a party's constitutional rights," including, here, Moonbug's First Amendment right to submit copyright infringement notices. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) ("Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles").

Nor would the public interest be served by rewarding Defendant's willful infringement by allowing it to continue and grow unfettered while the litigation proceeds. Defendant claims to be a company "that has been educating preschoolers and their parents for more than twelve years." Mot. at 3. Surely it is against the public interest to allow Defendant to teach children that it is alright to circumvent YouTube's rules that it agreed to and continue to willfully infringe Moonbug's rights. And it is in the public's interest to avoid the confusion and frustration of consumers and harm to Moonbug caused by Defendant's infringing videos. McHale Decl. ¶ 10.

## IV.    <u>THE RELIEF SOUGHT IN DEFENDANT'S PROPOSED TEMPORARY RESTRAINING ORDER IS IMPERMISSIBLE</u>

Even if an injunction were available on Defendant's Section 512(f) claim, which it is not, Defendant's proposed TRO should also be denied based on its terms. Its proposed provisions aim

to overturn the Congressionally constructed DMCA procedure, include an unconstitutional prior restraint, call for overbroad and unwarranted mandatory action by Moonbug, and impermissibly overreach in their proposed application to third parties.

First, Defendant's proposed TRO should be denied because it contravenes both the purpose of a temporary restraining order and the structures of the DMCA. As explained above, the purpose of a TRO or preliminary injunction is to "preserve the status quo ante litem"—here, the status that existed before Defendant posted the infringing Super JoJo materials on YouTube. *Stardock Sys.*, 2018 U.S. Dist. LEXIS 222971, at *27. Defendant's proposed TRO, however, has no interest in preserving that status quo. Instead, its terms seek to reinstate the status quo of July 2021, the heyday of Defendant's infringement, before Moonbug filed its first DMCA notice. At the same time, the proposed TRO aims to prevent Moonbug from contesting that infringement in any way until it obtains a final judgment of infringement from this Court. Dkt. 25. That is not a proper purpose of a TRO. And issuance of the TRO would also unfairly and without justification strip Moonbug of all the Congressionally granted rights and protections of DMCA takedown procedures. In developing those procedures, Congress has already balanced the competing interests and equities among copyright owners, accused infringers, and service providers, and altering that balance is a matter for Congress not this Court. *See Stardock*, 2018 U.S. Dist. LEXIS 222971, at *25. The Court should deny Defendant's request to overturn the DMCA procedures designed by Congress and substitute a procedure that is better for its business.

Second, and as mentioned above, Provision 2 of the proposed TRO must be denied because it is an unjustified unconstitutional prior restraint on Moonbug's First Amendment rights of speech. *See Gold Coast Search Partners LLC v. Career Partners, Inc.*, No. 19-cv-03059-EMC, 2019 U.S. Dist. LEXIS 155317, at *13 (N.D. Cal. Sep. 11, 2019) (denying preliminary injunction to restrain alleged defamation). Provision 2 seeks to enjoin Moonbug from "serv[ing] any additional DMCA notifications relating to BabyBus' Super JoJo shows." Dkt. 25 at 1. But Defendant has shown no justification whatsoever for this prior restraint. It has not claimed that Moonbug's notices to YouTube were knowingly false (indeed, it did not even provide those notices to the Court). Nor has it provided justification for the overbreadth of this provision, which

seeks to prevent Moonbug from submitting **_any_** DMCA notifications relating to Super JoJo. This would include notifications that address the many categories of infringement that Defendant's motion ignores. It would even restrain Moonbug from using DMCA takedown notices to address Defendant's posting of infringing materials on platforms other than YouTube. Indeed, Defendant's proposed prior restraint is so overbroad it would prevent submission of a DMCA takedown even if Defendant super-imposed its Super JoJo logo on a CoComelon video and uploaded it to a Super JoJo channel as its own. This kind of prior restraint is impermissible because it suppresses communications without adequate procedural safeguards and without actual determination whether they are protected by the First Amendment. See *Spolar v. Discovery Communs., LLC*, No. 2:20-cv-08837-SVW-MAA, 2020 U.S. Dist. LEXIS 247006, at \*19–\*20 (C.D. Cal. Oct. 2, 2020) (denying preliminary injunction). Defendant's preemptive attempt to strip Moonbug of the exercise of its First Amendment and DMCA rights must be denied.

