1    JENNIFER KELLY (CSB No. 193416)
     jennifer@tyzlaw.com
2    RYAN TYZ (CSB No. 234895)
     ryan@tyzlaw.com
3    ERIN JONES (CSB No. 252947)
     ejones@tyzlaw.com
4    CIARA MCHALE (CSB No. 293308)
     ciara@tyzlaw.com
5    TYZ LAW GROUP PC
     4 Embarcadero Center, 14th Floor
6    San Francisco, CA 94111
     Telephone: 415.868.6900

7

8    Attorneys for Plaintiffs
     Moonbug Entertainment Limited and
     Treasure Studio, Inc.

9

10

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MOONBUG ENTERTAINMENT LIMITED and TREASURE STUDIO, INC., | Case No: 3:21-cv-06536-EMC |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS AND TO STRIKE COUNTERCLAIMS UNDER CALIFORNIA ANTI-SLAPP LAW** |
| v. | |
| BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD, | Date:       December 2, 2021 |
| Defendant. | Time:       1:30 pm |
| BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD, | Judge:      Hon. Edward M. Chen |
| | Courtroom:  5, 17th Floor |
| Counter-Plaintiff, | Complaint Filed:     August 24, 2021 |
| v. | Counterclaims Filed:  September 28, 2021 |
| MOONBUG ENTERTAINMENT LIMITED and TREASURE STUDIO, INC., | |
| Counter-Defendants. | |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................... 2

II.   RELEVANT FACTS ................................................................. 3

III.  THE COURT CAN CONSIDER MATERIALS REFERENCED IN THE
COUNTERCLAIMS OR SUBJECT TO JUDICIAL NOTICE ...................... 6

IV.  ARGUMENT ........................................................................ 8

      A.    Defendant's § 512(f) Counterclaim Should Be Dismissed under Rule
12(b)(6) ..................................................................... 8

           i.     Defendant Does Not Plausibly Allege a Misrepresentation .................. 9

           ii.    Defendant Does Not Plausibly Allege Bad Faith ................................ 11

      B.    Defendant's State Law Counterclaims Should Be Stricken or Dismissed ........ 14

           i.     Defendant's State Law Counterclaims Violate California's
Anti-SLAPP Statute ................................................................ 14

                  1.    The State Law Counterclaims Arise from Moonbug's Act
in Furtherance of Its Right of Petition and Free Speech ............. 15

                  2.    Defendant Cannot Prevail on the State Law Counterclaims ....... 17

           ii.    Alternatively, Defendant's State Law Claims Should Be Dismissed
for Failing to State a Claim under Rule 12(b)(6) .................................. 20

      C.    Defendant's Prayer for Injunctive Relief Should Be Stricken ........................... 20

      D.    Defendant's Counterclaims Should Be Dismissed or Stricken with
Prejudice ................................................................... 21

V.    CONCLUSION.................................................................. 22

**TABLE OF AUTHORITIES**

**CASES**

*All World Prof'l Travel Servs. v. Am. Airlines, Inc.*,
   282 F. Supp. 2d 1161 (C.D. Cal. 2003) ........................................................ 21

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
   No. 10-cv-05696-CRB,
   2011 U.S. Dist. LEXIS 73853 (N.D. Cal. July 8, 2011) ........................................... 17, 20

*Ascon Prop., Inc. v. Mobil Oil Co.*,
   866 F.2d 1149 (9th Cir. 1989) ............................................................... 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................... 8, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................... 8, 9

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
   No. 19-cv-06361-RS,
   2020 U.S. Dist. LEXIS 141724 (N.D. Cal. Aug. 7, 2020) ............................................. 8

*City Sols. v. Clear Channel Communs., Inc.*,
   365 F.3d 835 (9th Cir. 2004) ............................................................... 19

*Complex Media, Inc. v. X17, Inc.*,
   No. 18-cv-07588-SJO-AGR,
   2019 U.S. Dist. LEXIS 128129 (C.D. Cal. Mar. 4, 2019) ................................. 16, 18, 20

*Comstock v. Aber*,
   212 Cal. App. 4th 931 (2012) .............................................................. 15

*Coupons, Inc. v. Stottlemire*,
   No. 07-cv-03457-HRL,
   2008 U.S. Dist. LEXIS 109367 (N.D. Cal. July 2, 2008) .......................................... 19

*Cove United States LLC v. No Bad Days Enters.*,
   No. 8:20-cv-02314-JLS-KES,
   2021 U.S. Dist. LEXIS 154443 (C.D. Cal. July 2, 2021) ................................ 15, 19, 22

*Digerati Holdings, LLC v. Young Money Entm't, LLC*,
   194 Cal. App. 4th 873 (2011) .............................................................. 15

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) .............................................................. 11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ....................................................................... 10

*Fitbit, Inc. v. Laguna 2, LLC*,
    No. 17-cv-00079-EMC,
    2018 U.S. Dist. LEXIS 2402 (N.D. Cal. Jan. 5, 2018) ....................................... 15, 18, 19

*Ghalehtak v. Fay Servicing, LLC*,
    No. 17-cv-05976-EMC,
    2017 U.S. Dist. LEXIS 177068 (N.D. Cal. Oct. 25, 2017)............................................ 21

*Hines v. Cal. PUC*,
    No. 10-cv-02813-EMC,
    2011 U.S. Dist. LEXIS 39895 (N.D. Cal. Apr. 5, 2011) ............................................... 10

*Howard v. Blue Ridge Bank*,
    371 F. Supp. 2d 1139 (N.D. Cal. 2005) ...................................................................... 21

*Howe v. Cty. of Mendocino*,
    No. 21-cv-00935-RMI,
    2021 U.S. Dist. LEXIS 169525 (N.D. Cal. Sep. 7, 2021) ................................................ 8

*Ji Yun Chung v. NBGI, Inc.*,
    No. 09-cv-04878-MHP,
    2010 U.S. Dist. LEXIS 21708 (N.D. Cal. Mar. 10, 2010)............................................ 21

*Kashian v. Harriman*,
    98 Cal. App. 4th 892 (2002) ...................................................................................... 18

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ...................................................................................... 6, 7

*Laffer v. Levinson, Miller, Jacobs & Phillips*,
    34 Cal. App. 4th 117 (1995) ...................................................................................... 19

*Lenz v. Universal Music Corp.*,
    815 F.3d 1145 (9th Cir. 2016) ............................................................................... 12, 13

*Lenz v. Universal Music Corp.*,
    No. 07-cv-03783-JSW,
    2008 U.S. Dist. LEXIS 44549 (N.D. Cal. Apr. 8, 2008) ............................................. 17

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
    922 F.3d 946 (9th Cir. 2019) ...................................................................................... 10

