United States District Court<br>Northern District of California

1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| 7 MOONBUG ENTERTAINMENT LIMITED, et al., | Case No. 21-cv-06536-EMC |
| 8 Plaintiffs, | |
| 9 | **ORDER GRANTING IN PART AND DENYING IN PART MOONBUG'S MOTION TO STRIKE AMENDED ANSWER AND DISMISS AMENDED COUNTERCLAIMS** |
| 10 v. | |
| 11 BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD, | |
| 12 Defendant. | Docket No. 40 |

13

14

15       Plaintiff-Counter Defendant Moonbug Entertainment ("Moonbug") operates the

16 CoComelon channel, the top-ranked Kids YouTube channel, featuring animated videos of a child

17 character named JJ and his family.  Docket No. 1 (Compl.) ¶ 2, 16.  Defendant-Counter Plaintiff

18 Babybus Network Technology Co. ("Babybus") runs a competitor YouTube channel with videos

19 featuring a character named Super JoJo and his family.  Plaintiff alleges that Babybus's Super

20 JoJo videos infringe on its copyrights, filed take-down requests with YouTube regarding at least

21 70 videos, and filed the instant copyright infringement action.  Compl. ¶ 4.  Defendant asserts

22 affirmative defenses of fair use and copyright misuse.  Additionally, Defendant alleges

23 counterclaims under § 512(f) of the Copyright Act, that Plaintiff made knowing

24 misrepresentations in its take-down requests to YouTube, and tort claims under California law.

25       Now pending is Plaintiff's motion to strike Defendant's answer and affirmative defenses

26 and to dismiss Defendant's counterclaims.  Docket No. 40.  For the following reasons, the Court

27 **GRANTS in part** and **DENIES in part** Plaintiff's motion.

28

United States District Court
Northern District of California

# I.   <u>BACKGROUND</u>

A.   <u>Relevant Factual Allegations</u>

    1.   <u>Moonbug's Complaint and Allegations of Copyright Infringement</u>

Plaintiff Moonbug's rights include registered copyrights in the CoComelon 3-D animated characters: baby JJ and his mom, dad, brother TomTom, and sister YoYo.  Compl. ¶¶ 15, 20(a).  These characters were introduced on YouTube in 2017.  *Id.* ¶ 18.  Moonbug also owns copyrights in hundreds of original CoComelon videos, songs, and images on YouTube and elsewhere, all featuring the CoComelon family of characters.  *Id.* ¶¶ 15, 20(c).

Moonbug alleges that Defendant Babybus offers several for-profit YouTube channels under its "Super JoJo" brand, built on pervasive copying of Moonbug's CoComelon franchise.  *See* Compl. ¶¶ 22–58; Docket No. 36 ("Am. Countercl.") ¶¶ 20, 37.  Moonbug alleges that Babybus's channels began with copies of CoComelon videos, copying CoComelon's "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events."  *See* Compl. ¶ 52.  Many of Defendant's earliest videos, are allegedly frame-by-frame copies of CoComelon videos.  *Id.* ¶¶ 8, 32–52; *see* Am. Countercl. ¶ 41.

As examples, Moonbug's complaint contains screenshots depicting side-by-side comparisons of the companies' respective videos:



United States District Court
Northern District of California



Compl. ¶¶ 37-50.

United States District Court
Northern District of California

2.   Moonbug's YouTube Copyright Notices

Before filing this complaint on August 24, 2021, and during the pendency of this action, Moonbug, through outside counsel, submitted several Digital Millennium Copyright Act (DMCA) notices to YouTube identifying Defendant's infringing videos and requesting that YouTube take them down. Am. Countercl. ¶ 24; Compl. ¶ 4. The notices identified representative lists of infringed Moonbug works. *See, e.g.*, Docket No. 41("McHale Decl.") ¶¶ 2–7, Exhs. 1–4. Elaborating on the representative information in the webform notices, Moonbug's counsel sent a 17-page letter in connection with its DMCA notices to YouTube and Defendant, detailing Moonbug's alleged infringement in 80 pages of exhibits.[1] *See* McHale Decl. ¶ 8, Ex. 5; *see* Am. Countercl. ¶ 32.

Within hours of receiving Moonbug's letter to YouTube, Babybus allegedly disabled public access to over 100 of its infringing videos on YouTube. Compl. ¶¶ 61-62. YouTube took down other videos identified in Moonbug's DMCA notices. *See* Compl. ¶¶ 62, 69; Am Countercl. ¶¶ 25–26; *see also* McHale Decl. ¶¶ 19–20, Exhs. 12-13. Defendant responded with DMCA counter notices for some, but not all of Moonbug's notices. *See* Am. Countercl. ¶ 25.

Defendant initially did not provide counternotices to several of Moonbug's DMCA notices and YouTube temporarily disabled Defendant's English-language Super JoJo channel around August 26, 2021. *See* Am. Countercl. ¶ 36; *see also* McHale Decl. ¶¶ 16, 19–20, Exhs. 10, 12–13. By that date, YouTube had taken down nine videos in response to nine of Moonbug's DMCA notices. Am. Countercl. ¶¶ 26, 36; Compl. ¶ 4. More than four weeks after YouTube removed the nine videos and over two weeks after suspension of Defendant's channel, Defendant submitted counter notifications to YouTube requesting the channel's restoration. Am. Countercl. ¶ 25; *see* McHale Decl. ¶ 16, Ex. 10.

---

[1] On a motion to dismiss, the Court may consider materials that Defendant references or incorporates in the counterclaims. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). The Court may consider Moonbug's Complaint, Docket. No. 1, YouTube's terms and policies, McHale Decl, Exhs. 11–15, and Moonbug's DMCA notices and letters to YouTube (as described in McHale Decl. ¶¶ 2–12; *id.* Exhs. 1–9), because Defendant's counterclaims invoke them. *See Khoja*, 899 F.3d at 1002, 1004–05 (considering documents "incorporated by reference" when complaint referred to them and they formed a basis of the claims). Defendant does not contest Plaintiff's references to these exhibits.

1          3.      Babybus's Answer and Counterclaims

2          In its amended answer, affirmative defenses and counterclaims, Babybus denies

3   infringement, and alleges affirmative defenses of fair use and copyright misuse.  Docket No. 36

4   (Am. Def.) ¶¶ 1, 4.  Babybus counterclaims that Moonbug violated § 512(f) of the Copyright Act

5   by materially misrepresenting its infringement allegations included in the DMCA notices it sent to

6   YouTube because Moonbug did not consider the doctrine of fair use and alleged infringement

7   based on elements that were not protectable in copyright such as generic traits of children's

8   characters.  Am. Countercl. ¶¶ 32-33.  Defendant also alleged three counterclaims under California

9   law under the unfair competition law (that Moonbug's DMCA notices were an incipient violation

10  of the antitrust laws), and for intentional interference with economic relationships and contractual

11  relations.  Id. ¶¶ 48-62.

12  B.    Procedural Background

13        Plaintiff Moonbug filed this action on August 24, 2021.  Compl.  On September 28, 2021,

14  Defendant filed an answer, counterclaims and motion for temporary restraining order based on its

15  allegation that Moonbug misrepresented infringement in its DMCA notices.  Docket Nos. 20, 22.

