1
2
3
4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7   MOONBUG ENTERTAINMENT                    Case No. 21-cv-06536-EMC
    LIMITED and TREASURE STUDIO INC.,
8
                Plaintiffs,
9                                            **ORDER GRANTING PLAINTIFFS'**
          v.                                 **MOTION FOR ATTORNEYS' FEES**
10
                                             Docket No. 72
    BABYBUS (FUJIAN) NETWORK
11  TECHNOLOGY CO., LTD.,

12              Defendant.

13

14

15                  **I.       INTRODUCTION**

16        The Court previously granted Plaintiff Moonbug's special motion to strike Defendant

17  Babybus's state law counterclaims under California's anti-SLAPP statute.  *See* Docket No. 71.  In

18  granting the motion, the Court held that Moonbug was entitled to attorneys' fees under the statute,

19  and could seek reasonable fees by motion.  *Id.* at 26.  Now pending is Moonbug's motion for

20  attorneys' fees and costs pursuant to California's anti-SLAPP statute in the amount of

21  $173,522.85.  Docket. Nos. 72 ("Fee Mtn."); 78 ("Reply").

22        For the following reasons, the Court **GRANTS** Moonbug's motion, with some

23  modifications.

24                  **II.      RELEVANT BACKGROUND**

25        Before and during this lawsuit, Moonbug submitted notices under the Digital Millennium

26  Copyright Act ("DMCA") to YouTube identifying and alleging copyright infringement by

27  Defendant's videos and requesting that YouTube take them down.  *See* Docket No. 40 at 4–5;

28  Docket No. 71 at 4.  Moonbug then filed this lawsuit.  *See* Docket No. 1.  Defendant responded

United States District Court
Northern District of California

with its initial answer and counterclaims.  Docket No. 20.  Defendant's initial counterclaims included three causes of action: one under § 512(f) of the DMCA and two counterclaims under California law for statutory and common law unfair competition.  *See id.*

In response, Moonbug filed a joint motion to dismiss all of Babybus's counterclaims and strike its affirmative defenses, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f), as well as a special motion to strike Babybus' state law counterclaims pursuant to California's Anti-SLAPP statute, California Code of Civil Procedure § 425.16.  *See* Docket No. 31.  Babybus responded that it would not oppose, and, would, instead, amend its counterclaims.  *See* Docket No. 34.

In its amended answer and counterclaims, Babybus reasserted and expanded its state law counterclaims, alleging that Moonbug's DMCA notices to YouTube violated California's unfair competition law, intentionally interfered with Babybus's economic relationships with overseas subscribers, and intentionally interfered with Babybus's contractual relationship with YouTube.  *See* Docket No. 36 ¶¶ 48-62.  Moonbug filed a second motion to dismiss and special anti-SLAPP motion to strike the state law counterclaims.  Docket No. 40.

The Court granted Moonbug's anti-SLAPP motion to strike, finding Babybus's position that DMCA notices were unprotected commercial speech lacked support, and finding Babybus's state law counterclaims preempted by the Copyright Act.  Docket No. 71 at 22, 26.  The Court determined that Moonbug was entitled to attorneys' fees and costs under the anti-SLAPP statute, which it could seek by motion.  *Id.* at 26.

Following the Court's order, the parties engaged in a meet and confer to discuss the amount of attorneys' fees owed to Plaintiff.  Docket Nos. 73 ("Tyz Decl."); 77 ("Stake Decl.").  In the process of conferring, Babybus requested billing records to support Moonbug's claimed hours; Moonbug provided the requested billing records.  Stake Decl. ¶ 3.  The parties did not reach an agreement.

