1  JENNIFER KELLY (CSB No. 193416)
   jennifer@tyzlaw.com
2  RYAN TYZ (CSB No. 234895)
   ryan@tyzlaw.com
3  ERIN JONES (CSB No. 252947)
   ejones@tyzlaw.com
4  DEBORAH HEDLEY (CSB No. 276826)
   deborah@tyzlaw.com
5  CIARA MCHALE (CSB No. 293308)
   ciara@tyzlaw.com
6  SEAN APPLE (CSB No. 305692)
   sapple@tyzlaw.com
7  CHIEH TUNG (CSB No. 318963)
   chieh@tyzlaw.com
8  TYZ LAW GROUP PC
   4 Embarcadero Center, 14th Floor
9  San Francisco, CA 94111
   Telephone: 415.868.6900
10
   Attorneys for Plaintiffs
11 Moonbug Entertainment Limited and
   Treasure Studio, Inc.
12

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15               **SAN FRANCISCO DIVISION**

16

17 MOONBUG ENTERTAINMENT            Case No: 3:21-cv-06536-EMC
   LIMITED and TREASURE STUDIO, INC.,
18                                   **MEMORANDUM OF POINTS AND**
                                     **AUTHORITIES IN SUPPORT OF**
19          Plaintiffs,              **PLAINTIFFS' MOTION FOR**
                                     **SUMMARY JUDGMENT**
20      v.
                                     **FILED UNDER SEAL**
21 BABYBUS CO., LTD and BABYBUS
   (FUJIAN) NETWORK TECHNOLOGY        Date:        February 2, 2023
22 CO., LTD,                          Time:        1:30 p.m.
                                      Judge:       Hon. Edward M. Chen
23          Defendants.               Courtroom:   5, 17th Floor
24
                                      Complaint Filed:   August 24, 2021
25

26

27

28

## <u>TABLE OF CONTENTS</u>

Page

I.      PROCEDURAL HISTORY ............................................................................... 2

II.     THE UNDISPUTED FACTS ......................................................................... 2

        a.      The Award-Winning CoComelon Series ......................................... 2

        b.      Defendants' Knock-Off Super JoJo Series ..................................... 3

                i.      Defendants Gathered Competitive Intelligence Identifying the
                        Most Successful CoComelon Works to Develop the Super JoJo
                        Videos ......................................................................................... 4

                ii.     Defendants Planned to Use CoComelon "As the Target Setting"
                        and the "Focus of the Visuals" for Super JoJo Videos ............. 4

                iii.    Defendants Instruct Their Developers to Make Super JoJo Videos
                        "As Identical As Possible to CoComelon" ................................ 6

                iv.     Defendants Abandoned An Alternative JoJo for One that Copied JJ ..... 10

                v.      Defendants' Plan Included Copying CoComelon's Channel Down
                        to Promotional Thumbnail Images for Individual Videos ................. 11

        c.      Defendants' Admissions About Their Copying ................................... 11

III.    SUMMARY JUDGMENT STANDARD ...................................................... 12

IV.     DEFENDANTS INFRINGED PLAINTIFFS' COPYRIGHTS ................... 12

        a.      Plaintiffs Own the Copyrights in the CoComelon Works ............... 13

        b.      Direct Evidence Shows Defendants Copied the CoComelon Works ............... 14

        c.      Indirect Evidence Also Shows Defendants' Actual Copying ........... 17

                i.      Defendants Accessed the Copyrighted Works ........................... 17

                ii.     Defendants' Super JoJo Works are Overwhelmingly Similar to the
                        CoComelon Works ................................................................... 18

V.      CONCLUSION ............................................................................................ 25

## TABLE OF AUTHORITIES

Page

**CASES**

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*
    747 F.3d 673, 678 (9th Cir. 2014) ................................................................ 14

*Alfred v. Walt Disney Co.*
    821 F. App'x 727 (9th Cir. 2020) ................................................................. 19

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)....................................................................................... 12

*Anderson v. Stallone*
    No. 87-0592 WDKGX, 1989 WL 206431 (C.D. Cal. Apr. 25, 1989)........................... 22

*Apple Computer, Inc. v. Microsoft Corp.*
    35 F.3d 1435 (9th Cir. 1994) ................................................................... 18, 19

*Broderbund Software, Inc. v. Unison World, Inc.*
    648 F. Supp. 1127 (N.D. Cal. 1986) ................................................... 14, 15, 16

*DC Comics v. Towle*
    802 F.3d 1012 (9th Cir. 2015) ..................................................................... 20

*Ets–Hokin v. Skyy Spirits, Inc.*
    225 F.3d 1068 (9th Cir. 2000) ..................................................................... 14

*Fun With Phonics, LLC v. LeapFrog Enterprises, Inc.*
    No. CV 09-916-GHK (VBXX), 2010 WL 11404474 (C.D. Cal. Sept. 10, 2010)....20, 22

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.,*
    462 F.3d 1072 (9th Cir. 2006) ..................................................................... 18

*GoPro, Inc. v. 360Heros, Inc.*
    291 F. Supp. 3d 1060 (N.D. Cal. 2017) ........................................... 13, 17, 19

*LA Gem & Jewelry Design*
    2020 WL 5440501 ..................................................................................... 13

*Lucasfilm Ltd. LLC v. Ren Ventures Ltd.*
    No. 17-CV-07249-RS, 2018 WL 5310831 (N.D. Cal. June 29, 2018)......... 12, 13, 17, 19

*M. Kramer Mfg. Co., Inc. v. Andrews*
    783 F.2d 421 (4th Cir.1986) ....................................................................... 17

*Metcalf v. Bochco*
    294 F.3d 1069 (9th Cir. 2002) ..................................................................... 18

*Rogers v. Koons*
    960 F.2d 301 (2d Cir. 1992).............................................................. 14, 15, 16

*S.O.S., Inc. v. Payday, Inc.*
    886 F.2d 1081 (9th Cir. 1989) ................................................................................ 12

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*
    952 F.3d (9th Cir. 2020) ............................................................................... 17, 18

*Spectravest, Inc. v. Mervyn's Inc.*
    673 F. Supp. 1486 (N.D. Cal. 1987) ....................................................................... 13

*Standard Fabrics Int'l, Inc. v. Dress Barn Inc.*
    No. 2:15-cv-08437(ODW)(PJW), 2017 WL 240072 (C.D. Cal. Jan. 19, 2017) ........... 13

*Star Fabrics, Inc. v. Target Corp.*
    No. CV 10-07987 DDP AGRX, 2011 WL 4434221 (C.D. Cal. Sept. 22, 2011) .......... 13

*Symantec Corp. v. Logical Plus, Inc.*
    No. C 06-7963 SI, 2009 WL 3416178 (N.D. Cal. Oct. 20, 2009) ................................ 17

*Three Boys Music Corp. v. Bolton*
    212 F.3d 477 (9th Cir. 2000) ....................................................................... 12, 17, 18

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*
    715 F.2d 1327 (9th Cir. 1983) .............................................................................. 13

*Unicolors, Inc. v. Urb. Outfitters, Inc.*
    853 F.3d 980 (9th Cir. 2017) ....................................................................... 17, 18, 19

*United Fabrics Int'l, Inc. v. G-III Apparel Grp., Ltd.*
    No. CV13-00803-ODW AJWX, 2013 WL 7853485 (C.D. Cal. Dec. 27, 2013) ........... 13

*Walt Disney Prods. v. Air Pirates*
    581 F.2d 751 (9th Cir. 1978) ............................................................................... 20, 22

*Williams v. Gaye*
    895 F.3d 1106 (9th Cir. 2018) .............................................................................. 12

**STATUTES**

17 U.S.C. § 106 ................................................................................................ 12, 13, 14

Fed. R. Civ. P. 56 ............................................................................................... 12

*"The scenes should be as identical as possible to Cocomelon."*

*– Defendants' Super JoJo Planning Team*

CoComelon's YouTube channel is the number one children's channel in the world, and the most watched YouTube channel, of any genre, in the United States. Recognizing CoComelon's runaway success, Defendants set out to create a knock-off show, Super JoJo. As the undisputed, direct evidence shows, Defendants repeatedly instructed the team working on Super JoJo to copy Moonbug's CoComelon series. And that is what they did.

