UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOONBUG ENTERTAINMENT LIMITED, et al., | Case No. 21-cv-06536-EMC |
| Plaintiffs, | |
| v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD, et al., | |
| Defendants. | |

## I.      <u>TRIAL DATE AND LENGTH OF TRIAL</u>

The jury trial shall begin on Wednesday, July 5, 2023.  Trial shall commence that day and run for up to 10 days from July 5 through July 24 or 25 (excluding July 10).  Jury selection shall take place on the first day.  Counsel shall be present in the Courtroom at 8:00 a.m. to discuss any anticipated disputes.  The Court strongly discourages side bars.  The Court intends to seat nine jurors.  The Court will hold a hearing on July 3 at 8:30 a.m. to discuss screening of prospective jurors based on questionnaires and address any last-minute issues.

Trial shall last from 8:30 a.m. to 2:00 p.m. on each day, except for Thursdays, which are dark (although the Court reserves the right to hold court on Thursday, July 6).  On all trial days, counsel shall be present in the Courtroom at 8:00 a.m. to discuss any matters requiring resolution prior to commencement of trial at 8:30 a.m.  Each session will last approximately 90 minutes.  Breaks will be 15–20 minutes.

The Court will impose a vaccination requirement on jurors.  The parties indicated their agreement with this at the pretrial conference.  The jurors will be socially distanced.  All trial

United States District Court
Northern District of California

United States District Court
Northern District of California

participants, including jurors and counsel, will be required to wear masks except for the testifying witness and questioner.  The parties and their counsel shall certify they and their witnesses are either fully vaccinated or have tested negative on a rapid COVID test immediately before entering the courtroom.

The trial shall last for ten days.  Each side will have 20 hours of trial time present their evidence (on direct and cross), including opening statements and closing argument.  Any testimonial discovery sought to be admitted must be read (or played if video) into evidence and shall count as time on the clock.

## II.    ADVANCED NOTICE OF WITNESSES AND EXHIBITS

Each party shall provide two court days (48 hours excluding weekends) advance notice of witnesses to be called and proposed exhibits and demonstratives to be used for each trial day.  The Court reserves the authority to exclude witnesses and documents for non-compliance.

All objections to witnesses, exhibits, and demonstratives must be filed with the Court at least one court day (24 hours) before the witness is scheduled to testify.  The Court will address objections at 8:00 a.m. on the following day.  All objections should be provided in writing and filed with the Court, and a courtesy copy should be given to chambers immediately.  No filings shall be made after 6:00 p.m.

Should a party fail to have enough witnesses to complete the trial day, the Court shall charge the surplus time remaining on that day against the party's total allotted time.  For instance, if a party concludes a witness's examination with an hour remaining in the day and is not prepared to call another witness, then the Court will subtract that hour from the party's allotted hours.

## III.    WITNESSES

A.    Plaintiffs

Plaintiffs have identified the following individuals as witnesses they may call in their case-in-chief.  *See* Docket No. 362-1 Appendix A1.

1.    Jon Benoy

2.    Alfred Chubb

3.    Samreen Ghani

2

United States District Court
Northern District of California

4.      Marvin Lee

5.      Katie Nahab

6.      Patrick Reese

7.      Chris Stevens

8.      Katelyn White

9.      Xiaohui Chen

10.     Xue Jiachun

11.     Xiangyin Lin

12.     Yunshan Lin

13.     He Shaojie

14.     Lei Sun

15.     Lifang Tang

16.     Lijun Tang

17.     Naiyong Yan

18.     Xunjie Zhang

19.     Fran Krause (expert)

20.     Jennifer Vanderhart (expert)

21.     Unnamed representative from YouTube/Google

B.      Defendants

Defendants have identified the following individuals as witnesses they may call in their case-in-chief.  *See* Docket No. 362-2 Appendix A2.

1.      Xiangyin Lin

2.      Naiyong Yan

3.      Lei Sun

4.      Lifang Tang

5.      Xiaohui Chen

6.      Yunshan Lin

7.      Xunjie Zhang

8.      Huiping Liu

9.      Lijun Tang

10.     Jianing Gao

11.     Alfred Chubb

12.     Samreen Ghani

13.     Jon Benoy

14.     Katie Nahab

15.     Marvin Lee

16.     Katelyn White

17.     Patrick Reese

18.     Denise Denson (expert)

19.     Ellen Seiter (expert)

20.     Christian Tregillis (expert)

21.     Frank Saperstein (expert)

22.     Unnamed representative from Google

23.     Unnamed representative from Transperfect Legal Solutions

## IV.     MOTIONS IN LIMINE

A.      Plaintiff's Motion in Limine No. 1 (Docket No. 341)

Moonbug requests that the Court exclude Babybus' evidence relating to allocation of personnel costs for Super JoJo.  Docket No. 341 (P's Motion in Limine No. 1 ("P's MIL No. 1")). These allocations are found in Babybus' damages expert Christian Tregillis' expert report, which include allocation calculations of deductible expenses (personnel expenses, overhead expenses, and other expenses) in the charts at Schedules 8.1–8.4.1.  Docket No. 369-1 (Rebuttal Report of Christian Tregillis ("Tregillis Reb. Rep.")) at 295–466.

In support of its motion in limine, Moonbug argues that Babybus knew that Babybus must demonstrate that its expenses it sought to deduct from gross revenues to reduce its disgorgement liability must be tied to Super JoJo revenues generated within the United States, but it failed to reliably do so.  P's MIL No. 1 at 1 (citing Docket No. 115 (Magistrate Judge Westmore's

4

United States District Court
Northern District of California

Discovery Order) at 2).  Moonbug argues that Babybus did not produce relevant allocation evidence in response to Moonbug's Request for Production "regarding Super JoJo monetization, advertising, and distribution efforts worldwide."  Docket No. 105 (Joint Letter Brief).  During fact discovery, Babybus explained that it did not maintain allocation data in the ordinary course of business and did not produce any responsive evidence or 30(b)(6) witness testimony on the issue. Docket No. 105 (Joint Discovery Letter Brief).  While Babybus claimed that allocation would be addressed through Babybus' expert Christian Tregillis, Moonbug argues that Mr. Tregillis in reality "had no personal knowledge of and could not opine on the validity of the allocations, much less the existence or accuracy of the underlying data."  P's MIL No. 1 at 1.  Moreover, Moonbug argues that witness testimony directly contradicts the allocations asserted in Mr. Tregillis' expert report.  *Id.*  For instance, while Mr. Tregillis' report seeks to apportion 70% of Mr. He Shaojie and Mr. Jianing Gao's time to Super JoJo, Moonbug argues that both testified that they never worked on Super JoJo.  *Id.* at 1–2, 5 (citing Docket No. 346 (Declaration of Chien Tung) Exh. E (Rough Dep. Tr. of He Shaojie at 8:23–9:8. ("Q. And have you done any work on the Super JoJo show? A. No.")).

