UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MOONBUG ENTERTAINMENT LIMITED, et al., | Case No.  21-cv-06536-EMC |
| Plaintiffs, | **FINAL JURY INSTRUCTIONS** |
| v. | |
| BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD, et al., | |
| Defendants. | |

The following constitute the Court's proposed Final Jury Instructions in advance of the charging conference on July 21, 2023.

**IT IS SO ORDERED**.

Dated: July 20, 2023

EDWARD M. CHEN
United States District Judge

# I.    FINAL INSTRUCTIONS

### JURY INSTRUCTION NO. 1
### BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all the evidence, regardless of which party presented it.

[Court Notes: 9th Cir. Model Instruction No. 1.6.]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 2**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits that are admitted into evidence;

(3) any facts to which the lawyers have agreed; and

(4) any facts that I have instructed you to accept as proved.

[Court Notes: 9th Cir. Model Instruction No. 1.9.]

# JURY INSTRUCTION NO. 3

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

[Court Notes: 9th Cir. Model Instruction No. 1.10.]

**JURY INSTRUCTION NO. 4**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

[Court Notes: 9th Cir. Model Instruction No. 1.12.]

United States District Court
Northern District of California

# JURY INSTRUCTION NO. 5

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence corroborated or contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

Your evaluation of witness testimony should not be influenced by any prejudice or bias,

including unconscious bias.

[Court Notes: 9th Cir. Model Instruction No. 1.14.  The Court has modified the instruction.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 6**

**COPYRIGHT – DEFINED (17 U.S.C. § 106)**

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to or authorize others to:

1. reproduce the copyrighted works;

2. recast, transform, or adapt the work, that is prepare derivative works based upon the copyrighted works, and to perform publicly derivative works based upon the copyrighted audiovisual works;

3. distribute copies of the copyrighted works to the public;

4. publicly perform copyrighted audiovisual works;

5. display publicly a copyrighted audiovisual or graphic work; and

6. perform a sound recording.

It is the owner of a copyright who may exercise these exclusive rights. The term "owner" includes the author of the work and the exclusive licensee of the work. In general, copyright law protects against reproduction, adaptation, public distribution, public performance, public display of identical or substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement.


[Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.2.

This instruction is necessary because it defines copyright, including the exclusive rights granted as part of each copyright, which is necessary for the jury in evaluating whether Babybus infringed these rights.]

**JURY INSTRUCTION NO. 7**

**COPYRIGHT — ELEMENTS — OWNERSHIP AND**

**COPYING (17 U.S.C. § 501(a)–(b))**

On the copyright infringement claim as to each disputed work, Plaintiffs first have the burden of proving by a preponderance of the evidence that:

1. Plaintiffs are the owners of a valid copyright; and

2. Defendants copied original expression from the copyrighted work. This includes two elements: "factual copying" and "unlawful appropriation." Factual copying is the fact of copying as the source for a defendant's work (as opposed to independent creation). Unlawful appropriation is the copying of elements that are protected, as I will further explain.

You are instructed that the Court has already determined that Plaintiffs own valid copyrights in the 42 CoComelon Works at issue for element (1) above.


[Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.5; *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).

Babybus argues that the instructions should include the sentence "This element contains two separate components: 'factual copying' and 'unlawful appropriation.'"  Moonbug argues that this sentence is not necessary because argumentative and duplicative of other instructions.  The Court includes this instruction because it is a more precise statement of the law, as this Court has previously explained in its SJ order.  Docket No. 242 (SJ Order) at 8 ("The second prong of copyright infringement analysis—whether the defendant copied protected elements of the copyrighted work ('Prong 2')—'contains two separate components: copying and unlawful appropriation.' *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc).").  As to the "42 CoComelon works" or "35 asserted copyrights," the Court uses the former because it intends to decline bifurcation of the trial as described above.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div style="transform: rotate(-90deg)">United States District Court<br>Northern District of California</div>

### JURY INSTRUCTION NO. 8

### COPYRIGHT — SUBJECT MATTER — GENERALLY (17 U.S.C. § 102)

Plaintiffs are the owners of valid copyrights in 42 CoComelon Works at issue in this case. The CoComelon Works involved in this trial are known as:

1. pictorial works or graphic works, such as two- and three-dimensional works of fine, graphic or applied art;

2. character works, such as characters in comic books, cartoons, movies, or television shows;

3. audiovisual works, such as cartoons or television shows in which a series of related images convey an impression of motion when shown in succession; and

4. sound recordings, which are works that result from fixation of a series of musical, spoken, or other sounds.

