UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOONBUG ENTERTAINMENT LIMITED, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD, et al.,<br><br>Defendants. | Case No. 21-cv-06536-EMC<br><br>**ORDER ON THICK-THIN DETERMINATION IN SCOPE OF PROTECTION IN EXTRINSIC TEST** |

This is a copyright infringement case. On July 5, 2023, Plaintiffs Moonbug Entertainment Limited and Treasure Studio, Inc. (collectively, "Moonbug") allege that Defendants BabyBus Co., Ltd. and BabyBus (Fujian) Network Technology Co., Ltd. ("BabyBus Tech.") (collectively, "BabyBus") copied Plaintiffs' CoComelon preschool series distributed on the Internet. Trial commenced on July 5, 2023. On July 24, 2023, the Court issued and read to the jury the final jury instructions. Docket No. 562. In forming the jury instructions, the Court concluded, *inter alia*, that the main character of the CoComelon series, 3½-year-old JJ, was entitled to "thick" (or "broad") rather than thin copyright protection. This order explains the Court's reasoning.

In a copyright infringement case, once the act of copying is found, the Ninth Circuit applies a two-part "extrinsic/intrinsic" test to determine whether the copying constituted an unlawful appropriation. *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010). Under the extrinsic test, a jury determines the similarities between the copyrighted and accused works, whether the similar elements are protectable, and filters out the unprotectable elements. *Id.* The Court must determine whether a

1  copyrighted work is entitled to "thick" (or "broad") or "thin" protection in the third step of the
2  extrinsic test.  This determination drives whether the jury, in order to find the extrinsic test
3  satisfied, must find the protectable elements of the works to be "virtually identical" or
4  "substantially similar" to the copyrighted work.  *See Desire, LLC v. Manna Textiles, Inc.*, 986
5  F.3d 1253, 1261 (9th Cir.), *cert. denied*, 142 S. Ct. 343 (2021) ("[T]he district court must
6  determine the scope of a work's copyright protection in the first instance."); *Mattel*, 616 F.3d at
7  914  ("We review de novo the district court's determination as to the scope of copyright
8  protection.").

9          In the case at bar, the Court determined that the copyrighted works—the baby character JJ
10 and the other works—were entitled to "thick" protection.  The Court so instructed the jury to
11 determine whether the copyrighted works and accused works were "substantially similar."  The
12 Court, in particular, rejected the assertion that CoComelon's main character, JJ, is entitled only to
13 thin protection.  This order focuses on that determination.

## I.     LEGAL STANDARD

15         The Ninth Circuit has held that "[i]f there's a wide range of expression (for example, there
16 are gazillions of ways to make an aliens-attack movie), then copyright protection is 'broad' and a
17 work will infringe if it's 'substantially similar' to the copyrighted work."  *Mattel*, 616 F.3d at 913–
18 14 (citing *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439, 1446–47 (9th Cir. 1994));
19 *see also Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 488 (9th Cir. 1984)
20 (finding a broad range of expression for a "boy meets girl" fictional work).  In contrast, "[i]f
21 there's only a narrow range of expression (for example, there are only so many ways to paint a red
22 bouncy ball on blank canvas), then copyright protection is 'thin' and a work must be 'virtually
23 identical' to infringe."  *Id.*; *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d
24 1051, 1076 n.13 (9th Cir. 2020).  In making this determination, the Ninth Circuit has typically
25 given thick protection for "artistic works" and thin protection for "factual works."  *Apple*, 35 F.3d
26 at 1446.  Court have also considered various factors in the range of creative choices that may be
27 made in expressing an idea.  *See*, *e.g.*, *Mattel*, 616 F.3d at 915 (commercial appeal, color, style,
28 clothing, and accessories); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (elements of nature,

1  medium of work, pose, attitude, gesture, muscle structure, facial expression, coat, texture,

2  background, lighting, or perspective), *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir.

3  2003) (subject matter); *Landsberg*, 736 F.2d at 486 (fictionalization).

## II.   DISCUSSION

Babybus contends that the copyrighted CoComelon works should be afforded only "thin" protection because the range of possible expression of baby cartoon characters in the chosen genre is narrow. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991). Moonbug contends that the broader protection accorded artistic works with a wide range of expression is more appropriate. *See L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 850 (9th Cir. 2012), *as amended on denial of reh'g and reh'g en banc* (June 13, 2012). "Which end of the continuum a particular work falls on is a call that must be made case by case." *Apple*, 35 F.3d at 1447. This determination is qualitative, relative, and defies precise definition. In the instant case, the answer is concededly not obvious. The task for the Court is to locate where on the continuum the instant case falls. While there may not necessarily be a "gazillion" ways" (and thus an obvious case for the broad/thick end of the continuum) to depict an animated human baby, the Court is persuaded that this case is involves a wider range of possible expression than the limited ways to depict, *e.g.*, a red ball on a black canvas, a realistic jellyfish glass sculpture, or a Bratz sculpt (the thin end of the continuum). *Compare L.A. Printex*, 676 F.3d at 851, *with Mattel*, 616 F.3d at 913, and *Satava*, 323 F.3d at 812.

