QUINN EMANUEL URQUHART & SULLIVAN, LLP
 Robert W. Stone (Bar No. 163513)
 Margret Caruso (Bar No. 243473)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Fax:           (650) 801-5100
robertstone@quinnemanuel.com
margretcaruso@quinnemanuel.com

 Sam S. Stake (Bar No. 257916)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:  (415) 875-6600
Facsimile:   (415) 875-6700
samstake@quinnemanuel.com

Attorneys for BabyBus Co., Ltd. and BabyBus
(Fujian) Network Technology Co., Ltd.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MOONBUG ENTERTAINMENT LIMITED and TREASURE STUDIO, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BABYBUS CO., LTD and BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD, <br><br> Defendants. | Case No: 3:21-cv-06536-EMC <br><br> **BABYBUS DEFENDANTS' OPPOSITION TO MOONBUG PLAINTIFFS' MOTION FOR ENTRY OF PERMANENT INJUNCTION** <br><br> *[Concurrently filed with Declarations of Naiyong Yan and Aaron Perahia]* <br><br> Date:          October 5, 2023 <br> Time:          1:30 pm <br> Judge:        Hon. Edward M. Chen <br> Courtroom:  5, 17th Floor <br><br> Complaint Filed:          August 24, 2021 <br> Trial:          July 5, 2023 |

1

## TABLE OF CONTENTS

2

3

INTRODUCTION ............................................................................................................7

ARGUMENT ..................................................................................................................8

I.      A PERMANENT INJUNCTION IS UNWARRANTED. .................................................8

      A.      Moonbug Has Not Shown Any Non-Speculative Threat of Irreparable Harm. .........9

            1.      Moonbug's Years-Long Delay Refutes Any Notion of Irreparable Harm. ..................................................................................................9

            2.      Moonbug's Irreparable Harm Arguments Lack Merit. ...............................10

      B.      Moonbug Has Adequate Legal Remedies As Monetary Damages Are More Than Sufficient To Compensate Moonbug. .............................................................14

      C.      The Balance Of Hardships Favors BabyBus. ..........................................................16

      D.      The Public Interest Would Not Be Served By An Injunction. .................................17

II.     NO LEGAL BASIS SUPPORTS THE INJUNCTION MOONBUG SEEKS. ...................18

      A.      The Verdict Does Not Support Enjoining Most Specific Super JoJo Content. ........18

      B.      The Court Cannot Decide As A Matter Of Law That Most Of The Super JoJo Content Should Be Enjoined. ..................................................................................21

            1.      The Jury Verdict Precludes An Injunction Against Most Super JoJo Content. ..................................................................................................21

            2.      The Record Does Not Otherwise Support The Requested Injunction..........22

III.    THE PROPOSED INJUNCTION IS ALSO IMPROPER AND UNWORKABLE. ............25

      A.      Moonbug's Injunction Is Not Narrowly Tailored To The Specific Conduct Found To Infringe. ..................................................................................................25

      B.      The Proposed Injunction Fails Rule 65(d)'s Specificity Requirements. ..................27

      C.      Additional Problems With The Proposed Injunction Compel Denial of Moonbug's Motion..................................................................................................29

IV.     IN THE ALTERNATIVE, THE COURT SHOULD DELAY ISSUING AN ORDER IDENTIFYING TERMS OF AN INJUNCTION OR DELAY ITS ENFORCEMENT. ....................................................................................................30

CONCLUSION ............................................................................................................31

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

### **Cases**

4

*Abend v. MCA, Inc.*,
    863 F.2d 1465 (9th Cir. 1988) .................................................................................... 17

*Active Sports Lifestyle USA, LLC v. Old Navy, LLC*,
    2014 WL 1246497 (C.D. Cal. Mar. 21, 2014) .............................................................. 10

*Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*,
    69 F.3d 381 (9th Cir. 1995) ........................................................................................ 22

*adidas Am., Inc. v. Skechers USA, Inc.*,
    890 F.3d 747 (9th Cir. 2018) ................................................................................. 10, 12

*Apple Comp., Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994) ................................................................................. 24, 30

*Aurora World, Inc. v. Ty Inc.*,
    719 F. Supp. 2d 1115 (C.D. Cal. 2009) ...................................................................... 15

*Berkic v. Crichton*,
    761 F. 2d 1289 (9th Cir. 1985) .................................................................................... 25

*BR Assocs., Inc. v. Laframboise*,
    2007 WL 1840031 (E.D. Mich. June 26, 2007) ............................................................ 8

*Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*,
    2009 WL 10671767 (S.D. Cal. Jan. 23, 2009) ............................................................ 12

*Brighton Collectibles, Inc. v. Pedre Watch Co.*,
    2013 WL 5719071 (S.D. Cal. Oct. 21, 2013) .............................................................. 15

*Chicago Bd. of Educ. v. Substance, Inc.*,
    354 F.3d 624 (7th Cir. 2003) ...................................................................................... 26

*CNC Software, LLC v. Global Engineering Ltd Liability Co.*,
    2023 WL 3409463 (N.D. Cal. May 12, 2023) ............................................................. 11

*Columbia Pictures Indus., Inc. v. Fung*,
    710 F.3d 1020 (9th Cir. 2013) .................................................................................... 27

*Corning Inc. v. PicVue Elecs., Ltd.*,
    365 F.3d 156 (2d Cir. 2004) ....................................................................................... 28

*Craigslist Inc. v. Naturemarket, Inc.*,
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ...................................................................... 27

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Danjaq LLC v. Sony Corp.*,
    263 F.3d 942 (9th Cir. 2001) ................................................................................ 22

*Data East USA, Inc. v. Epyx, Inc.*,
    862 F. 2d 204 (9th Cir. 1988) ............................................................................... 24

*Dream Games of Arizona, Inc. v. PC Onsite*,
    561 F.3d 983 (2009) .............................................................................................. 31

*eBay, Inc. v. MercExchange*,
    547 U.S. 388 (2006) ........................................................... 8, 10, 15, 16, 17, 29

*Feist Publ'ns., Inc. v. Rural Tel. Service Co., Inc.*,
    499 U.S. 340 (1991) ................................................................................................ 6

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
    654 F.3d 989 (9th Cir. 2011) ...................................................................... 9, 12, 16

*Floyd v. Laws*,
    929 F.2d 1390 (9th Cir. 1991) ....................................................................... 20, 22

*Fogarty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) .............................................................................................. 26

*Funky Films, Inc. v. Time Warner Entm't Co. L.P.*,
    462 F.3d 1072 (9th Cir. 2006) ............................................................................. 22

*George Basch Co. v. Blue Coral, Inc.*,
    968 F.2d 1532 (2d Cir. 1992) ............................................................................... 10

*Goldie's Bookstore, Inc. v. Superior Court*,
    739 F.2d 466 (9th Cir. 1984) ............................................................................... 11

*Gray v. Hudson*,
    28 F. 4th 87 (9th Cir. 2022) ................................................................................. 25

*Greg Young Publ'g, Inc. v. Zazzle, Inc.*,
    2020 WL 3871451 (C.D. Cal. July 9, 2020) ................................................. 11, 16

*H. K. Porter Co., Inc. v. National Friction Prods.*,
    568 F.2d 24 (7th Cir. 1977) .................................................................................... 7

*Hamilton v. State Farm Fire & Cas. Co.*,
    270 F.3d 778 (9th Cir. 2001) .......................................................................... 21, 26

*Hilton v. Braunskill*,
    481 U.S. 770 (1987) .............................................................................................. 30

*Iconix, Inc. v. Tokuda*,
    457 F. Supp. 2d 969 (N.D. Cal. 2006) ................................................................ 25

*Impression Prod., Inc. v. Lexmark Int'l, Inc.,*
    137 S. Ct. 1523 (2017) .................................................................................. 23

*Jacobsen v. Katzer,*
    609 F. Supp. 2d 925 (N.D. Cal. 2009) ......................................................... 9

*John Wiley & Sons, Inc. v. Book Dog Books, LLC,*
    327 F. Supp. 3d 606 .............................................................................. 9, 29

*Lamb-Weston, Inc. v. McCain Foods, Ltd.,*
    941 F.2d 970 (9th Cir. 1991) ...................................................................... 25

*Los Angeles Police Protective League v. Gates,*
    995 F.2d 1469 (9th Cir. 1993) .................................................................... 22

*MercExchange, L.L.C. v. eBay, Inc.,*
    500 F. Supp. 2d 556 (E.D. Va. 2007) ......................................................... 10

*Miller v. Fairchild Indus., Inc.,*
    885 F.2d 498 (9th Cir. 1989) ...................................................................... 22

*Mitchell v. 3PL Sys., Inc.,*
    2013 WL 12129617 (C.D. Cal. Apr. 8, 2013) ............................................. 12

*Mon Cheri Bridals, Inc. v. Wu,*
    2008 WL 4534191 (D.N.J. Oct. 7, 2008) .................................................... 28

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010) ..................................................................................... 9

*Moonbug Ent. Ltd. v. HappyKidsTV,*
    2022 WL 18859471 (N.D. Cal. Dec. 15, 2022) .......................................... 12

*Nat'l Labor Relations Bd. v. Express Publ'g Co.,*
    312 U.S. 426 (1941) .................................................................................... 27

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) .................................................................................... 26

*NRDC, Inc. v. Winter,*
    508 F.3d 885 (9th Cir. 2007) ........................................ .................................25

*Olson v. National Broadcasting Co., Inc.,*
    855 F. 2d 1446 (9th Cir. 1988) ................................................................... 25