Third, proposed TRO Provisions 1 and 3 must be denied because they seek to require affirmative action by Moonbug without justification. Mandatory injunctive provisions like these are generally not granted when the entitlement to relief is "doubtful" or where the alleged injury is "capable of compensation in damages." *See Consumer Op. LLC v. Frankfort News Corp*, No. 16-cv-05100-BLF, 2016 U.S. Dist. LEXIS 159735, at \*6 (N.D. Cal. Nov. 17, 2016). As described in previous sections, both of these factors weigh against issuance of the TRO: Defendant has not established that the law and facts "clearly favor" its position, nor has it shown any irreparable harm is not compensable by damages. *Garcia*, 786 F.3d at 740 (denying mandatory injunction).

In addition, Provisions 1 and 3 are both impermissibly overbroad because they seek relief of greater scope than warranted by Defendant's Section 512(f) claim (even if that section authorized injunctive relief, which it does not). *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009) ("Injunctive relief . . . must be tailored to remedy the specific harm alleged"). Indeed, Defendant's failure to provide the Court with any of Moonbug's communications to YouTube, or identify any material misrepresentations in them, suggests there has been no Section 512(f) violation and no remedy is needed. And yet, Defendant's TRO Provision 1 seeks to force Moonbug to withdraw "all" of the DMCA notifications it submitted to YouTube regarding Super

JoJo. Dkt. 25. This includes notices based in whole or in part on the same infringement allegations discussed in Moonbug's letters to YouTube that Defendant pointedly ignores in its motion, or, for example, because YouTube has not yet acted upon them or Defendant has failed to submit timely counter notifications for them.

Proposed Provision 3 similarly overreaches, seeking to order Moonbug to provide "all information YouTube seeks from it so that YouTube will reinstate the suspended Super JoJo channel with the videos lodged as Exhibits 1–171," without establishing that this relief is warranted by a 512(f) claim. It is not. Asking Moonbug to provide "information . . . so YouTube will reinstate" Defendant's channel goes further than requiring Moonbug to correct an (albeit hypothetical and unidentified) misrepresentation. *See* Dkt. 25. And further, it improperly puts the onus on Moonbug to make YouTube act in a certain way after receiving that information, despite there being no evidence here that Moonbug can control YouTube's application of its policies and procedures, or that Moonbug's provision of truthful information regarding Defendant's infringement would induce YouTube to restore the channel.[4] *See, e.g., Stardock,* 2018 U.S. Dist. LEXIS 222971, at *25-26 (rejecting similar arguments, in part because service providers like YouTube benefit financially from keeping content up, so can be assumed to make careful decisions about takedowns). Defendant's request that the TRO force Moonbug to convince YouTube to upload 171 videos to Super JoJo's channel overreaches as well. These videos were taken down by YouTube under its polices, which Defendant agreed to and violated.

///

///

///

---

[4] For this same reason, the TRO that expands to persons "(including but not limited to YouTube)" is overbroad and impermissible. Under Rule 65(d)(2)(C), an injunction may bind "persons who are in active concert or participation" with an enjoined person, but this language only extends to persons who are privies, or aiders and abettors of an enjoined party. *See Netlist Inc. v. Diablo Techs., Inc.,* No. 13-cv-05962-YGR, 2015 U.S. Dist. LEXIS 3285, at *34 (N.D. Cal. Jan. 12, 2015). Defendant has provided no evidence that YouTube is a privy or aider or abettor of Moonbug, nor any authority for its assumption that an injunction can bind an unrelated third party who exercises independent judgment and acts independently in all relevant respects.

Dated: October 4, 2021

Respectfully submitted,

_/s/ Ryan Tyz_
Ryan Tyz

Attorneys for Plaintiffs
Moonbug Entertainment Limited and
Treasure Studio, Inc.