*Mun v. Univ. of Alaska*,
    No. A03-244 CV JWS,
    2005 U.S. Dist. LEXIS 14126 (D. Alaska Apr. 4, 2005)............................................. 21

*Neville v. Chudacoff*,
    160 Cal. App. 4th 1255 (2008) ............................................................................ 15, 18

*Ningbo Mizhihe I&E Co. v. Does*,
    No. 19-cv-06655-AKH,
    2020 U.S. Dist. LEXIS 76724 (S.D.N.Y. Apr. 30, 2020)......................................... 9, 11

*Online Policy Grp. v. Diebold, Inc.*,
    337 F. Supp. 2d 1195 (N.D. Cal. 2004) ...................................................................... 17

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
    890 F.3d 828 (9th Cir. 2018) ...................................................................... 14, 17

*Rivero v. Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO,*
    105 Cal. App. 4th 913 (2003) .............................................................................. 16

*Rossi v. Motion Picture Assn. of Am., Inc.,*
    391 F.3d 1000 (9th Cir. 2004) ...................................................................*passim*

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ............................................................................ 9, 10

*Stardock Sys. v. Reiche,*
    No. 17-cv-07025-SBA,
    2019 U.S. Dist. LEXIS 229910 (N.D. Cal. May 14, 2019) ...................... 17, 21

*Sybersound Records, Inc. v. UAV Corp.,*
    517 F.3d 1137 (9th Cir. 2008) .............................................................................. 20

*TP Link United States Corp. v. Careful Shopper LLC,*
    No. 8:19-cv-00082-JLS-KES,
    2020 U.S. Dist. LEXIS 104065 (C.D. Cal. Mar. 23, 2020) ............................ 16

*Varnado v. Midland Funding LLC,*
    43 F. Supp. 3d 985 (N.D. Cal. 2014) ................................................................ 21

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) .............................................................................. 14

*Viacom Int'l, Inc. v. YouTube, Inc.,*
    676 F.3d 19 (2d Cir. 2012) .................................................................................. 14

*Western Mining Council v. Watt,*
    643 F.2d 618 (9th Cir. 1981) ................................................................................ 8

*Wilbanks v. Wolk,*
    121 Cal. App. 4th 883 (2004) .............................................................................. 16

**STATUTES**

17 U.S.C. § 502(a) ......................................................................................................... 21

17 U.S.C. § 512(f) .................................................................................................. 8, 11, 20

17 U.S.C. § 512(g) ........................................................................................................ 16

17 U.S.C. § 512(j) ......................................................................................................... 21

17 U.S.C. § 1203 ........................................................................................................... 21

Cal. Civ. Code § 47(b) .................................................................................................. 18

Cal. Code Civ. Proc. § 425.16(b) .................................................................................. 14

Cal. Code Civ. Proc. § 425.16(c)(1) .............................................................................. 20

Cal. Code Civ. Proc. § 425.16(e) .............................................................................. 15

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 8, 20

**OTHER AUTHORITIES**

Eric Goldman, *How Have Section 512(f) Cases Fared Since 2017? (Spoiler: Not Well)*,
    TECH. & MKTG. L. BLOG, Apr. 6, 2019 ......................................................... 13

ERIC GOLDMAN, INTERNET LAW: CASES & MATERIALS 179 (Jul. 2021 version) ...................... 13

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 2, 2021, at 1:30 pm or as soon thereafter as counsel may be heard in the courtroom of the Honorable Edward M. Chen, Courtroom 5 on the 17th floor of the San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Moonbug Entertainment Ltd. and Treasure Studio, Inc. will and hereby do move to dismiss the counterclaims under Federal Rule of Civil Procedure 12(b)(6) because they fail to state a claim upon which relief can be granted. Additionally, Plaintiffs move to strike Defendant's second and third counterclaims under Section 425.16 of the California Code of Civil Procedure because they arise from acts in furtherance of Plaintiffs' rights of petition or speech and there is no probability that Defendant can prevail on the challenged counterclaims.

This Motion rests on the Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Ciara McHale and Exhibits thereto, previously filed documents in this action, the Court's files, the arguments of counsel, and any other matter that the Court may properly consider.

# ISSUES TO BE DECIDED

1.     Whether the Court should dismiss Defendant's § 512(f) counterclaim for failure to state a claim because there are no plausible allegations of any material misrepresentations or subjective bad faith by Plaintiffs;

2.     Whether the Court should strike Defendant's remaining two state law claims under California's anti-SLAPP statute or dismiss them for failure to state a claim because Moonbug's correspondence with YouTube is protected speech and Defendant's state law counterclaims are pre-empted by the Copyright Act and are barred by the California litigation privilege and the Noerr-Pennington Doctrine; and

3.     Whether the Court should strike Defendant's request for injunctive relief because § 512(f) of the Copyright Act does not permit injunctive relief.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Despite copying virtually every aspect of Plaintiff Moonbug's CoComelon franchise, Defendant denies Moonbug's copyright infringement claims as detailed at length in Moonbug's Complaint and DMCA notices and letters to YouTube. This self-serving denial does not give Defendant a basis to bring a counterclaim under § 512(f) of the Copyright Act. Indeed, § 512(f), which is designed to deter knowingly false takedown notices, provides for liability only in the rare instance when a copyright owner succeeds in getting a work taken down by submitting a DMCA notice that contains a material misrepresentation that was made in *subjective* bad faith. Defendant does not plausibly identify any material misrepresentation in any of Moonbug's DMCA notices, much less allege any facts to support a conclusion that Moonbug acted in subjective bad faith. Nor can it, given the detailed infringement analysis in Moonbug's complaint and correspondence to YouTube. In fact, Defendant's own attempt to characterize Moonbug's assertion of infringement as "objectively unreasonable" (Counterclaims, ¶ 34) is fatal to its § 512(f) claim. As the Ninth Circuit has made clear, even objectively unreasonable copyright claims do not establish bad faith or justify a § 512(f) claim. *Rossi v. Motion Picture Assn. of Am., Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004).

In essence, Defendant seeks to weaponize *its* subjective view of infringement and hold Moonbug liable for policing its copyrights and asserting copyright infringement in the first place. But Defendant's misguided theory of liability would open the floodgates to § 512(f) claims, allowing any recipient of a DMCA notice who denies infringement to file a § 512(f) counterclaim. Allowing such baseless § 512(f) claims would also lead to similar claims by copyright holders based on any counter-notice denying infringement. Such a result would subvert the purpose and process of the DMCA and is not the law.

Defendant's state law counterclaims fare no better. Those counterclaims—which by Defendant's own admission "arise under" the Copyright Act (Counterclaims, ¶ 7)—hinge on Moonbug's Complaint and DMCA notices, including multiple letters sent to YouTube. But these counterclaims seek to punish Moonbug's protected speech and are prohibited by California's

anti-SLAPP statute. And Defendant has no hope of prevailing on them in any event because they are preempted by the Copyright Act, barred by the litigation privilege and Noerr-Pennington Doctrine, and they otherwise fail to state a claim. Because Defendant cannot cure these defects by amendment, its counterclaims are subject to dismissal with prejudice.