16  Defendant withdrew its request for TRO on October 6, 2021.  Docket No. 30.  Moonbug moved to

17  dismiss or strike Babybus's counterclaims.  Docket No. 40.  Moonbug's motion was mooted by

18  Babybus's filing of an amended answer and counterclaims.  Docket No. 36 ("Am. Answer").

19        Currently pending is Moonbug's motion to strike or dismiss Babybus's amended

20  affirmative defenses and amended counterclaims.  Docket No. 40 ("Motion").  The Court heard

21  argument on Moonbug's motion on January 6, 2022.  Docket No. 62.  At the hearing, the Court

22  directed Babybus to file a submission indicating three videos that are illustrative of its arguments

23  of non-infringement, and allowed Moonbug to submit a response.  Id.  After the parties submitted

24  supplemental filings, Docket Nos. 56, 60, the Court ordered Babybus to "clarify whether the three

25  videos it identified in its supplemental filing. . . were the subjects of DMCA takedown notices

26  submitted by Moonbug to YouTube," and, if not, to identify three videos that were the subject of

27  DMCA takedown notices.  Docket No. 61.  The parties submitted responsive filings.  Docket Nos.

28  63-65.

United States District Court
Northern District of California

## II.     STANDARD OF REVIEW

A.     Failure to State a Claim (Rule 12(b)(6))

Federal Rule of Civil Procedure 8(a)(2) requires a "pleading that states a claim for relief" to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A pleading that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the pleading] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the [pleading] as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a [pleading] . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

B.     Motion to Strike (Rule 12(f))

Before responding to a pleading, a party may move to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to the trial."  *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 624 (N.D. Cal. Oct. 14, 2011) (quoting *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).  Motions to strike are generally disfavored.  *See Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011); *Platte*

United States District Court
Northern District of California

1   *Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).  A motion to strike

2   should only be granted if the matter sought to be stricken clearly has no possible bearing on the

3   subject matter of the litigation.  *See Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339

4   (N.D. Cal. 1991); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other*

5   *grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ("'Immaterial matter' is that which has no

6   essential or important relationship to the claim for relief or the defenses being pleaded.").

7   Statements that do not pertain to, and are not necessary to resolve, the issues in question are

8   impertinent.  *Id.*  If there is any doubt whether the portion to be stricken might bear on an issue in

9   the litigation, the court should deny the motion to strike.  *Platte Anchor Bolt*, 352 F. Supp. 2d at

10  1057.  Just as with a motion to dismiss, the court should view the pleading sought to be struck in

11  the light most favorable to the nonmoving party.  *Id.*

12                            **III.**   **DISCUSSION**

13  A.   Timeliness of Defendant's Amended Answer and Affirmative Defenses

14          Moonbug argues that Babybus's amended answer and affirmative defenses in response to

15  Moonbug's initial motion to dismiss or strike should be stricken as untimely under Fed. R. Civ. P.

16  15(a) because the amended answer was filed in response to Moonbug's initial motion to dismiss or

17  strike *counterclaims,* and thus Babybus's needed to seek leave of the court to amend its *answer*

18  and *affirmative defenses*.  Motion at 10-11.

19          Moonbug's position lacks merit.  Rule 15 allows a party to amend its pleading as a matter

20  of course within the earlier of "21 days after service of a motion under Rule 12(b), (e), or (f)"—or

21  "21 days after service of a responsive pleading" "if the pleading is one to which a responsive

22  pleading is required."  Fed. R. Civ. P. 15(a)(1)(B).  Babybus filed its original Answer and

23  Counterclaims on September 28, 2021. Docket No. 20.  Moonbug did not serve a responsive

24  pleading, but moved to dismiss under Rule 12(b) on October 19.  Docket No. 31.  Babybus timely

25  filed its First Amended Answer and Counterclaims on November 9, as permitted by Rule

26  15(a)(1)(B).  Docket No. 36.

27          There is no basis to Moonbug's argument that Babybus was *only* entitled to amend its

28  *counterclaims* but *not* its answer in response to Moonbug's motion to strike or dismiss.  An

United States District Court
Northern District of California

7

1   answer and counterclaim are *one pleading*, not *separate pleadings*. *See, e.g.*, *Koga-Smith v.*

2   *MetLife*, No. C-12-4050 EMC, 2013 WL 894780, at *1 (N.D. Cal. Mar. 8, 2013) ("As a

3   preliminary matter, the Court notes that a crossclaim or counterclaim is not an independent

4   pleading but rather is part of the answer. *See* Fed. R. Civ. P. 7 (enumerating pleadings allowed,

5   none of which is specifically identified as a crossclaim or counterclaim).").  A *counterclaim* is a

6   pleading to which a response is required.  Fed. R. Civ. P. 12(a)(1)(B) ("A party must serve an

7   answer to a counterclaim . . .").  Accordingly, Babybus' answer and counterclaims were a single

8   pleading to which a response was required and, thus, within the ambit of Rule 15(a)(1)(B).

9       Moonbug's motion to strike Babybus's answer and affirmative defenses as untimely is,

10   therefore, denied.

11   B.   Plausibility of Defendant's Affirmative Defenses

12       Moonbug moves to strike Babybus's fair use and copyright misuse affirmative defenses

13   because they are not plausible.  Motion at 14.  Rule 12(f) provides that the "court may strike from

14   a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

15   matter."  Fed. R. Civ. P. 12(f); *see also Oracle Am., Inc. v. NEC Corp. of Am.*, No. 21-CV-05270-

16   CRB, 2021 WL 5037678, at *4 (N.D. Cal. Oct. 29, 2021) (striking copyright misuse affirmative

17   defense as implausible under Rules 8(c) and 12(f)); *Erickson Prods., Inc. v. Kast*, No. 5:13-CV-

18   05472 HRL, 2014 WL 1652478, at *4 (N.D. Cal. Apr. 23, 2014) (striking fair use defense as

19   implausible).  "[A] defense need not include extensive factual allegations in order to give fair

20   notice, [however] bare statements reciting mere legal conclusions may not be sufficient."

21   *Hernandez v. Dutch Goose, Inc.*, No. C 13-03537 LB, 2013 WL 5781476, at *4 (N.D. Cal. Oct.

22   25, 2013) (citations omitted).

23       1.   Fair Use

24       Fair use is an affirmative defense that "presumes that unauthorized copying has occurred,

25   and is instead aimed at whether the defendant's use was fair."  *Monge v. Maya Magazine, Inc.*, 688

26   F.3d 1164, 1170 (9th Cir. 2012).  The doctrine is codified at section 107 of the Copyright Act,

27   which provides:

28       In determining whether the use made of a work in any particular

United States District Court
Northern District of California

case is a fair use the factors to be considered shall include

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.  The determination whether the fair use doctrine applies "is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis."  *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 577 (1994).  The factors "[a]ll are to be explored, and the results weighed together, in light of the purposes of copyright."  *Id.* at 578.

On the first factor, Babybus's allegation that its works are educational in nature, Am. Def. ¶ 4, is inapposite because the factor favors "nonprofit educational purposes," and Babybus admits that the videos are for commercial use.  Am. Answer ¶ 8 (admitting $100 million earnings in 2020); Am. Countercl. ¶ 37 (claiming losses up to $500,000 per month when channel taken down).