Moonbug now moves for fees and costs of $173,522.85.  Reply at 16.  This amount includes 72.47 hours related to Plaintiff's first anti-SLAPP motion, 139.39 hours related to Plaintiff's second anti-SLAPP motion, and $49,022.75 for 86.97 hours in fees-on-fees related to

2

1    preparation and briefing this motion.  Tyz Decl. ¶¶ 15-17, 22-23; Docket No. 79 ("Suppl. Tyz

2    Decl.) ¶¶ 5-7.

3                        **III.      LEGAL STANDARD**

4    A.      Fees Under California's anti-SLAPP Statute

5            The prevailing party on an anti-SLAPP motion may recover attorneys' fees and costs "as a

6    matter of right."  *Morrow v. L.A. Unified Sch. Dist.*, 149 Cal. App. 4th 1424, 1446 (2007); *see* Cal.

7    Civ. Proc. Code § 425.16(c)(1); *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206–07 (9th Cir.

8    2005) (anti-SLAPP fee-shifting applies in federal court).  The Court's Order granting Moonbug's

9    second anti-SLAPP motion held that Moonbug was the prevailing party and "is entitled to

10   attorneys' fees."  *See* Docket No. 71 at 26.

11           Additionally, Moonbug is entitled to recover fees in connection with its first anti-SLAPP

12   motion, directed at Babybus's initial counterclaims.  *See* Docket No. 71 at 26 (voluntary dismissal

13   of a claim subject to an anti-SLAPP motion does not "absolve the Plaintiff of liability for fees and

14   costs incurred by Defendant striking the claim") (quoting *Complex Media, Inc. v. X17, Inc.*, No.

15   CV1807588SJOAGRX, 2019 WL 2896117, at *6 (C.D. Cal. Mar. 4, 2019)).  Other courts have

16   affirmed that a Defendant "cannot amend a pleading to avoid a pending anti-SLAPP motion."  *See*

17   *Art of Living Found. v. Doe*, No. 5:10-cv-05022-LHK, 2012 U.S. Dist. LEXIS 61582, at *75

18   (N.D. Cal. May 1, 2012) (quoting *ARP Pharmacy Servs., Inc. v. Gallagher Bassett Servs., Inc.*,

19   138 Cal. App. 4th 1307, 1323 (2006)).

20           To determine a reasonable attorney fee award, courts use the lodestar adjustment approach

21   by multiplying the number of hours reasonably spent by a reasonable hourly rate to arrive at a

22   presumptively reasonable fee award.  *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (2001);

23   *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  "[A]n attorney fee award

24   *should ordinarily include compensation for* all *the hours* reasonably *spent, including those relating*

25   *solely to the fee."  Ketchum*, 24 Cal. 4th at 1141; *see Ridgeway v. Wal-Mart Stores Inc.*, 269 F.

26   Supp. 3d 975, 986 (N.D. Cal. 2017).

27           An award of fees and costs in an anti-SLAPP case must be reasonable, and courts have

28   broad discretion in determining what is reasonable.  *See Metabolife Intern., Inc. v. Wornick*, 213 F.

United States District Court
Northern District of California

3

1    Supp. 2d 1220, 1222 (S.D. Cal. 2002).  The degree of success obtained is the most critical factor

2    in determining a reasonable fee.  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

3    <div align="center">**IV.    <u>DISCUSSION</u>**</div>

4          Babybus does not dispute that Moonbug is entitled to reasonable attorneys' fees for its first

5    and second anti-SLAPP motions.  Docket No. 76 ("Opp.") at 5.  Additionally, Babybus does not

6    challenge Moonbug's attorney rates.  *Id.*[1]  Instead, Babybus challenges the number of hours for

7    which Moonbug seeks compensation as unreasonable.  *Id.*

8    A.    <u>Good Faith Meet and Confer</u>

9          As an initial matter, Babybus argues that Moonbug's fee request should be reduced

10   because Moonbug's representations and conduct during meet and confers on this request

11   demonstrated a lack of good faith effort to reach a resolution to the disputed issues relating to the

12   fee request.  Opp. at 7-8; N.D. Cal. L. R. 54-5(a) (a party bringing a fees motion is required to

13   "meet and confer for the purpose of resolving all disputed issues").  Babybus's argument is not

14   persuasive.