From the initial planning for Super JoJo, Defendants instructed their employees to "[u]se the kids' channel Cocomelon as the target setting" and to make CoComelon the "Focus of the Visuals" for their Super JoJo series. Defendants' development documents are replete with smoking guns, including documents explicitly directing the development team to make Super JoJo videos "as identical as possible" to CoComelon. Defendants also testified that they sought to mimic the "look and feel" of CoComelon. Lest there be any doubt that Defendants intentionally set out to copy CoComelon as closely as possible, their documents reveal that developers *traced* over CoComelon characters and used CoComelon Works as their "draft" to produce Super JoJo videos. With this methodical plan in place, Defendants succeeded in creating a series that looks and feels just like CoComelon.

Defendants knew what they were doing was wrong—the head of their drawing team directed his team to make it *less obvious* they were copying CoComelon's "reference videos" without changing them. Yet Defendants continued copying and building their entire Super JoJo brand on the back of Moonbug's IP. This undisputed direct evidence that Defendants copied the CoComelon franchise warrants summary judgment, finding Defendants liable for infringement of each of Plaintiffs' registered copyrights in CoComelon, including copyrights covering CoComelon's beloved and recognizable star JJ and his supporting cast of family characters, copyrights covering CoComelon's "Yes Yes" and "No No" series of videos, and copyrights on other blockbuster CoComelon videos (collectively, the "CoComelon Works"). *See* Not. of Mot.

Beyond the extensive direct evidence of Defendants' copying, the undisputed facts show indirect evidence of copying as well, which independently warrants summary judgment.

Defendants admit they repeatedly accessed and studied the CoComelon series before and throughout the development of Super JoJo.  And the similarity between the CoComelon Works and Defendants' Super JoJo series ("Infringing Works") is so obvious and flagrant that no reasonable jury could find that Defendants independently developed Super JoJo.  The Court should grant summary judgment as to Defendants' liability for copyright infringement on all of Defendants' Infringing Works, leaving only the questions of the Defendants' willfulness and the amount of damages.

## I.      RELEVANT PROCEDURAL HISTORY

On February 25, 2022, the Court granted Moonbug's motion to strike Defendant's affirmative defenses based on copyright misuse and fair use, holding that the similarities alleged by Moonbug in its pleading were "numerous and detailed and transcend the basic elements of e.g., 'anatomical features of human babies,' and thus cannot sustain a fair use defense."  Dkt. No. 71, at 27; 10 n.2.  The Court also noted that the "examples of frame-by-frame copying, copying of thumbnail art, copying of plot, setting, pace and sequence of events" "on their face, clearly demonstrate the similarities make up a substantial portion of the copyrighted works."  *Id.* at 10.

The Court also dismissed all of Defendant's counterclaims with prejudice, reasoning that its meritless allegations focused "on the copyright protectability of individual features of Moonbug's artworks and characters in isolation, but fail[ed] to consider that a copyright infringement claim can be based on a selection, arrangement, or combination of such features."  *Id.* at 16.  On May 6, 2022, Moonbug filed its operative amended complaint for copyright infringement against Defendants BabyBus Co., Ltd. and BabyBus (Fujian) Network Technology Co., Ltd.  Dkt. No. 87.  On June 6, 2022, Defendants answered without reasserting the defense of fair use, or bringing any counterclaims.  Dkt. No. 92.  Accordingly, the only remaining claim in this case is Moonbug's claim against Defendants for copyright infringement.

## II.     THE UNDISPUTED FACTS

### a.      The Award-Winning CoComelon Series

CoComelon is an award-winning animation show made for a preschool audience.  Chubb Decl., ¶ 2.  CoComelon is one of the most popular preschool series in the world.  *Id.*  CoComelon's

YouTube channel has approximately 149 million subscribers and is not only the most watched children's channel on the platform, and the most-watched channel in the United States, but the second-most watched channel on YouTube in the world. *Id*. The series is also available on Netflix, Cartoon Network, Roku, Hulu, Peacock, AppleTV, and Amazon. *Id*.

CoComelon episodes feature a loveable cast of characters led by baby "JJ" and his supportive and cheerful family, composed of JJ's mother, father, older sister, older brother, and their dog named "Bingo." *Id*. ¶ 2. All of the CoComelon Works feature JJ as the central character and core of the CoComelon franchise. Apple Decl., ¶¶ 3-4 (Exs. 2-108); Krause Decl., ¶ 3, Ex. 1, ¶¶ 167, 170. Moonbug's and Defendants' expert witnesses agree that CoComelon's JJ has physical and conceptual qualities, and that JJ is recognizable as the same character throughout CoComelon's videos. Krause Decl., ¶ 3, Ex. 1, ¶¶ 165, 176; Apple Decl., Ex. 148 ¶¶ 165, 169. Defendants' expert could not identify a single baby character with this combination of characteristics, nor does she claim that JJ is a copy of any other character. Apple Decl., Ex. 148 197-98, Appx B at 237–46, 253–56. Nor does Defendants' expert identify any other preschool program that contains a family with the same physical and conceptual qualities as CoComelon's family, the same selection and arrangement of other expressive elements as CoComelon, or claim CoComelon is a copy of another show. Krause Decl., ¶ 3, Ex. 1, ¶¶ 177–86; Apple Decl., Ex. 148 App'x B at 247–51, 256–64.

Treasure Studio is the owner, and Moonbug is the exclusive licensee, of registered copyrights in the CoComelon Works asserted here, including copyrights in the JJ character (the "JJ Registrations"), in the CoComelon family characters (the "Family Registrations"), in the popular "Yes Yes" and "No No" series of videos (the "Yes Yes Registrations"), and in many of CoComelon's most popular video works that were copied frame-by-frame by Defendants (the "Frame by Frame Registrations"). *See* Appendix A; Apple Decl., ¶¶ 3–4 (listing all CoComelon Copyright Registrations), Ex. 520 (Defendants' December 2018 "Top 200" competitive intelligence list, linking to a number of these), Ex. 566; Chubb Decl. ¶¶2-3.

**b.   Defendants' Knock-Off Super JoJo Series**

In 2018, Defendants planned to launch a new young children's channel aimed at toddlers

ages 1 to 2.5 years.  Apple Decl., ¶51, Ex. 552 (X. Lin) 30:12–31:13, 32:9–21;  Dkt. Nos. 20, 21, 43.  Lacking a product for this demographic, they set out to find and replicate the number one company in that market. Apple Decl., ¶ 55, Ex. 555 (Sun) 16:13–18:7; *id.* ¶ 12, Ex. 522.

i.  <u>Defendants Gathered Competitive Intelligence Identifying the Most<br>Successful CoComelon Works to Develop the Super JoJo Videos</u>