Babybus argues that it did in fact timely produce expense information that it maintains in the ordinary course of business.  Docket No. 341 (D's Opposition to P's Motion in Limine No. 1 ("D's Opp. to P's MIL No. 1")) at 1.  Babybus explains that allocation data of personnel expenses did not exist during fact discovery because personnel expenses were shared by multiple projects and the allocation calculations—dividing up the expenses—were only "done at Mr. Tregillis' direction an in advance of his report."  *Id.*  Babybus argues that it is not unusual to have management "compile specific information for his analysis" and that Moonbug should have raised any discovery issues months ago under Local Rule 37-3, not as a motion in limine.  *Id.*; *see also* Local Rule 37-3 ("Where the Court has set separate deadlines for fact and expert discovery, no motions related to fact discovery may be filed more than 7 days after the fact discovery cut-off, and no motions related to expert discovery may be filed more than 7 days after the expert discovery cut-off.").  Babybus asserts that Mr. Tregillis' report is well-founded on "hours-long discussions with BabyBus employees Ms. Tang, Naiyong Yan, Xunjie Zhang, and Lei Sun about

United States District Court
Northern District of California

1    how to allocate the expenses," example videos from this case, and evaluation of the Babybus'

2    records and accounting system.  *Id.* at 2.

3         The Court **DENIES** Moonbug's motion in limine to exclude evidence and documents

4    regarding allocation of personnel salaries and other costs and expenses Babybus seeks to deduct

5    from revenues for Super JoJo products and Moonbug's motion in limine to exclude entirely Mr.

6    Tregillis' expert report on personnel expense allocation.  To ensure Moonbug is afforded

7    reasonable access to underlying data informing the allocation, the Court permits Moonbug to take

8    limited, expedited discovery of fact witnesses as to the narrow issue of allocation of time and work

9    on CoComelon.  The Court also orders Babybus to produce all available timesheets for the

10   individuals listed as having worked on JoJo.  Babybus shall make available for remote deposition

11   the three individuals identified at the hearing who were responsible for providing the allocation to

12   Mr. Tregillis.

13   B.   Plaintiff's Motion in Limine No. 2 (Docket No. 342)

14        Moonbug requests that the Court exclude evidence, testimony, and argument regarding

15   alleged prior art.  Docket No. 342 (P's Motion in Limine No. 2 ("P's MIL No. 2")).  Specifically,

16   Moonbug argues that Babybus should not (1) argue or suggest that the CoComelon Works, or any

17   element thereof, must be novel to be original, or (2) offer evidence or testimony from lay

18   witnesses regarding alleged similarities between any of the CoComelon Works and any third-party

19   animated babies or families.  *Id.* at 1.  For instance, Moonbug seeks to exclude Babybus'

20   comparisons of CoComelon to other third-party animated babies and families.  *Id.* at 2.

21        In support of its motion in limine, Moonbug argues that the comparison of JJ and JoJo to

22   other animated babies is not relevant to the jury's determination of whether the idea of JoJo is

23   substantially similar to JJ in this case.  *Id.* at 3.  Moonbug also argues that lay witness opinion is

24   improper under Rule 701(c) because finding similarities in elements of works requires specialized

25   knowledge.  *Id.*  Moonbug argues that a lay witness should leave the determination on similarities

26   to the jury under Rule 401 and 701(b).  *Id.*  Lastly, Moonbug argues that lay witness testimony on

27   similarities would confuse the jury, waste time, and be cumulative of the expert testimony in the

28   case.  *Id.* at 4.

United States District Court
Northern District of California

1    Babybus counters that prior works are relevant because they bear on the merger and scènes

2   à faire doctrines, not novelty or copyright validity.  Docket No. 342 (D's Opp. to P's MIL No. 2)

3   at 1; *see, e.g., Granite Music Corp. v. United Artists Corp.*, 532 F.2d 718, 721 (9th Cir. 1976)

4   ("Evidence of similar musical phrases appearing in prior works is also logically relevant to rebut

5   the inference of copying" because "[s]uch evidence demonstrates that the musical language was of

6   such ordinary and common occurrence.").  Babybus also argues that lay testimony concerning

7   similarities in prior works is relevant and admissible because the extrinsic test used by the jury

8   specifically considers "specific expressive elements," not just an "idea."  *Id.* at 2.  Babybus

9   explains that it "intends to elicit testimony from fact witnesses that the use of certain elements

10   present in both Moonbug's copyrights and prior third-party works" to show that "elements in the

11   asserted works are merely stock features, common to the genre, scènes à faire, subject to merger,

12   or otherwise unprotectable."  *Id.* at 3.  Babybus also makes several arguments in the alternative:

13   that this evidence is lay witness testimony *not* based on specialized knowledge and thus

14   admissible under FRE 701; that the lay witnesses testifying *do* have specialized knowledge of the

15   creation of the works and thus the evidence is admissible apparently under FRE 702; that the

16   evidence does not reflect an ultimate legal conclusion as to usurp the role of the jury.  *Id.* at 4–5.

17    The Court **DENIES** Moonbug's motion in limine.  First, Moonbug is wrong in its

18   argument that "the comparison of other animated babies to JJ and JoJo is not relevant for any issue

19   going to the jury [because] the extrinsic test only looks at the idea [and] does not examine the

20   *expression* of an idea."  P's MIL No. 2 at 3.  Whether Super JoJo is substantially similar to

21   CoComelon requires analysis of the *expression* of the idea.  The only case cited by Moonbug says

22   as much.  *See Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157,

23   1164 (9th Cir. 1977), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v.

24   Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ("The test for infringement therefore has been given a

25   new dimension. There must be ownership of the copyright and access to the copyrighted work.

26   But there also must be substantial similarity not only of the general ideas but of the expressions of

27   those ideas as well."); *see also Skidmore*, 952 F.3d at 1064 ("The first part, the extrinsic test,

28   compares the objective similarities of specific expressive elements in the two works.").  Prior art

babies are directly relevant to the second step of the extrinsic test, which requires filtering out the similarities between the works based unprotectable elements; unprotectable elements include those that are common to the genre. *See Gray v. Hudson*, 28 F.4th 87, 97 (9th Cir. 2022) (requiring distinction between "protected and unprotected material in a plaintiff's work," where "ideas, concepts, and common elements are excluded"). Comparison of prior art babies is also relevant to Babybus' affirmative defenses to infringement. *See Swirsky v. Carey*, 376 F.3d 841, 850 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004) ("Under the scenes a faire doctrine, when certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are treated like ideas and therefore not protected by copyright.").

Second, the evidence may be brought in by a layperson in the industry who has personal knowledge on the similarities between animated works. Layperson testimony is admissible when witnesses testify to matters (including certain opinions) within their personal knowledge and experience. Fed. R. Evid. 602, 701. Babybus intends to use "fact witnesses [to show] that the use of certain elements present in both Moonbug's copyrights and prior third-party works . . . are commonly used in the genre." D's Opp. to P's MIL No. 2 at 4. These fact witnesses, such as Moonbug manager Patrick Reese and Moonbug animator Marvin Lee, appear to have personal knowledge of the CoComelon works, have familiarity with the animation industry, and would thus have personal insight into what characteristics are common to the genre.

The Court **DENIES** the motion in limine and will admit evidence and reference to prior works to show that common elements are frequently used in the genre.