Copyright protection in a work extends not only to the work as a whole, but also to sufficiently distinctive elements contained within the work. Characters in comic books, television or motion pictures can be afforded copyright protection if the character satisfies a three-part test, which provides that the character: (1) must generally have physical as well as conceptual qualities; (2) must be sufficiently delineated to be recognizable as the same character whenever it appears by displaying consistent, identifiable character traits and attributes, although it need not have a consistent appearance; and (3) must be especially distinctive and contain some unique elements of expression.

You are instructed that the Court has determined that the character JJ, the main character of the CoComelon works, is a sufficiently distinctive character and is therefore afforded copyright protection.

[Court Notes: *See* 9th Cir. Model Instruction No. 17.3; *DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015).

Moonbug argues that the sentences explaining that "Copyright protection in a work extends not only to the work as a whole, but also to sufficiently distinctive elements contained

United States District Court
Northern District of California

1  within the work," including characters and comic book characters, should be included.  In *DC*

2  *Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015), the Ninth Circuit holds that "Courts have

3  recognized that copyright protection extends not only to an original work as a whole, but also to

4  "sufficiently distinctive" elements, like comic book characters, contained within the work.

5  Although comic book characters are not listed in the Copyright Act, we have long held that such

6  characters are afforded copyright protection." *Id.* at 1019.  The Court agrees that this preface

7  should be included.

8        Moonbug also argues that the phrase "by displaying consistent, identifiable character traits

9  and attributes, although it need not have a consistent appearance" should be included as part of the

10  three-part test.  In *DC v. Towle*, that phrase is indeed part of factor two.  *See id.* at 1021

11  ("Considering the character as it has appeared in different productions, it must display consistent,

12  identifiable character traits and attributes, although the character need not have a consistent

13  appearance.").  The Court agrees that this preface should be included.]

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

**JURY INSTRUCTION NO. 9**

**COPYRIGHT — SUBJECT MATTER — IDEAS AND**

**EXPRESSION (17 U.S.C. § 102(b))**

Copyright law allows the owner of an original work to stop others from copying the original expression in the author's work. Only the particular expression of an idea can be copyrighted and protected. Copyright law does not give the author the right to prevent others from copying or using the mere underlying ideas contained in the work, such as any procedures, processes, systems, methods of operation, concepts, principles, or discoveries.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.4.

Babybus departs from the Model Instructions to add the word "protectable" to the instructions.  Moonbug argues that this is unnecessary and overemphasizes Babybus' preferred theories.  The Court need not include the word "protectable" for the jury to already understand that copyright law does not protect all expression.  There is a separate instruction on protected and unprotected matter.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 10**

**COPYRIGHT — SUBJECT MATTER — PROTECTED AND UNPROTECTED**

**MATTER (17 U.S.C. § 102)**

One of the first issues you will determine is whether individual elements or combination of elements in Moonbug's works are protectable under copyright law.  Copyright protection does not necessarily extend to all the elements of a copyrighted work. Only the particular expression of an idea can be copyrighted and protected. Elements to which copyright protection extends are called "protected matter," and other elements are "unprotected matter." Unprotected matter is not entitled to copyright protection and may be copied by another. They include:

1. A portion of the work that is not original to the author;

2. A portion of the work that was in the public domain at the time of creation by the author;

3. An underlying idea, concept, objective fact, or actual event themselves, expressed or described in a work; and

4. Elements that are merely standard, stock, or common to a particular subject matter or medium.

You may find that aspects of Plaintiffs' copyrighted works are protected or not protected. You may also find that a particular selection and arrangement of otherwise unprotected elements is original enough to be protected if those elements are numerous enough and their selection and arrangement are original enough that their combination constitutes an original work of authorship. Mere trivial variations in compilation and arrangement or compilations and arrangements that are an age-old practice, firmly rooted in tradition, and so commonplace that it has come to be expected as a matter of course are not sufficiently original under copyright law to qualify for protection.

[Court Notes: ABA Model Jury Instr. (Copyright) 1.4.2, 1.4.3; 9th Cir. Model Civil Jury Instruction No. 17.4; 17 U.S.C. § 102; *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020) (quoting *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003)); *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 914 (9th Cir. 2010), *as amended on denial of reh'g*

(Oct. 21, 2010); *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 111 S. Ct. 1282, 1297, 113 L. Ed. 2d 358 (1991); *United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978); *Satava v. Lowry*, 323 F.3d 805, 810, 812 (9th Cir. 2003).

Babybus proposes this instruction to assist the jury in determining "which, if any, elements of the asserted works are not protectable so they can conduct that required filtering."  Moonbug argues that this instruction should not be included at all because it is argumentative, unnecessarily duplicative of other instructions on specific doctrines, and would confuse the jury by emphasizing certain examples.  The Court includes this instruction because it will clarify to the jury which elements have already been deemed unprotectable and which elements remain for the jury to consider.  It is not unnecessarily duplicative of the previous jury instruction as Moonbug claims.