As a preliminary matter, it should be noted that the range of expression is inherent wider in fictionalized works. The Ninth Circuit has held that "in cartoon series, comic books or strips," "[i]t can scarcely be maintained that there is no other means available to defendants to convey the message they have, nor is it even clear that other means are not available within the chosen genre of comics and cartoons." *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1171 (9th Cir. 1977), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). Unlike factual works, a broader range of portrayal of human babies exists in a fictionalized setting. *Landsberg*, 736 F.2d at 488 ("Factual works are different. Subsequent authors wishing to express the ideas contained in a

3

factual work often can choose from only a narrow range of expression."). This is true even if what is portrayed are human toddlers (age 3½ as is Plaintiffs' JJ character) sought to be shown in relatable settings designed to portray a curious toddler encountering common incidents of life.

The Court begins by considering the range of creative expression possible in drawings visually depicting baby/toddler-age characters. Even if there are visual elements common to babies in the genre (*e.g.*, oversized head, big eyes, button nose), there are numerous creative decisions that could be applied to a multiplicity of physical elements. For instance, for Moonbug's JJ character, Moonbug's expert witness Mr. Fran Krause testified that "some elements from the design of JJ that I think are expressed in a creative way that are specific to this character" include JJ's two front upper teeth, his specific head shape, rosy cheeks, shiny Playdough hair, little button nose, half-moon smile, doll's eyes, solid eyebrows, and yellow and turquoise onesie. *See* Trial Trans. at 754:8–10, 754:14–756:15. Other animators are free to design babies with different combinations of these creative elements. One such baby could have almond-shaped brown eyes, a full head of wavy black hair, a birthmark on her arm, sporting linen overalls, a signature paintbrush, and somewhat obstinate yet ultimately compliant demeanor. Another baby could have green eyes, freckles, pink hair, wearing a floral dress and bonnet, and with a shy and soft voice. Animators have the option to vary the babies' physical traits of gender, ethnicity, race, hair color, hairstyle, physical proportions, clothing, and accessories.

The Ninth Circuit has recognized that there is a "wide range of expression" when designers "may vary the fact paint, hair color and style, and the clothing and accessories, on top of making minor variations to the [physical proportions]." *See Mattel*, 616 F.3d at 916 ("One doll might have brown eyes with bronze eyeshadow, wavy auburn hair, leather boots, a blue plaid mini matched with a black button-down, silver knot earrings and a barrel bag. Another might have green eyes with pink eyeshadow, brown hair in a messy bun, gold wedges, dark skinny jeans matched with a purple halter, a turquoise cuff and a clutch, along with a slightly different body and facial structure."); *see also JCW Invs. v. Novelty, Inc.*, 482 F.3d 910, 917 (7th Cir. 2007) ("[D]etails—such as the appearance of Fred's face or even his chair—represent creative expression. . . . Novelty could have created another plush doll of a middle-aged farting man that

4

1    would seem nothing like Fred. He could, for example, have a blond mullet and wear flannel, have
2    a nose that is drawn on rather than protruding substantially from the rest of the head, be standing
3    rather than ensconced in an armchair, and be wearing shorts rather than blue pants. To see how
4    easy this would be, one need look no further than Tekky's Frankie doll . . .").

As evidenced at trial, Babybus' earlier designs of JoJo and other baby characters only begin to scratch the surface of possible distinct baby designs. *See*, *e.g.*, Trial Exhs. 106–109. Even considering only one physical dimension—hairstyle—animated babies can vary:



*See* Trial Exh. 107. Tellingly, Babybus' Supervisor of the Planning Department Xunjie Zhang also testified that she had proposed a redesign of Babybus' JoJo character in the fall of 2019 but that the design was not implemented because it looked "too different from its original" JoJo design. *See* Trial Trans. at 1453:5–9, 1453:22–25. CoComelon's JJ—a blue-eyed toddler with tuft of blond hair and pleasant demeanor—is merely one permutation of a constellation of creative choices.

Indeed, a cursory review of the animated babies in the genre found on the Internet reveals that one could assemble a plethora of physically distinct babies:

  

5

1    The trailer for the film "Storks," which depicts a line of babies, each with differing appearances
2    (race, gender, hair color and style) coming off an assembly line, further illustrates this point:





*See*, *e.g.*, Warner Bros. Pictures, *Storks - Official Announcement Trailer [HD]*, YOUTUBE (Dec. 17, 2015), https://www.youtube.com/watch?v=tF6jd0-xRrI (showcasing distinct babies).