*Pass & Seymour, Inc. v. Hubbell, Inc.,*
    532 F. Supp. 2d 418 (N.D.N.Y. 2007) ....................................................... 18

*Patriot Homes, Inc. v. Forest River Hous., Inc.,*
    512 F.3d 412 (7th Cir. 2008) ...................................................................... 28

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ........................................................................ 29

*Perfect 10, Inc. v. Google, Inc.*,
  653 F.3d 976 (9th Cir. 2011) ............................................................ 8, 12, 13

*Qualcomm Inc. v. Compal Elecs., Inc.*,
  283 F. Supp. 3d 905 (S.D. Cal. 2017) ............................................................ 11

*Regal Knitwear v. N.L.R.B.*,
  324 U.S. 9 (1945) ................................................................................ 28, 29

*Reno Air Racing Ass'n, Inc. v. McCord*,
  452 F.3d 1126 (9th Cir. 2006) ...................................................................... 27

*Rent-A-Car Center Inc. v. Canyon Tele. & Appliance Rental, Inc.*,
  944 F.2d 597 (9th Cir. 1991) ....................................................................... 15

*Rentmeester v. Nike, Inc.*,
  883 F.3d 1111 (9th Cir. 2018) .................................................................. 22, 24

*Sony Corp. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ................................................................................. 17

*Starter Corp. v. Converse, Inc.*,
  170 F.3d 286 (2d Cir. 1999) ......................................................................... 25

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
  830 F. App'x 821 (9th Cir. 2020) ................................................................... 22

*Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll.*,
  23 F.4th 1262 (10th Cir. 2022) ..................................................................... 10

*Twentieth Century Music Corp. v. Aiken*,
  422 U.S. 151 (1975) ................................................................................. 29

*U.S. v. Sturdivant*,
  244 F.3d 71 (2d Cir. 2001) .......................................................................... 21

*Waldman Publ'g Corp. v. Landoll, Inc.*,
  43 F.3d 775 (2d Cir. 1994) .......................................................................... 25

*Warner-Tamerlane Publ'g Corp. v. Leadsinger Corp.*,
  2008 WL 11334487 (C.D. Cal. Apr. 18, 2008) .................................................. 15

*Weinberger v. Romero–Barcelo*,
  456 U.S. 305 (1982) .................................................................................. 9

*Zella v. E.W. Scripps Co.*,
  529 F. Supp. 2d 1124 (C.D. Cal. 2007) ........................................................... 24

**Statutes**

17 U.S.C. § 102(a) ................................................................................................................. 16

**Other Authorities**

11A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE,
    § 2955 (3d ed.) ................................................................................................................. 27

**Rules**

37 C.F.R. § 202.1(a) .............................................................................................................. 17

Fed. R. Civ. P. 1 .................................................................................................................... 30

Fed. R. Civ. P. 65(d) ....................................................................................................... 25, 27

Fed. R. Evid. 403 ............................................................................................................. 11, 14

Fed. R. Evid. 602 ............................................................................................................. 11, 14

Fed. R. Evid. 701 ............................................................................................................. 11, 14

**INTRODUCTION**

Following the jury's delivery of a verdict that cannot be sustained under Ninth Circuit law, Moonbug now attempts to further subvert copyright law.  It seeks an unprecedented permanent injunction against a competitor's creative work, as well as content not presented at trial, based on a hopelessly vague verdict form and unfounded speculation about irreparable harm.  Even if the verdict ultimately survives post-trial motions and appeal (which it should not), the injunction Moonbug requests is fatally vague and overbroad as to the acts that it would restrain or require.  Because Moonbug falls far short of satisfying the stringent requirements for a permanent injunction, the Court should deny it now.  Alternatively, if the Court determines some injunctive relief is warranted, the ruling on this motion should reserve the proper scope of injunctive relief, leaving it subject to amendment, until after resolution of BabyBus' Rule 50(b) motion.

**First,** Moonbug has failed to show irreparable harm or that money damages are inadequate.  Moonbug's actions undermine its claim of irreparable injury.  It delayed bringing its claims until years after the introduction of Super JoJo, and, during the years of litigating those claims, it never sought a preliminary injunction.  Unsurprisingly, it lacks evidence that any intangible harm occurred during the four years since BabyBus introduced Super JoJo, and it offers only speculation about irreparable harm that might occur.  This alone compels denial of injunctive relief.

**Second,** the balance of hardships weighs against the injunction Moonbug seeks.  The only hardship Moonbug articulates is speculative.  By contrast, the sweepingly broad injunction Moonbug seeks imposes unreasonable and unwarranted burdens on BabyBus.  For example, it would require deactivating more than a dozen BabyBus YouTube channels—irrespective of *whatever* content they contain.

**Third,** the injunction threatens the public interest and thwarts the goals of copyright.  Not only would the injunction result in significant economic waste, but it would effectively eliminate CoComelon's chief competition from the preschool animation genre while simultaneously chilling creativity and competition from third parties in the market.  Moonbug has not pointed to a single decision in which an injunction issued under remotely similar circumstances.

1    **Fourth,** the jury's verdict does not support the scope of relief Moonbug seeks.  At Moonbug's

2    urging, the verdict form the reflects the jury's finding that certain Moonbug copyrights were

3    infringed, but it does not identify what BabyBus content infringed them.  Without clear findings from

4    the jury, injunctive relief cannot be narrowly tailored as the law requires.

5    **Fifth,** Moonbug's proposed injunction fails to state its terms specifically and describe in

6    reasonable detail the acts restrained or required, as Rule 65 requires.

7    **Finally,** the Court need not rule on Moonbug's motion now.  It can deny the motion without

8    prejudice to renew after BabyBus' Rule 50(b) motion and/or appeal is resolved.  Alternatively, the

9    ruling on this motion can reserve the proper scope of injunctive relief, leaving it subject to

10   amendment, until after resolution of BabyBus' Rule 50(b) motion.  The jury verdict has major defects

11   and resolving BabyBus' Rule 50(b) motion may significantly affect the proper scope of injunctive

12   relief.   Further, if the Court is inclined to grant any injunction, the Court should stay its

13   implementation long enough to allow BabyBus to move for a stay under Rule 62.

14   As discussed more fully below, BabyBus respectfully requests that the Court deny

15   Moonbug's motion for a permanent injunction.

16   **ARGUMENT**

17   **I.    A PERMANENT INJUNCTION IS UNWARRANTED.**

18   A permanent injunction is "an extraordinary and drastic remedy that is never awarded as of

19   right."  *Perfect 10, Inc. v. Google, Inc*., 653 F.3d 976, 980 (9th Cir. 2011) (citation omitted).  The

20   Supreme Court has "consistently rejected invitations to replace traditional equitable considerations

21   with a rule that an injunction automatically follows a determination that a copyright has been

22   infringed."  *eBay, Inc. v. MercExchange*, 547 U.S. 388, 392-93 (2006).  Rather, to obtain a permanent

23   injunction, a plaintiff must establish: "(1) that it has suffered an irreparable injury; (2) that remedies

24   available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that,

25   considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

26   warranted; and (4) that the public interest would not be disserved."  *Id.* at 391.

27   Even if this showing is made, whether to grant the injunction remains in the equitable

28   discretion of the Court.  *See eBay*, 547 U.S. at 391.  "An injunction should issue only where … equity

1   'is essential in order effectually to protect property rights against injuries otherwise irremediable.'"

2   *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311, 312 (1982) (citation omitted).

3   **A.     Moonbug Has Not Shown Any Non-Speculative Threat of Irreparable Harm.**

4   An injunction is improper where it does not "guard against any present or imminent risk of

5   likely irreparable harm."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 162 (2010).  "Harm

6   must be proved, not presumed."  *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 1000

7   (9th Cir. 2011) (citation omitted).  Irreparable harm requires "a real or immediate threat of imminent

8   harm in the future."  *Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 937 n.3, 938 (N.D. Cal. 2009).

9   1.     Moonbug's Years-Long Delay Refutes Any Notion of Irreparable Harm.

10   Moonbug's years of delay in seeking injunctive relief weighs heavily against any claim of

11   irreparable harm.  Before filing suit, Moonbug knew about Super JoJo for years, even collaborating

12   with it during 2020 and continuing efforts to partner with it in 2021.[1]  At the time, Moonbug did not

13   raise any copyright infringement concerns about Super JoJo.  Tr. 1480:24-1481:1 (Lin).  Nor had

14   Moonbug ever raised such concerns with BabyBus about Super JoJo before.  Tr. 1481:2-5 (Lin).

15   Moonbug cannot credibly claim irreparable harm when it has known for years about the activities

16

17   _____

18   [1]  *See, e.g.*, Tr. 1587:8-15 (Yan) (testifying BabyBus released the first Super JoJo videos in May to June 2019); Tr. 1470:25-1471:11 (Lin) (Moonbug contacted BabyBus in January 2020 about

19   collaborating); TE 2372 (Moonbug email to BabyBus in May 2020, copying Moonbug founder John Robson, and stating Mr. Robson is "interested [in] chatting … about a deeper strategic

20   relationship"); TE 2373 (Moonbug responsive email to BabyBus in May 2020, stating "Mr. Robson sees the cooperation you and I are embarking on … as a great opportunity"); Tr. 1474:3-23 (Lin)

21   (testifying Moonbug's YouTube manager, Helen Wong,  contacted BabyBus in October 2020 to seek use of BabyBus' IP in Super JoJo for a Christmas special); Tr. 1475:9-19 (Lin) (testifying Moonbug's

22   Ms. Wong had watched all of BabyBus' Super JoJo videos as of November 2020); Tr. 1476:17-19 (Lin) (testifying Moonbug and BabyBus in fact collaborated on a cross-promotion Christmas special

23   in 2020); Tr. 1476:10-14, 1476:21-1479:15 (Lin) (testifying about Moonbug's outreach in March 2021 to partner with BabyBus on its Super JoJo content); TE 2367 (March 2021 email from Moonbug

24   founder Mr. Robson, copying Moonbug business and acquisition managers); TE 2368 (March 2021 response from Mr. Robson stating Ms. Wong would contact BabyBus by WeChat to discuss further);

25   TE 2511 (March 2021 WeChat message from Ms. Wong to BabyBus, stating "the reason why our CEO John contacted you is because he is interested in your baby bus and SuperJoJo and wants to

26   work together"; "[i]n terms of cooperation, this project, we hope to conduct licensing transactions and establish cooperative relations with you"); Tr. 1479:16-1480:19 (Lin) (testifying Moonbug

27   arranged a conference with BabyBus in spring 2021 in which they discussed "several potential models for cooperation.").