## II.  **RELEVANT FACTS**

Plaintiffs Moonbug Entertainment Ltd. and Treasure Studio, Inc. (together, "Moonbug") own extensive intellectual property rights in the CoComelon universe. Dkt. No. 1 ("Compl.") ¶¶ 15, 20.[1] Moonbug's rights include registered copyrights in the CoComelon characters: baby JJ and his mom, dad, brother, and sister. *Id.* ¶ 20(a). Moonbug also owns copyrights in hundreds of original CoComelon videos, songs, and images on YouTube and elsewhere, all featuring the well-known and recognizable CoComelon family of characters. *Id.* ¶¶ 15, 20. Many of these copyrights are also registered. *Id.* ¶ 20.

Defendant offers several copycat YouTube channels under its "Super JoJo" brand. *See* Dkt. No 20 ("Countercl.") ¶ 16. These channels have featured frame-by-frame copies of CoComelon videos, and videos that copy CoComelon's "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *See* Compl. ¶ 52. Moonbug, through its outside counsel in this case, submitted Digital Millennium Copyright Act (DMCA) notices to YouTube through its webform identifying Defendant's infringing videos and requesting that YouTube take them down. Countercl. ¶ 18; Compl. ¶ 4. Those notices identified a representative list of infringed Moonbug works.[2] *See, e.g.,* McHale Decl. ¶ 2 and Exs. 1–9. Moonbug's outside counsel sent a letter to YouTube along with these DMCA notices. Countercl. ¶ 34; Compl. ¶ 59; McHale Decl. ¶ 13; Dkt. No. 28-17 (letter). That 17-page letter details Moonbug's pervasive, willful infringement of the CoComelon Works and includes 80 pages of exhibits. *See* Compl.

---

[1] The Court can consider Moonbug's Complaint, its DMCA notices and letters to YouTube, and YouTube's procedures on this motion because they are referenced or incorporated by reference in the Counterclaims, or judicially noticeable. *See* Section III, *infra.*

[2] YouTube's process for submitting a DMCA notice for a video permits a copyright owner who believes that "more than one of [their] copyrighted works have been infringed" to submit "a representative list of such works to be included in [the] request." McHale Decl., Ex. 14.

¶¶ 59–60; Dkt. No. 28-17. It detailed Defendant's frame-by-frame copying of multiple CoComelon videos, including "The Boo Song," "Yes Yes Vegetables Song," and "The Colors Song (with Popsicles)." Dkt. No. 28-17 at 10, 12–17. It also described and showed other aspects of Defendant's infringement, starting with its infringement of Moonbug's CoComelon characters. *Id.* at 4–7. Screenshots in the letter and its attachments show how Defendant copied the CoComelon family of characters, both physically and conceptually, and beyond that, also in their selection, setting, arrangement, and their precise movements, actions, and reactions in videos and thumbnail images that copied CoComelon's videos frame-by-frame.



| CoComelon Family Characters | Infringing Super JoJo Family Characters |
|---|---|
|  |  |

*Id.* at 8–9, 67. Indeed, the letter points out that in one "thumbnail" image (teaser images used to advertise the content of a particular video), Defendant mimicked the CoComelon characters' rainbow popsicles even though the infringing Super JoJo video is about dishes of ice cream. *Id.* at 10. Moonbug sent a copy of this letter and exhibits to Defendant. Compl. ¶ 59.

Within hours of receiving a copy of the letter, Defendant began to disable public access to over 100 of the infringing videos listed in the letter, presumably to prevent YouTube from removing the videos and penalizing Defendant. *See* Compl. ¶¶ 60, 62. This included making private the twenty-two videos that were the subject of Moonbug's first DMCA notices, rather than submitting counter-notifications for them. *Id.* Over the next several days, Defendant continued to remove, mark private, or edit videos it obviously understood were infringing, to continue to evade YouTube strikes. *Id.* ¶¶ 62, 65–66. In some cases, however, Defendant reinstated these infringing Super JoJo videos or replaced them with different infringing works. *Id.* ¶ 65–66. On July 21, 2021, Moonbug sent another letter providing YouTube notice of Defendant's efforts to evade YouTube's copyright policies and procedures. *Id.* ¶ 64; McHale Decl. Ex. 10.

YouTube later began processing and acting on Moonbug's notices, including by taking down videos that were the subject of Moonbug's DMCA notices. By the time YouTube took down Defendant's English-language Super JoJo channel, YouTube had removed nine videos in response to Moonbug's DMCA notices. Countercl. ¶ 18; Compl. ¶ 4. Emails with the initial information submitted for those nine DMCA notices are attached to the McHale Declaration as

Exhibits 1–9.  McHale Decl. ¶¶ 2–11.  Seven of the nine notices reference Copyright Reg. Nos. vAu001379978 (for 2-D artwork titled "JJ") and vAu001322038 (for 2-D artwork titled "Unpublished Family Characters") as representative infringed works—McHale Decl. Exs. 3–9—and two of the nine notices referenced specific CoComelon videos as representative infringed works—McHale Decl. Exs. 1–2.

After submitting the DMCA notices, Moonbug filed this lawsuit against Defendant. Moonbug provided YouTube with notice of the lawsuit and more letters in accordance with the DMCA, while also providing YouTube a copy of the filed Complaint.  *See* McHale Decl. ¶¶ 15–17 and Exs. 11–13.  Because Defendant failed to provide counternotices to many of Moonbug's DMCA notices, YouTube disabled one of Defendant's video channels.  *See* Dkt. No. 28 ¶¶ 27–28.

To get that channel restored, Defendant filed its answer and counterclaims—long before they were due—coupled with a motion for a temporary restraining order, alleging that Moonbug knowingly made misrepresentations of infringement in its DMCA notices.  *See* Countercl. ¶ 3; Dkt. No. 22 (application for TRO).  Those counterclaims state that they "arise under the copyright laws of the United States."  Countercl. ¶ 7.  They include three causes of action:  one under § 512(f) and two under California law for statutory and common law unfair competition ("State Law Counterclaims").  As detailed below, these counterclaims are conclusory and fail to state a plausible claim.  The State Law Counterclaims, on top of being preempted, also violate California anti-SLAPP laws and should be stricken.

## III.  THE COURT CAN CONSIDER MATERIALS REFERENCED IN THE COUNTERCLAIMS OR SUBJECT TO JUDICIAL NOTICE

On a motion to dismiss, the Court may consider materials that Plaintiff referenced or incorporated by reference in the Counterclaims and materials that are judicially noticeable.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  Thus, on this motion, the Court may consider the Complaint, Moonbug DMCA notices that led to one of Defendant's YouTube videos being taken down, Moonbug's letters to YouTube, and YouTube's process for submitting a DMCA notice.