On the second factor, Babybus makes no allegations as to why the nature of Moonbug's copyrighted works weighs in favor of finding fair use.

On the third factor, Babybus alleges that that "Moonbug's allegations of similarities between its works and Babybus's works are based on ideas and expressions that are not protectable in copyright," such as "anatomical features of human babies," "the composition of a traditional nuclear family as found in family-friendly and children's media," and "abstract lessons learned by children while they grow up."  Am. Def. ¶ 4.  But Babybus's assertion that Moonbug's works are not "protectable in copyright" is an argument that Moonbug fails to prove its infringement claim – *not* the basis for an affirmative defense of fair use, which "presumes that unauthorized copying has occurred, and is instead aimed at whether the defendant's use was fair."  *Monge v. Maya Magazine, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012).[2]

---

[2] Moreover, Babybus's argument that the alleged similarities are not protectable in copyright is implausible when analyzed in context with Moonbug's 17-page letter to YouTube filed along with its DMCA notices that alleges frame-by-frame copying of Moonbug's copyrighted videos and pervasive copying of thumbnail art, copying of the plot, setting, pace and sequence of events of

Babybus further asserts that to the extent there are any similarities between its works and Moonbug's, "the similarities are so minor that they do not make up a substantial portion" of the copyrighted works.  Am. Def. ¶ 4.  But, Babybus has not addressed, let alone refuted, Moonbug's allegations and examples of frame-by-frame copying, copying of thumbnail art, copying of plot, setting, pace and sequence of events – allegations and examples that, on their face, clearly demonstrate the similarities make up a substantial portion of the copyrighted works.  *Hernandez*, 2013 WL 5781476, at *4; *see also Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2016) ("the burden of proving fair use is always on the putative infringer") (citations omitted).

Finally, Babybus asserts support for the fourth factor on its assertion that "Moonbug is unable to demonstrate any diminishment in the value of its own works in the marketplace." Docket No. 43 ("Opp.") at 9.  This assertion lacks factual underpinning.  Such a bare conclusion cannot support a fair use defense, and conflicts with Defendant's own assertion that the parties compete in a highly profitable market.  *See Kast*, 2014 WL 1652478, at *4 (rejecting a conclusory allegation regarding market value and dismissing fair use defense); Am. Def. ¶ 1; Am. Countercl. ¶ 37.

In sum, none of the four fair use factors tip in Babybus's favor.  Indeed, the first, second and fourth factors weigh decisively against Babybus.  And, as to the third factor, despite the fact that Babybus already amended its affirmative defenses once *and* the Court provided Babybus with two opportunities to supplement the record with examples of videos that support its fair use defense *after* this motion was fully briefed and argued, Babybus *still* has not presented any

---

other CoComelon videos," and 80 pages of exhibits containing dozens of illustrative frame-by-frame screenshots and reference to numerous of Moonbug's registered copyrights.  McHale Decl., Exh. 5 at 5-15, 30-108.  The similarities are numerous and detailed and transcend the basic elements of *e.g.*, "anatomical features of human babies," and thus cannot sustain a fair use defense.

At the hearing, Babybus's counsel argued, for the first time, that Moonbug's allegations of specific copying applied to only *some* of Babybus's videos, but not to all of them.  Babybus submitted supplemental filings of six of its videos for the Court's consideration in support of Babybus's affirmative defenses and § 512(f) counterclaim.  Docket Nos. 56, 63.  But these submissions do not support Babybus's *fair use defense*.  In submitting these filings, Babybus *only* argues non-infringement: these videos "share no protectable similarities with Moonbug's catalogue," Docket Nos. 56 at 2, 63 at 3.  However, again, this argument does not support a fair use defense, which "presumes that unauthorized copying has occurred."  *Monge*, 688 F.3d at 1170.

arguments and allegations that tip the third factor in its favor.  Even if the Court were to overlook Babybus's failure to do so despite multiple opportunities, and assumed *arguendo* that Babybus could allege facts indicating that its copying was insubstantial, that would merely demonstrate one factor tips towards Babybus.  Any such hypothetical showing would still be outweighed by the fact that the other three factors weigh conclusively against Babybus.  Accordingly, the Court strikes Babybus's fair use defense because it is implausible.[3]

### 2.   Copyright Misuse

"Copyright misuse is a judicially crafted affirmative defense to copyright infringement. ..." *Apple, Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011).  The "purpose of the defense" is to "prevent[ ] holders of copyrights 'from leveraging their limited monopoly to allow them control of areas *outside the monopoly.*'"  *Id.* (quoting *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001)) (emphasis added).  The doctrine "does not prohibit using conditions to control use of copyrighted material, but it does prevent copyright holders from using the conditions to stifle competition." *Id.* at 1159. The Ninth Circuit has "applied the doctrine sparingly." *Id.* at 1157.[4]

Babybus' copyright misuse defense reads as follows:

> Moonbug's claims are barred by the doctrine of copyright misuse, including because Moonbug has knowingly asserted copyright monopolies that violate copyright laws and public policy.  Moonbug is attempting to use expand whatever monopoly it may own (if any) over its own copyrighted works into areas not protectable in copyright; that constitutes copyright misuse.  Moonbug has accomplished this misuse by transmitting false and/or misleading Digital Millennium Copyright Act ("DMCA") takedown notices to YouTube, for the purpose of enticing YouTube to take down

---

[3] Babybus' citation to *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1148-49 (9th Cir. 2016) is misplaced.  *Lenz* involved a situation where the facts demonstrated that the takedown procedure did not call for consideration of fair use, and the work at issue – a 29-second home video of children dancing to a song fragment – was likely fair use.  *Id.*  The facts of *Lenz* are unlike those here where Moonbug's letter to YouTube catalogs facts that show Babybus's use was not fair use. McHale Decl. Exh. 5 at 1, 16 (detailing *commercial* copycat nature of infringing work), 1–5 (describing the originality of Moonbug's works), 2–16 (describing pervasive infringement), 16–17 (describing *commercial* harm to Moonbug).

[4] *See e.g.*, *Psystar Corp.*, 658 F.3d at 1157 ("[The Ninth Circuit's decision] in *Practice Management* [*Info. Corp. v. Am. Med. Ass'n*, 121 F.3d, 516 (9th Cir. 1997)] is the only case in which [the Ninth Circuit] upheld a copyright misuse defense.  [The Ninth Circuit] did so because the copyright licensor in that case prevented the licensee from using any other competing product.").

Babybus videos that do not infringe Moonbug's copyrights. Additionally, Moonbug's assertion of improper copyright claims against Babybus, a competitor in the children's entertainment marketplace, represents an attempt to force its competitor out of the market entirely. Moonbug's transmission of multiple, improper DMCA takedown notices through the YouTube platform and continued maintenance of those claims despite action taken by Babybus to address Moonbug's concerns show that Moonbug's interest is not the protection of its alleged copyrights, but harming Babybus, a competitor in the same marketplace. Moonbug's assertion of unprotectable copyright features of its character JJ and tropes regarding family structure or topics common in children's media represents Moonbug's attempt to secure a monopoly over the uncopyrightable features of its works.