15         Babybus claims that Moonbug inappropriately sought compensation for 324 hours of work

16   on the anti-SLAPP motions, a number which it alleges Moonbug could not support and

17   incorporated an overwhelming amount of ours which were not compensable as related to the anti-

18   SLAPP motion.  *Id.*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("Counsel for the

19   prevailing party should make a good faith effort to exclude from a fee request hours that are

20   excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is

21   obligated to exclude such hours from his fee submission.").

22         This argument is not an accurate accounting of the exchange, and is not supported by the

---

[1] The Court independently concludes that Moonbug's attorney rates, between $475-690 per hours, are reasonable when compared to approved hourly rates for attorneys of comparable experience, including those of Defendant's counsel.  *See, e.g., Orthopaedic Hosp. v. Encore Med., L.P.,* No. 3:19-cv-00970-JLS-AHG, 2021 2021 WL 5449041, at *14–15 (S.D. Cal. Nov. 19, 2021) (awarding fees at hourly rates as high as $1,260 for work performed by attorneys at Quinn Emanuel Urquhart & Sullivan, LLP); *UM Corp. v. Tsuburaya Prods*. Co., No. CV 15-03764-AB (AJWx), 2018 U.S. Dist. LEXIS 241753, at *37–41 (C.D. Cal. Aug. 1, 2018) (approving hourly rates as high as $960 in a copyright action, "which were allegedly 20% lower than what Quinn Emanuel would typically charge").

<div style="writing-mode: vertical-rl">United States District Court
Northern District of California</div>

evidence in the record.  Moonbug estimated it spent "roughly" 324 hours in total, accounting for both compensable and non-compensable time spent on the joint motions to dismiss and strike, and offered to accept compensation for *half* of the total estimated fees as an estimate of compensable time spent on anti-SLAPP issues.  *See* Tyz Decl. ¶ 4; *id.*, Exh. 9 at 8 (Moonbug offering to accept $96,152 in the initial meet and confer exchange).  Moreover, when Babybus rejected Moonbug's offer and requested to review Moonbug's billing records, Moonbug promptly turned the billing records over to Babybus for inspection.  Tyz Decl. ¶ 4.

In rejecting Moonbug's offer to resolve the fee dispute for $96,152, Babybus made a counteroffer of $15,580 and claimed and Moonbug should have only expended 25-35 hours to prepare its motions.  *Id.*, Exh. 9 at 4-5.  Babybus did not provide an explanation for its assertion that Moonbug should have spent just 35 hours on the motions.  *Id.*  Indeed, Babybus now concedes that Moonbug is entitled, at the very least, to nearly four times as much as this counteroffer, compensating nearly three times as many hours as it allotted in its counteroffer.  Opp. at 16 (Babybus argues that Moonbug is entitled to compensation for 94.59 "total permissible hours" and that Moonbug is "entitled to no more than $55,331.37").

Viewed as a whole, the Court finds nothing in the record demonstrating a lack of good faith or candor by Moonbug during the meet and confer process.  A reduction in fees based on conduct during the meet and confer process is not warranted.

B.   Hours Spent on anti-SLAPP Motions

Moonbug seeks fees for its time spent on its two anti-SLAPP motions as follows:

| Basis | Total Hours | Fees Sought |
|---|---|---|
| Work Related to Original SLAPP Counterclaims | 72.48 | $42,715.90 |
| Work Related to Amended SLAPP Counterclaims | 139.39 | $81,789.00 |

Fee Mot. at 11; Tyz Decl. ¶¶ 17-23.  Moonbug claims that it "seeks only reimbursement for work reasonably and necessarily performed in connection with its anti-SLAPP motions."  *Id.* at 11-12.  Moonbug enters billing records split into three categories for each motion:

(1) work related only to anti-SLAPP issues (38.39 hours on the first motion, 55.10