To find their target, Defendants conducted competitive intelligence on the "intellectual property" of young children's channels on YouTube.  Apple Decl., ¶ 51, Ex. 552 (X. Lin) 10:20–25; *id.* ¶ 52, Ex. 553 (Yan) 313:13–2; *id.*, Exs. 518-522.  Based on that research, Defendants identified and ranked CoComelon as the most successful young children's channel competitor.  *See id.*, ¶ 12, Ex. 522 (ranking CoComelon No. 1); *id.* ¶ 52, Ex. 553 (Yan) 385:21 (agreeing that based on its "competitive intelligence … BabyBus concluded that CoComelon was the top competitor IP channel on YouTube"), 313:22–317:5, 322:10–18, 323:23–328:1, 332:9–15, 334:24–337:4, 339:18–347:3, 380:23-381:6; *see also id.*, Exs. 517-519, 521-522; *id.*, Ex. 520 (listing 27 CoComelon videos in a "Top 200" list); *id.*, ¶ 51, Ex. 552 (X. Lin) 13:3–11, 14:4–15:17, 19:19–20:17, 22:2–5; 25:12–26:19, 28:3–18, 29:1–5. Defendants' competitive intelligence activities also involved studying the CoComelon series, including watching dozens of CoComelon videos, summarizing them, and embedding images of the CoComelon characters in their competitive intelligence summaries.  *Id.* ¶ 52, Ex. 553 (Yan) at 325:23-326:1, 327:3-328:1, 334:24–337:4, 341:13–347:3, 350:10–353:8, 358:5–360:24, 362:1–21, 378:11-20 (admitting Depo. Ex. 16 [Ex. 522] contains an image of CoComelon's cast).  Defendants were thus well aware of the CoComelon franchise, main character JJ, and his family of characters before Super JoJo production began.  *See, e.g.*, *id.* ¶ 51, Ex. 552 (X. Lin) 16:25-17:21.

ii.  <u>Defendants Planned to Use CoComelon "As the Target Setting" and the<br>"Focus of the Visuals" for Super JoJo Videos</u>

After identifying CoComelon as their No. 1 competitor on YouTube and studying it, Defendants made development plans for their Super JoJo show.  Apple Decl. ¶ 51, Ex. 552 (X. Lin) 48:7-50:20. Defendants' plans instructed their team to: "**Use the kids' channel Cocomelon as the target setting.**"  *Id.*, ¶ 13, Ex. 523; *id.* ¶ 51, Ex. 552 (X. Lin) at 30:12–31:3; 35:1–24; *id.* ¶ 52, Ex. 553 (Yan) at 390:5–8 (emphasis added).  This early document identified the needs of

toddlers, and the chosen "IP settings" as a family that copied CoComelon's, with "(baby, father, mother, older brother, and older sister), pets, toys (immersive), and animals." *Id.*, Ex. 523 at 4.

Defendants then prepared their main planning presentation for the entire Super JoJo show, entitled "Young Children's Channel," to describe and introduce the Super JoJo plan to the BabyBus team, including the specifications for producing Super JoJo. *Id.*, Ex. 524 (hereinafter, the "Super JoJo Specifications"); *id.* ¶ 51, Ex. 552 (X. Lin) at 48:7–19, 50:21–25, 51:1–5, 57:22–60:2; *id.* ¶ 52, Ex. 553 (Yan) at 393:13–394:2. The Super JoJo Specifications use CoComelon's JJ character from CoComelon's "This is the Way" video as the "Focus of the visuals":



Apple Decl. ¶¶ 15-16, Ex. 524 at 18; *id.* ¶ 53, Ex. 554 (Xue) 50:13–23; *id.*, Exs. 41, 42†, 43. The Super JoJo Specifications continue with three more images from CoComelon's "This is the Way" video, and YouTube links for both this video and a compilation video featuring CoComelon's "Yes Yes Vegetables Song"—both of which are asserted CoComelon Works:



Apple Decl. ¶¶ 17-21, Ex. 524 at 19, Exs. 525-526, 14, 15†, 16; *id*. ¶ 53, Ex. 554 (Xue) 53:3–17.

As these Super JoJo Specifications show, Defendants, without question, set out to copy CoComelon; their intention was not merely to create a show inspired by many pre-existing shows targeted at a preschool audience. Defendants' planning documents are not only full of CoComelon content, but CoComelon is the *only* competitor named in the Super JoJo Specifications.  *Id*. ¶ 54, Ex. 555 (Sun) 70:10-20.  A Super JoJo planner testified that the goal and purpose of the Super JoJo Specifications was to "**create a look and feel similar to CoComelon's**." *Id*. ¶ 53, Ex. 554 (Xue) 57:1–10 (emphasis added), 56:18–57:10; *id*. ¶ 51, Ex. 552 (X. Lin)  at 69:10–70:4; Ex. 524.

To get company buy-in on their plans to create a CoComelon knockoff, Defendants shared the January 2019 Super JoJo Specifications widely inside the company.  In fact, Defendants admit distributing these specifications to "quite a lot" of people to introduce them to the plan, including Defendants' co-founder and "essentially all the leaders of the departments involved in taking the plan for Super JoJo through the development and production of Super JoJo videos," such as the leaders of Defendants' business department, planning department, storyboarding department, and 3D department.  *Id*. ¶ 51, Ex. 552 (X. Lin) at 48:20–50:20; *id*. ¶ 52, Ex. 553 (Yan) at 394:14–25.

       iii.    <u>Defendants Instruct Their Developers to Make Super JoJo Videos "As Identical as Possible to CoComelon"</u>

With their plan in place, Defendants implemented it by drafting development documents that repeatedly instructed their team to make Super JoJo videos as identical or similar as possible to CoComelon videos. *See* Apple Decl. ¶¶ 25-26, 28-29, 31-32, Exs. 529-534; Defendants' internal library of development documents for the Super JoJo series are replete with images from registered CoComelon Works, links to CoComelon Works, and downloaded copies of CoComelon Works. *See, e.g.*, Krause Decl. ¶ 3, Ex. 1 ¶¶ 106, 108-111, 113-114, 116-117, 120, 123-124, 126-127; Apple Decl. ¶¶ 11-14, 22-36, Exs. 527-537, 521-524; *see also* the following planning documents that contain images copied from the CoComelon Works: Apple Decl. ¶¶ 22, 37, 38, 39, 40, 41 42, 43, 44, 45 47, 58, Exs. 527, 538, 539, 540, 541, 542, 543, 544, 545, 546, 548, 559.  *See also* Apple Decl. Exs. 9†, 21†, 99†.

For example, Defendants' plan for its "Yes Yes Vegetables" Video was clear – to copy CoComelon's registered "Yes Yes Vegetables" work. Apple Decl. Exs. 14, 15[†], 16, 29, 30[†], 31. The planning document for Defendants' "Yes Yes Vegetables" video instructs their team to "make the scenes as identical to CoComelon as possible" and included a link that led to CoComelon's registered Yes Yes Vegetables video on YouTube:

> Animation focuses: Baby eats four vegetables, and Mom guides baby to eat vegetables with dolls.
>
> Notes:
>
> 1. Try make the scenes as identical to Cocomelon as possible.
>
> 2. Mainly refer to this video: https://www.youtube.com/watch?v=ohHYABXMqUQ

Apple Decl. ¶¶ 31-32, Ex. 535 (red underlining added); *id.* ¶ 58, Ex. 559 at 5. This document also uses 14 images from CoComelon's copyrighted "Yes Yes Vegetables" video work.  Apple Decl. ¶¶ 31-33, Exs. 533-534; *id.*, Exs. 15[†], 30[†]; *id.* ¶ 53, Ex. 554 (Xue) 28:16–23.  Similarly, other development documents show that Defendants created the "rough draft" of their "Yes Yes Vegetables" video from the video and images of CoComelon's registered "Yes Yes Vegetables" work.  *Id.* ¶ 35, Ex. 536; *id.*, Exs. 15[†], 30[†]; *id.* ¶ 51, Ex. 552 (Lin) 122:7–23, 106:3-6 ("Q. And what BabyBus is calling a rough draft is a video of images from CoComelon as part of its storyboard in Exhibit 6; correct? A. Yes."); *id.* ¶ 53, Ex. 554 (Xue) 31:20–23, 33:19–34:16; *id.* ¶ 34, Ex. 535; *id.* ¶ 34, Ex. 535 at 5. Defendants also downloaded a copy of CoComelon's copyrighted Yes Yes Vegetables work, retitled it, and traced over CoComelon's JJ character to develop their knock-off:



Apple Decl. ¶ 34, Ex. 535 at 45 seconds; *id.* ¶ 51, Ex. 552 (X. Lin) 124:18–125:20, 105:24-106:6.
When asked why Defendants had this modified CoComelon video in their files, the Super JoJo
planning team lead explained that "CoComelon's video was used to help with the scene
presentation," allowing "the storyboard department to save time and try to spend less effort in
order to accomplish their job." *Id.* ¶ 51, Ex. 552 (X. Lin) 123:2–23.