C.    Plaintiff's Motion in Limine No. 3 (Docket No. 343)

Moonbug requests that the Court exclude evidence relating to certain actions by Moonbug's animators under Rules 402, 403, and 404(a). Docket No. 343 (P's Motion in Limine No. 3 ("P's MIL No. 3")). Specifically, Moonbug seeks to exclude reference to (1) Moonbug animator Marvin Lee's use of a song from Lion King as the background music of a student group project before he worked for Moonbug, and (2) Moonbug employees drawing inspiration from other children's works. *Id.* at 1.

1.      <u>Marvin Lee's Student Project</u>

As to the first issue, Moonbug explains that, in Mr. Lee's deposition, Babybus introduced a video that Mr. Lee helped created as a college student group project and questioned him as to whether the background music (from Lion King) was licensed.  The exchange proceeded as follows:

> Q. Do you see this is a web page that depicts a video labeled "Crashed Robot Environment Project"? Do you see that?
>
> A. Yeah, I see it.
>
> Q. And underneath it, it says "6 years ago, Marvin Lee." Do you see that?
>
> A. Yes, I see it.
>
> Q. Do you have an understanding that this is a video you uploaded to Vimeo?
>
> A. Yes.
>
> Q. Did you create this video?
>
> A. I created this video with three other people.
>
> . . .
>
> Q. What was the music that was playing during the video?
>
> A. I don't recall.
>
> Q. You don't recognize the -- the song at all?
>
> A. I recognize it. I don't know the name.
>
> Q. Where do you recognize the song from?
>
> MS. HEDLEY: Objection. I'm going to object to this whole line of questioning as relevant -- as irrelevant.
>
> THE WITNESS: I believe Lion King.
>
> BY MR. LaFOND:
>
> Q. Did you pay to license the music before you used it in the video?
>
> MS. HEDLEY: Objection. This is harassing. I'm not -- I'm going to instruct the witness not to answer.
>
> MR. LaFOND: We'll go off the record and we'll call the magistrate if you instruct him not to answer on grounds other than privilege.

1       That's impermissible in ND Cal. You to need to instruct the witness to answer.

2       MS. HEDLEY: Can you tell me what -- how this is relevant to this litigation in any way?

3

4       MR. LaFOND: Yeah, it shows the approach of Moonbug employees to copyright and the attitude that Moonbug employees have to copyright and the attitude that Moonbug employees have to originality.

5

6   Tung Decl. Exh. F (Deposition of Marvin Lee ("Lee Dep.")) at 149–151.  Moonbug argues that

7   this evidence should be excluded because it is highly prejudicial and confusing to use this past

8   college incident suggest to the jury that Moonbug animators do not respect copyright law.  P's

9   MIL No. 3 at 2–3.  Babybus argues that "Federal Rule of Evidence 608(b) allows a party to use

10  'specific instances of a witness's conduct' to attack the witness's credibility on cross examination"

11  and "this specific act is not character evidence under Federal Rule of Evidence 404(a)."  Docket

12  No. 343 (D's Opp. to P's MIL No. 3) at 1.

13       The Court **GRANTS** Moonbug's motion in limine regarding  Mr. Lee's student project.

14  First, under Rule 403, it would be highly prejudicial to the jury to extrapolate from past conduct

15  by Mr. Lee on a student project—co-created by three other students—to demonstrate the current

16  "attitude" of Moonbug employees on the CoComelon project.  *See* Fed. R. Civ. Proc. 403 ("The

17  court may exclude relevant evidence if its probative value is substantially outweighed by a danger

18  of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue

19  delay, wasting time, or needlessly presenting cumulative evidence.").  There is no indication that

20  Mr. Lee at the time was aware that he would need to license the Lion King music for his school

21  project, especially if only a short segment was used.  There is no indication that Mr. Lee

22  understood the nuances of copyright law as a college student with presumably no legal training.

23  There is no indication that Mr. Lee himself selected the musical background of the student video,

24  as opposed to one of the other students in the group project.  And, more importantly, there is no

25  indication that Mr. Lee's attitude as a student years before he joined Moonbug—reflects the

26  general ethos of Moonbug.  Second, under Rule 404(a), this evidence is improper character

27  evidence.  *See* Fed. R. Civ. Proc. 404(a)(1) ("Evidence of a person's character or character trait is

28  not admissible to prove that on a particular occasion the person acted in accordance with the

United States District Court
Northern District of California

1     character or trait.").  Although evidence of specific acts may be admissible to show "intent,

2     preparation, plan, knowledge, . . . absence of mistake, or lack of accident," Fed. R. Evid.

3     404(b)(2), a college student group project unrelated to Moonbug is not evidence of "intent,

4     preparation, plan, knowledge, . . . absence of mistake, or lack of accident" of Moonbug's

5     copyright protection in this case.

6         Should Mr. Lee indicate on direct that he has never violated copyright laws, Babybus can

7     introduce specific instances to attack Mr. Lee's character for truthfulness.  *See* Fed. R. Civ. Proc.

8     608(b) ("[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct

9     in order to attack or support the witness's character for truthfulness. But the court may, on cross-

10    examination, allow them to be inquired into if they are probative of the character for truthfulness

11    or untruthfulness . . .").  In such a case, Babybus may be permitted to question Mr. Lee on cross-

12    examination on the specific instance of Mr. Lee allegedly failing to license the Lion King music

13    for this group project.

14        In all other respects, the Court **GRANTS** Moonbug's motion in limine regarding Mr. Lee's

15    student project.

16          2.    <u>Moonbug Employees' Inspiration From Other Works</u>

17        As to the second issue, Moonbug explains that allowing Babybus to equate Moonbug's

18    taking inspiration from other children's programming with Moonbug's alleged copying in creating

19    CoComelon would be irrelevant and unduly prejudicial because Babybus cannot attack the settled

20    issue of whether the CoComelon works are original.  P's MIL No. 3 at 3.  Babybus argues that it

21    does not intend to argue that the CoComelon works are not original.  D's Opp. to P's MIL No. 3 at

22    2.  Rather, Babybus argues that evidence that Moonbug has used elements from other children's

23    content in its CoComelon works is directly relevant to showing which elements shared by

24    Moonbug and Babybus' works are unprotectable as scènes à fair, the merger doctrine, or related

25    concepts.

26        The Court **DENIES** Moonbug's motion in limine regarding Moonbug' employee's use of

27    other children's content because it is relevant to proving which elements shared by Moonbug and

28    Babybus' works are unprotectable, *e.g.*, via scènes à fair.  The Court cannot presume that a jury

United States District Court
Northern District of California

would be unduly confused by this evidence or be unable to cabin this evidence to determining which elements are unprotectable as opposed to whether CoComelon is original.

D.     Plaintiff's Motion in Limine No. 4 (Docket No. 344)

Moonbug requests that the Court exclude evidence not produced or identified in discovery. Docket No. 344 (P's Motion in Limine No. 4 ("P's MIL No. 4")).  Specifically, it seeks to exclude:

> o   1. All evidence not produced or identified by Defendants before the close of discovery;
>
> o   2. Any expert opinion not disclosed in Defendants' expert reports; and
>
> o   3. Any expert opinion purportedly relating to liability, and specifically, to comparing the CoComelon copyrighted works with the accused infringing works, where no such opinion was disclosed in any of Defendants' expert reports.