Additionally, the scenes a faire doctrine is already incorporated into the protectability requirements.  The above describes unprotected elements as including: "Elements that are merely standard, stock, or common to a particular subject matter or medium."  *See Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ("Before that comparison can be made, the court must "filter out" the unprotectable elements of the plaintiff's work— primarily ideas and concepts, material in the public domain, and scènes à faire (stock or standard features that are commonly associated with the treatment of a given subject).").]

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY INSTRUCTION NO. 11

## COPYRIGHT — OWNERSHIP OF VALID COPYRIGHT —

## DEFINITION (17 U.S.C. §§ 201–205)

You must first consider copyright ownership.  You are instructed that Plaintiffs are the owners of valid copyrights in 42 CoComelon Works at issue in this case.  The list of those Works will be given to you at trial.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.6.

Moonbug argues that all 42 copyright registrations should be listed.  Babybus argues that only the 35 copyright registrations where liability is at issue should be listed.  The highlighted seven registrations are those for which Babybus has conceded infringement.  Because the Court declines to bifurcate the trial into phases for liability and damages, the Court will acknowledge that Moonbug owns the full 42 copyright registrations.  However, it is unnecessary and a waste of time to list out the name and registration number for all 42 copyrights, so the Court will not include this instruction.  The parties should stipulate to these facts and include the list of works in the stipulation which can be admitted as an exhibit.]

# JURY INSTRUCTION NO. 12

## COPYRIGHT — ORIGINALITY

An original work may include or incorporate elements taken from prior works, works from the public domain, and works owned by others, with the owner's permission. The original parts of the plaintiff's work are the parts created:

1. independently by the author, that is, the author did not copy it from another work; and
2. by use of at least some minimal creativity.

In copyright law, the "original" elements of a work need not be new or novel. "Original," as the term is used in copyright, means only that the work was independently created by the author, as opposed to copied from other works, and that it possesses some minimal degree of creativity. A work may be original even though it closely resembles other works so long as the similarity is not the result of copying. A combination that includes unprotectable elements qualifies for copyright protection when the elements are numerous enough and their selection and arrangement are original enough that their combination constitutes an original work of authorship.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.14; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991); *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).]

## JURY INSTRUCTION NO. 13

## COPYRIGHT — COPYING

As explained earlier, the Plaintiffs must provide evidence of copying by Defendants ("factual copying") for each disputed work. To prove factual copying, Plaintiffs may provide direct evidence of copying by Defendants.  The Plaintiffs may alternatively show that the Defendants copied original elements from the Plaintiffs' copyrighted works through circumstantial evidence – *i.e.*:

(1) that the Defendants had access to the Plaintiffs' copyrighted works, and

(2) that there are substantial similarities between the Defendants' works and original elements of the Plaintiffs' works.

Defendants do not dispute that they had access to the Plaintiffs' copyrighted works (element (1) above).

Such copying must be of more than a de minimis amount of the work—that is, not so meager and fragmentary that the average audience would not recognize the appropriation.

If you find that the Plaintiffs have failed to prove copying by Defendants either through direct evidence or circumstantial evidence, then your verdict should be for the Defendants on that work.

If you find by a preponderance of the evidence that Defendants copied any of Plaintiffs' copyrighted works, you must next determine whether Defendants "unlawfully appropriated" Plaintiffs' copyrighted works.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.17.

Moonbug's proposed instructions include an explanation of how the jury could find copying through circumstantial evidence.  *See Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987) ("Because direct evidence of copying is rarely available, a plaintiff may establish copying by circumstantial evidence of: (1) defendant's access to the copyrighted work prior to the creation of defendant's work, and (2) substantial similarity of both general ideas and expression between the copyrighted work and the defendant's work.").  The Court agrees that the jury should hear

1    instructions as to copying through circumstantial evidence.

2         Babybus' proposed instructions include an explanation on the element of substantial

3    similarity needed to establish circumstantial evidence of copying.  Docket No. 242 (Summary

4    Judgment Order) at 11 (citing *Bach v. Forever Living Prod. U.S.*, Inc., 473 F. Supp. 2d 1127, 1138

5    (W.D. Wash. 2007) ("[E]ven where there is evidence of direct copying, 'copying as a legal

6    proposition must still be established; hence, substantial similarity remains an indispensable

7    element of plaintiff's proof, even in cases . . . in which defendant does not contest factual

8    copying.'"); *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018).  The Court agrees that

9    the jury should hear instructions as to the substantial similarity element.]