Moreover, the 3D animated setting of a character further expands the range of creative choices. Animators have the option to vary an animated babies' behavioral traits, hobbies, backstories, voices, intonations, and personalities. As to Moonbug's JJ, Mr. Krause also explained that JJ consists of not just visual elements but also movement, animation style, and conceptual

6

1  characteristics including his maturity, optimism, curiosity, occasionally crankiness, and "wow"
2  gesture.  *See* Trial Trans. at 758:24–760:5.  One could image a character a bit more cautious but
3  more dynamic than JJ.  Or one with a tinge of mischief.  Or who displays more affection towards a
4  particular family member or towards the family dog.  In an animation depicting "basically a
5  fantasyland filled with diverse and fanciful characters in action," *Krofft*, 562 F.2d at 1165,
6  animators may choose to portray their babies with an amalgamation of realistic or unrealistic
7  physical movements, distinctive behaviors, voices, and personalities.  Indeed, other animators
8  have created popular animated babies with distinct, recognizable personalities, behaviors, voices,
9  and plotlines:



*See* MY NEIGHBOR TOTORO (1988) (depicting Mei).



*See* MOANA (2016) (depicting Moana).

///

///

///

7



*See* THE INCREDIBLES (2004) (depicting Jack-Jack).

The Court is cognizant that too great of "exaggerat[ion]" of some creative elements may push the work outside of the bounds of what "would express the idea behind [the brand]" and commercially appealable to its target audience. *See Mattel*, 616 F.3d at 916; *see also Ets-Hokin*, 323 F.3d at 766 (considering the "constraints of the commercial product shot" in evaluating the scope of protection). The Court also acknowledges that the range of creative choices in designing a human toddler is not as wide ranging as that in designing "young, hip, female fashion dolls." But that range is broader than that for a female doll sculpt. *Mattel*, 616 F.3d at 915–917. It is also broader than ways to depict a red ball on a black canvas, a realistic jellyfish glass sculpture, or a photograph of a bottle of Skyy Vodka. *See Satava*, 323 F.3d at 812; *Ets-Hokin*, 323 F.3d at 766. Even considering the range of animated babies that would align with the commercial, family-friendly nature of the CoComelon brand, there are a wide array of possible babies that would likely appeal to toddlers and parents. Moonbug's copyrighted JJ animated character is thus entitled to broad protection against accused works that are substantially similar to the copyrighted work.

An even greater array of creative expression is possible for the remainder of the works—the family characters, the animal characters, and the video episodes. Thick protection is appropriate for works that are "not capable of ready classification into only five or six constituent elements . . . [but] is comprised of a large array of elements." *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004); *see also Williams v. Gaye*, 895 F.3d 1106, 1120 (9th Cir. 2018). The copyrighted family and animal characters could be designed with a wide array of creative choices across their gender, ethnicity, race, hair color, hairstyle,

8

1    physical proportions, clothing, and accessories.  Each could have unique behavioral traits, hobbies,

2    backstories, personalities, and interactions with the baby character.  And the family composition

3    could vary by the number of children, age and gender of those children, and gender, race, and

4    composition of the parents (*e.g.*, a single parent, same sex parents, a grandfather).

5           The copyrighted episodes themselves are also capable of a wide range of creative

6    expression as any fictional work is.  *See Williams*, 895 F.3d at 1120; *Landsberg*, 736 F.2d at 488

7    (citing *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936), *cert denied*, 298

8    U.S. 669 (1936)).  The musical component of each of the CoComelon episodes could consist of

9    different creative choices in lyrics, rhythm, tone, instruments, and tempo.  *See Swirsky*, 376 F.3d

10   at 849 (finding a wide range of expression across "title hook phrase (including the lyric, rhythm,

11   and pitch), the shifted cadence, the instrumental figures, the verse/chorus relationship, and the fade

12   ending," as well as "melody, harmony, rhythm, pitch, tempo, phrasing, structure, chord

13   progressions, and lyrics").  The visual component of each episode could consist of different

14   creative choices in perspective, style, pace, and scene composition.  *See Diamond Foods, Inc. v.*

15   *Hottrix, LLC*, No. 14-CV-03162-BLF, 2016 WL 3880797, at *4 (N.D. Cal. July 18, 2016) (finding

16   a "wide range of expression for selecting, coordinating, and arranging design elements in an app

17   depicting popcorn moving, resulting in broad protection for the combination of elements").

18          Certainly, the Court is sensitive to the concern that overbroad copyright protection runs the

19   risk of effectively monopolizing ideas and standard elements that are common to the genre.

20   CoComelon does not own the genre of cartoons depicting babies and toddlers engaged in everyday

21   activity.  However, broad protection against substantial similarity extends only over the particular

22   expression of CoComelon's version of an animated baby character which are protected.  Concerns

23   of monopolization are ameliorated by the second step of the extrinsic step, which filters out

24   unprotectable elements (including scènes à faire) from the comparative analysis.  Hence, despite

25   the fact that human babies in the genre tend to show such common features as oversized heads and

26   large eyes—features which themselves are not protected—Plaintiffs face the bar of having to

27   demonstrate substantial similarity with respect to protected features only.  The zone of protection

28   may in fact, for all practical purposes, be thin even when given broad protection.

### III. CONCLUSION

The copyrighted works at issue here are entitled to "thick" or "broad" protection. Accordingly, the jury was properly instructed to determine whether the protected element of the copyrighted works and accused works were "substantially similar."

**IT IS SO ORDERED**.

Dated: July 26, 2023

_____
EDWARD M. CHEN
United States District Judge