28

1    about which it now complains.  Further, even after Moonbug finally filed its complaint, it took no

2    action to address any so-called irreparable harm.  It did not seek a preliminary injunction at the outset

3    of this case, nor did it move for one during or after discovery.

4          Moonbug's past actions speak louder about "irreparable harm" than its present words.  *See*

5    *George Basch Co. v. Blue Coral, Inc*., 968 F.2d 1532, 1542 (2d Cir. 1992) ("Actions speak louder

6    than words, and motions speak loudest of all. Since [plaintiff] itself apparently concluded that the

7    economic loss it was suffering, if any, did not warrant a remedy from the outset of this action, we

8    cannot say that the district court abused its discretion" in denying an injunction).  If Moonbug's "true

9    goal was to defend its right to exclude, it would likely have at least *attempted* to stop" BabyBus

10   "during the lengthy litigation period." *MercExchange, L.L.C. v. eBay, Inc*., 500 F. Supp. 2d 556, 573

11   (E.D. Va. 2007) (denying permanent injunction in patent case after remand from *eBay, Inc. v.*

12   *MercExchange*, 547 U.S. 388).  That Moonbug did not "suggests that [plaintiff] itself concluded that

13   remedies at law would be adequate to address its injury." *Active Sports Lifestyle USA, LLC v. Old*

14   *Navy, LLC*, 2014 WL 1246497, at *3 (C.D. Cal. Mar. 21, 2014) (denying permanent injunction in

15   trademark case).  Moonbug's *years* of not seeking injunctive relief mute Moonbug's current position.

16                      2.          Moonbug's Irreparable Harm Arguments Lack Merit.

17          None of Moonbug new assertions of irreparable harm (Mot. 8-9) have merit.

18          **First,** Moonbug has not shown concrete evidence of harm to its reputation and goodwill.

19   Although "loss of control over business reputation and damage to goodwill could constitute

20   irreparable harm," a moving party must produce *evidence*, not just "platitudes." *Herb Reed Enters.,*

21   *LLC v. Fla. Ent. Mgmt*., Inc., 736 F.3d 1239, 1250 (9th Cir. 2013) (vacating preliminary injunction

22   in trademark case in light of *eBay, Inc. v. MercExchange*, 547 U.S. 388), *superseded on other*

23   *grounds by statute as stated in Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll.*, 23 F.4th 1262,

24   1270 (10th Cir. 2022).  Conclusory assertions do not suffice in contested motions; "concrete evidence

25   in the record" is required.  *adidas Am., Inc. v. Skechers USA, Inc*., 890 F.3d 747, 756, 761 (9th Cir.

26   2018) (reversing preliminary injunction as to defendant's "Cross Court" shoe because plaintiff

27   "failed to provide concrete evidence" of irreparable harm, even though it found no error in district

28   court's determination that  plaintiff was likely to succeed on the merits of its trademark infringement

claim, affirming injunction as to defendant's other accused shoe); *cf.* Mot. at 9 (citing default judgment decisions, such as *CNC Software, LLC v. Global Engineering Ltd Liability Co.*, 2023 WL 3409463, at *7 (N.D. Cal. May 12, 2023), where plaintiffs' injunction motions are uncontested and their allegations of harm untested).  "Speculative injury does not constitute irreparable injury." *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 471-72 (9th Cir. 1984) (vacating injunction where hypothetical loss of goodwill and customers was "speculative").

The record here provides no nonspeculative basis to conclude that Moonbug faces irreparable harm to its reputation or goodwill from BabyBus.  Those issues were not addressed at trial, where no one even mentioned the words "reputation" or "goodwill."  The only trial testimony concerning "harm" Moonbug referenced (Mot. 6) did not articulate any negative impact to Moonbug's reputation or brand in the eyes of consumers.[2]  Rather, the testimony Moonbug cites is purely speculative as to any harm.  Mot. 6 (quoting Mr. Benoy's "if … then …" testimony).  Further, Mr. Benoy's speculation was premised on his claims about YouTube's algorithm—an issue on which he demonstrated no personal knowledge or competency as an expert to testify about.[3]  And neither of the declarations Moonbug submitted from two fact witnesses—Mr. Benoy and Mr. Hagan—identify any harm to Moonbug's reputation or goodwill.  *See* Dkts. 597, 598.

Moonbug's showing is inadequate to establish irreparable harm to its reputation or goodwill. *See, e.g.*, *Greg Young Publ'g, Inc. v. Zazzle, Inc*., 2020 WL 3871451, at *4 (C.D. Cal. July 9, 2020) (rejecting asserted reputational harm as conclusory where plaintiff's owner declared the infringement impacted the sales and resulted in a lower-quality infringing product in the market); *Qualcomm Inc. v. Compal Elecs., Inc*., 283 F. Supp. 3d 905, 919 (S.D. Cal. 2017) (rejecting asserted goodwill harm

---

[2]  Although unsupported, Moonbug's theory that Super JoJo and CoComelon were "indistinguishable to young viewers" (Mot. 9), precludes it from credibly asserting that Super JoJo weakened consumers' perceptions of CoComelon or Moonbug's reputation and goodwill (Mot. 9).

[3]  Accordingly, BabyBus objects to reliance on Mr. Benoy's cited testimony concerning YouTube's algorithm works and the role of thumbnails.  *See* Mot. 5-6, citing Tr. 956:5-23, 967:4-19, 968:7-24. It is speculative, lacks foundation, and is improper expert opinion by a lay witness.  Fed. R. Evid. 403, 602, 701.  Moreover, the only expert with foundation on the subject, Denise Denson, clearly refuted Mr. Benoy's speculation.  Tr. 1225:10-12 ("thumbnails don't drive search nor autoplay, as YouTube can't identify what's in a thumbnail").

1 because plaintiff "made no particularized showing" and "conclusory assertions about the importance

2 of goodwill … are not enough"); *see also adidas*, 890 F.3d at 759-761 (holding district court abused

3 its discretion in finding irreparable harm to reputation and brand because, even if consumer confusion

4 existed, there was no evidence such confusion negatively impacted plaintiff's brand or reputation).

5 **Second,** Moonbug's arguments about consumer "confusion" and "deception" (Mot. 9-10)—

6 core harms that *the Lanham Act* protects against—are irrelevant to this copyright infringement action,

7 which has no trademark or false advertising claims.  There is no statutory basis for finding

8 "confusion" to be a ground for irreparable harm in a copyright case, particularly one that does not

9 allege counterfeiting.  The only authority Moonbug relies on citing consumer confusion as an

10 irreparable harm in case without trademark or false advertising claims is an unpublished, out-of-

11 district opinion with no analysis of relevance to copyright law that seems to have accepted the

12 plaintiff's position without question or support.  Mot. 8-9 (citing *Mitchell v. 3PL Sys., Inc.*, 2013 WL

13 12129617, at *3 (C.D. Cal. Apr. 8, 2013)).[4]  Moreover, *Mitchell* ignored the Ninth Circuit's

14 determination that "[h]arm must be proved, not presumed" in assessing injunctive relief in copyright

15 infringement cases, *Flexible Lifeline Sys., Inc.*, 654 F.3d at 1000, treating the issue as still unresolved.

16 2013 WL 12129617, at *3-4 ("courts have split over whether irreparable injury can be presumed or

17 whether a party must prove irreparable injury").

18 Even if *Mitchell* was correctly decided, its irreparable harm finding was based on expert trial

19 testimony concerning consumer confusion and resulting irreparable harm.  2013 WL 12129617,

20 at *4.  Moonbug has never introduced comparable competent evidence—whether in discovery, or

21 trial, or even in its moving papers now—or admissible evidence of even a single person being

22 confused by BabyBus content, much less siphoned away from consuming CoComelon content.

23 Mot. 13; *see also* Mot. 6; Tr. 968:10-24.  In the absence of competent proof, Moonbug's speculation

24 about consumer confusion is meaningless.  *See Perfect 10*, 653 F.3d at 982 (rejecting permanent

---

[4]  Moonbug's other two other cases involving "consumer confusion" both included Lanham Act claims.  Mot. 8-9 (citing *Brighton Collectibles, Inc. v. Coldwater Creek, Inc.*, 2009 WL 10671767, at *1 (S.D. Cal. Jan. 23, 2009), and *Moonbug Ent. Ltd. v. HappyKidsTV*, 2022 WL 18859471, at *1 (N.D. Cal. Dec. 15, 2022) (default judgment)).

1   injunction where plaintiff "failed to submit a statement from even a single former subscriber who

2   ceased paying for [plaintiff's] service because of [infringing] content").