First, the Court may consider Moonbug's Complaint, DMCA notices, and the letters Moonbug sent to YouTube because Defendant's Counterclaims refer to them extensively and they form the basis of Defendant's counterclaims. *See Khoja*, 899 F.3d at 1002, 1004–05 (finding documents "incorporated by reference" under these conditions); McHale Decl. Exs. 1–13; Dkt. No. 28-17. Defendant directly quotes and cites Moonbug's Complaint in its summary of the action, alleging that Moonbug's DMCA notices are meritless "[a]s reflected by Moonbug's Complaint." Countercl. ¶ 2. Defendant also supports its § 512(f) counterclaim by alleging that "[a]s Moonbug's Complaint makes clear, Moonbug seeks to claim copyright ownership of common, physical features among babies . . . and staples of the genre . . . ." *Id.* ¶ 25. Likewise, the Court may consider the DMCA notices (McHale Decl. Exs. 1–9) because Defendant's § 512(f) claims are based on them. The Counterclaims mention "takedown notices" and "copyright infringement notices" sent by Moonbug to YouTube that led YouTube to take down nine of Defendant's videos and its channel. Defendant's counterclaims rely on allegations that these notices contained misrepresentations. *See* Countercl. ¶¶ 18, 23–26, 28. Similarly, the Court may consider the letters Moonbug sent to YouTube (McHale Decl. Exs. 10–13; Dkt. No. 28-17) with its DMCA notices. Countercl. ¶ 34. The Counterclaims specifically allege liability based on Moonbug's "concerted campaign of letters to YouTube." Countercl. ¶ 34. The letters were sent with Moonbug's DMCA notices to YouTube and Defendant does not challenge their authenticity. For example, the subject of the initial letter is "Re: DMCA Notice and Takedown Request re Super JoJo YouTube Channels" and it contained a request that YouTube take down the infringing videos "pursuant to Section 512 of the DMCA." *See* Dkt. No. 28-17 at 3, 19.

Second, the Court may consider YouTube's written DMCA submission process on this motion. *See* McHale Decl. Ex. 14. Defendant refers to this process in the Counterclaims where it describes "YouTube's processing of these DMCA notices." *See* Countercl. ¶ 19. Acts of Moonbug and YouTube's responses, both of which followed this process, form the basis of Defendant's counterclaims and claims for damages. *See, e.g.*, Countercl. ¶ 1–2, 18–19, 23, 26, 28, 30, 24. As a result, YouTube's DMCA notice submission process is incorporated by reference in the Counterclaims. Further, this written process is publicly available from YouTube's website,

so the Court may take notice of the public statements made in it. *See Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-cv-06361-RS, 2020 U.S. Dist. LEXIS 141724, at *8 (N.D. Cal. Aug. 7, 2020) (judicially noticing news articles and publications to show that information was publicly available).

## IV.  ARGUMENT

### A.  Defendant's § 512(f) Counterclaim Should Be Dismissed under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), counterclaims must be dismissed when Defendant cannot articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires Defendant to allege facts that show "more than a sheer possibility that [the other party] has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "[C]ourts are not required to presume the truth of unreasonable inferences or conclusory legal statements that might be cast in the form of factual allegations." *Howe v. Cty. of Mendocino*, No. 21-cv-00935-RMI, 2021 U.S. Dist. LEXIS 169525, at *38 (N.D. Cal. Sep. 7, 2021) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Further, courts may disregard allegations that are contradicted by exhibits attached to the complaint or facts which may be judicially noticed. *Id.* at *38.

Defendant's § 512(f) counterclaim should be dismissed because it does not and cannot meet the high bar for stating a plausible § 512(f) claim. Under § 512(f), a copyright owner is liable only if it "knowingly materially misrepresents . . . that material or activity is infringing . . . ." 17 U.S.C. § 512(f). Section 512(f) further requires an infringer to establish that the copyright owner issued its takedown notice *in subjective bad faith*. *Rossi*, 391 F.3d at 1004. Under this standard, even an objectively unreasonable mistake in the copyright owner's infringement claim cannot support a § 512(f) claim: "[a] copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistakes." *Id.* at 1004–05. This means that to state a § 512(f) claim, Defendant must allege (1) a material misrepresentation in a takedown notice that led to a takedown, and (2) that

the takedown notice was submitted in subjective bad faith. *See Ningbo Mizhihe I&E Co. v. Does*, No. 19-cv-06655-AKH, 2020 U.S. Dist. LEXIS 76724, at *5–6 (S.D.N.Y. Apr. 30, 2020). Defendant has not plausibly alleged either.

### i. Defendant Does Not Plausibly Allege a Misrepresentation

Defendant does not allege facts plausibly showing that Moonbug's notices contain any material misrepresentations.

First, the counterclaims do not attach or even describe any of the takedown notices, much less identify a false or misleading statement in even one of them. Rather, the counterclaims merely state generally that Moonbug's DMCA notices "contained inaccurate information" and "the misrepresentation that BabyBus had infringed Moonbug copyrights." Countercl. ¶ 23. As a result, the Counterclaims lack "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In fact, Defendant's sole attempt to address the content of the notices is an allegation that two of them claimed infringement of two Moonbug copyrights on 2-D artworks: Copyright Reg. No. VAu001379978 (for 2-D artwork titled "JJ") and Reg. No. VAu001322038 (for 2-D artwork titled "Unpublished Family Characters"). Countercl. ¶¶ 18, 25. But even this allegation is misleading, given that other Moonbug notices identified other representative works, including videos. *See, e.g.*, McHale Decl. Exs. 1–2. Because Defendant's counterclaim rests on lumping unspecified Moonbug notices together, describing some vaguely, and crying falsity as to all of them without reference or support to any particular statement, it is not plausible and should be dismissed.

Second, Defendant alleges that Moonbug's notices were "based solely on claimed infringement of" two 2-D artworks (Copyright Reg. No. VAu001379978 and Reg. No. VAu001322038) because some of the DMCA notices listed only those two registrations in YouTube's webform. Countercl. ¶¶ 18, 25; McHale Decl. Exs. 3–9. But this, too, is an unreasonable inference that the Court may disregard because it is belied by the documents incorporated into the counterclaims by reference. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) *opinion amended on other grounds on denial of reh'g*, 275 F.3d

1187 (9th Cir. 2001) (The court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."). As these documents show, the letter Moonbug's outside counsel sent to YouTube spells out Moonbug's allegations that Defendant also copied CoComelon "characters, settings, song titles, lyrics, videos and images." Dkt. No. 28-17 at 3. That letter also provides extensive analysis and examples of that copying, including 80 pages of exhibits. *See* Dkt. No. 28-17. Moonbug's allegations in the Complaint show that Moonbug alleges that Defendant copied both "physical and conceptual" elements from characters and reference *dozens* of registered CoComelon Works featuring characters copied by Defendant. *See* Compl. ¶¶ 20–29. And YouTube's process for submitting a DMCA notice allows a complainant who believes more than one copyrighted work is infringed to submit "a representative list of such works." McHale Decl. Ex. 14. Thus, Defendant's allegation that Moonbug's notices were based "solely" on claimed infringement of two registrations for 2D art is an unreasonable inference that should be disregarded. *See Sprewell*, 266 F.3d at 988.