Am. Def. ¶ 1. Much of the paragraph focuses on assertions of Moonbug's motive for asserting its copyrights through DMCA takedown notices to YouTube. But Babybus concedes that copyright "misuse is quite distinct from the legitimate invocation of one's own copyright even though prompted by ulterior motives." Opp. at 17 (citing *Religious Tech. Ctr. v. Lerma*, No. CIV.A. 95-1107-A, 1996 WL 633131, at *12 (E.D. Va. Oct. 4, 1996)). Here, there is no dispute that Moonbug holds and asserted its registered copyrights for baby JJ, related family characters, and videos depicting those characters, thus rendering Babybus's allegations of Moonbug's "ulterior motives" insufficient to support a misuse defense. *See* Docket Nos. 41-1 ("JJ," Reg. No. VAu001379978, "Unpublished Family Characters 2017", Reg. No. VAu001322038), 41-4 at 23-29 ("Boo Boo Song" (U.S. Copyright No. PA0002181622), "Yes Yes Vegetable Song" (U.S. Copyright No. PA0002159137), "Bath Song" (U.S. Copyright No. PA0002146326), "Car Wash Song" (U.S. Copyright No. PA0002191424), "Yes Yes Playground Song" (U.S. Copyright No. PA0002145951), "Yes Yes Bedtime Song" (U.S. Copyright No. PA0002177791), "No No Play Safe Song (U.S. Copyright Nos. PA 0002177782, SRu001317776)); *see also Religious Tech. Ctr*, 1996 WL 633131, at *12 ("Even assuming *arguendo* that such [ulterior] motivations were part of RTC's litigation strategy, that does not constitute misuse of copyright. Misuse of copyright applies where the copyright owner tries to extend the copyright beyond its intended reach, thereby augmenting the physical scope of copyright protection. It typically arises in situations where it is alleged that the copyright owner projected his unique rights in a work onto other, unrelated products or services. . . [M]isuse concerns the wrongful use of the copyright powers themselves in ways violative of the Constitution or public policy.").

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Thus, the portion of Babybus's defense that is relevant to the misuse analysis of whether Moonbug leveraged its copyrights to gain "control of areas outside the monopoly" of its copyrights is the final sentence alleging Moonbug's assertion of "unprotectable copyright features" related to "JJ and tropes regarding family structure or topics common in children's media." Am. Def. ¶ 1. Here, again, Babybus's assertion is not plausible because it selectively characterizes Moonbug's DMCA notices as focusing *only* on broad, generic features. But these aspects were component parts, links in an extensive and detailed chain of allegations which Moonbug put forward in support of its DMCA notices. Moonbug's allegations that Babybus copied the conceptual foundations Moonbug's copyrighted works are integral to Moonbug's specific allegations of "copying of the plot, setting, pace and sequence of events," "frame-by-frame copying," and "near-identical thumbnail art." *See* McHale Decl., Exh. 5, 5-15, 30-108. Babybus's copyright misuse affirmative defense is further undercut by Babybus's admission that it removed from public view over 100 of its allegedly infringing videos within one day of Moonbug filing DMCA notices and accompanying letter with YouTube. Compl. ¶ 65; Am. Answer ¶ 65.

Moreover, Babybus's supplemental filings of six exemplary videos do not salvage its copyright misuse defense. Docket Nos. 56, 63. Each of those videos contain characters and/or plots, images, and sequences that Moonbug argues infringe its registered copyrights. *See* Docket Nos. 60, 65. Babybus, again, relies on its contention that Moonbug asserts features of its copyrights that are not protectable, but this argument does not support an *affirmative* defense of copyright misuse. *See King.com Ltd. v. 6 Waves, LLC*, No. C-13-3977 MMC, 2014 WL 12704998, at *1 (N.D. Cal. July 11, 2014) (striking copyright misuse affirmative defense because "the allegation that elements of plaintiff's [works] are not protected by copyright . . . is not affirmative in nature but, rather, constitutes an assertion that plaintiff has not met its burden of proof.") (citation omitted).

Thus, because Babybus's copyright misuse defense turns on its incomplete and implausible characterization of the bases of Moonbug's DMCA notices, the Court strikes the defense.

C.     Defendant's § 512(f) Counterclaim

Babybus alleges a counterclaim that Moonbug violated 17 U.S.C. § 512(f) by knowingly

13

misrepresenting its copyrights when asserting its DMCA takedown notices.  Am. Countercl. ¶¶ 43-47.  Moonbug moves to dismiss the § 512(f) counterclaim for failure to state a claim.

### 1.   Legal Framework

17 U.S.C. § 512(f) provides that "[a]ny person who knowingly materially misrepresents ... that material or activity is infringing ... shall be liable for any damages ... incurred by the alleged infringer ... who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing."

The Ninth Circuit has observed that because "Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation," a copyright owner "cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake."  *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004–05 (9th Cir. 2004). "Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner."  *Id.*  "Congress could have easily incorporated an objective standard of reasonableness," so the "fact that it did not do so indicates an intent to adhere to the subjective standard traditionally associated with a good faith requirement."  *Id.* at 1004.

Thus, to state a § 512(f) claim, Defendant must allege (1) a material misrepresentation in a takedown notice that led to a takedown, and (2) that the takedown notice was submitted in subjective bad faith.  *Ningbo Mizhihe I&E Co. v. Does 1-200*, No. 19 CIV. 6655 (AKH), 2020 WL 2086216, at *3 (S.D.N.Y. Apr. 30, 2020); *see also Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004) ("Juxtaposing the 'good faith' proviso of the DMCA with the 'knowing misrepresentation' provision of that same statute reveals an apparent statutory structure that predicated the imposition of liability upon copyright owners only for knowing misrepresentations regarding allegedly infringing websites." (citations omitted)).

### 2.   Material Misrepresentation

Babybus fails to plausibly allege that Moonbug made material misrepresentations in its DMCA takedown notices.

United States District Court
Northern District of California

United States District Court
Northern District of California

1        First, Babybus alleges material misrepresentation because the "Moonbug notices that

2 resulted in removals relied almost exclusively on Moonbug's copyright in its JJ character and

3 relied on false and/or misleading allegations of character 'copying' to demand that YouTube take

4 down entire videos."  Am. Countercl. ¶ 26.  "For example, Moonbug's first two improper DMCA

5 takedown notices claimed that two Babybus works allegedly infringed Copyright Reg. No.