5

1     hours on the second motion), Tyz Decl., Exhs, 1, 4;

2         (2) work "inextricably intertwined" with the anti-SLAPP motions and related to both

3             anti-SLAPP issues and federal issues (34.09 hours on the first motion, 84.29 hours

4             on the second motion), Tyz Decl., Exhs. 2, 5; and

5         (3) non-compensable work related to federal issues and issues unrelated to anti-

6             SLAPP, Tyz Decl., Exhs. 3, 6 (26.91 hours on the first motion, 81.84 hours on the

7             second motion).

8         Specifically, Moonbug seeks to recover fees for hours spent on the first and second

9     category of records.  Moonbug does *not* seek fees for work in the third category.  Moonbug

10    acknowledges it is not entitled to "$64,398.75 in fees related to 108.75 hours of attorney time

11    dedicated to issues unrelated to the anti-SLAPP motions, including time dedicated to the § 512(f)

12    counterclaim, untimeliness of the amended answer and affirmative defenses, fair use and copyright

13    misuse defenses, and two post-hearing supplemental submissions requested by the Court."  *Id.* at

14    11-12; Tyz Decl. ¶¶ 18, 24, 27.

15        1.    <u>Inextricably Intertwined</u>

16        Babybus concedes that Moonbug is entitled to fees for work on the anti-SLAPP sections of

17    its motions, as well as any "work that is inextricably intertwined with an anti-SLAPP motion."

18    *See Fallay v. S.F. City & Cty.*, No. 08-cv-2261 CRB, 2016 WL 879632, at *3 (N.D. Cal. Mar. 8,

19    2016).  However, Babybus argues that the work that Moonbug has categorized as "intextricably

20    intertwined" (category 2) is not truly so, and, therefore, is not compensable.  Opp. at 9-10.

21        Although Moonbug cannot recover fees for work performed solely on Defendant's federal

22    counterclaim or defenses, "expenses incurred on common issues of fact and law qualify for an

23    award of attorneys' fees under the anti-SLAPP statute and those fees need not be apportioned."

24    *Open Source Sec., Inc. v. Perens*, No. 17-cv-04002-LB, 2018 WL 2762637, at *5 (N.D. Cal. June

25    9, 2018).  Here, Babybus's state law counterclaims shared both a "common core of facts" with the

26    § 512(f) counterclaim and were "based on related legal theories," and so work on those shared

27    issues is compensable.  *See Ibrahim v. Dep't of Homeland Sec.*, 912 F.3d 1147, 1174 (9th Cir.

28    2019).  Babybus's allegations that Moonbug submitted "false and/or misleading DMCA takedown

United States District Court
Northern District of California

notices" were the basis for all its counterclaims, both the lone federal claim and the three state law

claims.  *See* Docket No. 36 ("Am. Counterclaims") ¶¶ 50, 56, 60.  The legal theories for the claims

were also related.  Moonbug's anti-SLAPP argument involved arguing that § 512(f) provided the

"sole remedy" for objections to a DMCA notice, thus preempting Babybus's state law claims.

*See, e.g.*, Docket No. 40 at 26 ("Defendant's State Law Counterclaims are preempted because they

turn on the content of Moonbug's DMCA communications with YouTube.  Indeed, Defendant's

sole basis for jurisdiction, that its counterclaims 'arise under the copyright laws of the United

States,' concedes as much. . . Defendant alleges no misconduct other than sending these DMCA

communications to YouTube.").  Moreover, Moonbug's argument that Babybus did not plausibly

allege a wrongful act by Moonbug is promulgating the takedown notices applies to both the

Section 512(f) and the state law counterclaims.  *See* Docket No. 40 at 11–13; 28 ("This

counterclaim also fails because it requires allegations of a 'wrongful act, which refers to an

unlawful act that is proscribed by a constitutional, statutory, regulatory, common law, or other

determinable standard. . . Here the only allegedly wrongful act is Moonbug's DMCA notices to