Similarly, Defendants used the same strategy to create their knock-off of CoComelon's
"Boo Boo Song." Defendants' development document instructed the team that the "scenes should
be identical as possible to CoComelon" and told them to "mainly refer" to a linked copy of
CoComelon's registered Boo Boo Song video on YouTube:



Apple Decl. ¶¶ 25-26, Exs. 529 (red underlining added), 530; *id.* Exs. 68, 69[†], 70; Apple Decl., ¶
58, Ex. 559 at 5. The development document also contains seven images from CoComelon's
"Boo Boo Song," which Defendants stamped with the text "JoJo" in the red in upper left corner
of each image, and shows Defendants tracing over CoComelon's sister character to make their
own video, as shown below:

*Id.* ¶¶ 25-27, Exs. 529, 530, 69[†]. A draft of this video shows Defendants analyzing where to place
the characters and camera to precisely copy the CoComelon shot composition. *See* Krause Decl.
¶ 3, Ex. 1 ¶ 111; Apple Decl. ¶ 46, Ex. 547. Defendants' 30(b)(6) witness on the development
of Super JoJo testified that the scenes and scene progression of CoComelon's and Super JoJo's

versions of the Boo Boo Song are the same.  Apple Decl. ¶ 54, Ex. 555 (Sun) 105:5-116:13; *id.* ¶ 63, Ex. 564.

Similarly, Defendants' plan for their "Yes Yes Playground Song" knock-off was the same:

> 1.   Mainly refer to https://www.youtube.com/watch?v=KTOwPz-zMWY *(Yes Yes Playground Song)*
>
> 2.   The scenes should be as similar as possible to Cocomelon.

Apple Decl. ¶¶ 28-29, Ex. 531 (red underlining added), 532; Apple Decl. ¶ 58, Ex. 559 at 6.  The link in the screenshot leads to CoComelon's registered "Yes Yes Playground Song" work.  *Id.* ¶¶ 28-29, Exs. 531-532; *id.*, Exs. 2, 3[†], 4.  The development document also contains 26 screenshots from CoComelon's "Yes Yes Playground Song."  *Id.* ¶¶ 29-30, Exs. 531-532, 3[†].

Because Defendants' plan involved creating computer animations, their actions in making Super JoJo videos' scenes "as identical to CoComelon as possible," enabled them to develop reusable models, assets, sets, and populate a library of reusable animations for their show more quickly and easily than they could have if they started from scratch.  Krause Decl. ¶ 3, Ex. 1 ¶ 235.  In making the scenes as "identical … as possible," Defendants could tune their animation models and tools to mimic the precise movement and quality of CoComelon characters and tweak their product to mimic the overall total concept and feel of the CoComelon Works.  *Id.* Defendants have admitted that they have reused such models and assets in subsequent works. Apple Decl. ¶ 52, Ex. 553 (Yan) 181:15-182:7, 182:14-23, 184:15-186:7 (admitting reuse of drawings and models made for prior episodes); *id.* ¶ 51, Ex. 552 (X. Lin) 116:1-8 (admitting reuse of models); *id.* ¶ 56, Ex. 557 (Zhang) 72:2-21 (admitting reuse of resources), 77:8-78:21 (admitting reuse of scenes, sets, props, facial poses made for prior episodes).

Defendants distribute, display and perform all of their Infringing Works, including the above, throughout the United States.  *Id.* ¶ 52, Ex. 553 (Yan) 53:1-55:13; *see also id.* ¶ 6, Exs. 149-516 (Defendants' "Infringing Videos"), including Ex. 149[†] ("Boo Boo Song"), Ex. 150[†] ("Yes Yes Vegetables Song"), Ex. 165[†] ("Yes Yes Playground Song"), and hundreds more.

iv.    Defendants Abandoned An Alternative JoJo for One that Copied JJ

In the Super JoJo Specifications, Defendants included a draft of what their new channel's "main character," "JOJO," might look like (see image at left).   Apple Decl. Ex. 524 at 10; *id.* ¶



56, Ex 557 (Zhang) 66:13-67:1; 67:15-68:4.  But Defendants admitted this JoJo design was never used.  *Id.* ¶ 51, Ex. 552 (X. Lin) 61:11-15.  Rather, Defendants purchased a 3D rig and modified it (including removing its control rigging, removing or modifying its face, head, eyebrows and hair, changing the body around the shoulders, elbows, knees and navel, and changing its colors and textures) to make the JoJo rig, as pictured below next to CoComelon's JJ.  Krause Decl. ¶ 3, Ex. 1 ¶¶ 103, Appendix 10; Apple Decl. ¶ 55, Ex. 556

(Chen) 61:17-19; Krause Decl., Ex. 1 ¶ 236.  Again, Defendants' witnesses, including Super JoJo's lead developer and Defendants' 30(b)(6) witness on the conception, creation, and development of the JoJo character, have testified that they were aware of CoComelon and its main character JJ before any development of Super JoJo began.  Apple Decl. ¶ 51, Ex. 552 (X. Lin) 16:25-17:21; *id.* ¶ 54, Ex. 555 (Sun) 10:3–13; 39:8–13.



| Infringing JoJo | CoComelon JJ |

After releasing dozens of Super JoJo videos, the Super JoJo lead planner changed and Defendants explored a major redesign of the JoJo character. Apple Decl. ¶ 56, Ex 557 (Zhang) 66:13-67:1, 67:15-68:4.  ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id.*  Notably, each and every one of the Infringing

Works feature Defendants' JoJo character.  *Id*. ¶ 6, Exs. 149-516 (Infringing Videos); Krause Decl., Ex. 1, Appendix 4, part 2.

v.   <u>Defendants' Plan Included Copying CoComelon's Channel Down to Promotional Thumbnail Images for Individual Videos</u>

Both CoComelon and Defendants publish their videos on their YouTube channel webpages, where they use small "thumbnail" images to promote the videos.  Krause Decl. ¶ 3, Ex. 1 ¶ 36.  Defendants' plan to copy CoComelon's YouTube channel included pervasive copying of CoComelon's promotional thumbnail images, shown below and in Exhibit 5 to the Krause Declaration.  Defendants' copying of the thumbnail for CoComelon's "Colors Song – with Popsicles" is particularly interesting, as both thumbnails show rainbow popsicles as used in the CoComelon video, but Defendants' video actually features scoops of ice cream.  *Compare* Apple Decl. Exs. 6[†] (CoComelon Work) *to* 155[†] (Infringing Work).

| **Thumbnail for CoComelon's "The Colors Song (with Popsicles)" (Apple Decl. Ex. 562, Dkt. No. 87, ¶59)** | **Thumbnail for BabyBus' "Rainbow Ice Cream – Colors Song" (Apple Decl. Ex. 563, Dkt. No. 87, ¶59).** |
| --- | --- |
|  |  |

c.   **Defendants' Admissions About Their Copying**

Defendants' internal communications make clear that Defendants' copying of CoComelon was both intentional and approved by management.  For example, internal communications in April 2021 show the head of Defendants' 3D department telling the director and heads of the storyboard and drawing teams that copying CoComelon was okay, saying "[i]t should work if we do fake cut just like what COCO did," Apple Decl. ¶ 37, Ex. 538, and "The storyboard drawn is the same as COCO's cut.  It doesn't matter."  *Id*., ¶ 38, Ex. 539; *id*. ¶ 56, Ex 557 (Zhang) 75:25-76:3.  Later that month, Defendants' drawing team head communicated with the director and heads of the storyboard and 3D departments acknowledging how obvious Defendant's copying of CoComelon was:

1
2
3

I recommended that in the future do not let people see so obviously that the reference video(s) are copied with no change made to them at all.  Cocomelon and others are all in here now, even some originals appeared here and there in here. What would viewers perceive BabyBus as then?