*Id.* at 1.  Each objection is addressed below.

1.     Evidence Not Produced in Discovery

First, Moonbug argues that district courts have broad discretion to exclude evidence not produced during discovery pursuant to Rule 26(e)(1).  *Id.* at 2.  Babybus responds that Moonbug has not identified any specific exhibit or other evidence that was not produced in discovery.  D's Opp. to P's MIL No. 4 at 1.

At this juncture, the Court **DENIES** the motion in limine to prevent Moonbug from entering evidence not produced.  Moonbug's general motion amounts to an admonition to follow the rules and leaves the Court no specific evidence to consider.  *See Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2022 WL 2670188, at *5 (N.D. Cal. Feb. 28, 2022) ("Motions in limine afford the court and counsel the opportunity to give more deliberate consideration to specific objections to specific evidence.  The purpose of a motion in limine is not to obtain a generic ruling that the parties must follow the rules of evidence and civil procedure.") (internal citation omitted); *United States v. Williams*, No. 3:13-CR-00764-WHO-1, 2017 WL 4310712, at *4 (N.D. Cal. Sept. 28, 2017), *aff'd sub nom. United States v. Heard*, No. 18-10218, 2022 WL 2662882 (9th Cir. July 11, 2022) ("The government requests that defense counsel be precluded from (1) making speaking

United States District Court
Northern District of California

objections that present inadmissible information to the jury, and (2) reading contents of documents not in evidence purportedly to question a witness or refresh his/her recollection. The motion is DENIED as unnecessary. No counsel should do what is described in this motion. Both sides must follow the rules of evidence and use the proper procedure to refresh recollection at trial."). If the Court presented with specific evidence that Moonbug alleges was not produced by Babybus during discovery, the Court will determine whether to exclude on an evidence-by-evidence basis. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

>    2.    <u>Expert Opinions Not Disclosed in the Expert Reports</u>

Second, Moonbug argues that the Court should exclude any expert opinion not included in their experts' reports, given Ms. Denson and Mr. Saperstein's purported lack of opinions on liability and Dr. Seiter's purported lack of comparison of the copyrighted and accused works, pursuant to Rule 26(a)(2)(B). P's MIL No. 4 at 3–4. Babybus argues that this motion in limine identifies no specific expert opinions and, like the motion in limine above, should be denied for being a general admonishment. D's Opp. to P's MIL No. 4 at 2.

The Court **GRANTS** the motion in limine to exclude expert testimony on liability and comparisons between the works, which are not included in the expert report. Moonbug presents evidence that the three experts have expressly cabined their expert opinion. *See* P's MIL No. 4 at 4–5 (citing Docket No. 194-19 (Denson Report) at 10 (not opining on infringement); Docket No. 194-17 (Saperstein Report) (not opining on infringement); Docket No. 291-1 (Seiter Report) at 1 (not comparing the CoComelon works to the Super JoJo works)). Unlike Moonbug's argument in the motion in limine above, this motion in limine is not a general admonishment for Babybus to follow the rules. The issue is specific and more concrete. Although Babybus has not yet attempted to introduce evidence that falls outside the scope of the experts' conclusions, the Court can delimit the specific areas of testimony on which these experts have already expressly declined to opine.

3.      Expert Opinion Related to Liability

Third, Moonbug reiterates the above argument—that the Court should preclude from trial any purported opinion on liability from Ms. Denson, Mr. Saperstein, and Dr. Seiter—under Rule 403, arguing that the Court should exclude any expert testimony by Ms. Denson, Mr. Saperstein, and Dr. Seiter on liability as misleading and confusing to the jury.  *Id.* at 5–6.  As explained above, the Court **GRANTS** the motion in limine.

E.      Plaintiff's Motion in Limine No. 5 (Docket No. 350)

Moonbug requests that the Court exclude evidence of Babybus' independent development story involving the character Doudou.  This evidence is relied upon by Babybus to establish it independently developed JoJo through a predecessor character.  Docket No. 350 (P's Motion in Limine No. 5 ("P's MIL No. 5")).  The Court addresses each type of Doudou evidence as follows.

1.      Unproduced Doudou Images

First, Moonbug argues that the Doudou image found in the declarations of Yan, Chen, and Sam Stake should be excluded.  P's MIL No. 5 at 3–4.  Specifically, Moonbug seeks to exclude this image:



*Id.* (citing Docket No. 23 (Declaration of Naiyong Yan) ¶ 4; Docket No. 194-15 (Declaration of Naiyong Yan) ¶ 3; Docket No. 24 (Declaration of Sam S. Stake) at App'x 1; Docket No. 194-9 (Declaration of Xiaohui Chen) ¶ 7).  These declarations generally explain that "BabyBus's JoJo originated in 2016, when BabyBus created and published a children's show on YouTube titled 'Barber' featuring baby Doudou [whose] look was inspired by the 'New Year Doll.'"  Yan Decl. ¶ 4.  Following Moonbug's motion to exclude the Doudou materials due to Babybus' failure to identify individual custodians for the documents, Babybus had identified the custodians for the

United States District Court
Northern District of California

1   Doudou images and videos.  Docket No. 268 (Order on Moonbug's Motion to Exclude); Docket

2   No. 353 (Declaration of Ciara McHale in Support of P's MIL No. 5) Exh. 3 (Babybus identifying

3   He Shaojie, Lijun Tang, Huiping Liu, and Xiaohui Chen as custodians).  Moonbug argues that the

4   image is unauthenticated, inadmissible hearsay, and violates the best evidence rule.  *Id.* at 4.

5          Babybus clarifies that it does not intend to use this image of Doudou at trial.  Docket No.

6   375 (D's Opp. to P's MIL No. 5) at 5–6.  But Babybus argues that even if it did, this image is not

7   fraudulent nor created for litigation because BabyBus' custodian Mr. He testified that he created

8   the images in 2021 for BabyBus' copyright application.  *See* Docket No. 376 Exh. 14 (He Shaojie

9   Deposition) at 33:20–36:10 ("Q. Were you involved in preparing a document with these images to

10  file with the copyright office of the Fujian province? A. Well, I need to go ahead and relisten to

11  what you are asking, please. Q. Were you involved in preparing a document with the images that

12  are on Exhibit 278? A. Yes, I was involved. Q. What was your involvement? A. By providing the

13  pictures. Q. What do you mean by 'providing the pictures'? A. By putting together all these

14  drawings and submitted. Q. Submit them where? . . . THE WITNESS: To submit it to the legal. Q.

15  Who asked you to put together the images that are referenced in Exhibit 278? A. The legal

16  department. . . . [Ms. Fang] didn't ask me to do anything, but she just told me that she need to

17  have this copy of the image for the registration. Q. Did she tell you anything else? A. I don't think

18  so, no. Q. Well, then, what did you do to complete Ms. Fang's request? A. So I checked a few

19  documents and located these images. Then I put them together in orderly manner.").