**JURY INSTRUCTION NO. 14**

**COPYRIGHT — UNLAWFUL APPROPRIATION —**

**EXTRINSIC TEST; INTRINSIC TEST**

Now I will explain what "unlawful appropriation" is.  To determine unlawful appropriation,  you must determine for each of the disputed works whether each of Defendants' videos share the necessary degree of similarity; the similarity test contains an extrinsic and intrinsic portion that the Court will explain in instructions momentarily.  To show unlawful appropriation, you must apply both of the two separate tests.

a.    Extrinsic Test

The first test is an "Extrinsic Test."  The "extrinsic test" is an objective comparison of specific expressive elements.  There are three steps within this test:

(1)  In the first step of the Extrinsic Test, you must identify similarities between each disputed copyrighted work and the accused work(s).

(2)  In the second step of the Extrinsic Test, you must filter out all the similarities you identified in Step (1) that are based on elements in Plaintiffs' copyrighted works which are not protected under copyright law.  Unprotected elements can include stock or standard concepts, characters, plot, themes, dialogue, mood, setting, pace, colors, animation style, sequence of events, music, and any other features that are commonly used or firmly rooted in the tradition of the genre to which the works belong, as well as other material that is part of the public domain or not original to the Plaintiffs.

A combination of elements that are individually unprotected can collectively be protected expression if those elements are numerous enough and their selection and arrangement original enough that the combination constitutes an original work of authorship. For example, a particular grouping or sequence in which an author combines a significant number of unprotectable elements can itself be a protectable element and can help satisfy the extrinsic test.  Assessing the similarity between two works  may require examining similarities between the protected combination of elements of the copyrights work and those of the accused works:  combinations may

United States District Court
Northern District of California

include characters, relationships between the major characters, animation styles, plot, pace, themes, dialogue, mood, setting, colors, costumes, and sequence of events.

(3) In the third step of the Extrinsic Test, once you filter out any similarities that arise from elements in Plaintiffs' works that are not protected in step (2), you must then determine whether the protected elements (or combination of elements) are [substantially similar] / [virtually identical] [to be determined by the Court at the end of trial prior to giving the instruction].

For each disputed work, if you find that Plaintiffs have failed to show sufficient similarity to satisfy the Extrinsic Test, then you do not need to consider the intrinsic test and your verdict should be for Defendants. If you do find that Plaintiffs have shown sufficient similarity to satisfy the Extrinsic Test, then you go onto the Intrinsic Test.

  b. <u>Intrinsic Test</u>

The second test is a subjective one, called the Intrinsic Test. The Intrinsic Test asks whether an ordinary, reasonable observer would find the "total concept and feel" of the works to be substantially similar. Here, you should not take into account the testimony of the expert witnesses. You should not dissect isolated elements of each work to the exclusion of the other elements, combinations of elements, or expressions. Duplication or near identity is not necessary to satisfy the Intrinsic Test.

You must apply both tests. For each disputed work, if you determine that Plaintiffs have shown substantial similarity under both the Extrinsic Test and the Intrinsic Test, your verdict should be for the Plaintiffs as to that work.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.19; *Gray v. Hudson*, 28 F.4th 87, 97 (9th Cir. 2022); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994); *Corbello v. Valli*, 974 F.3d 965, 974 (9th Cir. 2020); *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1261 (9th Cir.), *cert. denied*, 211 L. Ed. 2d 183, 142 S. Ct. 343 (2021) ("[T]he district court must determine the scope of a work's copyright protection in the first instance."); *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 914 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21,

2010) ("We review de novo the district court's determination as to the scope of copyright protection.").]

[The Court employs a combination of the jury instructions proposed by both parties.  For the extrinsic test, Babybus presents a clearer description of the three-part process for identifying the similarities and filtering out the non-protected elements.  Moonbug's proposed instructions do not clearly delineate these steps and are muddled and confusing.

For the intrinsic test, the Court has removed parts of Babybus' proposed instructions that are duplicative.]

**JURY INSTRUCTION NO. 17**

**MISREPRESENTATION — PRELIMINARY INSTRUCTION (17 U.S.C. § 512(f)) –**

**THE DMCA TAKEDOWN PROCESS**

The Digital Millennium Copyright Act (DMCA) provides a procedure to address copyright infringement on the internet. It allows copyright owners to request that online platforms remove content posted by others that the copyright owners alleged infringes their copyright. This request to an online platform is referred to as a DMCA takedown notice.

In response, the online platform may remove or disable the allegedly infringing material. The online platform may also notify the user who posted the allegedly infringing material.

In response to a takedown notice, the user who posted the allegedly infringing content has the option to submit a DMCA counter-notification to the online platform, which is sometimes also referred to as a counternotice. This is a statement by the user who posted the allegedly infringement material, signed under penalty of perjury, that the user has a good faith belief that the allegedly infringing material does not infringe the copyright.