3         **Third,** Moonbug has not shown—and cannot show—a "sufficient causal connection"

4   between the alleged irreparable injury and the conduct it seeks to enjoin, such that the injunction

5   would effectively minimize the risk of harm. *See Perfect 10*, 653 F.3d at 982 (affirming denial of

6   injunction where plaintiff failed to show "a sufficient causal connection between irreparable to

7   [plaintiff's] business and [defendant's] [infringing conduct]"); *see also Garcia v. Google*, 786 F.3d

8   733, 744 (finding a "mismatch" between the plaintiff's substantive claim "and the dangers she hopes

9   to remedy through an injunction"). Moonbug bases its theory on Mr. Benoy's conjecture about what

10  he thinks "could" happen when infringing content is on YouTube. Mot. at 6, citing Tr. 967:21-

11  968:25 (speculating that "if" another video is recommended next to a CoComelon video, and "if" a

12  user clicks on that other video, then it "creates a kind of unbreakable bond" between the videos").

13  This is precisely the kind of baseless causal connection rejected by *Perfect 10*, 653 F.3d at 982.

14  Moonbug has no competent evidence that such a "bond" actually occurs—much less with videos on

15  BabyBus' Super JoJo channels. Nor does Mr. Benoy's speculation move the needle. He has no

16  foundation for his daisy chain of "if … then" assertions; he is neither a YouTube expert nor has

17  personal knowledge of how its algorithm works. In fact, the central premise of Mr. Benoy's

18  reasoning—that YouTube recommends videos based on thumbnail similarity—was refuted by the

19  only expert who testified on the subject. *See* Tr. 1228:12-229:1 (Denson) ("Thumbnails have zero

20  effect on driving search results, thumbnails have zero effect on driving autoplay, and thumbnails

21  have zero effect on driving what's recommended."). Moonbug does not show a "sufficient causal

22  connection" between the alleged irreparable injury and the conduct it seeks to enjoin.

23        **Fourth,** Moonbug's reliance on the actions of "third-party users on YouTube" who uploaded

24  Super JoJo videos to YouTube (Mot. 10) does not support an injunction against BabyBus. Moonbug

25  does not contend BabyBus uploaded those videos or is affiliated with the third parties who did—nor

26  could it. *Id.*; Dkt. 596 ¶ 13. Moreover, Moonbug's exhibit reflects that many of those third-party

27  videos were uploaded to YouTube over a year ago. *See* Dkt. 596-13. Moonbug evidently never sent

28  takedown notices for those third-party uploads, despite sending frequent takedowns when BabyBus

1  uploaded similar content.  If Moonbug had a genuine concern over purported harm of those

2  third-party videos, it would have sent takedown notices to YouTube for them long ago—or recently.

3  Its failure to do so speaks volumes about Moonbug's supposed harm.  *See* 4 Nimmer on Copyright §

4  14.06[A][3][c] (noting unreasonable delay can defeat irreparable injury and the length of time "need

5  not be great").   Moreover, even if Mr. Hagan's declaration regarding BabyBus's supposed

6  monetization of third-party content were reliable, which it is not,[5] Moonbug's concerns are

7  misguided.  9/1/23 Declaration of Naiyong Yan ("9/1/23 Yan Dec."), ¶ 5.

8  **Last,** Moonbug's arguments that BabyBus is infringing to this day by uploading Super JoJo

9  videos and displaying Super JoJo characters are baseless.  *See* Mot. 11.  Not only has this content not

10  been shown to infringe (*see* Section II.B.2), but as set forth in Mr. Yan's declaration, BabyBus has

11  taken concrete steps to prevent any Super JoJo content from appearing on its accounts on United

12  States based platforms pending post-trial motions and any appeal, including disabling the videos on

13  those platforms and removing the artwork on its YouTube channels.  9/1/23 Yan Dec., ¶¶ 2-6.  As

14  Mr. Yan confirms, BabyBus will not re-enable such content absent authority from a United States

15  court.  *Id.* ¶ 6.  Moonbug's assertion that BabyBus' opposition is "circumstantial evidence" of

16  BabyBus' "intent to continue to infringe CoComelon" therefore lacks merit.  Mot. 13.

17  **B.     Moonbug Has Adequate Legal Remedies As Monetary Damages Are More**

18  **Than Sufficient To Compensate Moonbug.**

19  Even if Moonbug had presented concrete evidence of harm to its reputation, loss of

20  customers, or BabyBus' monetization of third-party content (which it has not), Moonbug has not

21

22

23  [5]  BabyBus objects to the Declaration of Dane Hagan and attached exhibit (Dkts. 598 & 598-1).
While Mr. Hagan claims familiarity with certain tools and "certain publishing data" (Dkt. 598 ¶ 2),

24  his testimony about what "BabyBus can 'claim,'" "if" predicate events happen (*id.* ¶ 3) lacks
foundation as to what actually occurred, and it is speculative and irrelevant.  He fails to identify any

25  YouTube documents or any other evidence that would support the conclusions of paragraphs 5-8—
even documents showing the application of his methodology actually results in revenue regarding

26  other works.  This renders the few statements he makes on personal knowledge (e.g., what he
searched for, the screenshots he captured) irrelevant.  The Court should exclude this speculative

27  declaration in its entirety.  Fed. R. Civ. P. 403, 602, 701.  To the extent the Court is inclined to base
any injunctive relief on this declaration, it should hold an evidentiary hearing at which Mr. Hagan

28  can be subject to cross examination.

demonstrated that "remedies available at law, such as monetary damages, are inadequate to compensate" it. *eBay*, 547 U.S. at 391; *see also, e.g.*, *Rent-A-Car Center Inc. v. Canyon Tele. & Appliance Rental*, *Inc*., 944 F.2d 597, 603 (9th Cir. 1991) (economic injury can be remedied by damage award); *Oakland Trib., Inc. v. Chronicle Pub. Co*, 762 F.2d 1374, 1375-76 (9th Cir. 1985) (no injunctive relief because claim of loss of circulation and revenue resulted in purely monetary harm measurable in damages); *Aurora World, Inc. v. Ty Inc*., 719 F. Supp. 2d 1115, 1169 (C.D. Cal. 2009) ("Loss of sales alone will not support a finding of irreparable injury 'because acceptance of that position would require a finding of irreparable harm to every' plaintiff regardless of circumstances." (citation omitted)).  Because Moonbug's legal remedies are adequate, a permanent injunction is unwarranted.  *E.g., Warner-Tamerlane Publ'g Corp. v. Leadsinger Corp*., 2008 WL 11334487, at *7 (C.D. Cal. Apr. 18, 2008) (refusing permanent injunction because legal remedies were adequate, despite finding that defendant willfully infringed over 200 of plaintiffs' copyrighted compositions); *Brighton Collectibles, Inc. v. Pedre Watch Co*., 2013 WL 5719071, at *5 (S.D. Cal. Oct. 21, 2013) (holding that the plaintiff had an adequate remedy at law where there were no indications that the defendant could not pay the statutory damages, and if future infringement occurred the plaintiff could be compensated by further damages).

Moonbug's two contrary arguments are meritless.  First, Moonbug's rehashed irreparable harm argument (Mot. 13) is not viable for the reasons discussed above.  Its attorney argument that this "type of customer confusion dilutes the CoComelon brand" and causes "loss of customers, reputation, goodwill, customer confusion" is unsupported by evidence.  Mot. 13.  Such speculation, not "grounded in any evidence," must be rejected.  *Herb Reed*, 736 F.3d at 1250.  Second, Moonbug's argument that an injunction is necessary to "enforce the jury's verdict" on third-party platforms like YouTube (Mot. 13) is belied by its own assertions.  According to Moonbug, YouTube "will not fully resolve Moonbug's copyright complaints about Super JoJo content until the lawsuit is no longer pending and infringement has been adjudicated in Moonbug's favor."  *Id.* (citing Dkt. 596 (McHale Dec.) ¶ 28, Ex. 25).  If that is correct, Moonbug does not need an injunction; it will have what needs for YouTube once this litigation ends, and it has not articulated any harm likely to occur before then—much less anything qualitatively different between then and now (or the last four years).

**C.      The Balance Of Hardships Favors BabyBus.**

To justify the extraordinary remedy of injunctive relief, Moonbug must show the balance of hardships weighs in its favor.  *eBay*, 547 U.S. at 391.  It does not and cannot.

Moonbug argues it will be irreparably harmed because "it will be unable to exclude or prevent Defendants from infringing Moonbug's copyrights in CoComelon."  Mot. 14.  But that argument fails because it inherently assumes that the "right to exclude" necessarily follows from infringement—a proposition the Supreme Court and the Ninth Circuit have flatly rejected.  *eBay*, 547 U.S. at 392; *Flexible Lifeline Sys., Inc.*, 654 F.3d at 998.[6]  Moonbug's speculation that BabyBus "could" infringe again (Mot. 14) is nothing but another way of saying all prevailing copyright plaintiffs are entitled to injunctions.  It does not tip the balance in Moonbug's favor, especially given money damages and attorneys' fees would be available to compensate for any such harm.  *E.g.*, *Herb Reed*, 736 F.3d at 1250 (rejecting "cursory and conclusory" allegations in support of injunction).