Third, and most significantly, even if some of Moonbug's DMCA notices depended solely on its registrations for certain 2D artworks, this would not be a misrepresentation, much less a material one. Defendant implies that by asserting these copyrights, Moonbug improperly claimed copyright ownership over common physical features among babies and staples of the genre. Countercl. ¶ 25. But this allegation is yet another unreasonable interference that the Court need not accept as true. *See Hines v. Cal. PUC*, No. 10-cv-02813-EMC, 2011 U.S. Dist. LEXIS 39895, at *7 (N.D. Cal. Apr. 5, 2011). Even where individual similarities might be unprotectable, such as generic elements or *scenes a faire*, the Ninth Circuit has explained that "[a] combination of unprotectable elements" can support an infringement claim "'if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'" *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019) (quoting *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003)); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991) ("[E]ven a directory that contains absolutely no protectible written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement."). The DMCA notices,

letters, and Moonbug's Complaint show that Moonbug's infringement claims rest not just on individual common physical features among babies and staples of the genre, but a combination of similarities and patterns that cross the line into infringement. As the figures in the Complaint and letters incorporated into Defendant's counterclaims show, the totality of similarities go well beyond the necessities of expressing the underlying ideas or genre conventions and betray any claim of accident. *See* Dkt. No. 1 ¶¶ 21–58; Dkt. No. 28-17, McHale Decl. Exs. 10–11. Further, as *Rossi* makes clear, that Defendant may disagree that its pervasive misappropriations cross the line into infringement does not make Moonbug's assertion of infringement a material misrepresentation.

### ii. Defendant Does Not Plausibly Allege Bad Faith

Besides not sufficiently alleging a misrepresentation, Defendant also fails to plausibly allege that Moonbug acted in subjective bad faith with actual knowledge that it was making a material misrepresentation. *See* 17 U.S.C. § 512(f); *Rossi*, 391 F.3d at 1004. Instead, Defendant's only allegation of knowledge is a conclusory one which the court can disregard: "Moonbug knew that its copyright infringement notices contained false allegations of infringement." Countercl. ¶ 24. But Defendant does not allege any facts to support this allegation, which is a mere legal conclusion that the court need not accept as true. *See Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (A court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."). At best, Defendant's contention "effectively is one accusing Plaintiff of failing to perform an adequate investigation of the available prior art, which sounds merely in negligence." *See Ningbo Mizhihe I&E Co. v. Does*, 2020 U.S. Dist. LEXIS 76724, at *8 (dismissing § 512(f) claim). Indeed, elsewhere in the counterclaims, Defendant argues that Moonbug's claims are merely "objectively unreasonable," rather than in subjective bad faith or false. *See* Countercl. ¶ 34. Again, as noted above, even if Moonbug's assessment of infringement is wrong, even unreasonably wrong, this would not amount to bad faith under § 512(f). This is because "[a] copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistakes." *See Rossi*, 391 F.3d at 1004–05. To hold otherwise would flood the courts with derivative § 512(f) litigation every time

an alleged infringer disagrees with a DMCA notice or a copyright owner disagrees with an infringer's denial of infringement in a counter-notice.

Further, Defendant's conclusory allegation is not plausible in view of Moonbug's Complaint and letters to YouTube, which show that Moonbug detailed and documented the basis for its takedown requests, including an analysis of infringing characters, a frame-by-frame comparison of infringing videos, and a discussion of other aspects of Defendant's extensive infringement. *See* Compl. ¶¶ 23–31 (analysis of infringing characters), 32–52 (frame-by-frame comparisons), 53–58 (discussion of other infringing aspects); Dkt. No. 28-17 (17-page letter with 80 pages of exhibits detailing basis of takedown requests). Given this mass of infringement evidence, Defendant's blanket denial of infringement is frivolous, even if it disagrees with certain of Moonbug's allegations of copyright infringement, including for example Moonbug's view of the scope of its copyrights and the amount of copying that leads to substantial similarity in the eye of an ordinary observer. Put differently, *Defendant's* subjective view of non-infringement, however misguided, does not plausibly suggest that Moonbug acted with the requisite subjective bad faith. As described above, liability under § 512(f) would not lie even if Moonbug's assessment of infringement were mistaken or even unreasonable. *See Rossi*, 391 F.3d at 1004–05.

*Lenz v. Universal Music Corp.* illustrates the strict requirement for pleading a § 512(f) claim. *Lenz* held that a copyright owner must consider fair use before sending a DMCA notice to form a subjective good faith belief that the material it seeks to have removed was "not authorized by law." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1154 (9th Cir. 2016). But "[i]f, however, a copyright holder forms a subjective good faith belief the allegedly infringing material does not constitute fair use, we are in no position to dispute the copyright holder's belief even if we would have reached the opposite conclusion." *Id.* Unlike *Lenz*, Defendant does not allege that its infringement is a fair use, much less that Moonbug failed to consider fair use. Nor can Defendant seriously argue that Moonbug did not consider non-infringement—the DMCA notices, Complaint, and letters drafted by Moonbug's outside counsel all detail the extent of Defendant's infringement. That Moonbug formed the requisite good faith belief that Defendant

infringed its copyrights is further evidenced by the subsequent filing of its Complaint, signed by outside counsel under Rule 11, which tellingly Defendant has not sought to dismiss. Because the only plausible conclusion is that Moonbug formed the requisite good faith belief, as stated in its DMCA notices, Defendant's § 512(f) counterclaim should be dismissed. *See Lenz,* 815 F.3d at 1154 (courts are "in no position to dispute the copyright holder's belief"); *see also Rossi*, 391 F.3d at 1004–05 (no § 512(f) liability for an "unknowing mistake," even if unreasonable).