6 VAu001379978, which only covers a 2-D artwork titled 'JJ'… as well as Copyright Reg. No.

7 VAu001322038, which is for 2-D artwork titled 'Unpublished Family Characters.'"  *Id.*

8        The allegation that Moonbug's claims were based "almost exclusively" on claimed

9 infringement of 2-D artworks is not plausible because it is belied by the DMCA takedown notices

10 and accompanying letter that Moonbug sent to YouTube that clearly demonstrate otherwise (and

11 which are incorporated by reference to the Amended Counterclaims).  For example, other

12 Moonbug notices—that Babybus does not mention—identified other representative copyrighted

13 works, including specific videos.  Different takedown notices were directed to specific and

14 different videos, *see, e.g.,* Docket Nos. 32-1, 32-2, and the letter accompanying the takedown

15 notice listed additional videos for which individual takedown notices were not submitted as

16 evidence.  *See, e.g.*, McHale Decl. Exh. 2 (DMCA notice asserting infringement of "Title of

17 original video: Finger Family + More Nursery Rhymes & Kids Songs - CoComelon"); Exh. 3

18 (DMCA notice asserting infringement of "Title of original video: Yes Yes Playground Song |

19 CoComelon Nursery Rhymes & Kids Songs"); Exh. 4 at 23-29 (Letter to YouTube asserting

20 infringement of registered copyrighted works including "The Boo Boo Song," "Yes Yes Vegetable

21 Song," "Bath Song," "Car Wash Song," "Yes Yes Bedtime Song," and "No No Play Safe Song").

22 Additionally, YouTube's process for submitting a DMCA notice conforms to § 512 by stating that

23 the "the law allows" a complainant to submit "a representative list" of infringed copyrighted

24 works, meaning the reference to the 2D artwork was not exhaustive.  *Id.*, Exh. 14; *see also* 17

25 U.S.C. § 512(c)(3)(A)(ii) ("[A] notification of claimed infringement must be a written

26 communication provided to the designated agent of a service provider that includes substantially

27 the following. . . Identification of the copyrighted work claimed to have been infringed, or, if

28 multiple copyrighted works at a single online site are covered by a single notification, a

1    representative list of such works at that site.").  Here, Moonbug's DMCA notices to YouTube

2    were accompanied by a 17-page letter along with 80-pages of exhibits providing a detailed list of

3    infringed works, references to at least four additional copyright registrations, and analysis and

4    examples of copying, including allegations of frame-by-frame copying, near-identical thumbnail

5    art, copying of two series of original songs (including the same titles, melodies, lyrics and stories),

6    and "copying of the plot, setting, pace and sequence of events of other CoComelon videos."  *See*

7    McHale Decl., Exh. 5, 5-15, 30-108.  Thus, Babybus' allegation that Moonbug's notices were

8    based "almost exclusively" on infringement of two registrations for 2D art is simply belied by the

9    undisputed record and hence not plausible.

10            Babybus's second basis for alleging material misrepresentations by Moonbug is that

11    Moonbug has "focused on alleged similarities in the face of its character JJ and Babybus's

12    character JoJo – but the 'similarities' are limited to naturally occurring features of all infants."

13    Am. Countercl. ¶ 28.  Babybus alleges that Moonbug's infringement claims are based on depicting

14    an infant with a single tuft of hair, thin eyebrows, big eyes and colorful clothing, which are all

15    features "common to both fictional and non-fictional babies."  *Id.*  Further, Babybus argues that

16    Moonbug's DMCA notices were "frivolous" because Moonbug seeks to keep Babybus from

17    depicting "depicting curious children" or "traditional 'nuclear' families."  *Id.* ¶¶ 29-30.  But, as

18    explained above, Babybus's allegations rely on selective references to just one, out-of-context

19    portion of Moonbug's infringement allegations submitted to YouTube.  Viewed in their entirety, it

20    is clear that the take down notices are based on much broader allegations of copying of details that

21    is far beyond the generic elements Defendant describes.  As noted above, Babybus's assertion that

22    the DMCA notices were "frivolous" is also undercut by Babybus's admission that it removed from

23    public view over 100 of its allegedly infringing videos within one day of Moonbug filing notices

24    and accompanying letter with YouTube.  Compl. ¶ 65; Am. Answer ¶ 65.

25            Moreover, Babybus's allegations focus on the copyright protectability of individual

26    features of Moonbug's artworks and characters in isolation, but fail to consider that a copyright

27    infringement claim can be based on a selection, arrangement, or combination of such features.

28    The Ninth Circuit has acknowledged that even where individual similarities might be

16

1   unprotectable, such as generic or *scenes a faire* elements, "[a] combination of unprotectable

2   elements" can support an infringement claim "if those elements are numerous enough and their

3   selection and arrangement original enough that their combination constitutes an original work of

4   authorship." *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019).  As

5   Moonbug extensively alleged in its letter to YouTube accompanying its DMCA notices, its

6   infringement allegations did not simply target JoJo's large head, positivity and curiosity or family

7   structure.  Rather, it examined Babybus's duplication of a wide collection of features of the

8   CoComelon characters and videos, as well as other recognizable features of the CoComelon

9   franchise such as conceptual qualities like family dynamics, character animation styles and

10  movement, and video plots, pace, themes, moods, and settings, as visible from screenshots and

11  videos.  *See, e.g., supra* Background § A(1); McHale Decl., Exh. 5 at 6-10 (collecting side-by-side

12  comparisons of alleged copying of images), 10-14 (detailing allegations of copying of plot and

13  sequences of events of Moonbug's "The Boo Boo Song," "Yes Yes Vegetables Song," "Colors

14  Song," "Clean Up Trash Song," "Bath Song," and "Car Wash Song").  Babybus's attempt to

15  isolate, focus only on certain aspects of Moonbug's infringement allegations, and recast those

16  allegations at a high degree of generality does not accurately describe the bases of the DMCA

17  notices that Moonbug submitted.  *Cf. Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002)

18  ("protectable expression includes the specific details of an author's rendering of ideas, or the

19  actual concrete elements that make up the total sequence of events and the relationships between

20  the major characters") (citations omitted), *overruled in part on other grounds by Skidmore v. Led*

21  *Zeppelin*, 952 F.3d 1051 (9th Cir. 2020); *Paramount Pictures Corp. v. Axanar Prods., Inc.*, No.

22  2:15-CV-09938-RGK-E, 2017 WL 83506, at *5 (C.D. Cal. Jan. 3, 2017) ("Although each of these

23  elements may not be individually original and copyright protectable, they are 'numerous enough

24  and their selection and arrangement original enough that their combination constitutes an original

25  work of authorship,' especially when combined with the costumes and fictional characters"); *Dr.*

26  *Seuss Enters., Ltd. P'ship v. ComicMix Ltd. Liab. Co.*, 983 F.3d 443, 456 n.5 (9th Cir. 2020) ("We

27  are cautious not to overzealously decompose visual expression into its abstract, and thus

28  unprotectable, units, because that would mean that any amount of taking by ComicMix would be

United States District Court
Northern District of California

17

1  permissible.").

2      Babybus fails to allege any specific misrepresentations in Moonbug's DMCA takedown

3  notices in its supplemental filings and identification of six exemplary videos.  *Cf.* Docket No. 56,

4  63.  It simply relies on the argument that Moonbug's DMCA notices fail on the merits of their

5  assertions of infringement because "there are no protectable similarities in protectable elements

6  between these videos and the videos in Moonbug's catalogue."  Docket No. 63 at 3.  The claims of

7  copyright infringement were not frivolous.  Thus, Babybus's allegations do not plausibly

8  demonstrate the first element of its § 512(f) counterclaim -- that Moonbug made *material*

9  *misrepresentations* in its DMCA takedown notices filed with YouTube.