YouTube, which, as discussed above, was lawful."); 29 ("YouTube is not obligated under the

terms to allow Defendant to post infringing videos and has 'discretion' to remove or take down

content that is reasonable believes breaches the agreement.  McHale Decl., Ex. 11.  Further,

YouTube's copyright policies, incorporated in the Terms, explain that '[i]f a copyright owner

submits a valid DMCA' webform complaint, YouTube will 'take down that video and apply a

copyright strike.'"); 29 ("Defendant's state law counterclaims should still be dismissed for failing

to state a claim under Rule 12(b)(6) for the reasons set forth above.  *See* Section III.C.i.2, *supra*.").

Accordingly, for Moonbug to succeed in striking Babybus's state law counterclaims, it would

have had to prepare the same factual background sections, declarations and exhibits demonstrating

the content of the DMCA takedown notices.  Moonbug's anti-SLAPP briefing, including its

contention that its DMCA notices are protected speech – not exempted commercial speech, as

Babybus argued – refers back to these factual background sections, exhibits, declarations and

supporting evidence.  *See e.g.*, Docket No. 46 at 16 ("Defendant cannot establish any elements of

this exemption; so, it does not apply here. . . [T]he counterclaims arise from Moonbug's DMCA

notices asserting a legal claim of copyright infringement, not any factual representations of its business or goods. . . Moonbug did not submit the DMCA notices to promote or secure sales of any goods or services, but to protect its copyrights. . . Nor does Defendant allege any facts that plausibly suggest that YouTube would use the DMCA notices to influence any purported 'customer' or 'buyer' of Defendant's.").  Indeed, at the hearing Babybus admitted that the validity of Moonbug's anti-SLAPP motion is affected by the content of the DMCA notices when it conceded that "if it turns out there is no misrepresentation, presumably *everything* would fall." Tyz. Decl., Exh. 10 ("Hearing Transcript") at 19:2-18 (emphasis added).  In sum, there was an inextricable overlap in Moonbug's briefing on the anti-SLAPP and other counterclaims.

Babybus does not address the fact that each of its counterclaims, state and federal, were legally predicated on its argument that Moonbug's DMCA takedown notices were misleading, and that Moonbug had to rebut this contention in order to overcome both sets of claims.  Instead, Babybus cites *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, for the proposition that "mere common issues of fact are insufficient to award *all* fees when legal theories do not overlap or are not inextricably intertwined."  2019 WL 8377690, at *4 (N.D. Cal. Sept. 24, 2019) (quoting *Kearney v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1184 (S.D. Cal. 2008)) (emphasis added). But Moonbug is not seeking all its fees—it identified $64,398.75 in non-compensable fees corresponding to 108.75 hours of work on issues unrelated to its anti-SLAPP motions and excluded them from its request.  *See* Tyz Decl. ¶ 27.  And *Resolute Forest* expressly acknowledged that "[w]ork that is inextricably intertwined with an anti-SLAPP motion is compensable."  *Id.*  Indeed, in *Resolute Forest,* the court ultimately accepted the movant's supplemental breakdown of compensable time—which is what Moonbug has provided—and awarded $545,572.36 in attorneys' fees.

Thus, Moonbug is entitled to recover the fees in category 2, for work done on issues that were inextricably intertwined with its anti-SLAPP motion work.

### 2.    Unnecessary Reply Brief

After Moonbug filed its first motion to dismiss and strike, Docket No. 31, Babybus responded by filing an opposition explaining that the motion to dismiss would be mooted by the

1   forthcoming filing of an amended Answer and Counterclaims, as of right, Docket No. 34. True to

2   its representation, Babybus subsequently timely filed an amended Answer and Counterclaims

3   pursuant to Fed. R. Civ. 15. See Docket 36. The Court recognized that Moonbug's initial motion

4   to dismiss was thus moot. *See* Docket No. 38 ("Motion to Dismiss is denied as moot."). Even

5   though Babybus informed Moonbug that would file an amended answer and counterclaims in

6   response to Moonbug's initial motion to dismiss, Moonbug still opted to file a reply brief in

7   support of its initial motion. Docket No. 35.