4

*Id.* ¶ 39, Ex. 540; *id.* ¶ 55, Ex 556 (Chen) 10:10–21, 44:1–11, 45:9–14, 46:1–17.  He sent this

5

alert because he "was not happy" with "the behavior of copying or inserting other images" that

6

he saw in these storyboard images.  *Id.* ¶ 55, Ex 556 (Chen) 46:18–47:9, 50:8–20.

7

## III.    SUMMARY JUDGMENT STANDARD

8

Summary judgment is appropriate where, as here, there are no genuine issues of material

9

fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56;

10

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  After the moving party meets its

11

burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue

12

for trial." *Lucasfilm Ltd. LLC v. Ren Ventures Ltd.*, No. 17-CV-07249-RS, 2018 WL 5310831,

13

at *6 (N.D. Cal. June 29, 2018) (citing Fed. R. Civ. P. 56(e)) (granting summary judgment for

14

plaintiff on a copyright infringement claim).  "The court is only concerned with disputes over

15

material facts and 'factual disputes that are irrelevant or unnecessary will not be counted.'" *Id.*

16

at *2  (*citing Anderson*, 477 U.S. at 248).

17

## IV.    DEFENDANTS INFRINGED PLAINTIFFS' COPYRIGHTS

18

To prevail on a copyright infringement claim, a plaintiff must show (1) it owns the

19

copyright in the infringed work, and (2) the defendant copied protected elements of the

20

copyrighted work.  *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018) (citations omitted).

21

"Copying" in this context "is shorthand for the infringing of any of the copyright owner's five

22

exclusive rights, described at 17 U.S.C. § 106." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085

23

n.3 (9th Cir. 1989).  A copyright plaintiff may prove copying with either direct evidence or

24

circumstantial evidence.  *Williams*, 895 F.3d at 1119 (citing *Three Boys Music Corp. v. Bolton*,

25

212 F.3d 477, 481 (9th Cir. 2000)).  A plaintiff may establish copyright infringement through

26

circumstantial evidence by showing that the defendant had access to the copyrighted work and

27

that the two works are substantially similar.  *Id.*

28

The Ninth Circuit has found that in copyright cases, "summary judgment for plaintiff is

proper where works are so overwhelmingly identical that the possibility of independent creation is precluded." *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 (9th Cir. 1983) (citations omitted).  Cases like this one, when there is no dispute of material fact about defendant's copying and infringement, are particularly well-suited for summary judgment.  *See, e.g.*, *Lucasfilm Ltd. LLC*, 2018 WL 5310831, at *6; *GoPro, Inc. v. 360Heros, Inc.*, 291 F. Supp. 3d 1060, 1074 (N.D. Cal. 2017); *LA Gem & Jewelry Design*, 2020 WL 5440501, at *6; *Standard Fabrics Int'l, Inc. v. Dress Barn Inc.*, No. 2:15-cv-08437(ODW)(PJW), 2017 WL 240072, at *3–4 (C.D. Cal. Jan. 19, 2017); *United Fabrics Int'l, Inc. v. G-III Apparel Grp., Ltd.*, No. CV13-00803-ODW AJWX, 2013 WL 7853485, at *3–4 (C.D. Cal. Dec. 27, 2013); *Star Fabrics, Inc. v. Target Corp.*, No. CV 10-07987 DDP AGRX, 2011 WL 4434221, at *2–4 (C.D. Cal. Sept. 22, 2011); *Spectravest, Inc. v. Mervyn's Inc.*, 673 F. Supp. 1486, 1490–93 (N.D. Cal. 1987).

There is no genuine dispute that Defendants committed copyright infringement.  The undisputed facts establish that Plaintiffs own the CoComelon Works.  Defendants' copying of the CoComelon Works is also beyond dispute for two independently sufficient reasons.  First, there is undisputed direct evidence of copying because Defendants explicitly and repeatedly instructed their team to copy the CoComelon Works in making Super JoJo.  Second, there is undisputed indirect evidence of copying because Defendants admit accessing the works and their Super JoJo series is substantially similar to CoComelon.  The Court should therefore grant summary judgment and find Defendants liable for copyright infringement.

### a.  Plaintiffs Own the Copyrights in the CoComelon Works

Plaintiff Treasure Studio is the author and owner of the registered copyrights in the CoComelon Works asserted here. Apple Decl. ¶¶ 3-4, Exs. 2-147 (official certificates and deposits from U.S. Copyright Office).  Plaintiff Moonbug is the exclusive licensee of the right to distribute the CoComelon Works, and therefore has standing to bring a copyright infringement claim.  *See* Chubb Decl. ¶ 3; Apple Decl. ¶ 60, Ex. 561; *see also* 17 U.S.C. §§ 106(3) (distribution is an exclusive right under a copyright), 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."); *see also Alaska Stock, LLC v. Houghton Mifflin*

*Harcourt Pub. Co.*, 747 F.3d 673, 678 (9th Cir. 2014).  Moonbug's copyrights in the CoComelon Works were each registered within five years of first publication, and are therefore self-authenticating and *prima facie* evidence of the validity of the copyrights and of the facts stated in the certificates.  *See* 17 U.S.C. § 410(c); *Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075 (9th Cir. 2000).  Thus, Plaintiffs' copyrights are presumed valid, and the burden is on Defendants to offer admissible evidence that rebuts that presumption—which they cannot.

### b.    Direct Evidence Shows Defendants Copied the CoComelon Works

This case is an example of "the rare scenario where there is direct evidence of copying" establishing infringement, including because Defendants gave copies of the CoComelon Works to their creative team, and instructed them to make Super JoJo by targeting CoComelon as the setting, focusing the visuals on CoComelon's JJ character, and making the scenes as identical as possible to CoComelon.  *See Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992).

Summary judgment for a plaintiff on copyright infringement is appropriate where, as here, there is direct evidence that a defendant gave an instruction to copy the plaintiff's work.  *Id.*  In *Koons*, for example, the defendant gave a copyrighted photograph to artisans "with the explicit instruction that the work be copied." *Id.* The defendant stressed the importance of copying the very details of the photograph that embodied plaintiff's original contribution, including the poses, shading, and expressions.  *Id.  Koons* held that this direct evidence was "sufficient to support the district court's granting of summary judgment."  960 F.2d at 307.  Likewise, in *Broderbund Software, Inc. v. Unison World, Inc.*, defendant's supervisors ordered defendant's programmers to copy a software program created by plaintiff.  648 F. Supp. 1127, 1135 (N.D. Cal. 1986).  The Court found that the programmers "evidently executed these orders to the best of their ability" and that the copying was done so carelessly that it left unmistakable traces.  *Id.* at 1135.  Further, while one of the programmers testified that he had previously had a different idea for the user interface, he scrapped it in favor of the copied version of the interface.  *Id.* at 1131.  The Court held that this was sufficient direct evidence of copying to prove infringement.  *Id.* at 1135.

The undisputed direct evidence that Defendants copied the CoComelon Works is even stronger than in *Broderbund* and *Koons*.  Defendants' lead developer for Super JoJo instructed

those working on the series to "[u]se the kids' channel Cocomelon as the target setting" in an early planning document.  Apple Decl. ¶ 13, Ex. 523; *id*. ¶ 51, Ex. 552 (X. Lin) 30:12–31:3; 35:1–24; *id*. ¶ 52, Ex. 553 (Yan) 390:5–8. Defendants' lead developer also created a "project description" presentation to introduce the Super JoJo project to company leadership and the Super JoJo team that instructed that the "focus of the visuals" should be CoComelon.  *Id*. ¶¶ 14-17, Ex. 524; *id*. ¶ 55, Ex. 556 (X. Lin) 48:7–51:5, 57:22–60:2; *id*. ¶ 52, Ex. 553 (Yan) at 393:13–394:2, 394:14–25.  A planner for Super JoJo testified that the overall plan for Super JoJo was to "create a look and feel similar to CoComelon's."  *Id*. ¶ 53, Ex. 554 (Xue) 57:1–10.