20         On the other hand, here, Babybus' witness Xiaohui Chen, the Moonbug 3D drawing team

21  leader, testified that he viewed a video of Doudou prior to creating JoJo.  *See* Docket No. 353-3

22  (Xiaohui Chen Deposition) at 31–32.  Babybus must prove that the Doudou in the still image in

23  the declaration is virtually identical to the Doudou in the original video.  The evidence is unclear

24  as to whether the Doudou image at issue here is the same character as the Doudou in the video

25  referred to in the creation of the JoJo character and that the still image of Doudou included in his

26  declaration *is not* the evidence he viewed when creating JoJo.  *See* McHale Decl. ¶ 11 ("I

27  understand that, during that call, Defendants' counsel was unable to identify by Bates number or

28  otherwise confirm where the Doudou image identified in the above-listed declarations came from,

United States District Court
Northern District of California

but suggested it was from the Chinese copyright registration. I also understand that Defendants acknowledged that the image is not the exact same as the one contained in or pulled from the Barber video depicting the alleged Doudou character."). Although Mr. Chen testifies that the two Doudou's "match," Chen Dep. at 32 (Mr. Chen: "Because this particular image was simple and straightforward, it *matches* with what I had in my memory; and the whole thing was over.") (emphasis added), that such a statement does not authenticate the subject image. *Cf. Seiler*, 808 F.2d at 1322 ("[T]o present his reconstructed drawings as a substitute for the originals that apparently no longer exist . . . he must show that the reconstructions are *virtually identical* to those originals.") (emphasis added.) To be sure, Babybus explains that it first mentioned Doudou in September 2021 both in its answer, and subsequently included the Doudou image and Doudou Barber video in various filings, such as a declaration from Naiyong Yan, Docket Nos. 23, 24, 194-9. The Doudou character in those filings appeared as follows:



That evidence is admissible, unlike the unauthenticated image. The Court thus **GRANTS in PART** and **DENIES in PART** the motion in limine to exclude the "unproduced" Doudou image located in the Chen, Yan, and Stake witness declarations.

    2.    <u>Produced Doudou Images</u>

        Second, Moonbug argues that the Doudou images that have been produced in Chinese copyright registrations (e.g., BB_00098192, BB_00098195) should be excluded as inadmissible hearsay and because they cannot be authenticated by Babybus' identified custodian Mr. He Shaojie. P's MIL No. 5 at 4–5. Moonbug argues that Mr. He "could not identify who created or modified the [copyright registration] files, or when they were created" nor had he "seen the

1   [underlying Doudou images] and could not state when, how, or by whom the documents were

2   created, or who at Babybus possessed them." *Id.* at 5.  Moonbug further suggests that these

3   images were created by Babybus for the purposes of substantiating its legal strategy for this trial.

4   *Id.*

5          As explained above, Mr. He explains that these Doudou images were generated by him in

6   2021 in response to a request from BabyBus' legal department.  *See* Docket No. 376 Exh. 14 (He

7   Shaojie Deposition) at 36 (providing the Babybus legal department "this copy of the image for the

8   [copyright] registration").  The Court **DENIES** the motion in limine to exclude the produced

9   Doudou images produced in Chinese copyright regulations.

10          3.       Produced Doudou Videos

11          Third, Moonbug argues that the Doudou videos—the Barber video from the Chinese video

12   platform iQIYI, as well as compilation videos that include the Barber video and flash library files

13   for the Barber video—are inadmissible hearsay and unable to be authenticated.  P's MIL No. 5 at

14   5–7.

15          The Court **DENIES** the motion in limine to exclude the Doudou videos.  None of the

16   videos are hearsay because they are not testimonial.  *See United States v. Oaxaca*, 569 F.2d 518,

17   525 (9th Cir. 1978) (concluding photographs were not hearsay because they were not "assertive or

18   testimonial in character").  And all the videos are sufficiently authenticated by custodians who

19   created or uploaded the videos and who can testify that the exhibits at issue are identical to those

20   they handled prior.  Regarding the Barber video itself and the compilation videos that include it,

21   Lijun Tang testified that she uploaded the video:

22                  Q. And did you -- did you post the barber to iQIYI for BabyBus?

23                  A. Yes.

24                  Q. When did you do that?

25                  A. Around 2016.

26                  Q. Did you review that video before you posted it to iQIYI? Did you
                    watch it?
27
                    A. When I received the video, I had to review and watch the video
28                  to confirm there were no quality issues before I can post it.

17

United States District Court
Northern District of California

1
2

Q. Was uploading the barber to iQIYI part of your regular activities at BabyBus in 2016?

3

A. Yes. Publishing was my day-to-day job.

4

Q. And did uploading the barber to iQIYI lodge it with iQIYI and save that record with iQIYI at that time?

5

MS. MCHALE: Object to form. Calls for speculation.

6
7
8
9

THE WITNESS: After a video was uploaded to the back-end and then successfully published, that video would exist in iQIYI. And in one of the exhibits, we saw the search result page indicated that the - - the barber video was on the list with the date.· And that particular date indicated the date when the video was first successfully published to iQIYI.

10

BY MR. STAKE: Q. And has the barber been available for the public to view on iQIYI since you uploaded it in 2016?

11

MS. MCHALE: Object to form.

12
13
14
15

THE WITNESS: Yes. The date that is currently there indicates the date of the publishing -- when it was first published to iQIYI. If that particular video was later on updated or modified, the date next to the video would indicate the modified date and when it was later on uploaded again, according to iQIYI's website. So the 2016 date is the date that the video was uploaded to iQIYI.

16   *See* Stake Decl. Exh. 12 (Tang Dep.) at 113:1–114:15.  TransPerfect provided a declaration

17   detailing its procedures to download the Barber video file from iQIYI.  *See* Stake Decl. Exh. 8 ¶

18   11 ("TLS manually scrolled and captured the webpage using Snip and Sketch, resulting in thirteen

19   (13) screen captures. The screen captures were exported as PNG files that accurately depicted the

20   content as displayed on the "IQIYI" webpage.").  Although there is no single custodian who can

21   testify to holding custody of the video from when it was uploaded in 2016 to when it was

22   downloaded in 2022, Babybus asserts that Mr. Chen can testify that he recognizes the downloaded

23   video as the same as the uploaded video.  *See* Fed. R. Evid. 901(b)(1) (permitting authentication

24   through the testimony "that an item is what it is claimed to be").  Regarding the flash library files

25   for the Barber video, Ms. Huiping Liu testified that she created the exhibit and pulled it from her

26   computer:

27
28

Q.· One moment. Okay. I've displayed on my screen Exhibit 287, which we also discussed earlier, which BabyBus produced as BB_00098200. Can you see my screen, Ms. Liu?

1   A.· Yes.· Yes.

2   Q.· I'm going to play the video from the beginning.

3   A.· Okay.

4   (Video played.)

5   BY MR. STAKE: Q. Now, I've paused the video. Look at the -- about the 1908 mark on the bottom of the screen. Looks like it's

6   about 70 -- after 76 seconds. What do those words say on the screen there, Ms. Liu?