The online platform may choose to restore the allegedly infringing material after receiving a DMCA counter-notification. A defendant may be liable for knowingly submitting a false DMCA counter-notification.

[Court Notes: 17 U.S.C. § 512(f).

Moonbug proposes instructions explaining the DMCA takedown process, Moonbug's burden of proof, and liability for misrepresentation.  Babybus argues that the last two highlighted sections should not be included.  The Court will not include these two sections—even though they are important—because they are already fully explained in the next section of jury instructions in greater detail.  ]

1
2

# JURY INSTRUCTION NO. 18

## MISREPRESENTATION — ELEMENTS

3      Anyone who knowingly and materially misrepresents that copyright infringement did not
4  occur in a DMCA counter-notification to an online platform is liable for misrepresentation.

5      On the Plaintiffs' misrepresentation claim, Plaintiffs have the burden of proving by a
6  preponderance of the evidence that:

7      1. Defendants knowingly misrepresented that their material did not infringe Plaintiffs'
8  copyrights in a DMCA counter-notification (that their material was removed or disabled as a result
9  of mistake or misidentification of the material); and

10      2. Defendants' misrepresentation was material, *i.e.*, it affected the response of an online
11  platform to a DMCA takedown notice.

12      If you find that the Plaintiffs have proven that the Defendants knowingly and materially
13  misrepresented that they did not infringe Plaintiffs' copyright in a DMCA counter-notification
14  (that their material was removed or disabled as a result of mistake or misidentification of the
15  material), your verdict should be for the Plaintiffs. If, on the other hand, you find that the Plaintiffs
16  have failed to prove that Defendants made a knowing and material misrepresentation, your verdict
17  should be for the Defendants.

18

19      [Court Notes: 17 U.S.C. § 512(f); *Online Pol'y Grp. v. Diebold, Inc.*, 337 F. Supp. 2d
20  1195, 1204 (N.D. Cal. 2004) (interpreting the materiality element of § 512(f) as "'Material' means
21  that the misrepresentation affected the ISP's response to a DMCA letter") (citing Black's Law
22  Dictionary (8th ed. 2004)).]

23      [As explained in the instruction above, the misrepresentation that Moonbug must show that
24  Babybus made is "that their material was removed or disabled as a result of mistake or
25  misidentification of the material." *Stebbins v. Polano*, 2021 WL 2682339 (N.D. Cal. June 30,
26  2021).  But as applied to this case, this element would be met if Moonbug showed that Babybus
27  misrepresented that "their material did not infringe Plaintiffs' copyrights in a DMCA counter-
28  notification."  Thus, the Court finds it appropriate to keep both parties' proposed language in the

United States District Court
Northern District of California

instructions.

The full instruction is crucial because it describes Moonbug's burden to prove that Babybus "knowingly" and "materially"—two terms used by the statute—made a misrepresentation in its representation to YouTube that the taken-down content was not infringing. The Court adds a parenthetical to align the instruction with the language of the case law. *See Stebbins v. Polano*, 2021 WL 2682339 (N.D. Cal. June 30, 2021) ("To state a claim for misrepresentation under 17 U.S.C. § 512(f)(2), a plaintiff must allege facts plausibly showing (1) that the defendant knowingly and materially misrepresented that its material was removed or disabled by mistake or misidentification; (2) the internet service provider relied on the misrepresentation in replacing the removed material or ceasing to disable access to it; and (3) the plaintiff was injured as a result. . . . [T]he first element is not met if the defendant had a subjective good faith belief that it was not making a misrepresentation.").]

United States District Court
Northern District of California

### JURY INSTRUCTION NO. 19

### MISREPRESENTATION — KNOWLEDGE OF MISREPRESENTATION

Defendants "knowingly" misrepresented that their material did not infringe Plaintiffs' copyright if they represented that that material did not infringe Plaintiffs' copyright and if any of the following are true:

1. Defendants actually knew that the material infringed Plaintiffs' copyright, without subjective good faith belief that it was not making a misrepresentation;

2. Defendants should have known if they acted with reasonable care or diligence that the material infringed Plaintiffs' copyright; OR

3. Defendants would have had no substantial doubt had they been acting in good faith that the material infringed Plaintiffs' copyright.


[Court Notes: 17 U.S.C. § 512(f).]