In contrast, the harm to BabyBus—a global leader in original children's content—is real and substantial.  The proposed injunction would enjoin BabyBus from, among other things, making any use of 13 "Super JoJo channels"—i.e., URL associated with YouTube accounts—(Dkt. 595-1 ¶ 2), irrespective of any content they may contain, infringing or not.  YouTube *accounts* are not "original works of authorship fixed in any tangible medium of expression" subject to copyright.  *See* 17 U.S.C. § 102(a).  If Moonbug's proposed injunction is enforced, it will result in the termination of those accounts, which currently have over 20 million subscribers.  Dkt. 23 ¶ 6.  Building that subscriber base took considerable time and resources, including millions of dollars.  *Id.*[7]  Not only would the injunction destroy that investment, but it would have snowball effects on BabyBus' other family of channels.  When Moonbug got YouTube to suspend BabyBus' Super JoJo channel at the start of this case, it caused a dramatic drop in the search engine standing of BabyBus' other channels—which

---

[6]  *See also Greg Young Publ'g, Inc. v. Zazzle, Inc.*, 2020 WL 3871451, at *4 (C.D. Cal. July 9, 2020) ("[Plaintiff's] argument that irreparable harm results from losing their exclusive right to control their copyright is inconsistent with *Flexible Lifeline Systems* because it means that copyright infringement leads to a per se presumption of irreparable harm.").

[7]  There are a host of reasons why people subscribe to Super JoJo channels, such as the public domain nursery rhymes and kids songs on the channels.  *See* Tr. 117:8-14 (Denson).

1   have more than 200 million subscribers.  Dkt. 23 ¶ 8; Tr. 1520:20-1521:3.  There is no justification

2   to impose that harm again—permanently.  The fact that the channels still use the "Super JoJo" name

3   is irrelevant; copyright does not protect titles or names.  37 C.F.R. § 202.1(a) (excluding "[w]ords

4   and short phrases such as names, titles, and slogans" from copyright protection).  And BabyBus has

5   removed any Super JoJo content from its Super JoJo channels.  9/1/23 Yan Dec., ¶ 5.  Because

6   nothing on the channels contains content that Moonbug even argued is infringing, the balance of

7   harms sharply tilts in BabyBus' favor.  *See Abend v. MCA, Inc.*, 863 F.2d 1465, 1479 (9th Cir. 1988)

8   (rejecting injunction that would "effectively foreclose defendants from enjoying legitimate profits

9   derived from exploitation of the 'new matter'" they created).

10                 **D.       The Public Interest Would Not Be Served By An Injunction.**

11          Moonbug cannot demonstrate that "the public interest would not be disserved by a permanent

12   injunction."  *eBay*, 547 U.S. at 391.  "[T]he touchstone of the public interest factor is whether an

13   injunction ... strikes a workable balance between protecting the [holder's] rights and protecting the

14   public from the injunction's adverse effects."  *i4i Ltd. P'ship v. Microsoft Corp*, 598 F.3d 831, 863

15   (Fed. Cir. 2010).  Moonbug provides no viable argument that it would.  Protection of Moonbug's

16   copyrights, its sole argument on this factor (Mot. 15), is fundamentally a private interest.  The goals

17   of copyright are to promote creativity and competition; rewarding the author is merely a secondary

18   by-product.  *See Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 429-430 (1984).

19   Moonbug's argument ignores that.

20          Moonbug also ignores the harm to the public interest if all Super JoJo content were enjoined,

21   denying consumers the original aspects of BabyBus' creative works and seriously curtailing

22   competition in the preschool animation genre.  *See Abend*, 863 F.2d at 1479 (injunction inappropriate

23   where public would be denied opportunity to enjoy creative film expression).  This is particularly

24   problematic given Moonbug's stated intent to "consolidate and dominate the preschool market."

25   TE 37 at 10, 16; *see* Tr. 982:8-15, 986:23-987:2 (Benoy) (testifying Moonbug's business model is to

26   buy preschool animation properties and that it had bought 18 properties as of May 2020); TE 37 at 6

27   ("We are now the leading kids media company on digital platforms").  An injunction would only

28   further Moonbug's monopolistic efforts in the genre, effectively eliminating Moonbug's chief

competitor in the space.  *See Pass & Seymour, Inc. v. Hubbell, Inc*., 532 F. Supp. 2d 418, 434 (N.D.N.Y. 2007) (denying an injunction where public interest would not have been served due to the "anti-competitive nature of such an injunction").  Further, by blessing Moonbug's use of the "nuclear option" of fully shutting down a competitive channel, an injunction would chill third parties from competing against Moonbug—whether as to CoComelon or any of the other numerous preschool animation properties Moonbug has acquired.

Moreover, an injunction would disserve the public interest in avoiding economic waste by removing a valued, successful commodity in the market and millions of dollars that have been invested in developing the successful Super JoJo series.  *See* 2 Dan B. Dobbs, Law of Remedies § 6.3(5) (2d ed. 1993) ("To the extent that destruction or even an injunction against distribution will prevent exploitation of economically viable materials, the problem is one of economic waste, certainly if the economic value of the plaintiff's copyright is less than the economic costs entailed in the destruction or injunction"); *see also BR Assocs., Inc. v. Laframboise*, 2007 WL 1840031 , at *10 (E.D. Mich. June 7, 2007) (denying injunction where it would result in economic waste).

## II.   NO LEGAL BASIS SUPPORTS THE INJUNCTION MOONBUG SEEKS.

Even if Moonbug could establish some entitlement to an injunction, it would not be entitled to the sweeping injunction it seeks.  *See* Dkt. 595-1.[8]  Other than the Super JoJo videos for the six videos that BabyBus conceded on before trial, nothing in the verdict, the law, or the record supports granting an injunction against *any* other Super JoJo Content.

### A.    The Verdict Does Not Support Enjoining Most Specific Super JoJo Content.

The jury's verdict does not support an injunction against the Super JoJo "series," much less all Super JoJo "artwork" (including settings and characters that are wholly original to BabyBus and that Moonbug never contended were substantially similar to any of its copyrighted content, such as dinosaur museums, aquariums, neighbors, friends) or any other "products, or other Super JoJo

---

[8]  Moonbug's proposed injunction defines "Super JoJo Content" as the "Super JoJo series, including any Super JoJo channels (or Super JoJo content on any other BabyBus channels), applications, artwork (e.g., webpage banners, video thumbnails, channel profile pictures, and other images), characters, episodes, videos, products, or other Super JoJo materials."  Dkt. 595-1 at ¶ 1(a).

materials" that were not even argued to be infringing at trial.  Dkt. 595-1 at 2.  The verdict reflects that the jury found BabyBus infringed 39 Moonbug copyrights.  Dkt. 579 ("[D]id Babybus infringe the registered copyrights to the following works?").  Crucially, the verdict does not reflect *what content infringed* those copyrights.  Was it a downloaded *CoComelon* video or captured screenshot (which are improper bases for an infringement finding)?  Specific *Super JoJo* videos for which Moonbug presented comparisons?  Thumbnail images or banners (an improper basis for infringement of any copyrighted video)?  Original character animation?  Redesigned character animation?  Something else?  The verdict is silent.  But without those findings, the verdict cannot support permanently enjoining all Super JoJo Content.

The jury's verdict does not support an injunction against the Super JoJo "series," much less all Super JoJo "artwork" (including settings and characters that are wholly original to BabyBus and that Moonbug never contended were substantially similar to any of its copyrighted content, such as dinosaur museums, aquariums, neighbors, friends) or any other "products, or other Super JoJo materials" that were not even argued to be infringing at trial.  Dkt. 595-1 at 2.  The verdict reflects that the jury found BabyBus infringed 39 Moonbug copyrights.  Dkt. 579 ("[D]id Baby[B]us infringe the registered copyrights to the following works?").  Crucially, the verdict does not reflect *what content infringed* those copyrights.  Was it a downloaded *CoComelon* video or captured screenshot (which are improper bases for an infringement finding)?  Specific *Super JoJo* videos for which Moonbug presented comparisons?  Thumbnail images or banners (an improper basis for infringement of any copyrighted video)?  Original character animation?  Redesigned character animation?  Something else?  The verdict is silent.  But without those findings, the verdict cannot support permanently enjoining all Super JoJo Content.

Indeed, the verdict does not reflect whether the jury found ***any Super JoJo videos*** infringing.  Moonbug repeatedly emphasized to the jury that BabyBus had downloaded copyrighted CoComelon videos and captured screenshots from CoComelon videos and stored them on its China-based file server.  *See, e.g.*, Tr. 249:19-250:11 (Pltfs' Opening) ("Forty downloaded CoComelon episodes … BabyBus downloaded those … Not just 40 CoComelon episodes; 261 CoComelon images"); Tr. 1861:1-17 (Pltfs' Closing) ("We saw their planning development files. CoComelon images scattered.

CoComelon videos. CoComelon links. They were plastered throughout[.]"); Tr. 648:8-11 (Mr. Yan) ("Q. And BabyBus has copies of CoComelon episodes in its production files for Super JoJo?  A. Yes. I did discover that in our server, in our files, there existed CoComelon's video -- videos."); Tr. 650:17-19 (Yan) (questioning about "at least 40 unique episodes of CoComelon in BabyBus' production"); Tr. 651:15-16 (questioning about "261 CoComelon images in Super JoJo's production").  The jury's findings may have been based on these actions, which cannot be a basis for infringement (as discussed in Section II.B.1).  Indeed, the jury's finding of virtual identity confirms the *un*likelihood that infringement was based on any Super JoJo content containing BabyBus' *JoJo* character because the Court already found JoJo not virtually identical to JJ as a matter of law.  *See* Dkt. 242 at 26 ("The asserted and accused videos are not identical or nearly identical. They feature non-identical characters, as discussed above, and they are not the same frame-by-frame.").  Further, Moonbug's theory that all Super JoJo Content infringes is at odds with the jury finding that Moonbug's Soccer Song video was not infringed ***at all***—which it would have been if the verdict were based on the jury finding infringement based on the JoJo character(s) infringing the JJ character(s) in Moonbug's videos.  *See* Dkt. 579 at 5.