Defendant's other conclusory allegation—that Moonbug "deliberately avoided confirming a high probability that their copyright infringement notices contained false allegations"—fares no better. *See* Countercl. ¶ 29. To make such a claim, Defendant would need to allege facts that make it plausible that Moonbug (1) subjectively believed there was a high probability that a fact existed, and (2) took deliberate actions to avoid learning the fact. *See Lenz*, 815 F.3d at 1155. But Defendant alleges no factual support for this claim. As discussed above, Defendant fails to plausibly allege the existence of false allegations in the DMCA notices, much less that Moonbug subjectively believed there was a high probability that it made such false allegations. And nowhere does Defendant allege "deliberate actions" by Moonbug to avoid learning that its allegations were false. Again, this conclusory allegation is not plausible given the extensive infringement analysis in Moonbug's Complaint and letters to YouTube. *See* Compl. ¶¶ 23–58; Dkt. No. 28-17; McHale Exs. 10–11. Defendant's conclusory parroting of the legal standard in *Lenz* should be disregarded.

Defendant's failure to successfully plead a § 512(f) claim is unsurprising given that such claims are almost never successful. Indeed, in the twenty-three years since § 512(f) was enacted, there have been almost no final decisions of liability under § 512(f). *See* Eric Goldman, *How Have Section 512(f) Cases Fared Since 2017? (Spoiler: Not Well)*, TECH. & MKTG. L. BLOG, Apr. 6, 2019, *available at* https://blog.ericgoldman.org/archives/2019/04/how-have-section-512f-cases-fared-since-2017-spoiler-not-well.htm (identifying as of 2017 "only two times that a [s]ection 512(f) plaintiff has achieved a final court ruling in its favor," including a default judgment order); ERIC GOLDMAN, INTERNET LAW: CASES & MATERIALS 179 (Jul. 2021 version) (section 512 plaintiffs "rarely have sufficient evidence to state a claim" and "almost never win

their claims"). The high and subjective standard for a § 512(f) claim reflects the reality that copyright owners face an uphill battle to protect their copyrights on the internet and should not face baseless lawsuits for lawfully policing their copyrighted material online. As of 2010, YouTube added one billion video clips a day "with more than 24 hours of new video uploaded to the site every minute," and this rate is likely much higher today. *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 28 (2d Cir. 2012). Because Defendant has not alleged facts that meet the high standards of § 512(f), its counterclaim should be dismissed, and its effort to stifle Moonbug's ability to enforce its copyrights should end.

**B.    Defendant's State Law Counterclaims Should Be Stricken or Dismissed**

      i.    <u>Defendant's State Law Counterclaims Violate California's Anti-SLAPP Statute</u>

California's anti-SLAPP provision provides that:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. Proc. § 425.16(b). "Motions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). When a motion to strike turns on purely legal arguments that counterclaims do not allege sufficient facts to support stated causes of action, it is reviewed under the standards for a motion to dismiss. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–34 (9th Cir. 2018). An anti-SLAPP motion requires a two-part inquiry. *Vess*, 317 F.3d at 1110. First, as the movant, Moonbug must make an initial *prima facie* showing that the causes of action arise from an act in furtherance of its rights of petition or speech. *See id.* Second, once Moonbug has made this showing, the burden shifts to Defendant to show a probability of prevailing on the challenged claims. *See id.* Here, Defendant's State Law Counterclaims should be stricken because they arise from Moonbug's act in furtherance of its right of petition and free speech, and Defendant cannot prevail on them as a matter of law.

1. *The State Law Counterclaims Arise from Moonbug's Act in Furtherance of Its Right of Petition and Free Speech*

The State Law Counterclaims for unfair competition are subject to a special motion to strike under California's anti-SLAPP law because they arise from Moonbug's rights of petition and free speech. The statute defines an "act in furtherance of a person's right of petition or free speech" as:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,
>
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,
>
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or
>
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e). Because Defendant bases the State Law Counterclaims on Moonbug's "copyright infringement notices to YouTube," its "letters to YouTube," and its Complaint, they are subject to the anti-SLAPP statute under the first, second, and fourth prongs of Section 425.16(e). *See* Countercl. ¶¶ 2, 25, 28–29, 34.

First, the State Law Counterclaims stem from acts in furtherance of Moonbug's right of petition or free speech under Section 425.16(e)(1) and (e)(2) because the communications concern and were made in anticipation of this litigation. *See Digerati Holdings, LLC v. Young Money Entm't, LLC*, 194 Cal. App. 4th 873, 886–87 (2011) (citing *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1268 (2008)); *see also Comstock v. Aber*, 212 Cal. App. 4th 931, 947 (2012) (prelitigation complaints protected under Section 425.16(e)(1) and (e)(2)). Many courts have held that infringement notices like those Moonbug sent to YouTube constitute pre-litigation conduct falling within the anti-SLAPP statute. *Cove United States LLC v. No Bad Days Enters.*, No. 8:20-cv-02314-JLS-KES, 2021 U.S. Dist. LEXIS 154443, at *8 (C.D. Cal. July 2, 2021) (takedown notices to Shopify about allegedly infringing products); *see, e.g.*, *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-cv-00079-EMC, 2018 U.S. Dist. LEXIS 2402, at *9 (N.D. Cal. Jan. 5, 2018) (Chen, J.)

(letter to Groupon based on the sale of allegedly stolen or counterfeit goods); *TP Link United States Corp. v. Careful Shopper LLC*, No. 8:19-cv-00082-JLS-KES, 2020 U.S. Dist. LEXIS 104065, at *18 (C.D. Cal. Mar. 23, 2020) (complaints to Amazon identifying allegedly counterfeit products). Similarly, the DMCA takedown process contemplates incipient litigation by requiring an alleged infringer to submit to the jurisdiction of U.S. courts when submitting a DMCA counter-notification and requiring a copyright owner provide notice that it filed a lawsuit within 10 business days of a counter-notification to keep taken-down materials from being reinstated. *See* 17 U.S.C. § 512(g)(2)(C), (g)(3)(D). For these reasons, Moonbug's infringement letters and DMCA notices to YouTube, which reference and discuss Defendant's infringement and this lawsuit, and even attach a copy of the Complaint, contain statements about and in anticipation of this litigation. *See* McHale Decl. ¶¶ 16–17 and Exs. 1–13; Dkt. No. 28-17. As a result, Moonbug's communications to YouTube constitute protected activity under Section 425.16(e)(1) and (e)(2).