10          3.      Subjective Bad Faith

11      Babybus's § 512(f) counterclaim is also lacking because Babybus fails to plausibly allege

12  facts sufficient to state the second element of its counterclaim: that Moonbug acted in subjective

13  bad faith and with actual knowledge that it was making a material misrepresentation.  *See* 17

14  U.S.C § 512(f); *Rossi*, 391 F.3d at 1004.

15      On this element, Babybus alleges, (1) Moonbug "did not consider whether it was alleging

16  copyright protection for elements of its works that are not protectable in copyright," (2) Moonbug

17  "did not consider the doctrine of fair use," (3) Moonbug "rendered itself willfully blind by

18  purposefully avoiding any in-depth reasoned analysis regarding any similarities between Moonbug

19  and Babybus's works," and (4) Moonbug intended to exploit YouTube's system for removing

20  Babybus's channels by accumulating copyright strikes against Babybus.  Am. Countercl. ¶¶ 32-35.

21      Babybus fails to allege a plausible factual basis for any of these allegations.  Babybus's

22  first two allegations are contradicted by Moonbug's 17-page letter and 80-pages of exhibits

23  carefully and extensively laying out the bases for its claims of copyright infringement underlying

24  its DMCA notices.  McHale Decl., Exh. 5.  As noted above, Plaintiff's takedown letters and

25  supporting document establish facially plausible claims of infringement, and Babybus does not

26  allege a plausible basis for a fair use defense.  Notably, Babybus itself never raised a fair use

27  defense in its original answer and counterclaim, its TRO application, nor even in its counternotices

28  filed with YouTube.  *See* Docket Nos. 20, 22; McHale Decl., Exh. 10.  Further, in light of

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Moonbug's detailed submission to YouTube, Babybus has no basis to allege that Moonbug "did

2    not consider" the nature of its copyrights or the fair use doctrine.  In any event, to plausibly allege

3    this element, Babybus must do more than show Moonbug was *mistaken* or *unreasonable* in its

4    assertion of DMCA notices – it must allege that Moonbug had "actual knowledge of

5    misrepresentation." *Rossi*, 391 F.3d at 1005; *see also id.* ("A copyright owner cannot be liable

6    simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in

7    making the mistake.").

8          As to Babybus's argument that Moonbug was "willfully blind" to material

9    misrepresentations, Babybus must allege that Moonbug (1) subjectively believed there was a high

10   probability that a fact existed, and (2) took deliberate actions to avoid learning the fact.  *See Lenz*,

11   815 F.3d at 1155.  Babybus alleges no factual support on either prong.  Babybus makes a

12   conclusory allegation that Moonbug "avoid[ed] an in-depth reasoned analysis" of its infringement

13   allegations, which is contradicted by Moonbug's extensive letter to YouTube detailing the bases

14   for its DMCA notices.

15         Finally, assuming the truth of Babybus's assertion that Moonbug intended to exploit

16   YouTube's "copyright strikes" policy in order to disable Babybus' *non*-infringing channels, this

17   allegation may demonstrate a potential bad-faith *motive* of Moonbug, but it does not establish that

18   Moonbug "knowingly materially misrepresent[ed]. . . that material or activity is infringing."  17

19   U.S.C. § 512(f).  Put differently, § 512(f) protects against bad-faith misrepresentations of

20   copyright infringement *not* against a desire to see negative downstream consequences from

21   properly-filed claims of copyright infringement.

22         Thus, because Babybus fails to plausibly allege facts on either prong of its § 512(f)

23   counterclaim, it fails to state a claim.  The Court dismisses Babybus's § 512(f) counterclaim.

24   D.    Applicability of California's Anti-SLAPP Statute to Defendant's State Law Counterclaims

25         Moonbug argues that Babybus' amended state law counterclaims – intentional interference

26   with economic expectations, intentional interference with contractual relations, and unfair

27   competition, Am. Countercl. ¶¶ 48-64 – violate California's anti-SLAPP statute and should,

28   therefore, be stricken.  Motion at 23.

1        1.       Legal Framework

2        California's anti-SLAPP Statute allows for pre-trial dismissal of "SLAPPs" ("Strategic

3   Lawsuits against Public Participation").  Cal. Civ. Proc. Code § 425.16; *Metabolife Int'l, Inc. v.*

4   *Wornick*, 264 F.3d 832, 839 (9th Cir. 2001).  The statute aims to identify, early in the litigation

5   process, "meritless first amendment cases aimed at chilling expression through costly, time-

6   consuming litigation."  *Metabolife*, 264 F.3d at 839.

7        "A court considering a motion to strike under the anti-SLAPP statute must engage in a

8   two-part inquiry."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003).

9        First, the defendant must "make an initial prima facie showing that the plaintiff's suit arises

10  from an act [by the defendant] in furtherance of the defendant's rights of petition or free speech."

11  *Id.* (citation omitted).  As § 425.16 provides:

12              [An] act in furtherance of a person's right of petition or free speech
                under the United States or California Constitution in connection
13              with a public issue includes:

14              (1) any written or oral statement or writing made before a
                legislative, executive, or judicial proceeding, or any other official
15              proceeding authorized by law;
                (2) any written or oral statement or writing made in connection with
16              an issue under consideration or review by a legislative, executive, or
                judicial body, or any other official proceeding authorized by law;
17              (3) any written or oral statement or writing made in a place open to
                the public or a public forum in connection with an issue of public
18              interest; or
                (4) any other conduct in furtherance of the exercise of the
19              constitutional right of petition or the constitutional right of free
                speech in connection with a public issue or an issue of public
20              interest.

21  Cal. Civ. Proc. Code § 425.16(e).

22       Second, where a defendant makes the required prima facie showing, "the burden shifts to

23  the plaintiff to demonstrate a probability of prevailing on the challenged claims."  *Vess*, 317 F.3d

24  at 1110.  In other words, the plaintiff must demonstrate that the challenged claims are "legally

25  sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the

26  evidence submitted by plaintiff is credited."  *Metabolife*, 264 F.3d at 840 (quoting *Wilcox v.*

27  *Superior Court*, 27 Cal. App. 4th 809, 823, 33 Cal. Rptr. 2d 446 (1994)) (internal quotation marks

28  omitted).

United States District Court
Northern District of California

The Ninth Circuit has clarified that anti-SLAPP motions are evaluated under different standards depending on the basis for the motion. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018). "If a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards" and "Plaintiffs [are] not required to present prima facie evidence supporting Plaintiffs' claims." *Id.* "If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6)." *Id.* at 834. Here, Moonbug's arguments on founded on purely legal arguments, so Babybus is not required to submit additional factual evidence to support its claim; Babybus must defend only the legal sufficiency of its claims. *Id.*

    2.   Step One: State Law Counterclaims Arise from Acts in Furtherance of Moonbug's Rights of Petition or Free Speech

Babybus' state law counterclaims focus on Moonbug's submission of "DMCA takedown notices to YouTube" which alleged that Babybus's "videos were infringing on Moonbug's copyrights." Am. Countercl. ¶¶ 50 (count 2), 56 (count 3), 61 (count 4). Moonbug contends that the filing of the DMCA takedown notices is covered by 425.16(e)(1) and (e)(2) because they constitute prelitigation complaints made in anticipating or during the litigation. *Digerati Holdings, LLC v. Young Money Entm't, LLC*, 194 Cal. App. 4th 873, 886–87 (2011). The DMCA takedown process enables litigation by requiring as a predicate an alleged infringer to submit to the jurisdiction of U.S. courts when submitting a DMCA counter notification and requiring a copyright owner provide notice that it filed a lawsuit within ten business days of a counter-notification to keep taken-down materials from being reinstated. *See* 17 U.S.C. § 512(g)(2)(C), (g)(3)(D); *Comstock v. Aber,* 212 Cal. App. 4th 931, 947 (2012) (prelitigation complaints protected under §§ 425.16(e)(1), (e)(2)).