8           Babybus argues that Moonbug's reply brief in support of its initial motion was

9   unnecessary, when Moonbug was already on notice that the operative pleading would be amended,

10  as a matter of Babybus's right. Opp. at 13-14. The Court agrees. There was no need for

11  Moonbug to prepare and file that reply brief; it was unnecessary. Accordingly, Moonbug is not

12  entitled to fees for work performed on that reply brief. This amounts to 10.11 hours. *See* Stake

13  Decl., Exh. B. **These 10.11 hours will be reduced from the final fee award**.

14          3.      Fees on Fees

15          Moonbug requests $49,022.75 covering 86.97 hours of work in connection with this fee

16  motion and reply briefing. Suppl. Tyz Decl. ¶¶ 5-6. Babybus accepts that Moonbug is entitled to

17  recover fees for reasonably work preparing the fee motion and reply at issue, Babybus contends

18  that Moonbug has billed an unreasonable number of hours preparing its fee motion. Opp. at 11-

19  12. Specifically, Babybus contends that the time Moonbug spent on its fees motion, 86.97, is

20  unreasonable when compared to the time it spent on its substantive anti-SLAPP motions (201.67

21  hours on the anti-SLAPP motions after reducing the time spent on the unnecessary first reply

22  brief).

23          Babybus relies exclusively on Magistrate Judge Westmore's explanation in *Mullan v.*

24  *Daniels* that "[c]onsidering that Defendant's counsel spent approximately 15 hours on the

25  summary judgment reply brief, 17.7 hours on a reply in support of an attorney's fees motion is

26  unreasonable." No. 19-CV-04058-KAW, 2021 WL 4932726, at *5 (N.D. Cal. Apr. 7, 2021). But

27  Magistrate Judge Westmore's decision was based on her assessment that in the context of

28  preparation of the *reply* brief, "[the] issues are not complicated, and no additional exhibits or

United States District Court
Northern District of California

1   substantive declarations were required.  *Id.*  But here, it is clear that Moonbug was required to

2   prepare exhibits and research the issues discussed above to justify its fee request. And, ultimately,

3   in comparison to hours spent on the underlying motions for which Moonbug seeks fees,

4   Moonbug's fee on fees request is significantly less than half.  This is not a situation like the one

5   Magistrate Judge Westmore found unreasonable.  Finally, Babybus's argument that the need for

6   this motion could have been avoided had Moonbug engaged in a meet and confer in good faith is

7   meritless, as already discussed.

8        Therefore, Moonbug's request for fees on fees is not unreasonable.

9        4.    <u>Other Issues</u>

10       Babybus suggests several other reasons for the Court to consider reducing Moonbug's fee

11   award.

12            a.    <u>Percentage of Pages</u>

13       First, in support of its argument that Moonbug seeks recovery for time spent on issues that

14   were not inextricably intertwined with its anti-SLAPP motions, Babybus recommends that the

15   Court adopt "percentage of pages" metric to reduce attorney time by calculating the portion of

16   Moonbug's briefing dedicated only to anti-SLAPP issues.  Opp. at 10-11.  But, as already

17   explained, Babybus's argument that Moonbug can *only* recover for work that was *solely* related to

18   its anti-SLAPP arguments is not persuasive.  And because Moonbug has already apportioned its

19   fee request to *exclude* over 100 hours of work on issues that had no overlap with its anti-SLAPP

20   motions, the Court need not employ another metric to divide up Moonbug's request.