Then, after nailing down that CoComelon should be the focus of the new series, Defendants, when planning specific videos, gave explicit instructions to copy CoComelon.  For example, with "Yes Yes Vegetables," Defendants instructed developers that "the scenes should be as identical as possible to Cocomelon."  Apple Decl. ¶ 25, Ex. 529.  Defendants gave similar instructions to copy CoComelon in several other development documents.  *See, e.g.*, *id*. ¶ 31, Ex. 533 ("Try make the scenes as identical to Cocomelon as possible"); *id*. ¶ 28, Ex. 531 ("The scenes should be as similar as possible to Cocomelon.").  *Broderbund* and *Koons* each involved only a single instruction to copy a defendant's work.  But here, the undisputed evidence shows that Defendants *repeatedly* instructed their team to copy CoComelon both for development of the Super JoJo series as a whole and for individual videos.  And because these were computer animations, Defendants' actions in copying the characters, frames, visuals, sequences, animation style, and cinematography of the CoComelon Works in the earliest Super JoJo works allowed them to generate models, assets, sets, and populate a library of animations that they could and did reuse in later Super JoJo videos.  *See* Krause Decl. ¶ 3, Ex. 1 ¶ 235; Apple Decl. ¶ 52, Ex. 553 (Yan) 181:15-182:7, 182:14-23, 184:15-186:7; *id*. ¶ 51, Ex. 552 (X. Lin) 116:1-8; *id*. ¶ 56, Ex. 557 (Zhang) 72:1-21, 77:8-78:21. Thus, every Super JoJo video is a derivative of the earliest Super JoJo videos created by frame by frame copying of CoComelon, as described above.

Beyond explicit instructions to copy, other factors noted in *Broderbund* and *Koons* are also present here.  First, just like the programmer in *Broderbund* who scrapped an original idea to instead copy the plaintiff's work, Defendants abandoned their alternative main character

designs for one that copied JJ.  Apple Decl. ¶¶ 14-17, Ex. 524; *id*. ¶ 51, Ex. 552 (X. Lin) 61:10-15; *see* Krause Decl. ¶ 3, Ex. 1 ¶¶ 101, 103.  And when Defendants redesigned the Super JoJo show in 2020, they again made but disregarded plans that would make JoJo different from JJ, fearing that viewers would not be happy with such changes.  Apple Decl. ¶55, Ex. 562 (Zhang) 66:13-67:1; 67:15-68:4.  Second, as in *Broderbund*, the copying was done so carelessly that it left unmistakable traces.  Literally, Defendants **traced** over CoComelon videos to produce their own knock-off versions, which their lead developer described as "a way for the storyboard department to save time and try to spend less effort in order to accomplish their job."  *See, e.g.*, *id*. ¶ 34, Ex. 535[†] (see at 45 seconds); *id*. ¶ 51, Ex. 552 (X. Lin) 123:2–23, 124:18–125:20; *see also id*. ¶ 27, Ex. 529.  And Defendants used thumbnails to showcase their infringing work that contained images also copying CoComelon even when the Super JoJo video was tweaked not to copy those details.  For instance, Defendants' use of a popsicle in the thumbnail to promote its version of the Colors Song, while they used ice cream instead of popsicles in the actual video, is gratuitous and can only be explained by copying.  Third, like in *Koons*, Defendants stressed the importance of copying the very details of the CoComelon Works that embody the original expression, including the characters, plot, scenes, and poses.  Defendants not only gave explicit instructions to copy CoComelon, but created detailed, scene-by-scene breakdowns of CoComelon videos as the outline for the Super JoJo video being made.  *See, e.g.*, Apple Decl. ¶¶ 25-36, Exs. 529, 531, 533, 535-537.  After being caught, the head of Defendants' drawing team asked his team to make their copying less obvious.  *Id*. ¶ 39, Ex. 540.  Defendants fully knew their copying was wrongful, and yet continued to do it because they were being "lazy."  *Id*. ¶ 51, Ex. 552 (X. Lin) 123:24-124:16.

The Court should find all CoComelon Works infringed and all Infringing Works to be infringing.  Defendants intended to copy Plaintiffs' entire CoComelon franchise and did so.  In the process of making a channel that copied CoComelon, including making carbon copies of Plaintiffs' characters, and making videos that were "as identical … as possible" to CoComelon in their scenes, designs, look and feel and cinematography, Defendants built resources (like models and libraries) they could and did use to make equally infringing subsequent derivative works.  Thus, all of the Super JoJo works *at a minimum* infringe Plaintiffs' JJ Registrations.  Many Super

JoJo works additionally infringe Plaintiffs' Family Registrations, Yes Yes Registrations, and registrations for individually directly copied works.  *See* App'x A.

Where, as here, there is undisputed direct evidence of actual copying, "that is the end of the case" and a plaintiff need not also prove copying through indirect evidence by showing access and substantial similarity.  *Symantec Corp. v. Logical Plus, Inc.*, No. C 06-7963 SI, 2009 WL 3416178, at *6 (N.D. Cal. Oct. 20, 2009) (citing *M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 445 (4th Cir.1986) (holding that plaintiff is entitled to summary judgment against defendant based on direct evidence of copying alone).  The Court therefore can and should grant summary judgment for Moonbug on its claim of copyright infringement based on this evidence alone.

### c.   Indirect Evidence Also Shows Defendants' Actual Copying

Indirect evidence provides another, independent basis for this Court to grant summary judgment in favor of Moonbug. Copyright infringement can be established through indirect evidence by showing (1) that a defendant had access to a copyrighted work, and (2) substantial similarity between the defendant's work and the copyrighted work.  *See Three Boys*, 212 F.3d at 481, *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).  A district court may grant summary judgment for a plaintiff on the issue of copying "when the works are so overwhelmingly similar that the possibility of independent creation is precluded." *Lucasfilm*, 2018 WL 5310831, at *2 (N.D. Cal. June 29, 2018) (quoting *Unicolors*, 853 F.3d at 987); *GoPro*, 291 F. Supp. 3d at 1072 (N.D. Cal. 2017) (same). The Court should grant summary judgment in favor of Moonbug because the undisputed evidence establishes access and substantial similarity.

### i.   Defendants Accessed the Copyrighted Works

It is undisputed that Defendants had access to the CoComelon Works—indeed, they concede it.  Apple Decl. ¶ 52, Ex. 553 (Yan) 324:7-326:12, 327:17-328:1, 334:24–337:4, 341:13–347:3, 350:10–353:8, 358:5–360:24, 362:1–21 (admitting Defendants studied ABCKidTV and CoComelon videos while planning Super JoJo).  But all that is required to prove access is that a defendant had a reasonable opportunity to view or copy a plaintiff's work.  *Three Boys Music*, 212 F.3d at 482.  Here, there is direct evidence of access because: (1) Defendants admitted they

had it; and (2) the evidence shows Defendants accessed, downloaded, captured and carefully studied the CoComelon Works when developing the Infringing Works. *See* Section 2.b and 2.c, *supra,* and materials cited therein; Apple Decl., ¶ 57, Ex. 558 at 8–36 (RFAs 4–23); ¶ 59, Ex. 560 at 5, 7 (Defendants' planning team assigned to create Super JoJo videos "examined videos from . . . CoComelon"); Apple Decl. ¶¶ 7-11, Exs. 518-521 (tabulating and linking to CoComelon videos); *id*. ¶¶ 12-39, Exs. 522-540; *id*. ¶ 52, Ex. 553 (Yan) 324:7-326:12, 327:17-328:1, 334:24–337:4, 341:13–347:3, 350:10–353:8, 358:5–360:24, 362:1–21.

   ii. <u>Defendants' Super JoJo Works are Overwhelmingly Similar to the CoComelon Works</u>