7

8   A. Barber.

9   Q. And what is this video that I've played, Ms. Liu?

10   A. Barber.

11   Q. And did you have any role in creating this file that I played?

12   A. Yes.

13   Q. And what was that role?

14   A. All the moves of the characters, as well as the animation of the props in the background.

15   Q. And when were these files -- when was this file created?

16   A. Well, about -- I don't remember.

17   MR. STAKE:· Pardon me, Interpreter.· I didn't quite hear you.

18   THE WITNESS:· Well, about -- I don't remember.

19   BY MR. STAKE:

20   Q. Do you know what year you created this file?

21   A. Roughly 2015 to 2016.

22   Q. Did you create this barber video in the course of your regular activities as an animator at BabyBus?

23

24   A. Yes.

25   Q. And was this barber video one of the files that you collected from your barber folder on your computer at BabyBus that you provided to BabyBus counsel?

26

27   A. Yes.

28   Q. And were these records in your BabyBus -- strike that. Were these records in your barber folder on your BabyBus laptop

maintained in the ordinary course of BabyBus' business?

MS. McHALE: Object to form.

(Check interpreter clarification.)

THE WITNESS: Yes. Desktop.

*See* Stake Decl. Exh. 13 (Liu Dep.) at 61:6–62:23.  The Court **DENIES** the motion in limine to

exclude the Doudou videos.  Authenticating testimony is subject to cross-examination.

F.    Defendant's Motion in Limine No. 1 (Docket No. 349)

Babybus requests that the Court exclude evidence of six videos and four compilations that

BabyBus already conceded willfully infringed certain of Moonbug's registrations.  Docket No.

349 (D's MIL No. 1).  Babybus argues that because it already admitted to liability and the Court

also granted summary judgment of willful infringement by the concededly infringing videos, there

is nothing left for the jury to on the liability of the conceded videos.

As explained in the jury instructions, the Court does not intend to bifurcate the trial into

separate phases for liability and damages.  Although the Court's summary judgment order

simplified the issues of liability, it is inevitable that a jury will hear evidence and argument on

other open issues involving these videos.  A jury must determine damages caused by infringement

of the seven Moonbug copyright registrations by the six Babybus videos.  A jury must also

determine whether the other 35 Moonbug copyright registrations are infringed by those six

Babybus videos.  *See* Docket No. 162-2 Appendix A at 2.  A jury must consider the concededly

infringing videos to evaluate Moonbug's § 512(f) claim for copyright misrepresentation.  *See* 17

U.S.C. § 512(f) (requiring that Babybus (1) knew the material infringed, (2) should have known if

they acted with reasonable care or diligence that the material infringed, or (3) would have had no

substantial doubt had they been acting in good faith that the material infringed).  And a jury must

consider the concededly infringing videos to assess Babybus' willfulness because it is indicative

of Babybus' knowledge, intent, and plan as to the CoComelon series and characters as a whole.

*See* Fed. R. Evid. 404(b)(2) ("[Character] evidence may be admissible for another purpose, such as

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or

lack of accident.").  Babybus cannot use strategic, limited concessions of infringement to exclude

20

relevant evidence of other live copyright infringement claims at trial.

Babybus' concern that "[t]here is the substantial risk the jury will confuse BabyBus' concession of infringement for some videos as evidence of infringement by all its videos" is overblown.  D's MIL No. 1 at 2.  Babybus' concern that the jury will extrapolate from the concession that the video frames infringe to conclude that the characters infringe is also exaggerated.  D's MIL No. 1 at 6.  The Court will instruct the jury to find copyright infringement on a work-by-work basis.  It cannot be presumed that the jury would disregard the instruction and use the finding of liability for six videos to shortcut to a finding of liability for all of Babybus' videos.

The Court **DENIES** the motion in limine to exclude all argument and reference to the concededly infringing videos.

G.     Defendant's Motion in Limine No. 2 (Docket No. 351)

Babybus requests that the Court exclude evidence regarding (1) BabyBus' companywide revenue or the distribution of Super JoJo on non-U.S. platforms; and (2) alleged infringements by BabyBus beyond those that Moonbug has alleged.  Docket No. 351 (D's MIL No. 2).  Babybus argues that such references would prejudice BabyBus by suggesting to the jury that BabyBus can "afford" a large damages award and account for alleged infringements on other platforms.  *Id.* at 1.  Such references appear, for instance, in documents prepared in connection with a planned IPO by Babybus.  *See, e.g.*, Stake Decl. Exh. 1.  Moonbug opposes.  Docket No. 351 (P's Opp. to D's MIL No. 2).

1.     Babybus' Global Revenue in its IPO Prospectus

First, the Court finds that Babybus' IPO prospectus is relevant and admissible, as are other references to Babybus' global revenue, to lay foundation as to Babybus' business and popularity across YouTube and other platforms and development of Super JoJo.  Moreover, as explained below as well as in the Court's order on Babybus' motion to exclude the opinions of Dr. Jennifer Vanderhart, *see* Docket No. 407 at 28–30, Babybus' global revenue is relevant to the issue of extraterritorial damages.  Babybus argues that Moonbug should not be allowed to circumvent Magistrate Judge Westmore's ruling that BabyBus' global revenues related to Super JoJo is not

United States District Court
Northern District of California

relevant to apportionment of expenses.  Docket No. 115 (Order Denying Moonbug's Motion to Compel).  But Judge Westmore did not foreclose the admissibility of evidence of global revenue at trial; she merely declined to compel Babybus to produce such information during discovery. *See* Docket No. 115 ("While Plaintiffs will bear the burden of proving Defendants' gross revenue attributable to Super JoJo to show profits, Defendants will bear the burden of showing that their expenses were directly attributable to sales within the United States in order to credit those amounts from the gross revenue.").  To the extent that Babybus believes that its purported infringement only impacted a portion of its global revenue, Babybus is free to introduce experts or evidence to those ends.

### 2. Distribution of Super JoJo on Non-U.S. Platforms

Second, the Court does not exclude evidence of the distribution of Super JoJo on non-U.S. platforms.  Such evidence is relevant to Babybus' deductible expenses—expenses that Babybus claims are not allocated to account for other non-U.S. platforms—and Moonbug is permitted to challenge those expenses.  Moreover, Moonbug may recover damages globally that stem from predicate infringing acts committed within the U.S.  So long as an infringing act occurred within the U.S. (*i.e.*, on a U.S. platform), a plaintiff may recover damages flowing from the extraterritorial exploitation of that act.  *See Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 992 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (Aug. 25, 1998) (holding that a plaintiff "is entitled to recover damages flowing from exploitation abroad of the domestic acts of infringement committed by defendants"); *Los Angeles News Serv. v. Reuters Television Int'l (USA) Ltd.*, 340 F.3d 926, 932 (9th Cir. 2003), *as amended on denial of reh'g* (Oct. 7, 2003) (limiting *Reuters* to apply to only extraterritorial unjust enrichment and not actual damages); *see also* Docket No. 407 at 28–30.