[Moonbug proposes this instruction; Babybus contends that it should not be included at all. As explained above, the "misrepresentation that the material was removed by mistake" is met if it is a "misrepresentation that the material did not infringe." The Court will include this instruction because it clarifies to the jury how the "knowledge of misrepresentation" element could be met. *See Online Pol'y Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004) (explaining "[a] party is liable if it 'knowingly' and 'materially' misrepresents that copyright infringement has occurred. 'Knowingly' means that a party actually knew, should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations.") (citing Black's Law Dictionary (8th ed. 2004)). The Court also inserts Babybus' proposed phrase "without subjective good faith belief that it was not making a misrepresentation" into the first element. *Moonbug Entertainment Limited v. Babybus Network Technology Co., Ltd.*, 2022 WL 580788 (N.D. Cal. Feb. 25, 2022) (A misrepresentation under § 512(f) requires proof the party "acted in subjective bad faith and with actual knowledge that it was making a material misrepresentation.").]

**JURY INSTRUCTION NO. 20**

**DAMAGES – PROOF**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiffs, you must determine the plaintiffs' damages. The plaintiffs have the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiffs for any injury you find was caused by the defendants. You should consider the measure of damages stated in the next instruction.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 5.1.]

**JURY INSTRUCTION NO. 21**

**COPYRIGHT — ACTUAL DAMAGES (17 U.S.C. § 504)**

If you find for Plaintiffs on Plaintiffs' copyright infringement claim, you must determine the Plaintiffs' damages.

The Plaintiffs are entitled to recover the actual damages suffered as a result of the infringement. While damages need not be exact, they cannot be too speculatively attributable to infringement.  The Plaintiffs must prove damages caused by Defendants' infringement(s) by a preponderance of the evidence.  You must calculate damages only for the copyrighted works found to be infringed.


[Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.32; *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004).]

[Babybus argues that the last sentence should be inserted.  Moonbug argues it is unnecessary because the instructions already require the jury to determine damages "as a result of infringement."  The Court will include the express instruction that the jury "must calculate damages only for the copyrighted works found to be infringed" to clarify that infringement is on a work-by-work basis.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# JURY INSTRUCTION NO. 22

## COPYRIGHT — DAMAGES — ACTUAL DAMAGES

The Plaintiffs are entitled to recover the actual damages suffered as a result of the infringement(s). Actual damages mean the amount of money adequate to compensate the Plaintiffs for the loss of profits caused by the infringement(s).

The Plaintiffs have the burden of proving the Plaintiffs' lost profits caused by Defendants' infringement(s) by a preponderance of the evidence.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.33.

Babybus argues that the sentences "You must calculate damages only for the copyrighted works found to be infringed. To be entitled to actual damages, Plaintiffs must prove that they suffered damage and that the damage they suffered was caused by the infringement and not other factors" and "The amount of actual damages cannot be based on speculation. If Plaintiffs fail to prove that Defendants' actions were the cause in the claimed reduction of market value of the works or the claimed harm to Plaintiffs, you may not award actual damages to Plaintiffs" should be included.  Plaintiffs do not seek reduction of fair market value, but lost profits; the Court has thus omitted proposed language relative thereto.]

1

2

**JURY INSTRUCTION NO. 23**

**COPYRIGHT — DAMAGES — DEFENDANTS' PROFITS**

3          In addition to actual damages (profits lost by the Plaintiffs as a result of Defendants'

4    infringement(s)), the copyright owner is entitled to any profits of the Defendants attributable to the

5    acts of infringement which occurred on a U.S. platform. However, you may not include in an

6    award of profits of the Defendants any amount you awarded in actual damages (profits lost by the

7    Plaintiffs).

8          You may make an award of the Defendants' profits only if you find that the Plaintiffs

9    showed a causal relationship between the infringement(s) and the Defendants' gross revenue. In

10   addition, you must reduce the award of profits by any amount Defendants prove is attributable to

11   factors other than the infringement(s).

12         The Defendants' profits are generally determined by deducting all expenses from the

13   Defendants' gross revenue.

14         The Defendants' gross revenue is all of the Defendants' receipts from the videos

15   containing or using the copyrighted works associated with the infringement(s). The Plaintiffs have

16   the burden of proving the Defendants' gross revenue by a preponderance of the evidence.

17         Expenses are production costs incurred in producing the Defendants' gross revenue. The

18   Defendants have the burden of proving the Defendants' expenses by a preponderance of the

19   evidence.

20         Unless you find that a portion of the profit from the use of the videos containing or using

21   the copyrighted work is attributable to factors other than use of the copyrighted works, all of the

22   profit is to be attributed to the infringement(s). The Defendants have the burden of proving the

23   portion of the profit, if any, attributable to factors other than copying the copyrighted work.

24

25         [Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.34.]

26         [Babybus argues that the sentences describing the casual connection between infringement

27   and damages should be included.  As above, although it is true that Moonbug must prove (1) they

28   were in fact damaged and (2) that their claimed damages were caused by the infringement, 17

U.S.C. § 504(b), Babybus overemphasizes the causal requirement in the second element in an overly argumentative fashion.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 24**

**COPYRIGHT — DAMAGES — STATUTORY DAMAGES**

The Plaintiffs (at their election) may be awarded statutory damages. Under the Copyright Act, statutory damages are intended not only to compensate the Plaintiffs for their losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws.