The inadequacy of the verdict form is a problem Moonbug itself is responsible for.  Moonbug successfully sought a verdict form that did not ask the jury to make any specific determinations of what infringed.  Dkt. 335.  And it opposed BabyBus' proposed form (Dkts. 459 & 459-1), which would have had the jury specifically identify any accused videos(s) that it found to be infringing.  *E.g.*, Dkt. 345 at 7:2-9.  BabyBus' proposed verdict form (and jury instructions) would have (i) ensured liability was predicated on the accused videos (as opposed to something else, like server copies), and (ii) identified which particular videos, if any, other than the conceded videos could be an appropriate subject for an injunction.  *See* Dkt. 567 at 2, 5.  As BabyBus argued in advocating for such a form, it was "critical" for the jury to identify which Super JoJo works infringed for "injunctive relief."  Dkt. 459 at 4, Dkt. 345 at 7; Dkt. 567 at 5; *see also Floyd v. Laws*, 929 F.2d 1390, 1395 (9th Cir. 1991) ("[C]ourts often submit special interrogatories to juries[] to establish a factual basis for testing the correctness of verdicts and ascertaining their extent.").  As BabyBus explained, a "particularized finding" of "whether each of the accused works is infringing," "is important for …

1   determining the scope of potential injunctive relief," and "will not be available if the Court adopts

2   Plaintiffs' verdict form."  Dkt. 345 at 2-3.

3       Having made its tactical decision to fast-track jury deliberations while sacrificing knowledge,

4   with full knowledge of the consequences of that which it now faces at the injunction stage, Moonbug

5   cannot now claim that verdict supports an injunction as to all "Super JoJo Content."   To hold

6   otherwise would allow Moonbug to improperly profit by its own litigation tactics.  *See, e.g.*, *U.S. v.*

7   *Sturdivant*, 244 F.3d 71, 77-78 (2d Cir. 2001) ("Principles of equity prohibit [plaintiff] from

8   benefiting from the prejudicial ambiguity that [plaintiff] alone was responsible for creating. It was

9   [plaintiff] which . . . decided not to seek a special verdict."); *see also Hamilton v. State Farm Fire &*

10  *Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (noting equitable principles are "to protect against a

11  litigant playing fast and loose with the courts" (citation omitted)).  Moonbug cannot meet its strict

12  burden of proof with respect to the far-ranging injunction it seeks based on the jury verdict.

13      **B.      The Court Cannot Decide As A Matter Of Law That Most Of The Super JoJo**

14              **Content Should Be Enjoined.**

15              1.      The Jury Verdict Precludes An Injunction Against Most Super JoJo Content.

16      The jury's finding that the Soccer Song copyright was not infringed (Dkt. 579 at 5) disproves

17  Moonbug's theory that the mere presence of JoJo (or any other characters) in a video infringes all

18  Moonbug's copyrights that include JJ (or any other characters).  *See, e.g.*, Dkt. 546 at 10 (arguing all

19  accused videos feature JoJo and they "copy CoComelon[]" because they depict "JoJo or the

20  redesigned JoJo" and "the family characters"); *id.* at 12 (arguing accused videos copied the "Animal

21  Characters"); *id.* at 15 (arguing "all Super JoJo episodes infringe all the CoComelon Works").  The

22  Soccer Song extensively features all the CoComelon characters at issue in this case: the JJ character,

23  the family characters, and the animal characters.  TE 1196 (CoComelon Soccer Song).  Yet the jury

24  found that <u>none</u> of the Super JoJo works—including JoJo and his family characters—infringed

25  CoComelon's Soccer Song. Dkt. 579 at 5.  Thus, while the verdict form does not illuminate specific

26  infringing content, it does provide this one significant clue as to what was *not* found to infringe.

27      This precludes an injunction based solely on the Super JoJo characters:  where a jury decides

28  legal claims and a judge decides equitable claims on the same facts, the Seventh Amendment requires

1   the judge to follow the jury's implicit or explicit factual determinations in deciding the equitable

2   claims.  *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993); *see*

3   *Floyd v. Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991); *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498,

4   507 (9th Cir. 1989).  Moonbug's copyright infringement claims are classic "legal claims" on which

5   the jury's "implicit and explicit" findings bind the Court.  *See, e.g.*, *Danjaq LLC v. Sony Corp.*, 263

6   F.3d 942, 962 (9th Cir. 2001) ("McClory has a constitutional right to a jury trial on his copyright

7   infringement claims").  As the Ninth Circuit has repeatedly emphasized, "the intrinsic test … is

8   exclusively the province of the jury."  *Funky Films, Inc. v. Time Warner Entm't Co. L.P.*, 462 F.3d

9   1072, 1077 (9th Cir. 2006).  The Court acknowledged this in its summary judgment rulings and in

10   the jury instructions.  *See, e.g.*, Dkt. 242 at 9-10; Dkt. 562 at 17.

11       Thus, to the extent Moonbug's Motion seeks a judgment as a matter of law that all Super JoJo

12   Content directly infringes Moonbug's 39 copyrighted works found infringed in the verdict form, it

13   should be denied because the Court cannot issue an injunction contrary to the jury's verdict.

14               2.    The Record Does Not Otherwise Support The Requested Injunction.

15       Even if it were procedurally proper for the Court to base an injunction on an independent

16   determination that all "Super JoJo Content" infringes, the record does not support such a finding.  To

17   establish infringement by any particular Super JoJo work, Moonbug was required to prove that

18   actionable content was "substantially similar" to Moonbug's "protectable expression."  *See, e.g.*,

19   *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018) (emphasis added).  It did not and

20   cannot.  *See* Dkt. 537 at 10-23 (BabyBus' Rule 50(a) motion).

21       **First,** the CoComelon content (videos and screen shots) copied on to BabyBus' servers is not

22   actionable and cannot be grounds for an injunction (or finding of infringement).  Those acts were all

23   initiated outside of the United States, and the resulting files were stored outside the United States.

24   Tr. 249:22-250:5.  "[B]ecause the infringing act of downloading the material occurred on a computer

25   outside the United States, there was no act in the United States to establish jurisdiction."  *Superama*

26   *Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 830 F. App'x 821, 823 (9th Cir. 2020); *see also*

27   *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995) (similar).

28

1   This is because copyrights "do not have extraterritorial effect." *Impression Prod., Inc. v. Lexmark*

2   *Int'l, Inc.*, 137 S. Ct. 1523, 1528 (2017).

3       **Second,** an injunction against all Super JoJo Content cannot be premised on BabyBus'

4   thumbnail art, as Moonbug expressly invited the jury to find.  *See* Tr. 425:8-9 (Tyz) (arguing

5   thumbnails "go[] to the question of whether they copied the character"); Tr. 425:12-13 (Tyz) (arguing

6   "similarities in thumbnail art is highly probative of their infringement"); Tr. 492:12-495:24,

7   499:4-501:2, 504:2-505:3, 539:19-540:5, 541:4-12 (Yan) (Tyz eliciting pages of testimony about

8   thumbnail "plagiarism"); *see also* Dkt. 546 at 25 (arguing "the jury can find infringement based on

9   Defendants' copying of CoComelon thumbnails" (cleaned up)).  But the uncontroverted record

10  establishes the Super JoJo thumbnail art was not screen captures from BabyBus videos.   Tr.

11  1440:8-11 (Zhang) ("Q. For any of the thumbnails you looked at, did any of the thumbnail art copy

12  an image from the video that was associated with it?  A. No."); Tr. 1578:6-8 (Yan) ("Q. Are the

13  Super JoJo thumbnail images screenshots that are captured from the videos?  A. No.").  Even more

14  importantly, Moonbug did not introduce evidence that its own thumbnails are either copyrighted or

15  are screenshots from Moonbug's copyrighted videos.  Accordingly, there is no legally supported

16  basis for finding that any BabyBus 2D thumbnail art is substantially similar to the overall look and

17  feel of any of any Moonbug copyrighted *video*, much less for finding that any thumbnail art

18  establishes infringement by any Super JoJo *video*.