Second, the State Law Counterclaims also fall under Section 425.16(e)(4) because the speech relates to an issue of public interest. *See Complex Media, Inc. v. X17, Inc.*, No. 18-cv-07588-SJO-AGR, 2019 U.S. Dist. LEXIS 128129, at *8 (C.D. Cal. Mar. 4, 2019) (holding that sending a DMCA notice is an exercise of free speech). Courts considering the issue have construed the term "public interest" broadly, holding that it encompasses "even private communications, so long as they concern a public issue." *Id.* (quoting *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 897 (2004)). Speech is also connected to an issue of public interest when it is about "conduct that could directly affect a large number of people beyond the direct participants." *Id.* (quoting *Rivero v. Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO*, 105 Cal. App. 4th 913, 924 (2003)). For example, *Complex Media* held that claims arising from a DMCA notice about a YouTube channel with 2.4 million subscribers were subject to California's anti-SLAPP statute because the notice contained speech about an issue of public interest. *Id.* at *10–12. Likewise, Moonbug's act of sending DMCA notices alleging infringement by Defendant's highly-subscribed YouTube channel was in furtherance of free speech about an issue of public interest. Defendant alleges its channel "exceeded 20,000,000 subscribers," that it has been

"viewed more than 12 billion times," and that "its videos were viewed on an average of 27 million times per day and received about 40,000 new subscribers per day." Countercl. ¶¶ 16, 20. This is far more subscribers and viewers than the YouTube channel in *Complex Media*. And Defendant, it its motion for a TRO, conceded that the public has an interest in its YouTube channel. *See* Dkt. No. 22 at 17:15–24. As a result, the State Law Counterclaims are subject to the anti-SLAPP statute under Section 425.16(e)(4).

Thus, Moonbug has made a *prima facie* showing that the causes of action in the counterclaims arise from acts in furtherance of its rights of petition or speech under Section 425.16(e).

### 2. *Defendant Cannot Prevail on the State Law Counterclaims*

Because the State Law Counterclaims arise from Moonbug's acts in furtherance of its rights to petition and free speech, Defendant has the burden to show a probability of prevailing on the claims to proceed. *See Planned Parenthood Fed'n of Am., Inc.*, 890 F.3d at 833–34. Defendant is unable to meet this burden because the State Law Counterclaims are preempted by the Copyright Act and barred under the litigation privilege and Noerr-Pennington Doctrine.

First, a DMCA infringement notice is a "creature of a federal statutory regime" that preempts any state law claim based on submitting such a notice. *See Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. 10-cv-05696-CRB, 2011 U.S. Dist. LEXIS 73853, at *10–17 (N.D. Cal. July 8, 2011) (dismissing state law cause of action preempted by § 512(f)); *see also Lenz v. Universal Music Corp.*, No. 07-cv-03783-JSW, 2008 U.S. Dist. LEXIS 44549, at *10–13 (N.D. Cal. Apr. 8, 2008) (section 512(f) provides the "sole remedy" for those who object to a notice's contents and effects); *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1205–06 (N.D. Cal. 2004) ("If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law."); *Stardock Sys. v. Reiche*, No. 17-cv-07025-SBA, 2019 U.S. Dist. LEXIS 229910, at *12 (N.D. Cal. May 14, 2019) ("[T]he DMCA preempts state law claims predicated on the submission of false infringement notices."). Here, both of Defendant's State Law Counterclaims are subject to dismissal because they depend on the contents of Moonbug's DMCA communications.

Countercl. ¶¶ 27–35. Defendant cannot argue otherwise.

Indeed, Defendant's allegation that its counterclaims "arise under the copyright laws of the United States" concedes as much. Countercl. ¶ 7. Thus, the State Law Counterclaims are preempted by Defendant's own admission. To be certain, Defendant's second counterclaim under California's statutory Unfair Competition Law hinges on allegations that "Moonbug's 70 copyright infringement notices to YouTube contain inaccurate information." Countercl. ¶ 28. Likewise, Defendant's third counterclaim for common law unfair competition stems from letters Moonbug sent to YouTube with its DMCA notices. Countercl. ¶ 34. *See* Dkt. No. 28-17 at 3, 19 (letter with subject "Re: DMCA Notice and Takedown Request re Super JoJo YouTube Channels" that requested that YouTube take down the infringing videos "pursuant to Section 512 of the DMCA."). Defendant alleges no misconduct other than sending these DMCA communications. Even so, Defendant attempts to use the State Law Counterclaims to impose an objective standard of reasonableness that conflicts with § 512(f) standards and seek injunctive relief unavailable under § 512(f). *Compare* Countercl. ¶ 34 ("objectively unreasonable") and Prayer for Relief ¶ E (requesting injunctive relief under Cal. Bus. & Prof. Code §§ 17200, et seq), *with Rossi*, 391 F.3d at 1004 (subjective bad faith required for § 512(f) claims); Section IV.C, *infra* (no injunctive relief under § 512(f)). The State Law Counterclaims are thus preempted by the DMCA and the Court should strike them under the anti-SLAPP statute. *See Complex Media*, 2019 U.S. Dist. LEXIS 128129, at *12 (granting anti-SLAPP motion for state law claim preempted by § 512(f)).

Second, the State Law Claims are barred by the California litigation privilege and the Noerr-Pennington Doctrine. Under California law, "[a] privileged publication or broadcast is one made . . . [i]n any . . . judicial proceeding." Cal. Civ. Code § 47(b). Prelitigation communications which are "'reasonably relevant' to the '*subject matter*' of the lawsuit (pending or contemplated) [are] considered protected activity." *Fitbit, Inc.*, 2018 U.S. Dist. LEXIS 2402, at *14 (quoting *Neville*, 160 Cal. App. 4th at 1266). The litigation privilege is absolute and bars liability for statements "alleged to be, fraudulent, perjurious, unethical, or even illegal." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 920 (2002). "[T]he scope of the Noerr-Pennington doctrine is

similar to that of the litigation privilege" and precludes liability for pre-litigation conduct related to a lawsuit. *Fitbit, Inc.*, 2018 U.S. Dist. LEXIS 2402, at *28.

The State Law Counterclaims fall under the litigation privilege and Noerr-Pennington Doctrine. As discussed above, the State Law Counterclaims stem from Moonbug's Complaint, DMCA notices, and letters that relate to the substantive issues in this litigation—Defendant's infringement. *See* Countercl. ¶¶ 2, 25, 28–29, 34; Dkt. No. 28-17; McHale Decl. ¶¶ 16–17 and Exs. 1–13. That Moonbug filed this action shortly after the pre-litigation conduct at issue also demonstrates that it sent the DMCA communications in good faith contemplation of litigation. *Cf. Laffer v. Levinson, Miller, Jacobs & Phillips*, 34 Cal. App. 4th 117, 124 (1995) (one factor supporting inference of lack of good faith is subsequent failure to sue). Courts have held that claims aimed at similar infringement notices to third parties are barred by the litigation privilege. *See, e.g.*, *Cove*, 2021 U.S. Dist. LEXIS 154443, at *15 (granting anti-SLAPP motion to strike claim based on takedown notice to third party). The State Law Counterclaims are thus targeting privileged activity and the Court should strike them under the anti-SLAPP statute.