Additionally, Moonbug contends Babybus's state law counterclaims fall under § 425.16(e)(4), as courts have found the filing DMCA notices constitutes an exercise of free speech in connection with an issue of public interest where the notice refers to works with numerous

1    potential audience member – including in cases, like this one, where the DMCA notice refers to a

2    video on YouTube.  *See Lenz v. Universal Music Corp.*, No. C 07-03783, 2008 WL 962102, at *4

3    (N.D. Cal. 2008) (filing of DMCA takedown notice constitutes free speech); *Complex Media, Inc.*

4    *v. X17, Inc.*, No. CV1807588SJOAGRX, 2019 WL 2896117, at *4 (C.D. Cal. Mar. 4, 2019)

5    (submitting DMCA notice is free speech under (e)(4) and is an issue of public interest where the

6    "videos containing allegedly infringing content" were on Plaintiff's YouTube channel with 2.4

7    million subscribers).

8            Moonbug is thus on strong footing in arguing that Babybus's state law counterclaims are

9    covered by § 425.16(e)(1), (2) and/or (4).  Babybus does not dispute Moonbug's specifics

10   arguments about the applicability of each subsection, but, rather, argues that the anti-SLAPP

11   statute does not apply at all because Babybus's claims fit under the commercial speech exception

12   under § 425.17.  Opp. at 26.

13           Babybus's position lacks support.  Babybus has not identified any cases holding that the

14   anti-SLAPP statute does not apply to DMCA takedown notices.  Courts have held to the contrary.

15   *See, e.g., Complex Media, Inc. v. X17, Inc.*, No. CV1807588SJOAGRX, 2019 WL 2896117, at *5

16   (C.D. Cal. Mar. 4, 2019).  As Judge Orrick recently observed:

17           A cause of action arising from commercial speech falls under this
             exemption when:
18
             (1) the cause of action is against a person primarily engaged in the
19           business of selling or leasing goods or services;
             (2) the cause of action arises from a statement or conduct by that
20           person consisting of representations of fact about that person's or a
             business competitor's business operations, goods, or services;
21           (3) the statement or conduct was made either for the purpose of
             obtaining approval for, promoting, or securing sales or leases of, or
22           commercial transactions in, the person's goods or services or in the
             course of delivering the person's goods or services; **and**
23           (4) the intended audience for the statement or conduct meets the
             definition set forth in section 425.17(c)(2) [an actual or potential
24           buyer or customer, or a personal likely to repeat the statement to, or
             otherwise influence, and actual or potential buyer or customer].
25
26   *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, No. 3:18-CV-07579-WHO, 2019 WL 1995768, at *3

27   (N.D. Cal. May 6, 2019) (quoting *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 30 (2010))

28   (emphasis added).

United States District Court
Northern District of California

Babybus does not allege facts that establish each of the four elements.  Prong 1 does not apply here because Moonbug is not engaged in "the business of selling or leasing goods or services" but, rather, is the creator of expressive works of art – animated video productions.  As Judge Seeborg noted in *Forsyth v. Motion Picture Ass'n of Am., Inc.*, No. 16-CV-00935-RS, 2016 WL 6650059, at *3–4 (N.D. Cal. Nov. 10, 2016), "[T]he underlying "product"—films—are not mere commercial products, but are expressive works implicating anti-SLAPP concerns and plainly entitled to full First Amendment protection.  Moreover, with respect to anti-SLAPP, the statute itself expressly recognizes the distinction.  While the legislature amended the law so that it generally would not apply to claims arising from commercial advertising (Cal. Code Civ. P § 425.17(c)), it provided a carve-out for '[a]ny action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program.'"

Moonbug's DMCA notices do not satisfy prong 2 because they are not "representations of fact" that disparage the quality of Babybus's goods (videos);  instead they assert legal claims of copyright infringement.  Additionally, Moonbug's DMCA notices do not satisfy prong 3 because they alleged infringement by *Babybus* – the notices did not "promot[e]" *Moonbug's* goods. Finally, prong 4 is not satisfied because the intended audience of the DMCA notices was YouTube's legal department, which is not "actual or potential buyer or customer" of Babybus's, but a distribution platform operator.  *See* McHale Decl. Ex. 11 at 1 (YouTube terms explain that it is a "distribution platform for original content creators and advertisers large and small").

Babybus's citation to two inapposite cases is of no help.  In *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, the court applied the commercial speech exemption to Weiland's public press release, distributed to thousands of customers, vendors and trade publications, where the Defendant conceded that the contends of the release included representations of fact about Weiland's products.  814 F.Supp. 2d 1033, 1038 (S.D. Cal. 2011). Similarly, in *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, the court applied the commercial speech exemptions to representations and statements about United Tactical's

affiliation with another brand and disparagement of Real Action; the representations were published on United Tactical's website, which promoted its own products.  143 F.Supp. 3d 982, 1021 (N.D. Cal. 2015).  Unlike those cases involving public statements to buyers and potential buyers of commercial products to promote the speaker's sales over that of its competitors, here Moonbug's DMCA notices were filed privately with a non-customer third-party, YouTube, and it was done so to assert Moonbug's legal rights over its expressive artworks.  The commercial speech exemption does not apply here.

Accordingly, Moonbug has made an "initial prima facie showing that the [Babybus's state law counterclaims] arises from an act [by Moonbug]" – filing DMCA notices with YouTube "in furtherance of the [Moonbug's] rights of petition or free speech" under § 425.16(e)(1), (2) and (4). *Vess*, 317 F.3d at 1110.

    3.   <u>Step Two: Babybus is Unlikely to Prevail on the Merits of its State Law Claims</u>

At step two of the anti-SLAPP analysis, Moonbug argues that Babybus is unlikely to prevail on the merits of its state law claims because (a) Babybus's state law counterclaims are preempted by the Copyright Act, (b) barred by the litigation privilege, and (c) Babybus fails to state claims.  It is sufficient for the Court to decide this question on Moonbug's first argument: Moonbug is correct – Babybus's state law counterclaims are preempted.

"Numerous courts within the 9th Circuit have held that 17 U.S.C. § 512(f) of the DMCA preempts state law claims based on DMCA takedown notifications."  *Complex Media, Inc. v. X17, Inc.*, No. CV1807588SJOAGRX, 2019 WL 2896117, at *5 (C.D. Cal. Mar. 4, 2019) (citing *Online Policy Group v. Diebold*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004); *see Lenz*, 2008 WL 962102, at *4; *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696, 2011 WL 2690437, at *4 (N.D. Cal. 2011)).