21            b.    <u>Research re: Defendant's Counsel's Fees</u>

22       Second, Babybus argues it was unnecessary for Moonbug to research fees that Babybus's

23   counsel have obtained in the past for the purposes of this fee motion, and, thus, 1.20 hours spent

24   on this research should be reduced from the fee award.  Opp. at 14.  There is nothing untoward

25   about Moonbug's research into hours spent and fee awards obtained in similar cases to support its

26   argument that its fee request is reasonable.

27            c.    <u>Overstaffing</u>

28       Third, Babybus asserts that Moonbug "overstaffed" its anti-SLAPP motion. *See* Opp. at

United States District Court
Northern District of California

10

1    14–15.  But the Ninth Circuit has specifically warned that a court "may not attempt to impose its

2    own judgment regarding the best way to operate a law firm, nor to determine if different staffing

3    decisions might have led to different fee requests."  *Moreno v. City of Sacramento*, 534 F.3d 1106,

4    1115 (9th Cir. 2008).  Instead, "the difficulty and skill level of the work performed, and the result

5    achieved . . . must drive the district court's decision."  *Id.*  Here, Moonbug unambiguously

6    prevailed in striking Babybus's state law counterclaims.  And Moonbug's use of five attorneys of

7    various levels of experience on its anti-SLAPP motions is nothing out of the ordinary.  *Zwebner v.*

8    *Coughlin*, No. 05CV1263 JAH(AJB), 2006 WL 8455423, at *3 n.2 (S.D. Cal. Jan. 25, 2006)

9    (noting approval of the use of five attorneys in anti-SLAPP case).  Notably, the time spent on

10   conferring amongst multiple attorneys were fairly minimal.

11                    d.    Duplicative Work

12         Fourth, Babybus asserts that Moonbug needlessly billed *more* for its second anti-SLAPP

13   motion than its first – implying that Moonbug impermissibly overcharged for its work on the two

14   motions.  *Id.* at 15-16.  This argument lacks logic and merit.  That Moonbug was required to

15   litigate the anti-SLAPP issues twice was in due to Babybus's decision to amend its counterclaims

16   in response to Moonbug's initial motion.  That Moonbug billed *more* for its second motion is not

17   only reasonable, but to be expected, in light of the fact that Babybus amended its counterclaims to

18   assert additional state law claims and underlying factual allegations.  Moreover, the Court

19   concludes that Babybus's quibbles with Moonbug's work spent reviewing or revising drafts and

20   communicating internally does not warrant a reduction in fees.  Regardless, to the extent that

21   Babybus objects to the lack of specificity in the content of the billing entries, the Court imposes a

22   reduction which also functions to address this concern, as discussed below.

23                    e.    Block Billing

24         Fifth, Babybus argues that Moonbug "engaged in block billing that makes it impossible to

25   determine whether the claimed 'anti-SLAPP' hours were actually used on the anti-SLAPP

26   portions of the motion."  Opp. at 16.  "Specifically, and as shown in the exhibits to Mr. Tyz's

27   declaration, multiple entries claimed to be associated solely with the Anti-SLAPP motion actually

28   describe a brief that also addressed federal claims, a federal procedural argument, and a motion to

United States District Court
Northern District of California

11

strike federal affirmative defenses." *Id.* (citing Tyz Decl., Exh. 1 (showing entries for "Review motion to dismiss and supporting declaration; instruct team regarding same," "Discuss with team and review reply brief," and "Review law and rules related to motion" without specifying whether those entries pertain specifically to the anti-SLAPP portion of the motion). Babybus makes a fair point here.