  In assessing whether works are substantially or strikingly similar, courts in the Ninth Circuit apply a two-part analysis:  the extrinsic test and the intrinsic test.  *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017).  The extrinsic test requires plaintiffs to show overlap of "concrete elements based on objective criteria," while the intrinsic test is subjective, asking "whether the ordinary, reasonable person would find 'the total concept and feel of the works' to be substantially similar."  *Id.* (citations omitted).  The extrinsic test is an objective one that focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events."  *Metcalf v. Bochco*, 294 F.3d 1069, 1073 (9th Cir. 2002), overruled on other grounds by *Skidmore*, 952 F.3d 1051.  In applying the test, the "court 'compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters.'" *Funky Films, Inc. v. Time Warner Ent. Co., L.P.,* 462 F.3d 1072, 1077 (9th Cir. 2006), overruled on other grounds by *Skidmore*, 952 F.3d 1051.  The court will filter out and disregard unprotectable elements in making its substantial similarity determination. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994).  Although generic plot ideas and "*scenes a faire*" that necessarily flow from a certain idea or premise may not be protectable elements, the particular selection and arrangement in which an author strings a significant number of unprotectable elements can itself be a protectable element, and the presence of many generic similarities and the common patterns in which they arise can establish objective similarity.  *See id.* at 1443-44; *see also Alfred v. Walt*

1   *Disney Co*., 821 F. App'x 727, 729 (9th Cir. 2020).   Where the extrinsic similarity is so

2   overwhelmingly similar that the possibility of independent creation is precluded, the court may

3   properly conclude that no reasonable jury could find that the works are not substantially similar

4   in their overall concept and feel.  *Lucasfilm*, 2018 WL 5310831, at *2  (quoting *Unicolors*, 853

5   F.3d at 987); *GoPro*, 291 F. Supp. 3d at 1072.  Where the evidence supporting the extrinsic test

6   is overwhelming, the court need not delve into a complex subjective analysis under the intrinsic

7   test.  *Id.*  This is such a case.

8        In *Lucasfilm*, there was no material dispute that the challenged images and dialogue in the

9   defendant's marketing campaign were strikingly similar to the plaintiff's works.   2018 WL

10   5310831, at *2.  The defendant did not deny that it copied the plaintiff's works, but only disputed

11   the scope of the plaintiff's copyrights and ownership. *Id.*  The Court granted summary judgment

12   on copyright infringement, holding that "[a]lthough the issue of similarity is usually a matter of

13   factual dispute reserved for trial," the works were so overwhelmingly similar that no reasonable

14   jury could find that they were independently created.  *Id.*, at *2–3, 6.  Likewise here, Defendants

15   do not deny copying and only dispute the scope of Plaintiffs' copyrights, and so summary

16   judgment of liability should be found based on the striking similarity of the works in their "plot,

17   themes, dialogue, mood, setting, pace, characters, and sequence of events."

18        Indeed, as set forth in the accompanying expert report of Fran Krause, there is an extensive

19   combination of over 100 expressive elements selected and arranged to make the CoComelon

20   Works that are neither generic nor dictated by the children's entertainment genre, including *inter*

21   *alia* the physical and conceptual qualities of the star character JJ and of his family, the distinctive

22   look and feel of the videos, and elements of expression particular to specific videos, such as

23   subject matter, themes, plots, sequences, dialogue, moods, and specific physical arrangements of

24   characters and objects.  Krause Decl. ¶ 3, Ex. 1 ¶¶ 162-186, 188.  It is not merely these elements

25   in isolation, but their selection, arrangement, and combination, which were developed by

26   Plaintiffs' team of artists through hard work and trial and error, that comprise Moonbug's

27   protected expression that Defendants so shamelessly stole.  *Id*., Ex. 1 ¶¶ 186, 190, 233-241.

28        **JJ Character**.  The Infringing Works *all* infringe Plaintiffs' JJ Registrations because they

feature the JoJo character, and JoJo is a blatant copy of CoComelon's JJ character. A character is protectable in copyright if it (1) has physical as well as conceptual qualities, (2) is sufficiently delineated enough to be recognizable as the same character whenever it appears, and (3) is especially distinctive and contains some unique elements of expression. *DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015).  With respect to the third prong, courts look at the many elements of the character, including visual depictions, name, dialogue, relationships with other characters, actions and conduct, personality traits, and descriptions to determine whether it is sufficiently delineated such that it is a unique expression. *See Fun With Phonics, LLC v. LeapFrog Enterprises, Inc.*, No. CV 09-916-GHK (VBXX), 2010 WL 11404474, at *5 (C.D. Cal. Sept. 10, 2010).  A character may be "especially distinctive" if it has displayed "consistent, widely identifiable traits." *DC Comics*, 989 F. Supp. 2d at 966.  A character like JJ, who has physical as well as conceptual qualities, is more likely to contain some unique elements of expression than a purely literary character. *See Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 755 (9th Cir. 1978).

There is no genuine dispute that JJ has physical and conceptual qualities, is distinctive, *i.e.*, that he displays consistent, widely identifiable traits and is a recognizable character when he reappears. Krause Decl., Ex, 1 ¶ 168; Apple Decl., Ex. 148 ¶ 165.  Krause enumerated 29 physical and conceptual elements selected and combined by Plaintiffs in their JJ main character that were copied by Defendants in designing JoJo.  Krause Decl., Ex, 1 ¶¶ 165-176, Appendix 4, part 1, elements 1-29.  Defendants do not dispute that JoJo has this same combination of elements.



Physically, Defendants' JoJo character is a copy of and strikingly similar to CoComelon's JJ, as shown in figure below from Apple Dec. Exs. 42† (0:59, at left) and Ex. 1† (1:28, right).  Krause Decl. Ex. 1 ¶¶ 236, 174.  Defendants' documents and testimony show that these similarities are deliberate.

Krause Decl. Ex. 1 ¶¶ 103, 236, Appx. 10 (JoJo created by modifying purchased rig to resemble JJ); Apple Decl. ¶ 56 Ex. 557 (Zhang) 66:13-67:1; 67:15-68:4 (JoJo redesign scrapped for fear audience might not accept changes).  Defendants' JoJo character also exhibits the same unusual

selection of conceptual traits identified in CoComelon's JJ character, including that although he appears a young gurgling baby, JJ walks on two legs with ease, dances, speaks in full sentences, sings, seems to understand all that is said to him, and behaves as an ideal child that rarely throws tantrums or crawls, but generally exhibits a narrow range of positive emotions.  Krause Decl., Ex. 1, ¶¶ 176, 236, Appx. 4 parts 1-2 (identifying Super JoJo videos where these conceptual qualities appear). Defendants even copied JJ's poses, including his signature move where he encircles his arms while making an exclamation, among copying of other animation choices made by Moonbug:

| CoComelon JJ | Infringing JoJo | CoComelon JJ | Infringing JoJo | CoComelon JJ | Infringing JoJo |
|---|---|---|---|---|---|
|  | | | | | |

Images from Yes Yes Vegetables, Apple Decl. **Ex. 2**[†] (CoComelon), **Ex. 3**[†] (Super Jojo)

*See* Krause Decl. Ex. 1 ¶¶ 206, 236.  Defendants do not dispute that their JoJo character exhibits this same combination of physical and conceptual characteristics as JoJo, but merely suggest that these characteristics are not all original.   Apple Decl., Ex. 148 at 111-12.   And although Defendants claim that other characters exist that exhibit one or more of these characteristics, they have not identified any other character with the same selection and combination of characteristics as CoComelon's JJ.  *Id*. Appx. B at 252-55. And Defendants' choice to copy (and continue copying) CoComelon's unique depiction of JJ, rather than using a different model they worried

users would not recognize or like, belies any argument that JJ's characteristics are not uniquely valuable, engaging and recognizable. Defendants' unsupported claims, made in the face of voluminous evidence to the contrary and despite the very low level of original expression required for copyrightability, do not bar this Court from granting summary judgment on this issue. *See Anderson v. Stallone*, No. 87-0592 WDKGX, 1989 WL 206431, at *8 (C.D. Cal. Apr. 25, 1989) ("unsupported assertions that Rocky is merely a stock character, made in the face of voluminous evidence that the Rocky characters are copyrightable, do not bar this Court from granting summary judgment."); *Walt Disney*, 821 F. App'x at 729 (noting that similarities are substantial when their "selection and arrangement . . . is more than de minimis").