### 3. Super JoJo's Impact on Moonbug

Third, the Court will admit evidence that Super JoJo infringes Moonbug's properties outside of CoComelon.  Moonbug proffers that its damages expert Dr. Vanderhart will testify that damages are "understated" because Super JoJo has impacted Moonbug's entire business.  P's Opp. to D's MIL No. 2 at 3.  Such argument, contrary to Babybus' reasoning, does not necessarily mean

United States District Court
Northern District of California

1    that Moonbug must argue that Super JoJo *directly infringes* Moonbug's other properties.  Indirect,

2    derivative damages can recoverable if they are proximately caused by the challenged conduct.  *See*

3    *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (permitting recovery of

4    indirect profits under § 504(b) when "1) the copyright claimant must first show a causal nexus

5    between the infringement and the gross revenue; and 2) once the causal nexus is shown, the

6    infringer bears the burden of apportioning the profits that were not the result of infringement");

7    *Rearden LLC v. Walt Disney Co.*, No. 17-CV-04006-JST, 2022 WL 2064976, at *2 (N.D. Cal.

8    June 8, 2022) (same); *cf. Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1552

9    (9th Cir. 1989) (awarding prejudgment interest on profits because interest is "another form of

10   indirect profit accruing from the infringement, which should be turned over to the copyright owner

11   *along with other forms of indirect profit*") (emphasis added).  Babybus is free to cross-examine

12   Dr. Vanderhart on the topic of whether the infringement at issue here indeed affected other aspects

13   of Moonbug's business.

14          The Court **DENIES** the motion in limine.

15   H.    <u>Defendant's Motion in Limine No. 3 (Docket No. 352)</u>

16          Babybus requests that the Court exclude evidence related to YouTube or BabyBus

17   removing Super JoJo videos from YouTube's platform (and YouTube terminating BabyBus'

18   account) under Rules 402 and 403.  Docket No. 352 (D's MIL No. 3).  This motion in limine

19   encompasses the following events: On July 20, 2021, Moonbug submitted several notices to

20   YouTube alleging copyright infringement by Babybus under the Digital Millennium Copyright

21   Act (DMCA).  Moonbug simultaneously sent cease-and-desist letters to Babybus and YouTube.

22   In response, YouTube removed nine of these videos from its platform—two videos on July 30,

23   2021; two videos on August 6, 2021; and five videos on August 11, 2021—and Babybus disabled

24   from public view over one hundred videos.  YouTube suspended Babybus' Super JoJo English

25   channel but reinstated it on October 5, 2021.  On or around March 20, 2023, after the Court had

26   already issued its summary judgment order and found willful infringement as to some of the

27   videos, Babybus submitted counternotifications to YouTube falsely claiming videos were

28   "original" and not infringing.  In its motion in limine, Babybus now argues that reference to this

series of events should be excluded as more prejudicial than probative.  D's MIL No. 3 at 3. Babybus argues that YouTube's removal actions are irrelevant and void of probative value to the copyright issues in this case because the DMCA does not require service providers to make any factual findings of copyright infringement.  D's MIL No. 3 at 4.  Babybus argues that its own removal actions were simply a reflection of YouTube's copyright policy, not an admission of infringement.  D's MIL No. 3 at 5.

The Court finds that the probative value of DMCA events outweighs any prejudicial effect. As Moonbug asserts, the DMCA events bear on: (1) Babybus' knowledge that the infringing Super JoJo videos may be removed subject to valid takedown notices and the credibility of Babybus' witnesses denying liability; (2) Moonbug's § 512(f) claim and the basis of this litigation; and (3) Babybus' willful infringement and irreparable harm to Moonbug.  P's Opp. to D's MIL No. 3 at 3.  The Court has already permitted Moonbug to file a supplemental complaint with factual allegations that Babybus continued to upload admittedly infringing videos and false counter-notifications to YouTube—and supplement with a copyright misrepresentation cause of action, which places YouTube and Babybus' actions under the DMCA squarely at issue.  Docket No. 306 (Order Granting Plaintiff's Motion to File Supplemental Complaint) at 2.

It may be true that evidence of the DMCA procedures would require that the Court and counsel spend additional time explaining to the jury YouTube's copyright policy, the DMCA, and the different standards between DMCA and federal copyright law.  *See, e.g.*, *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 989, 991–92 (N.D. Iowa 2007) (finding that admitting an arbitrator's decision would require evidence on "arbitral procedures, the CBA and the differences between arbitral and judicial proceedings and CBAs and federal employment discrimination laws").  But this additional testimony and any prejudicial effect thereof would not "substantially outweigh[]" the probative value of the evidence, especially given that Moonbug's § 512(f) claim concerns precisely this series of events.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").  The Court cautions the parties to limit discussion of the DMCA events to

United States District Court
Northern District of California

the copyright misrepresentation claim regarding the concededly infringing videos only.  The Court **DENIES** the motion in limine to exclude evidence related to YouTube removing concededly infringing Super JoJo videos from the platform or suspending Babybus' channel and evidence related to BabyBus removing concededly infringing Super JoJo videos from YouTube's platform.

I.      Defendant's Motion in Limine No. 4 (Docket No. 355)

Because Babybus is a Chinese company and its employees are expected to testify through a translator, Babybus requests that the Court "prohibit any testimony, evidence, argument, insinuation, reference, or assertion denigrating, disparaging, touting, exalting, emphasizing, or otherwise commenting unnecessarily on the nationality or place of residence or business of any party or witness, including reference to Chinese copyright registrations, any suggestion that Chinese companies in particular have a culture of or reputation for intellectual property theft or infringement or that BabyBus is an arm or instrumentality of the Chinese government."  Docket No. 355 (D's MIL No. 4) at 1.  Babybus also asks that the Court order the parties not to "disparage any witness on the basis of the witness's native language or the witness's choice to testify in their native language in whole or in part."  *Id.*  Moonbug responds that it has "no intention of disparaging any witnesses or party because of native language, nationality, or place of residence."  P's Opp. to D's MIL No. 4 at 1.

The Court cautions the parties not to make undue reference to the parties' or witnesses' nationalities or language to insinuate that Chinese companies or individuals have a culture for IP theft.  "Racial stereotyping cannot be condoned in civil cases."  *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1151 (9th Cir. 2001).  Babybus highlights questioning by Moonbug during witness depositions that go towards Babybus and its employees' relationship to the government of China.  For instance:

> Q. And Babybus receives subsidies from the Chinese government, correct?
>
> MS. SUTTON:· Objection. Outside -- objection. Outside of the scope.
>
> THE WITNESS: Regarding this category or this account, it reflects part of the subsidy amount coming from the government.

. . .

Q. I just wanted an answer to the question I asked, which was:
Babybus receives subsidies from the Chinese government, correct?

. . .

A. Yes.

Docket No. 358-2 (Stake Decl.) Exh. 2 (Lifang Tang Dep.) at 108:22–109:16.  The fact of government subsidies may be relevant to Babybus' net profits and may be admissible.  But emphasis on subsidies from the *Chinese* government risks exclusion under Rule 403.  Moonbug may not "beg[] the jury to draw an inference adverse to [the party] based entirely on its ethnic identity or national origin."  *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1008–09 (9th Cir.), *opinion amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001) ("[T]he risk of racial or ethnic stereotyping is substantial, appealing to bias, guilt by association and even xenophobia.").