The amount you may award as statutory damages is not less than $750, nor more than $30,000 for each work you conclude was infringed. In determining the amount of statutory damages, you should be guided by what you believe is just in the particular case, considering the nature of the copyright and the circumstances of the infringement.

However, if you find the infringement was innocent, you may award as little as $200 for each work innocently infringed. An infringement is considered innocent when a defendant has proved both of the following elements by a preponderance of the evidence:

1. the defendant was not aware that its acts constituted infringement of the copyright; and

2. the defendant had no reason to believe that its acts constituted an infringement of the copyright.

But if you find an infringement was willful, you may award as much as $150,000 for each work willfully infringed. Defendants conceded willful infringement of seven of Plaintiff's works by six of Defendants' videos.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.35.]

[Moonbug's proposed instructions on statutory damages is more comprehensive and includes an explanation of why statutory damages are awarded. Babybus' proposed instructions include a list of the works that the Court has already found to be concededly infringing. The Court finds that there is no need to list out the names and registration numbers of the willfully infringed works. The parties should list out the names and registration numbers in a stipulation.]

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.36.]

United States District Court
Northern District of California

[Babybus proposed this instruction because it intends to "prove to the jury that any infringement was innocent to reduce any damages for which Defendants may be liable." Moonbug argues that the instruction is not necessary because Babybus is unable to carry its burden—given the conceded willful infringement of other related videos.  The Court will include this instruction to give Babybus the opportunity—however slim—to show innocent infringement.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 25**

**COPYRIGHT — DAMAGES — WILLFUL**

**INFRINGEMENT (17 U.S.C. § 504(c)(2))**

An infringement is considered willful when the Plaintiffs have proved both of the following elements by a preponderance of the evidence:

1. the Defendants engaged in acts that infringed the copyright; and

2. the Defendants knew that those acts infringed the copyright, or the Defendants acted with reckless disregard for, or willful blindness to, the copyright holders' rights.

Continued use of a work even after a defendant has been notified of his or her alleged infringement does not constitute willfulness so long as the defendant believes reasonably, and in good faith, that it is not infringing. Deductions of some of Defendants' expenses may be denied where the Defendants' infringement is willful or deliberate.

You are instructed that the Defendants conceded willful infringement of seven of the CoComelon Works by six of Defendants' videos. The specific works and videos are identified in a stipulation by the parties, which will be provided to you. You should determine whether any infringement of the remaining CoComelon works was willful.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.37.]

[Babybus' instructions include the sentence "Continued use of a work even after a defendant has been notified of his or her alleged infringement does not constitute willfulness so long as the defendant believes reasonably, and in good faith, that it is not infringing," which elaborates upon the second element. The Court will include this clarification.

Moonbug's instructions include the list of 7 infringing videos. The Court finds that there is no need to list out the names and registration numbers of the willfully infringed works. The parties should list out the names and registration numbers in a stipulation.]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 26**

**MISREPRESENTATION — DAMAGES**

If you find for Plaintiffs on Plaintiffs' misrepresentation claim, you must determine the Plaintiffs' damages.

The Plaintiffs are entitled to recover actual damages caused by the Defendants' misrepresentation, including costs and attorneys' fees incurred by Plaintiffs as a result of YouTube relying on Defendants' misrepresentations (*e.g.*, the cost of the takedown process, time and resources spent dealing with the takedown notifications). The Plaintiffs must prove damages by a preponderance of the evidence.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 17.32; 17 U.S.C. § 512(f); *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1030 (N.D. Cal. 2015) ("Recovery of damages for lost time and resources is also consistent with the legislative intent of § 512(f) . . .").]

**JURY INSTRUCTION NO. 27**

**AFFIRMATIVE DEFENSES — DAMAGES — MITIGATION**

With respect to actual damages, Plaintiffs have a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

Defendants have the burden of proving by a preponderance of the evidence:

1. that the plaintiff failed to use reasonable efforts to mitigate damages; and

2. the amount by which damages would have been mitigated.


[Court Notes: Babybus proposes this instruction on Moonbug's alleged failure to mitigate damages, which is an affirmative defense asserted by Babybus.  Moonbug argues that the instruction is not necessary because "there is no evidence that plaintiffs failed to mitigate their damages."  As above, the Court will include this instruction to give Babybus the opportunity—however slim—to show Moonbug's failure to mitigate damages.]