19      **Third,** as to 340 of the 368 Super JoJo videos at issue, Moonbug merely relied on

20  Mr. Krause's testimony that the videos copied the JJ character and other general concepts.

21  Tr. 811:25-16 ("the JJ character"; "the way the JJ character is shown and portrayed and animated

22  and moving," "the relationship between the family and the JJ character," "the themes, the moods, the

23  color, the design, the pacing and setting, the animation style, the cinematography, the way it interacts

24  with songs.").  Those generic, categorical assertions fall far short of identifying specific, protectable

25  expression in each video to find that all of it infringes.  That is especially so because the videos use

26  different animation styles (such as characters dancing against abstract backgrounds (TE 794 at 1:27)

27  and animated characters mixed with live-action human actors (TE 743 at 0:44)), different settings

28  (such as the beach (TE 502), the city (TE 720), and the market (TE 547)), and different plots and

sequences of events (such as going camping (TE 593), getting a haircut (TE 550), and bringing a pet to the veterinarian (TE 592)).[9]

**Finally,** the record does not support finding infringement of the characters.  As for Moonbug's JJ, Mr. Krause identified only a handful of highly generic traits, which even he admitted were "unprotectable ideas."  *See* Tr. 866:16-22.  But even if some combination of those elements were expressed in a protectable way, the expression in BabyBus' JoJo (hair shape, hair color, eye color, teeth shape, head shape, face proportions, clothes, names) is substantially different.  JJ's "conceptual qualities" fare no better; traits like being "curious," "optimistic," "wanting to be in the middle of things," and "trying to figure out the next lesson" are generic descriptions of a typical 3.5-year-old.  Nor is there evidence of protectable physical or conceptual traits of JJ's family members.  Instead, the family characters are described in the broadest possible terms: a "clever" mom, a "goofy" dad, "patient" siblings.  Tr. 762:8-13, 822:8-22.  These are not protectable elements, and once filtered out, as the extrinsic test requires, no substantial similarity remains to even proceed to the intrinsic test.  *E.g.*, *Rentmeester*, 883 F.3d at 1121 ("[T]he works at issue here are as a matter of law not substantially similar.  Just as Rentmeester made a series of creative choices in the selection and arrangement of the elements in his photograph, so too Nike's photographer made his own distinct choices in that regard. Those choices produced an image that differs from Rentmeester's photo in more than just minor details."); *see also Data East USA, Inc. v. Epyx, Inc.*, 862 F. 2d 204, 209 (9th Cir. 1988) (reversing permanent injunction because "it was clear error for the district court to determine that protectable substantial similarity existed based upon these facts," in which "the similarities result from unprotectable expression").[10]

---

[9]  In any event, things like "animation style" or "look" of a show are not protectable by copyright. *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1135 (C.D. Cal. 2007).

[10]  Moreover, as a matter of law, the court must assess the scope of protection—thin or thick—after filtering out unprotectable elements *claimed to be similar*—**not** based on the generic question of whether a different range of expression was *possible if* the defendant had made different choices, *e.g.*, as to gender, ethnic background, hairstyle.  *See, e.g.*, *Apple Comp., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1447 (9th Cir. 1994) ("Having correctly found that almost all the similarities spring either from the license or from [other unprotectable elements], [the district court] correctly concluded that illicit copying could occur only if the works as a whole are virtually identical.").  A defendant's

1    III.    **THE PROPOSED INJUNCTION IS ALSO IMPROPER AND UNWORKABLE.**

2        A.    **Moonbug's Injunction Is Not Narrowly Tailored To The Specific Conduct**

3              **Found To Infringe.**

4        A permanent injunction must be specific and narrowly tailored.  Fed. R. Civ. P. 65(d)(1)

5    ("Every order granting an injunction . . . must . . . (B) state its terms specifically; and (C) describe in

6    reasonable detail . . . the act or acts restrained or required.").  "Injunctive relief must be tailored to

7    remedy the specific harm alleged" and an overbroad injunction "is an abuse of discretion."  *NRDC,*

8    *Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007) (citing *Lamb-Weston, Inc. v. McCain Foods, Ltd.*,

9    941 F.2d 970, 974 (9th Cir. 1991); *see Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998 (N.D. Cal.

10   2006) ("an injunction must be narrowly tailored . . . to remedy only the specific harms shown by the

11   plaintiffs, rather than 'to enjoin all possible breaches of the law") (citation omitted).

12       Limiting the scope of injunctive relief is especially important in copyright cases where, due

13   to constitutional concerns, "the scope of the injunction should be coterminous with the infringement."

14   4 M. Nimmer & D. Nimmer, Nimmer on Copyright § 14.06[C].  "Injunctive relief should be narrowly

15   tailored to fit specific legal violations."  *Waldman Publ'g Corp. v. Landoll, Inc*., 43 F.3d 775, 785

16   (2d Cir. 1994).  Thus, a court "should only include injunctive terms that have a common sense

17   relationship to the needs of the specific case, and the conduct for which a defendant has been held

18   liable."  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Inc.* ("*Grokster*"), 518 F. Supp. 2d 1197,

19   1226.  A district court abuses its discretion by issuing an injunction that exceeds the jury's

20   infringement findings.  *Starter Corp. v. Converse, Inc*., 170 F.3d 286, 300 (2d Cir. 1999); *see*

21   _____

22   decision to use a "manifestly conventional arrangement" of elements, *Gray v. Hudson*, 28 F. 4th 87,
     101-02 (9th Cir. 2022), or other elements that "flow naturally from a basic … premise," *Berkic v.*
23   *Crichton*, 761 F. 2d 1289, 1293 (9th Cir. 1985), does not entitle a plaintiff to a broader scope of
     protection regarding resulting similarities; "that is the penalty an author must bear for marking them
24   too indistinctly," *Olson v. National Broadcasting Co., Inc*., 855 F. 2d 1446, 1452 (9th Cir. 1988)
     (citation omitted).  *See also See v. Durang*, 711 F. 2d 141, 143 (9th Cir. 1983) (affirming summary
25   judgment for defendant where "the court properly applied the [scenes a faire] doctrine to hold
     unprotectable forms of expression that were either stock scenes or scenes that flowed necessarily
26   from common unprotectable ideas," explaining that "'Common' in this context means common to
     the works at issue, not necessarily, as plaintiff suggests, commonly found in other artistic works.").
27   Because JoJo is not virtually identical to JJ as a matter of law (Dkt. 242 at 23, 26), the Super JoJo
     characters cannot support an injunction.
28

1    *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 632 (7th Cir. 2003) (sua sponte reversal of

2    injunction that prohibited forms of copyright infringement beyond those resolved in the litigation).[11]

3          Moonbug's requested injunction is far from "narrowly tailored," and it is completely divorced

4    from the jury's findings.  The proposed injunction seeks to bar BabyBus from making any use of any

5    "Super JoJo Content"—irrespective of whether it was introduced at trial, has any similarity to the

6    Super JoJo works at issue at trial, or even is in the same category of work introduced at trial.  Dkt.

7    595-1 ¶ 1 (enjoining Super JoJo "applications, artwork …, characters, episodes, videos, products, or

8    other Super JoJo materials" and enjoining BabyBus from "engaging in any activity that infringes

9    Plaintiffs' rights in the infringed CoComelon Works").  This is not "coterminous with the

10   infringement," Nimmer on Copyright § 14.06[C], and it is improper.[12]

11          No injunction can survive the narrowly tailored test on the current record except for one

12   enjoining the specific conceded videos.  This is due to the vague and ambiguous verdict form, and

13   the insufficiency of the record to support infringement as to any other video, the thumbnail art, other

14   channel art, and the channels themselves.  *See* Section II.  To enter an injunction as to works that

15   were never alleged to be at issue, without any showing that they bear any "substantial similarity" to

16   the asserted works, is fundamentally unfair and inconsistent with basic principles of equity.  *See New*

17   *Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d

18   778, 782 (9th Cir. 2001).  Thus, any injunction "should not include acts" that go beyond the

19   infringement proven at trial.  *Grokster*, 518 F. Supp. 2d at 1208.  As discussed in Section II.B,

20   Moonbug proposal does.  Indeed, it goes beyond infringement theories even presented at trial.

21

22

23

24   [11] "Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated

25   as clearly as possible." *Fogarty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994); *see also Feist Publ'ns., Inc. v. Rural Tel. Service Co., Inc.*, 499 U.S. 340, 349-50 (1991) ("The primary objective of copyright

26   is not to reward the labor of authors, but 'to promote the Progress of Science and useful Arts.'  To this end, copyright assures authors the right to their original expression, but encourages others to

27   build freely upon the ideas and information conveyed by a work.") (citation omitted).

28   [12] Indeed, it is difficult to imagine how BabyBus could comply with a demand to remove its channels without facing exposure for spoliation of evidence.  *But see* 595-1 at ¶ 2.

1      **B.      The Proposed Injunction Fails Rule 65(d)'s Specificity Requirements.**

2          Rule 65 requires that every injunction state its terms specifically, and describe in reasonable

3   detail, and not by referring to the complaint or other document, the act or acts restrained or required.

4   Fed. R. Civ. P. 65(d).  This is not a procedural nicety but a fundamental due process consideration.

5   "Rule 65(d) is no mere extract from a manual of procedural practice.  It is a page from the book of

6   liberty."  *H. K. Porter Co., Inc. v. Nat'l Friction Prods.*, 568 F.2d 24, 27 (7th Cir. 1977).  Rule 65

7   requires that an ordinary person reading the injunction can ascertain from the document itself

8   "exactly what conduct is prescribed."  *Grokster*, 518 F. Supp. 2d at 1228 n.24 (C.D. Cal. 2007),

9   quoting 11A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2955

10  (3d ed.); *see Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) ("The

11  benchmark for clarity and fair notice is not lawyers and judges, who are schooled in the nuances of

12  [the] law," but instead the "lay person, who is the target of the injunction.").  Rule 65 is meant to

13  "prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the

14  possible founding of a contempt citation on a decree too vague to be understood." *Columbia Pictures*

15  *Indus., Inc. v. Fung*, 710 F.3d 1020, 1047 (9th Cir. 2013) (citation omitted).

16          An injunction that merely tracks section 106 of the Copyright Act and purports to simply

17  prohibit possible breaches of the law is not sufficiently precise and tailored.  *See Craigslist Inc. v.*

18  *Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1062 (N.D. Cal. 2010) ("Generally, an injunction must be

19  narrowly tailored to remedy only the specific harms shown by a plaintiff, rather than to enjoin all

20  possible breaches of the law"); *Nat'l Labor Relations Bd. v. Express Publ'g Co*., 312 U.S. 426, 435

21  (1941) (holding that "the mere fact that a court has found that a defendant has committed an act in

22  violation of a statute does not justify an injunction broadly to obey the statute and thus subject the

23  defendant to contempt proceedings if he shall at any time in the future commit some new violation").