Third, Defendant's counterclaim for common law unfair competition also fails because Defendant cannot meet the elements to state such a claim. "Common law unfair competition has four elements: (1) a substantial investment of 'time, skill or money in developing its property'; (2) appropriation and use of the property by another company at little or no cost; (3) the appropriation and use of the 'property was without the authorization or consent'; and (4) injury by the appropriation and use by the other company." *Coupons, Inc. v. Stottlemire*, No. 07-cv-03457-HRL, 2008 U.S. Dist. LEXIS 109367, at *13 (N.D. Cal. July 2, 2008) (quoting *City Sols. v. Clear Channel Communs., Inc.*, 365 F.3d 835, 842 (9th Cir. 2004)). Defendant cannot meet this test. Defendant alleges that Moonbug misappropriated its "user base," but YouTube users are not the property of Defendant and not subject to a "misappropriation" claim. *See* Countercl. ¶ 34; Dkt. No. 28-11 at 4 ("Using [YouTube's] Service does not give you ownership of or rights to any aspect of the Service, including user names or any other Content posted by others or YouTube."). In addition, a common law unfair competition claim must allege that a defendant "passed off their goods as those of another" or "exploit[ed] trade names or trademarks . . . ."

*Amaretto Ranch Breedables*, 2011 U.S. Dist. LEXIS 73853, at *8 (quoting *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008)).  Defendant has made no such allegations.  Thus, Defendant cannot prevail on its common law unfair competition counterclaim.

Because the State Law Counterclaims arise from acts in furtherance of Moonbug's right of petition and free speech, they are subject to a special motion to strike under California's anti-SLAPP statute.  Defendant cannot meet its burden of showing a probability of success on these counterclaims because they are preempted by the DMCA and because Defendant cannot meet the elements of its common law unfair competition claim.  Thus, Moonbug requests that the Court strike the State Law Counterclaims.  Assuming the Court grants Moonbug's motion to strike, Moonbug is entitled to its attorneys' fees and requests the opportunity to file a motion for its reasonable attorneys' fees in bringing that motion.  *See Complex Media*, 2019 U.S. Dist. LEXIS 128129, at *14 (quoting Cal. Code Civ. Proc. § 425.16(c)(1)).

                ii.      Alternatively, Defendant's State Law Claims Should Be Dismissed for Failing to State a Claim under Rule 12(b)(6)

If the Court does not grant Moonbug's anti-SLAPP motion, Defendant's State Law Counterclaims should still be dismissed for failing to state a claim under Rule 12(b)(6).  As discussed above, these counterclaims are preempted by § 512(f) of the DMCA, barred by the litigation privilege and Noerr-Pennington Doctrine, and Defendant cannot meet the elements of its common law unfair competition claim because it does not own YouTube users or claim that Moonbug passed off Defendant's goods or exploited its trade names or trademarks.  *See* Section IV.B.i.2, *supra*.

**C.     Defendant's Prayer for Injunctive Relief Should Be Stricken**

Even if Defendant's § 512(f) claim survives—which it should not—its request for injunction must not.  Defendant requests that the Court enjoin Moonbug from "misrepresenting that BabyBus had infringed Moonbug copyrights, including pursuant to 17 U.S.C. Section 512(f)."  Countercl., Prayer for Relief ¶ E.  But § 512(f) does not allow for the injunctive relief Defendant seeks.  Section 512(f) provides only for "damages, including costs and attorneys' fees," but does not provide for injunctive relief.  17 U.S.C. § 512(f).  A right to injunctive relief cannot

be inferred in § 512(f) because injunctive relief is unavailable when a legislative act expressly allows for injunctive relief in certain provisions of a statute but omits it from the provision creating the counterclaim in the same statute. *See, e.g., Howard v. Blue Ridge Bank*, 371 F. Supp. 2d 1139, 1145 (N.D. Cal. 2005) (FCRA); *Ji Yun Chung v. NBGI, Inc.*, No. 09-cv-04878-MHP, 2010 U.S. Dist. LEXIS 21708, at *6–7 (N.D. Cal. Mar. 10, 2010) (Truth in Lending Act and Real Estate Settlement Procedures Act); *Mun v. Univ. of Alaska*, No. A03-244 CV JWS, 2005 U.S. Dist. LEXIS 14126, at *5–7 (D. Alaska Apr. 4, 2005) (Title VII); *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 993 (N.D. Cal. 2014) (Fair Debt Collection Practices Act and California's Rosenthal Act); *Ghalehtak v. Fay Servicing, LLC*, No. 17-cv-05976-EMC, 2017 U.S. Dist. LEXIS 177068, at *20 (N.D. Cal. Oct. 25, 2017) (Chen, J.) (California's Homeowner's Bill of Rights); *All World Prof'l Travel Servs. v. Am. Airlines, Inc.*, 282 F. Supp. 2d 1161, 1176 (C.D. Cal. 2003) (RICO Act). The Copyright Act follows this pattern, providing for injunctive relief in many of its provisions, but not for a violation of § 512(f). *See* 17 U.S.C. § 502(a) (allowing injunctions "to prevent or restrain infringement of a copyright"); *Id.* § 512(j) (allowing injections for service provider claims); *Id.* § 1203 (allowing injunctions for claims of violating Section 1201 or 1202). Congress' inclusion of provisions addressing injunctive relief in the DMCA and elsewhere in the Copyright Act shows that the omission of injunctive relief in § 512(f) is intentional. For these reasons, Defendant cannot obtain injunctive relief under its § 512(f) counterclaim.

### D. Defendant's Counterclaims Should Be Dismissed or Stricken with Prejudice

The Court may dismiss a case with prejudice when amendment would be futile. *See Ascon Prop., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment . . . constitutes an exercise in futility[.]"). This is such a case. Defendant's § 512(f) counterclaim depends on its disagreement with Moonbug's theory of copyright infringement. Even if it turns out later that Moonbug's assessment of infringement was mistaken, or even unreasonable, those facts do not support a § 512(f) counterclaim. *See Rossi*, 391 F.3d at 1004–05. Further, the State Law Counterclaims are preempted by the DMCA and "preemption is incurable." *See Stardock Sys.*, 2019 U.S. Dist. LEXIS 229910, at *15. The State Law

Counterclaims are also barred by the litigation privilege, which generally cannot be cured by amendment. *See Cove*, 2021 U.S. Dist. LEXIS 154443, at \*16 (dismissing claims barred by litigation privilege with prejudice).  Moonbug requests that the Court strike or dismiss these counterclaims with prejudice.

## V.  <u>CONCLUSION</u>

For these reasons, the Court should grant Moonbug's Motion and dismiss Defendant's § 512(f) claim.  The Court should also grant Moonbug's special motion to strike Defendant's remaining state law claims or dismiss them for failure to state a claim.

Dated: October 19, 2021

Respectfully submitted,

*/s/ Ryan Tyz*
Ryan Tyz

Attorneys for Plaintiffs
Moonbug Entertainment Limited and
Treasure Studio, Inc.