Applying the doctrine of conflict preemption, the *Diebold* court found:

> Even if a copyright holder does not intend to cause anything other than the removal of allegedly infringing material, compliance with the DMCA's procedures nonetheless may result in disruption of a contractual relationship: by sending a letter, the copyright holder can effectuate the disruption of ISP service to clients. If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between

24

1  state and federal law. To the extent that Plaintiffs argue that there is
   no conflict because Diebold's use of the DMCA in this case was
2  based on misrepresentation of Diebold's rights, their argument is
   undercut by the provisions of the statute itself. In section 512(f),
3  Congress provides an express remedy for misuse of the DMCA's
   safe harbor provisions. It appears that Congress carefully balanced
4  the competing interests of copyright holders, ISPs, and the public,
   by providing immunity subject to relief for any misuse of the statute.

5  *Diebold*, 337 F.Supp. 2d at 1205-06. Accordingly, the court in *Diebold* dismissed the state law

6  claims as preempted. *Id.* at 1206. Likewise, the court in *Lenz* noted, "'[g]iven that a special

7  provision of the Copyright Act itself regulates misrepresentation in such notifications, that

8  provision constitutes the sole remedy for a customer who objects to its contents and their effects.'"

9  *Lenz*, 2008 WL 962102, at *4 (quoting 1 Melville B. Nimmer & David Nimmer, 1 *Nimmer on*

10 *Copyright* § 1.18[A][1] (2019).

11     Babybus does not dispute that the Copyright Act preempts state law claims based on

12 DMCA takedown notifications. Instead, it argues that the Copyright Act does not apply here

13 because Babybus' state law claims pertain only to "overseas subscribers" and "overseas viewers"

14 and the Copyright Act does not preempt causes of action premised upon possible extraterritorial

15 infringement. Opp. at 26-27. Babybus cites to the extraterritorial focus of its state law

16 counterclaims:

17     • "Babybus has an economic relationship with the overseas
        subscribes of its foreign language YouTube channels,
18       including but not limited to the 4.57 million subscribers of
        Babybus's Indonesian channel." Am. Countercl. ¶ 48.
19
        • "Moonbug specifically identified Babybus's foreign
20       language channels in a July 20, 2021 letter that Moonbug
        sent to YouTube." *Id.* ¶ 49.
21
22     • "Moonbug intentionally interfered with Babybus's economic
        relationship with its overseas subscribers by sending false
23       and/or misleading DMCA takedown notices to YouTube,
        which falsely alleged that Babybus's foreign language videos
24       were infringing on Moonbug's copyrights." *Id.* ¶ 50. *See
        also id.* ¶¶ 56 ("As alleged above, the takedowns included
25       foreign language videos aimed at overseas subscribed to
        Babybus's YouTube channels."), 61 ("sending false
26       and/misleading DMCA notices for the purposes of driving
        out a competitor for overseas viewers of foreign language
27       videos.").

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1          Babybus's attempt to sidestep the applicability of the Copyright Act is not persuasive.

2   That foreign viewers might watch the videos does not divest Moonbug of the right to use DMCA

3   procedures to address foreign language videos *that are indisputable accessible in the U.S. to*

4   *domestic viewers*.  Importantly, Babybus does not challenge the fact that its foreign language

5   channels are available in the U.S. and that Moonbug had the right to address that U.S.-based

6   infringement, even if the material is in a foreign language.  Babybus does not dispute that

7   Moonbug's DMCA notices assert domestic, not overseas, infringement.  *See* Compl; McHale

8   Decl. Exhs. 1-4 (DMCA notices confirmations indicate that Moonbug noted that the country

9   where the asserted copyright applies is the U.S.).  The DMCA notices expressly concern

10  Defendant's uploading of infringing videos onto U.S. servers and making them accessible to U.S.

11  users. *Id.,* Exh. 5 at 21-28 (exhibits to letter to YouTube lists allegedly infringing videos which all

12  use YouTube URLs that are accessible in the United States).

13         Babybus bears the burden to make out a prima facie case of the legal sufficiency of the

14  merits of its state law counterclaims.  *See Ctr. For Med Progress,* 890 F.3d at 834 ("we hold that,

15  on the one hand, when an anti-SLAPP motion to strike challenges only the legal sufficiency of a

16  claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and

17  consider whether a claim is properly stated.").  Babybus fails to show that Moonbug sought to

18  enforce the Copyright Right Act extraterritorially through its DMCA notices.  Thus, the Copyright

19  Act preempts Babybus's state law counterclaims.  Accordingly, Babybus has not shown a

20  likelihood of prevailing on those claims.

21         The Court strikes the state law counterclaims under California's anti-SLAPP statute, and

22  finds that Moonbug is entitled to attorneys' fees.  It will have the opportunity to file a motion for

23  reasonable attorneys' fees in bringing this motion to strike those state law counterclaims.

24  *Complex Media, Inc. v. X17, Inc*, No. CV1807588SJOAGRX, 2019 WL 2896117, at *6 (C.D. Cal.

25  Mar. 4, 2019) ("California law is unambiguous that "a prevailing defendant on a special motion to

26  strike shall be entitled to recover his or her attorney's fees and costs. . . Nor does voluntary

27  dismissal of the claim absolve the Plaintiff of liability for fees and costs incurred by Defendant

28  striking the claim.").

E.    Leave to Amend

The Court may dismiss pleadings with prejudice when amendment would be futile.  *See Ascon Prop., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment . . . constitutes an exercise in futility[.]").  The Court finds amendment of Babybus's affirmative defenses and counterclaims would be futile.  Babybus already amended its answer, affirmative defenses and counterclaims in response to Moonbug's motion to dismiss, and failed to plead facts sufficient to sustain any of them.

Babybus's fair use and copyright misuse affirmative defenses are contradicted by plain content of Moonbug's DMCA notices and letter to YouTube which are incorporated by reference into the pleadings.  Thus, further amendment to the § 512(f) counterclaim would be futile.

Finally, Babybus cannot save its state law counterclaims because no amendment can cure the fact that the state law counterclaims are preempted by the Copyright Act.  *Stardock Sys., Inc. v. Reiche*, No. C 17-07025 SBA, 2019 WL 8333514, at *5 (N.D. Cal. May 14, 2019) ("Undisputedly, preemption is incurable.").  Thus, the Court dismisses the state law counterclaims with prejudice.

## IV.    **CONCLUSION**

The Court **GRANTS in part** and **DENIES in part** Moonbug's motion to strike and dismiss, Docket No. 40, as follows:

- Moonbug's motion to strike Babybus's amended answer and amended affirmative defenses as untimely is **DENIED.**

- Moonbug's motion to strike Babybus's fair use and copyright misuse affirmative defenses is **GRANTED.**

///

///

///

///

///

///

- Moonbug's motion to dismiss all of Babybus's amended counterclaims (Count 1 - § 512(f); Counts 2-4 – state law claims) is **GRANTED**. Babybus's amended counterclaims are dismissed with prejudice.

This order disposes of Docket No. 40.

**IT IS SO ORDERED**.

Dated: February 25, 2022

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California