The lack of clarity is also evident in the exhibits purporting to distinguish work that is "inextricably intertwined" with the anti-SLAPP motions, and work that is non-compensable because it does not involve issues related to the anti-SLAPP motions, but time log entries across the two exhibits contain nearly identical descriptors. *Compare* Tyz Decl., Exh. 2 (chart purporting to include work that overlaps between anti-SLAPP and other work contains entries including "review motion to dismiss," "work on motion to dismiss," and "review and revise motion to dismiss") with *id.*, Exh. 3 (chart purporting to include non-compensable work contains entries including "review and revise motion to dismiss," "draft portion of motion to dismiss," "review draft motion to dismiss and confer with R. Tyz regarding arguments/strategy"). Indeed, nearly all of the entries in the category of work which Moonbug suggests was "inextricably intertwined" between anti-SLAPP and other work are marked with vague descriptions, like "review motion to dismiss." To Moonbug's credit, its counsel has gone through and made categorization determinations, and Moonbug demonstrates good faith by excluding a significant portion of its hours spent (over 100 hours) on these motions as non-compensable. Moonbug is correct in noting that that fee requests can be based on "reconstructed records" like those provided here, not only contemporaneous records. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). Nonetheless, the time log entries as shown make it difficult for the Court to verify whether Moonbug has properly categorized hours spent which are and are not compensable.

Accordingly, accounting for the fact that Moonbug demonstrates good faith by excluding a significant number of hours worked from its fee request based on its assessment of whether the work was compensable, but still recognizing that it is difficult to verify these assessments based on the vague text of the log entries, the Court imposes a modest discount of 5% to the fees sought for the anti-SLAPP motions. *See Fallay*, 2016 WL 879632, at *5 ("Because the Court cannot with

1   precision eliminate particular billing entries that are, in the Court's determination, either (1) <u>not</u>

2   inextricably intertwined with the anti-SLAPP motion or (2) excessive, the Court will have to

3   approximate, using its broad discretion."); *Darling Int'l., Inc. v. Baywood Partners, Inc*., 2007 WL

4   4532233, at * 9 (N.D. Cal. Dec. 19, 2007) (as a percentage penalty for block billing, courts tend to

5   make a reduction "ranging from 5% to 30%"); *see also Moreno v. City of Sacramento*, 534 F.3d

6   1106, 1112 (9th Cir. 2008) ("[T]he district court can impose a small reduction, no greater than 10

7   percent—a 'haircut'—based on its exercise of discretion and without a more specific

8   explanation."). This reduction is imposed *after* reducing the 10.11 hours from the unnecessary

9   work on the first reply brief.

10              f.    <u>Costs</u>

11        There is no objection to Moonbug's requests for costs in the amount of $25.20. This

12   request is reasonable.

13  C.   <u>Final Calculation of Fee Award</u>

14        In light of the foregoing analysis, the Court calculates Moonbug's final fee award as

15   follows:

16        First, the Court reduces Moonbug's request for work completed on the anti-SLAPP motion

17   by 10.11 hours for unnecessary work on a reply brief regarding the first motion. To impose this

18   reduction, the Court uses a blended hourly rate, derived by dividing the total amount Moonbug

19   seeks for its anti-SLAPP motions by the total number of hours it claims to have spent on those

20   motions: $124,504.90 / 211.87 hours. This yields a blended hourly rate of $587.65. Multiplying

21   the blended hourly rate by 10.11 results in a reduction of $5,941.14.

22        Second, the $5,941.14 for unnecessary work on the first reply brief is deducted from the

23   total request for fees on the anti-SLAPP motions ($124,504.90). This yields $118,563.76.

24        Third, the Court then reduces this amount by 5% as a penalty for Moonbug's block billing.

25   Therefore, the amount to which Moonbug is entitled for its work on its anti-SLAPP motions is

26   $112,635.57.

27        Finally, the Court awards Moonbug's full request for fees on fees ($49,022.75) and costs

28   ($25.20). Thus, the final award amount to which Moonbug is entitled is **$161,683.52.**

United States District Court
Northern District of California

## V.   **CONCLUSION**

The Court **GRANTS** Moonbug's motion for attorneys' fees in the amount of **$161,683.52**.

This order disposes of Docket No. 72.

**IT IS SO ORDERED**.

Dated: April 29, 2022

_____
EDWARD M. CHEN
United States District Judge