**Family Characters**. Defendants' Super JoJo videos are also strikingly similar to CoComelon Works with regard to the characters of JJ's family, including their visual depictions, actions and conduct, personality traits, and relationships with other characters. *See Fun With Phonics*, 2010 WL 11404474, at *5. Defendants chose to copy the makeup of JJ's family—JJ's mom, dad, older brother, and older sister—and even the family dog, right down to its name, Bingo. Defendants identified these characters as intended features for its Super JoJo videos, along with the instruction to "[u]se the kids' channel Cocomelon as the target setting," before it copied them. Apple Decl. ¶¶ 12-13, Exs. 522-523.

| CoComelon | Super JoJo |
|---|---|
|  |  |
| JJ and his older brother and sister<br>Boo Boo Song  (Apple Decl. **Ex. 4**†) | JoJo with his older brother and sister<br>Boo Boo Song (Apple Decl. Ex. **149**†) |

| CoComelon | Super JoJo |
|---|---|
|  |  |
| JJ and his mother | JoJo and his mother |
| Yes Yes Vegetables (Apple Decl.**Ex. 5**†) | Yes Yes Vegetables (Apple Decl. **Ex. 150**†) |

Krause Decl., Ex. 1 ¶¶ 177-78, ¶ 237 (describing substantial similarity in light skin, general color and range, shapes (e.g., mostly rounded edges with the notable exception of hair), rounded faces and body shapes, eyes, lips, noses and other facial features, chunky hair and hairstyles etc); App'x 4, part 2 (identifying presence of elements in Super JoJo videos). The two families also share strikingly similar relationships and character traits. For instance, both mothers are clever and creative, both fathers are loving and goofy. Krause Decl., Ex. 1 ¶ 237. Super JoJo also copies repeated gestures and dance moves from the CoComelon family, as well as physical arrangements of the other characters in scenes and videos. *Id.* ¶¶ 237-238. Many of these similarities can be traced back to the initial frame-by-frame copied videos, as many elements of the personalities of the family characters were established by stories, actions, situations, poses, facial expressions and relationships that were copied frame by frame from CoComelon. *Id.* ¶ 237. Accordingly, all Super JoJo videos featuring JoJo's family characters infringe the CoComelon Family Registrations. *See* Krause Decl. Ex. 1 *id*. App'x 4 Part 1 (identifying elements 30-57, 81, 90, 98-102) and Part 2 (identifying presence of elements in Infringing Videos).

**Plot, Dialogue, Sequence of Events**. Many Super JoJo videos are strikingly similar to CoComelon Works with regard to their plot, dialogue and sequence of events, including because they copy CoComelon videos, frame by frame. To aid the Court, Moonbug has prepared example side-by-side comparisons of a few of these CoComelon Works with Defendants' Infringing Works of the same names, in which the striking similarity is apparent. Krause Decl. ¶¶ 4-7, Exs. 2†, 3†, 4†. The Super JoJo videos show striking similarity to the last detail, in the characters, character movements, character movement quality, colors and shape language, shot composition,

camera angles, pacing, look and more.  *See* Krause Decl., Ex. 1 ¶¶ 195-229 (providing comparisons of Boo Boo Song, Yes Yes Vegetables, Yes Yes Playground, The Colors Song with Popsicles, Bath Song and Car Wash Song).  Defendants' 30(b)(6) witness on the development of Super JoJo admitted that the scenes and scene progression of CoComelon's and Super JoJo's versions of the Boo Boo Song are the same.  Apple Decl. ¶ 54, Ex. 555 (Sun) 105:5-116:13.

**Setting.**  Defendants' Infringing Videos are also strikingly similar to CoComelon Works with regard to their setting.  For instance, the layout of these animated families' houses are similar in layout and design.  Krause Decl. Ex. 1 ¶¶ 238, 248; *see also id*. App'x 4 Part 1 (identifying elements 58, 62-71, 82-84) and Part 2 (identifying presence of elements in Infringing Videos).

**Pace**.  Defendants' Super JoJo videos are also strikingly similar to CoComelon Works with regard to their pace and pacing, including because they generally are two to three minutes long, with scenes matched to verses of songs.  Krause Decl., Ex. 1 ¶ 238(k).  The shows also exhibit similar pacing through their cinematography.  *See id*. ¶ 239.  The Infringing Works copy CoComelon's distinctive cinematography style, including in their pacing of edits (shots generally of short or medium length), composition (heavily featuring low subjective angles, and very rarely going above eye-level), distance of shots (mostly close-ups, some medium shots, and very rarely long shots), predominant use of wide-angle camera lenses, soft indirect lighting and frequent use of camera movement, incorporating camera movement in most shots.  *See id*., Ex. 1, App'x 4 Part 1 (elements 75, 94, 103-114), and Part 2 (identifying elements' presence in Infringing Works).

**Theme, Plot**.  The Infringing Works are also strikingly similar to the CoComelon Works with regard to their themes and plot.  Indeed, Super JoJo videos copy CoComelon's focus on daily life activities, its emphasis on everyday interactions between the main JJ character and his family or pet, and its focus on the daily activities of JJ experiencing life and the world in the context of his family through depictions of children and their parents playing, singing and dancing together.  CoComelon videos provide young children with a rich sensory stimulation and joyous experience in a comforting and safe environment for exploration.  *See* Krause Decl., Ex. 1, Appx. 4, Part 1 (listing elements 74, 85-89, 95-96) and Part 2 (identifying their presence in the Infringing Works).

**Mood**.  The Infringing Works also exhibit substantial similarity to CoComelon in their

mood.  The characters are mainly happy or neutral in mood, and apart from mild and passing discontent connected to a particular narrative (e.g., mild pain or distress from an injury that is treated), they are never mad, mean-spirited, scared or overly agitated.  Both video series reflect this mood in their overall animation style that is observational, gentle, and playful in style, and are focused on realistic, precise, yet generally non-exaggerated visuals that will draw the attention of and resonate with children.  *See* Krause Decl., Ex. 1, Appx. 4, Part 1 (identifying elements 59-61, 76-80, 91-93), and Part 1 (identifying presence of elements in Infringing Works).

Defendants' rampant copying throughout the Super JoJo series is also seen on a channel level. Appl. Decl. Exs. 562–63. The thumbnail comparisons show extensive copying, using imagery and characters copied from CoComelon even where Defendants scrubbed some copied elements from the Super JoJo videos themselves. Krause Decl., Ex. 5. Defendants cannot credibly claim such similarities in thumbnails are coincidence or somehow independently derived.

There is no plausible explanation for these extensive similarities between CoComelon and Super JoJo, including the plot, scenes, and dialogue entire videos, and the characters and setting generally, other than Defendants' copying.  These extrinsic similarities are so stark and extensive that the Court should conclude that no reasonable jury could find otherwise.

## V.     CONCLUSION

There is no genuine dispute that Defendants' Super JoJo show and episodes infringe the CoComelon Works.  Just as they admitted internally, Defendants' copying is "so obvious."  In light of the overwhelming and undisputed evidence, the Court can and should grant Moonbug's motion for summary judgment and find Defendants liable for copyright infringement as to each and every one of the CoComelon Works.

Dated: December 9, 2022                               Respectfully submitted,

                                                       */s/Sean Apple*
                                                       Sean Apple

                                                       Attorneys for Plaintiffs
                                                       Moonbug Entertainment Limited and
                                                       Treasure Studio, Inc.