The Court does not "suggest that expert testimony relating to certain aspects of a defendant's race, ethnicity or nationality can never be admissible."  *Id.* at 1008.  Here, references to China are unavoidable because, foundationally, Babybus' business is in China, witnesses will be Chinese and Taiwanese and testifying in Chinese through a translator, and the Chinese copyright registrations bear on the timing of the creation of the characters at issue.  And Moonbug provides the alternative non-discriminatory explanation that the line of questioning regarding government subsidies is relevant to Tregillis' calculation of damages.  P's Opp. to D's MIL No. 4 at 5 (citing Tung Decl. Exh. A–B).  Thus, for these limited purposes, reference to foundational facts and to the amount of government subsidies is admissible.  It is a matter of emphasis.  At this juncture, the Court thus **DENIES** the motion in limine to the line of questioning regarding Chinese government subsidies but cautions the parties to avoid undue or unnecessary reference to the parties' or witnesses' nationalities or language.  The Court reserves judgment on other references to a party's national origin or language on a case-by-case basis at trial.

J.      Defendant's Motion in Limine No. 5 (Docket No. 356)

Babybus requests that the Court exclude evidence of alleged copying or infringement of Moonbug's Baby JJ copyright by any other Babybus characters, including other characters in BabyBus' videos and any babies in non-party videos.  Docket No. 356 (D's MIL No. 5).  Babybus

United States District Court
Northern District of California

26

United States District Court
Northern District of California

1   argues that because Moonbug only pinpointed Babybus' Super JoJo character as purported

2   infringing, it would be prejudicial to Babybus if Moonbug were to challenge other Babybus

3   characters at trial.  *Id.* at 2–3.  Babybus also argues that infringement by non-parties is entirely

4   irrelevant to the issues here and would cause the jury to give the JJ copyright undue weight.  *Id.* at

5   3–4 (citing Stake Decl. Exh. 5 (Krause Rebuttal Report) ¶ 31 ("For example, I am aware that the

6   'Baby YoYo Cartoons and Kids Songs' YouTube channel is the subject of a copyright

7   infringement lawsuit brought by Plaintiffs, alleging infringement of CoComelon copyrights.")).

8        Moonbug in turn proposes that the Court exclude evidence of *all* baby characters,

9   including those of third parties, because the Court has already found that JJ is original and

10  protectible under copyright law.  P's Opp. to D's MIL No. 5 at 1 ("If Defendants are willing,

11  Moonbug is willing to stipulate that evidence of other animated babies are irrelevant (a position

12  Moonbug has taken in its own motions in limine).  But if Defendants wish to introduce evidence of

13  other baby characters, Moonbug must be permitted to respond.").

14       The Court finds that comparisons between Moonbug's JJ character and other baby

15  characters from Babybus and other non-parties is admissible.  First, central to Babybus' case is

16  whether some of JJ's characteristics are generic and found commonly through the genre as this

17  may be relevant to, *e.g.*, application of the extrinsic test and its filtering.  Indeed, Babybus has

18  already employed several experts who have compared JJ to other non-Babybus baby characters to

19  show that JJ has generic characteristics.  *See, e.g.*, Docket No. 291-1 Exh. A (Seiter Report) (citing

20  BillionSurpriseToys videos for the conclusion that "Moonbug's works show a low degree of

21  originality, and are mostly derived from earlier works" and that the allegedly similar elements

22  from CoComelon and Super JoJo constitute "stock expression common in the genre") at 110–111;

23  Docket No. 194-17 Exh. 1 (Saperstein Report) at 1 (concluding "that the videos in this genre made

24  by different companies and featured on different channels contain so many overlapping creative

25  elements that they are effectively interchangeable substitutes for one another").  Given that

26  Babybus itself has already invoked evidence of other baby characters, Moonbug should be

27  afforded the opportunity to do the same—*e.g.*, to rebut Babybus' arguments that JJ has

28  characteristics common to the genre.  Second, Moonbug proffers that it intends to comment on the

1   substantial similarity of Babybus' alternate JoJo designs—despite not having addressed them in

2   Moonbug's infringement contentions—to show that Babybus deliberately maximized the

3   similarity between JoJo and JJ, which bears on Moonbug's willfulness claims.  P's Opp. to D's

4   MIL No. 5 at 4–5.  Each of these uses have probative value to Moonbug's claims or Babybus'

5   defenses and would cause minimal prejudicial effect to Babybus.  The Court **DENIES** the motion

6   in limine to exclude evidence of alleged copying or infringement of Moonbug's Baby JJ copyright

7   by any other characters.

## V.      EXHIBITS

9        The parties have provided a list of 3649 exhibits for trial.  *See* Docket No. 362 Appendix

10  B1.  The parties also each identified a subset of the opposing parties' exhibits for which they seek

11  rulings on objections in advance of trial.  Docket No. Docket No. 362 Appendix B2.  With regards

12  to responses to requests for admission, responses to special interrogatories, and stipulation of

13  facts, the parties will be permitted to read the evidence into the record as part of their allotted trial

14  time.  With regards to the objections to the representative exhibits per party, the Court rules in a

15  separate order.

## VI.      PRELIMINARY STATEMENT TO THE JURY

17       The parties have agreed on the following preliminary statement to the jury.  *See* Docket

18  No. 333.

19       This is a case about alleged infringement of copyrights. The plaintiffs, the entities that

20  brought this case, are Moonbug Entertainment Limited and Treasure Studio, Inc. During

21  the trial, these entities may be referred to as Moonbug, Treasure Studio, or Plaintiffs. The

22  defendants in this case are BabyBus Co., Ltd. And BabyBus (Fujian) Network Technology

23  Co., Ltd. During the trial, these entities may be referred to as BabyBus or Defendants.

24  Plaintiffs claim that Defendants willfully infringe Plaintiffs' copyrights in characters and

25  videos in Plaintiffs' children's show CoComelon. Plaintiffs also claim that defendants

26  made misrepresentations to YouTube to cause YouTube to put back up infringing videos.

27  Plaintiffs seek damages for Defendants' infringement and misrepresentations. Defendants

28  deny infringement of the copyrights and deny that they made any knowing

United States District Court
Northern District of California

28

misrepresentations to YouTube. Defendants also dispute the amount of damages Plaintiffs seek.

The Court accepts this preliminary statement.

### VII.     JURY INSTRUCTIONS

The parties have submitted joint jury instructions.  *See* Docket No. 336.  The Court will address the jury instructions in a separate order.  The Court intends to file proposed jury instructions and give the parties an opportunity to raise objections.

### VIII.     JURY VERDICT FORM

The parties have both submitted proposed special verdict forms.  *See* Docket No. 335; Docket No. 345.  The Court has provided a proposed jury verdict form to the parties and given the parties an opportunity to raise objections.

### IX.     VOIR DIRE AND QUESTIONNAIRE

The parties have submitted joint proposed voir dire questions.  *See* Docket No. 334.  The Court has proposed a jury questionnaire in a separate order.


**IT IS SO ORDERED**.


Dated: June 22, 2023


_____
EDWARD M. CHEN
United States District Judge