**II.**         <u>**CLOSING JURY INSTRUCTIONS (GIVEN AT THE END OF THE CASE)**</u>

**JURY INSTRUCTION NO. 28**

**(COURT READS AND PROVIDES**

**WRITTEN INSTRUCTIONS AT END OF CASE)**

Members of the jury: Now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case. A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts. It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not. You must decide the case solely on the evidence and the law. Do not allow personal likes or dislikes, opinions, prejudices, sympathy, or bias, including unconscious biases, influence you. Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention. Like conscious bias, unconscious bias, too, can affect how we evaluate information and make decisions. You should also not be influenced by any person's race, color, religion, national ancestry, or gender, sexual orientation, profession, occupation, celebrity, economic circumstances, or position in life or in the community. Do not be afraid to examine any assumptions you or other jurors have made which are not based on the evidence presented at trial. You also heard foreign language testimony during this case. However, you must keep in mind that some concepts do not translate smoothly between English and Chinese. You must not make any assumptions about a witness, or a party based solely on the use of an interpreter to assist that witness or party or hold against a witness that the words selected to express an idea were unusual. You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others; they are all important. Please do not read into these instructions or into anything I may have said or done any suggestion as to what verdict you should return – that is a matter entirely up to you.

[Court Notes: 9th Cir. Model Instruction No. 1.4.  The Court has modified the instruction.]

### JURY INSTRUCTION NO. 29

### EVIDENCE IN ELECTRONIC FORMAT

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room.  A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits.  You will also be provided with a paper list of all exhibits received in evidence.  You may request a paper copy of any exhibit received in evidence by sending a note through the [clerk] [bailiff].)  If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the [clerk] [bailiff], signed by your foreperson or by one or more members of the jury.  Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with [the clerk] [the bailiff] present for the sole purpose of assuring that the only matter that is discussed is the technical problem.  When the court technician or any non-juror is in the jury room, the jury shall not deliberate.  No juror may say anything to the court technician or any non-juror other than to describe the technical problem or to seek information about operation of the equipment.  Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case.  You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material.  Do not attempt to alter the computer to obtain access to such materials.  If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials.  Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

[Court Notes: 9th Cir. Model Civil Jury Instruction No. 2.16.]

United States District Court
Northern District of California

# JURY INSTRUCTION NO. 30

## DUTY TO DELIBERATE

When you begin your deliberations, elect one member of the jury as your foreperson who will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict, whether guilty or not guilty, must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Perform these duties fairly and impartially. Do not allow personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases, to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, or gender, sexual orientation, profession, occupation, celebrity, economic circumstances, or position in life or in the community.

Do not be afraid to examine any assumptions you or other jurors have made which are not based on the evidence presented at trial. Please do not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be – that is entirely up to you.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so. During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong.

[Court Notes: 9th Cir. Model Instruction No. 3.1.  The Court has modified the instruction to comport with the Court's previous jury instructions.]

United States District Court
Northern District of California

1

**JURY INSTRUCTION NO. 31**

2

**CONSIDERATION OF EVIDENCE – CONDUCT OF THE JURY**

3

Because you must base your verdict only on the evidence received in the case and on these

4

instructions, I remind you that you must not be exposed to any other information about the case or

5

to the issues it involves.  Except for discussing the case with your fellow jurors during your

6

deliberations:

7

Do not communicate with anyone in any way and do not let

8

anyone else communicate with you in any way about the merits of

9

the case or anything to do with it.  This includes discussing the case

10

in person, in writing, by phone or electronic means, via email, via

11

text messaging, or any internet chat room, blog, website or

12

application, including but not limited to Facebook, YouTube,

13

Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms

14

of social media.  This applies to communicating with your family

15

members, your employer, the media or press, and the people

16

involved in the trial.  If you are asked or approached in any way

17

about your jury service or anything about this case, you must

18

respond that you have been ordered not to discuss the matter and to

19

report the contact to the court.

20

Do not watch any of the parties' videos, including on

21

YouTube or television, whether or not they are at issue in this trial.

22

Do not read, watch, or listen to any news or media accounts or

23

commentary about the case or anything to do with it[, although I

24

have no information that there will be news reports about this case];

25

do not do any research, such as consulting dictionaries, searching

26

the Internet, or using other reference materials; and do not make any

27

investigation or in any other way try to learn about the case on your

28

own.  Do not visit or view any place discussed in this case, and do

not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved – including the parties, the witnesses or the lawyers – until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

[Court Notes: 9th Cir. Model Instruction No. 3.2.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 32**

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

[Court Notes: 9th Cir. Model Instruction No. 3.3.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 33**

**RETURN OF VERDICT**

A verdict form has been prepared for you.  [Explain verdict form as needed.]  After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

[Court Notes: 9th Cir. Model Instruction No. 3.5.]