24  Yet Moonbug's proposed injunction does that.  *See, e.g.*, Dkt. 595-1 ¶ 1(c) (seeking to enjoin

25  BabyBus from "engaging in any activity that infringes Plaintiffs' rights in the infringed CoComelon

26  Works"); *compare also* 17 U.S.C. § 106 *with* Dkt. 595-1 ¶ 1(a), (b).

27          Further, for an injunction to satisfy Rule 65's specificity requirements, it must identify the

28  specific protectable expression in each work that BabyBus is prohibited from infringing.  *See, e.g.*,

*Patriot Homes, Inc. v. Forest River Hous., Inc.*, 512 F.3d 412, 415-16 (7th Cir. 2008) (vacating injunction under Rule 65(d) because the district court failed to "identify each and every element of copyright originality"; "[defendant] cannot tell, and neither can we, whether using [certain] information … would violate the injunction"); *Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 632 (7th Cir. 2003) (striking down injunction that applied not only to the works at issue but also to any other like works that plaintiff might create at any time in the future); *Mon Cheri Bridals, Inc. v. Wu*, 2008 WL 4534191, at *6 (D.N.J. Oct. 7, 2008) (denying permanent injunction to prevailing copyright infringement plaintiff because "the difficulty in crafting an injunction to address specific legal violations that would not infringe upon Defendant's ability to produce unprotectable elements in future dress designs, makes it improper for the Court to issue injunction relief in favor of Plaintiff"). On this record, where the Court has not stated any findings as to what original and protectable content was infringed, there is no factual predicate for the required specificity. *Cf.* Dkt. 468 at 20 (BabyBus arguing that "the jury should not be left without guidance about what elements are protected and which are not. … [T]he Court should provide the jury a complete list of what elements have been found unprotectable, and (if any) protectable."); Dkt. 554 at 27-32 (BabyBus proposing instructions Nos. 14(a)-(c) with charts identifying protectable and unprotectable elements, as used in *Mattel* after reversal); Dkt. 567 at 4 (BabyBus' continued objection to instructions that leave the jury "without guidance about what elements … are protected and which are not").

Indeed, the proposed injunction fails even to identify the "infringed CoComelon Works" within its four corners. Instead, Moonbug's proposed injunction improperly requires reference to external documents, namely, the jury's verdict, to discern which works are infringed. *See, e.g.*, *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004) (reversing injunction that did not identify the infringed copyrighted works and defendant would have to "resort to extrinsic documents to comply with the order's commands"; it was thus "not possible 'to ascertain to ascertain from the four corners of the order precisely what acts are forbidden'" (citation omitted)).

Without the required specificity, BabyBus will not have fair notice of what specific acts the injunction prohibits. Parties cannot be "left … in the dark as to their duty toward the court." *Regal*

1   *Knitwear v. N.L.R.B.*, 324 U.S. 9, 15 (1945).  Injunctions are "not for the entrapment of parties, and

2   courts no less than parties desire to avoid unwitting contempts."  *Id*.

3         **C.**      **Additional Problems With The Proposed Injunction Compel Denial of**

4                     **Moonbug's Motion.**

5         Two other flaws render Moonbug's proposed injunction improper.

6         <u>First,</u> Moonbug seeks to require BabyBus to "provide notice and a copy" of the injunction to

7   third-party entities, including Google, Amazon, Roku, and "any other distributors or other third

8   parties who have ever published or distributed Super JoJo Content on or through any United States-

9   based platform or media."  Dkt. 595-1 ¶ 4.  But requiring BabyBus to provide notice of any injunction

10  to third parties which it has conducted business with is unwarranted.  *John Wiley & Sons, Inc. v. Book*

11  *Dog Books, LLC*, 327 F. Supp. 3d 606, 639 (rejecting proposed injunctive relief requiring Defendants

12  "to provide notice of this Permanent Injunction to all entities that it conducts business with, including

13  Amazon, Barnes & Noble, and eBay" because such relief is afforded in false advertising cases, unlike

14  copyright infringement cases).  Moreover, the request for BabyBus to notify any third party who has

15  ever published Super JoJo content—regardless of whether BabyBus has ever had any affiliation or

16  communication with that third party—is patently overbroad and unreasonable.  What Moonbug seeks

17  to do is impermissibly shift the burden of policing its copyrights onto BabyBus.  Courts considering

18  that issue routinely hold that a copyright or trademark owner is responsible for policing infringement.

19  *See, e.g.*, *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) ("We decline to shift

20  a substantial burden [of preventing infringement] from the copyright owner to the provider[.]").

21        <u>Second,</u> Moonbug's request for a permanent injunction in perpetuity violates constitutional

22  principles, which limits the duration of protection of each copyrighted work under the Copyright Act.

23  *See Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975) (explaining the Constitution

24  requires that copyrights exist for a limited duration).  Thus, the longest permissible duration of any

25  injunction here is "however many years [the copyrights'] term may continue to subsist—but not past

26  that expiration."  5 Nimmer on Copyright § 14.06.

27

28

IV.     **IN THE ALTERNATIVE, THE COURT SHOULD DELAY ISSUING AN ORDER IDENTIFYING TERMS OF AN INJUNCTION OR DELAY ITS ENFORCEMENT.**

The Court need not attempt to conclusively rule on Moonbug's motion now.  It can deny the motion without prejudice to renew after the Rule 50(b) motion and/or appeal is resolved. Alternatively, if the Court determines at this stage that some injunctive relief is warranted, the ruling on this motion can reserve the proper scope of injunctive relief, leaving it subject to amendment, until after resolution of BabyBus' Rule 50(b) motion.  As the discussion in Section II reflects, significant problems exist with the jury verdict, and resolution of BabyBus' Rule 50(b) motion may significantly affect the Court's view of the proper scope of injunctive relief.  Further, as discussed below, BabyBus would seek to stay enforcement of Moonbug's proposed injunction pending that resolution and/or appeal.  If the Court decides to rule on the motion now, issuing a ruling that reserves the issue of scope of injunction for later amendment following resolution of BabyBus' Rule 50(b) motion will conserve judicial resources and best "secure the just, speedy, and inexpensive determination of [this] action and proceeding." Fed. R. Civ. P. 1.

Alternatively, if the Court grants any injunction (other than as to the conceded videos), the Court should stay its implementation long enough to allow BabyBus to move for a stay under Rule 62.  In deciding a stay under Rule 62, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  The "factors contemplate individualized judgments in each case." *Id.* at 777.

BabyBus is likely to succeed on the merits of the substantial questions of law this case presents.  As but one example, the lack of a jury instruction that specifically identified unprotectable elements in the asserted works resulted in reversible error.  When a copyright infringement claim is based on a combination of unprotectable elements, controlling Ninth Circuit law "require[s] that the unprotected elements be identified to the jury" in instructions. *Dream Games of Arizona, Inc. v. PC Onsite* ("*Dream Games*"), 561 F.3d 983, 988 (9th Cir. 2009) (citing *Apple Computer v. Microsoft*

*Corp.*, 35 F.3d 1435, 1446 ("the unprotectable elements have to be identified")).  The Ninth Circuit rule is clear: a district court must provide jury instructions that "identif[y] in detail those elements of the copyrighted work that are not protected."  *Dream Games*, 561 F.3d at 989 (explaining that the jury instructions must identify unprotectable elements specific to the works at issue, not just generally instruct the jury to filter out unspecified "stock" or "common" features).  The jury instructions here fell short of this mandate.  *See* Dkt. 562 at 12 (No. 10) (providing generic descriptions of unprotectable material not specific to CoComelon); *id*. at 16 (No. 14) (same).  This legal error was prejudicial.  *See Dream Games*, 561 F.3d at 989 (prejudicial error results when the instructions failed to cover the applicable law "fairly and correctly").  As BabyBus explained in its objections to the jury instructions, identifying the specific unprotectable elements was necessary "so that the jury does not form the mistaken impression that all elements Plaintiff[s] have identified regarding JJ are protectable."  Dkt. 468 at 10; *see* Dkt. 554 at 16 (same); Dkt. 567 at 1 (reiterating objection).  This prejudicial error alone compels a new trial, not to mention the multiple other substantial questions of law for which BabyBus has high likelihood of success in post-trial motions and/or appeal.  *See, e.g.*, Section II.B.2.

The other factors support staying any injunction in this action too, including the irreparable harm that BabyBus would face under Moonbug's unworkable and vague injunction,[13] the lack of harm to Moonbug from a stay (which would merely keep the *status quo* that has existed for years), and the serious interest in enriching the general public through access to creative works (*see* Section I).  Accordingly, if the Court grants an injunction, it should afford BabyBus sufficient time to move for a stay before requiring compliance with the injunction.

## **CONCLUSION**

BabyBus respectfully requests that the Court deny Moonbug's Motion and not issue an injunction.

---

[13] For example, the proposed injunction would terminate BabyBus YouTube accounts with tens of millions of followers gained over many years, leading to incalculable damages to BabyBus' business and brand.  That harm would be irreparable if the Ninth Circuit reversed the injunction or the judgment.

1   DATED:  September 1, 2023                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

2

3                                        By        /s/ Sam S. Stake

4                                            Sam S. Stake (Bar No. 257916)
                                             50 California Street, 22nd Floor
5                                            San Francisco, California 94111
                                             Telephone:      (415) 875-6600
6                                            Facsimile:      (415) 875-6700
                                             samstake@quinnemanuel.com
7
                                             Attorneys for BabyBus Co., Ltd. and BabyBus
8                                            (Fujian) Network Technology Co., Ltd.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28