QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Robert W. Stone (Bar No. 163513)
    Margret Caruso (Bar No. 243473)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Fax:           (650) 801-5100
robertstone@quinnemanuel.com
margretcaruso@quinnemanuel.com

    Sam S. Stake (Bar No. 257916)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:  (415) 875-6600
Facsimile:   (415) 875-6700
samstake@quinnemanuel.com

Attorneys for BabyBus Co., Ltd. and BabyBus
(Fujian) Network Technology Co., Ltd.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MOONBUG ENTERTAINMENT LIMITED and TREASURE STUDIO, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BABYBUS CO., LTD and BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD, <br><br> Defendants. | Case No: 3:21-cv-06536-EMC <br><br> **BABYBUS' OPPOSITION TO MOONBUG'S MOTION FOR ATTORNEYS' FEES AND COSTS (DKT. 630) AND OBJECTIONS TO BILL OF COSTS (DKT. 633)** <br><br> Date:  January 4, 2024 <br> Time: 1:30 pm <br> Judge: Hon. Edward M. Chen <br> Courtroom: 5, 17th Floor |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................. 2

I. THE TOTALITY OF THE CIRCUMSTANCES DOES NOT WARRANT AN AWARD OF FEES ................................................................................................. 2

    A. BabyBus' Defense Was Not Objectively Unreasonable ............................. 3

    B. The Remaining Factors Also Weigh Against An Award ............................ 8

II. IF AWARDED, THE AMOUNT OF FEES SHOULD BE REDUCED ............................ 11

III. MOONBUG'S REQUESTED SANCTIONS AWARD IS PUNITIVE IN NATURE AND IMPERMISSIBLE UNDER *GOODYEAR TIRE* ....................................... 16

CONCLUSION ....................................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

## <u>Cases</u>

*AAA Flag & Banner Mfg., Co. v. Flynn Signs & Graphics Inc.*,
   No. CV0902053ODWVKBX, 2010 WL 11462990 (C.D. Cal. July 19, 2010) .................... 12

*AK Futures, LLC v. LCF Labs, Inc.*,
   No. 821CV02121JVSADSX, 2023 WL 2561729 (C.D. Cal. Feb. 2, 2023) .......................... 12

*Alchemist Evolution, LLC v. Smash, Inc.*,
   No. CV-10-4445-SVW (SSX), 2011 WL 13217214 (C.D. Cal. Mar. 1, 2011) ...................... 7

*AndCake, Inc. v. Sans Souci LLC*,
   No. CV 15-624-AB, 2015 WL 12747818 (C.D. Cal. Aug. 10, 2015) ..................................... 6

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 11-CV-01846-LHK, 2014 WL 4745933 (N.D. Cal. Sept. 19, 2014) .............................. 15

*Bell v. Oakland Cmty. Pools Project, Inc.*,
   No. 19-CV-01308-JST, 2020 WL 13695114 (N.D. Cal. Oct. 14, 2020) ................................. 8

*Bisson-Dath v. Sony Computer Ent. Am. Inc.*,
   No. CV-08-1235 SC, 2012 WL 3025402 (N.D. Cal. July 24, 2012) .................................... 10

*Dang v. Cross*,
   422 F.3d 800 (9th Cir. 2005) .............................................................................................. 17

*Design Data Corp. v. Unigate Enter., Inc.*,
   No. 12-CV-04131-WHO, 2014 WL 5513541 (N.D. Cal. Oct. 31, 2014) ............................... 3

*Epikhin v. Game Insight N. Am.*,
   No. 14-CV-04383-LHK, 2016 WL 1258690 (N.D. Cal. Mar. 31, 2016) ........................... 8, 9

*Ets-Hokin v. Skyy Spirits, Inc.*,
   323 F.3d 763 (9th Cir. 2003) ......................................................................................... 3, 10

*Fitbug Ltd. v. Fitbit, Inc.*,
   2015 WL 2251257 (N.D. Cal. May 13, 2015) .................................................................... 15

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) ....................................................................................................... 2, 9

*Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*,
   886 F.2d 1545 (9th Cir. 1989) ........................................................................................... 11

*Good Job Games Bilism Yazilim v. Pazarlama A.S.*,
   No. 19-CV-07916-EMC, 2023 WL 3260528 (N.D. Cal. May 4, 2023) ......................... 11, 14

*Goodyear Tire & Rubber Co. v. Haeger*,
   581 U.S. 101 (2017) ............................................................................................ 2, 16

*Greg Young Publ'g, Inc. v. Zazzle, Inc.*,
   No. 2:16-CV-04587-SVW-KS, 2018 WL 1626053 (C.D. Cal. Mar. 21, 2018),
   *aff'd*, 785 F. App'x 417 (9th Cir. 2019) ..................................................................... 5

*Greg Young Publ'g, Inc. v. Zazzle, Inc.*,
   No. 216CV04587SVWKSX, 2020 WL 3871451 (C.D. Cal. July 9, 2020),
   *aff'd*, No. 20-55812, 2021 WL 3702005 (9th Cir. Aug. 20, 2021) ...................................... 9, 10

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................................ 11

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   579 U.S. 197 (2016) ............................................................................................ 2, 3

*Lenz v. Universal Music Corp.*,
   No. C 07-3783 JF, 2010 WL 702466 (N.D. Cal. Feb. 25, 2010) ...................................... 11, 12

*Lexington Luminance LLC v. Feit Elec. Co., Inc.*,
   No. CV1810513PSGKSX, 2020 WL 7425320 (C.D. Cal. Oct. 20, 2020) ............................... 12

*Loomis v. Cornish*,
   No. CV125525RSWLJEMX, 2014 WL 12586734 (C.D. Cal. Mar. 17, 2014) ........................... 6

*Lotus Dev. Corp. v. Borland Int'l, Inc.*,
   140 F.3d 70 (1st Cir. 1998) ..................................................................................... 5

*Magnuson v. Video Yesteryear*,
   85 F.3d 1424 (9th Cir. 1996) ................................................................................. 10

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
   81 F.3d 881 (9th Cir. 1996) ..................................................................................... 3

*Microsoft Corp. v. United Computer Res. of New Jersey, Inc.*,
   216 F. Supp. 2d 383 (D.N.J. 2002) ......................................................................... 12

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996) ................................................................................... 18

*Nextpulse, LLC v. Brunswick Corp.*,
   No. 22-CV-04071-HSG, 2023 WL 1880949 (N.D. Cal. Feb. 10, 2023) ................................ 5

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986) ............................................................................................ 17

*Perfect 10, Inc. v. Giganews, Inc.*,
   2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ............................................................. 8

*Phoenix Techs. Ltd. v. VMWare, Inc.*,
    No. 15-CV-01414-HSG, 2018 WL 4700347 (N.D. Cal. Sept. 30, 2018) .............................. 15

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013) ................................................................................................... 3

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
    709 F.3d 1273 (9th Cir. 2013) ................................................................................................... 3

*Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*,
    No. 12-CV-2472-AJB-KSC, 2019 WL 1429588 (C.D. Cal. Mar. 29, 2019) ........................ 10

*Total Recall Techs. v. Luckey*,
    No. C 15-02281 WHA, 2017 WL 2118297 (N.D. Cal. May 16, 2017) ........................... 15, 16

*Twentieth Century Music Corp. v. Aiken*,
    422 U.S. 151 (1975) ................................................................................................................... 9

*VMG Salsoul, LLC v. Ciccone*,
    824 F.3d 871 (9th Cir. 2016) ................................................................................................. 3, 4

*Williams v. Bridgeport Music, Inc.*,
    No. LACV1306004JAKAGRX, 2016 WL 6822309 (C.D. Cal. Apr. 12, 2016) ............. 5, 8, 9

*Williams v. Gaye*,
    895 F.3d 1106 (9th Cir. 2018) ............................................................................................ 5, 8, 9

*Williams v. Bridgeport Music, Inc.*,
    No. LACV1306004JAKAGRX, 2021 WL 5756776 (C.D. Cal. Feb. 12, 2021) ..................... 8

**<u>Statutes</u>**

17 U.S.C. § 512(f) .......................................................................................................................... 11, 12

28 U.S.C. § 1821 .................................................................................................................................. 15

**<u>Other Authorities</u>**

L.R. 54-3(e)(1) ...................................................................................................................................... 16

L.R. 54-3(d)(5) ...................................................................................................................................... 15

L.R. 54-3(e) ........................................................................................................................................... 15

Rule 50(b) ................................................................................................................................................ 3

Rule 59(a) ................................................................................................................................................ 3

## INTRODUCTION

Moonbug's requested fee award of over $7.5 million (nearly half the $17 million of non-statutory damages the jury awarded) is unwarranted.  Although Moonbug prevailed on 39 of its 42 copyright registrations, it is well within the Court's discretion to deny attorneys' fees under Section 505.  BabyBus' defense of Moonbug's claims was not frivolous or objectively unreasonable.  The case went to the jury because the Court ruled there were genuine issues about whether the accused videos were substantially similar to the asserted works, including whether BabyBus's JoJo character infringed CoComelon's JJ.  Even as the case proceeded to trial, the Court continued to grapple with questions like the proper scope of protection for animated human characters and how to distinguish protectable elements from unprotectable ones.  Against this backdrop, and given that the Ninth Circuit had never previously found a bona fide competitor's expressive work to infringe an audio-visual work, it was entirely reasonable for BabyBus to defend its creative works and to do so vigorously.  BabyBus erred in parts of its defense, but the Court has already awarded or will award fees to compensate Moonbug for that conduct.  Awarding more than that would not serve the purposes of the Copyright Act, which is promote the progress of the arts.  This requires defendants to advance positions they believe to be meritorious to ensure that the public domain is not cheated by over-extending copyright law to permit monopolies over ideas and expression that naturally flows from them.

If the Court nonetheless that a Section 505 award of fees is justified, the amount Moonbug seeks should be reduced.  The billing records that Moonbug submitted in support of its fee application show numerous instances of excludable fees.  This includes over 300 hours that counsel spent on YouTube takedown notices that potentially would have been recoverable as damages, had Moonbug presented evidence of it, but are not recoverable under Section 505 because they were not incurred in the prosecution of Moonbug's infringement claims.  The billing records are also replete with cursory entries—like "Legal research."—that are too vague to enable the Court to determine the reasonableness of the time expended on those tasks.  The records also show frequent instances of senior attorneys doing the work of junior attorneys, or junior attorneys doing the work of paralegals and other support staff.  None of these amounts are properly included in a fee award, justifying

discounts across the board.  Yet rather than excluding or discounting such questionable fees, Moonbug simply seeks them all.

The costs Moonbug claims are similarly inflated.  Amongst many other issues, Moonbug seeks more than thirty six thousand dollars in costs for two employees to fly to and from London for trial – rates Moonbug justifies using the General Services Administration rate for *private aircraft* travel.

Finally, monetary sanctions should be no more than $156,137, subject to further reductions as described below, not the $1 million that Moonbug seeks.  That $156,137 sum (which duplicates entries that Moonbug also includes in its request for attorneys' fees, Dkt. 631-1) is what Moonbug identified as reflecting the actual time it spent addressing the conduct underlying the Court's sanctions order.  The $1 million figure, by contrast, reflects a penalty that Moonbug seeks to impose on BabyBus.  Under the Supreme Court's holding in *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017), such penalties are impermissible without first affording the sanctioned party "criminal-type protections."  Otherwise, any sanction pursuant to a court's inherent powers is limited to shifting the fees that the party would not have incurred but for the sanctioned conduct.  According to Moonbug, that amount is at most $156,137.

## ARGUMENT

## I.  THE TOTALITY OF THE CIRCUMSTANCES DOES NOT WARRANT AN AWARD OF FEES

Section 505 of the Copyright Act provides that the court "may … award a reasonable attorney's fee to the prevailing party."  17 U.S.C. § 505.  The statutory language "clearly connotes discretion," and eschews any "precise rule or formula."  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533–34 (1994).  That said, the court may not "award[ ] attorney's fees as a matter of course," and there is no presumption that a prevailing party is entitled to an award.  *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (quoting *Fogerty*, 510 U.S. at 533; alteration in original); *see* 5 Nimmer on Copyright § 14.10[D][5][c] ("[T]he presumption that a prevailing party receives fees … should now be considered disapproved" after *Kirtsaeng*).  Rather, "a court must make a more particularized, case-by-case assessment."  *Kirtsaeng*, 579 U.S. at 202.

To do so, "the district court should consider, among other things: the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence." *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016) (quoting *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996)).  Courts should also consider "the purposes of the Copyright Act[] and whether the chilling effect of attorney's fees may be too great." *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003).

At the outset, Moonbug incorrectly contends (Mot. 14) that it "achieved complete success on the merits."  Not so.  The jury instead found against it on three of its registrations.  *See* Dkt. 579 (Verdict Form).  The verdict, moreover, is on shaky grounds because, as BabyBus shows in its Rule 50(b) motion, the evidence does not support a liability finding under controlling law.  Further, as demonstrated in BabyBus' Rule 59(a) motion, the jury's findings are irreconcilable: the jury found CoComelon's JJ "virtually identical" to JoJo character (*see id.*) yet found that BabyBus did not infringe CoComelon's Soccer Song, even though each accused video featured JoJo and the Soccer Song featured JJ.  In any event, Moonbug's success on most of its registrations "does not alone call for an award under the Copyright Act" and "must be viewed together with the other *Fogerty* factors." *Design Data Corp. v. Unigate Enter., Inc.*, No. 12-CV-04131-WHO, 2014 WL 5513541, at *3 (N.D. Cal. Oct. 31, 2014).  And, as demonstrated below, the balance of the remaining factors weighs in BabyBus' favor and against an award of fees.

### A.     BabyBus' Defense Was Not Objectively Unreasonable

Although "courts must view all the circumstances of a case on their own terms," "objective reasonableness carries significant weight." *Kirtsaeng*, 579 U.S. at 209.  "[T]he mere fact that [BabyBus] lost cannot establish … objective unreasonability." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013).  Rather, a party's decision to litigate is considered unreasonable where it "should have known from the outset that its chances of success in this case were slim to none." *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013).

Far from being objectively unreasonable, this case proved challenging for everyone asked to assess it.  The Court denied Plaintiffs' motion for summary judgment, and the jury ultimately

deliberated for nearly three days—facts which refute the assertion that BabyBus was objectively unreasonable. *VMG Salsoul*, 824 F.3d at 887 ("If … a claim … hinges on disputed facts sufficient to reach a jury, that claim necessarily is reasonable because a jury might decide the case in the [claimant's] favor."). Moreover, when denying in part Moonbug's motion for summary judgment, the Court found "reasonable minds can differ [in applying the extrinsic test] as to whether the traits shared between the CoComelon and Super JoJo characters, even when combined, are protectible." Dkt. 242 at 20. The Court explained its decision by noting the differences in legal analysis required for copyrightability and infringement. Specifically, copyrightability analysis for JJ demands a "binary choice," while infringement analysis necessitates a "filtration analysis" to remove any similarities rooted in unprotectable elements like scènes à faire. This process, the Court noted, involves "more granular determinations." *Id.* at 21. The Court also found that "[r]easonable minds may differ" "as to the copyright protectability of each of [the other] family characters, *i.e.*, mom, dad, older brother Tom Tom, older sister YoYo, and family dog Bingo." *Id.* at 17. Moonbug thus is without support in claiming (Mot. 10, 16) that BabyBus' arguments about the need to filter out the generic similarities between JoJo and the CoComelon characters were "unreasonable" or "implausible." To the contrary, they followed abundant Ninth Circuit precedent.

This case was also factually complex. It involved 42 asserted copyrights, 5 alleged "characters," more than 360 accused videos, over 100 alleged protectable elements, and untold other "combinations of elements." The required filtration analysis also presented challenging and novel issues about when the selection and arrangement of generic elements (like a big baby head) can combine to become protectable expression, and when the asserted work (an animated baby) has, by its nature, a limited number of expressions. The parties extensively briefed these issues, with the Court sufficiently uncertain of the analysis that even after finalizing the jury instructions, it added a question to the verdict form (Dkt. 570) to address the "thin" standard and did not issue the decision explaining the "thick" instead of "thin" protection standard until after the jury had been charged. *See* Dkt. 575 (July 26, 2023 Order). There, the Court observed that the "determination" about thick versus thin protection was "qualitative, relative, and defies precise definition." *Id.* at 3. Requiring case-by-case assessment, the analysis was inherently demanding because "overbroad copyright

1   protection runs the risk of effectively monopolizing ideas and standard elements that are common to

2   the genre." *Id.* at 9.  Making this case even more difficult was the fact that the lead character—JJ—

3   was a "human toddler," where, the Court acknowledged, "the range of creative choices … is not as

4   wide ranging" as for other types of works.  *Id.* at 8.

5          Given these fact-intensive questions, which called for application of law in novel

6   circumstances, it was entirely reasonable for BabyBus to litigate them.  *See Williams v. Bridgeport*

7   *Music, Inc.*, No. LACV1306004JAKAGRX, 2016 WL 6822309, at *4 (C.D. Cal. Apr. 12, 2016),

8   *aff'd sub nom. Williams v. Gaye*, 895 F.3d 1106 (9th Cir. 2018) (declining to award fees in part

9   because "case presented novel or challenging issues") (citing *Lotus Dev. Corp. v. Borland Int'l, Inc.*,

10   140 F.3d 70, 75 (1st Cir. 1998)); *see also Greg Young Publ'g, Inc. v. Zazzle, Inc*., No. 2:16-CV-

11   04587-SVW-KS, 2018 WL 1626053, at *4 (C.D. Cal. Mar. 21, 2018), *aff'd*, 785 F. App'x 417 (9th

12   Cir. 2019) ("Reasonable litigation positions, even if they do not win, define the precise boundaries

13   of copyright law.  Thus, parties who advance arguments of first impression should not be punished

14   because the litigation could reasonably be seen as contributing to an informed discussion on the

15   demarcation of copyright law." (omitting citation)); *Nextpulse, LLC v. Brunswick Corp.*, No. 22-CV-

16   04071-HSG, 2023 WL 1880949, at *5 (N.D. Cal. Feb. 10, 2023) (declining to find that defendants'

17   arguments were objectively unreasonable "given the lack of any clearly controlling authority").

18          None of Moonbug's arguments supports a different conclusion.  Moonbug's contention (Mot.

19   15) that BabyBus should have conceded infringement from the outset runs counter to the Court's

20   ruling that genuine issues of fact regarding substantial similarity required the case to go to the jury.

21   Nor is Moonbug correct (*id.*) that BabyBus was objectively unreasonable because of its decision not

22   to challenge liability in relation to six of its videos.  That decision related to only seven of Moonbug's

23   registrations for which it alleged frame-by-frame copying.[1]  The rest of the registrations, moreover,

24   _____

25   [1]  BabyBus's decision to make this concession after the close of discovery was also not unreasonable.
     BabyBus and its experts observed that many videos in the genre exhibited both thematic and frame-
26   by-frame similarities, *see, e.g.,* Dkt. 291-1 (Seiter Report) pp. 26-111, and believed it important to
     analyze the originality and development of Moonbug's asserted videos before considering a
27   concession.  This position was not unreasonable; indeed the Court accepted a nearly identical position
     when taken by Moonbug.  *See* Dkt. 96.  ("Plaintiffs have offered to supplement their infringement
28

were of secondary concern to Moonbug, which made no mention of 320 of the 368 accused videos, and did not compare 16 of its copyright registrations to any accused BabyBus video.  *See* Dkt. 537 (JMOL).

Moonbug's primary claim instead was that BabyBus' JoJo character was substantially similar to CoComelon's JJ.  At trial, for example, Moonbug portrayed CoComelon as a "character-driven show" with JJ as its "main character."  Tr. 753:6-18; Dkt. 562 at 10.  To that end, Moonbug sought to establish that its program was "the JJ show," as "every episode centers around JJ" and the "family structure is all built around JJ."  Tr. 753:6-18.  Moonbug then sought to show that all accused works were infringing because BabyBus' main character, JoJo, appeared in every episode and was substantially similar to JJ.  Tr. 595:13-20, 776:22-25; *see also* Tr. 1166:7-1167:7 (Dr. Vanderhart testifying that she did not have to itemize damages so long as the jury found the JJ registration to be infringed).  BabyBus' defense of these claims was not made unreasonable by its decision to concede frame-by-frame infringement by certain videos in the hopes of expediting the trial—even though many of those similarities were of unprotectable elements.  For the same reason, Moonbug is wrong in claiming (Mot. 18) that BabyBus unjustifiably denied Moonbug's requests to admit that the conceded videos were "substantially similar" to various asserted works.  Putting aside that these requests called for improper legal conclusions, *see AndCake, Inc. v. Sans Souci LLC*, No. CV 15-624-AB (PLAX), 2015 WL 12747818, at *4 (C.D. Cal. Aug. 10, 2015), BabyBus was right to deny the requests because it did not concede that the characters were substantially similar—and still disputes that.

---

contentions within 30 days of receiving Defendants' production and identification of the accused videos and their corresponding developmental documents…The Court finds this to be a reasonable proposal…").  And BabyBus *did* find evidence of derivation in Moonbug's development files, even if not for the specific sequences of events contained in these seven registered works.  *See Loomis v. Cornish*, No. CV125525RSWLJEMX, 2014 WL 12586734, at *3 (C.D. Cal. Mar. 17, 2014) (finding no objective unreasonableness where a party reasonably believed "he needed more discovery to evaluate his claim," even though this evidence did not ultimately develop by the time of summary judgment).  Moreover, this inquiry was made more difficult by the form of Moonbug's production of its development files, which included hundreds of thousands of files with limited metadata and numerous files with broken internal links, issues that were difficult to rectify.  *See* Declaration of Sam Stake in Support of BabyBus's Opposition to Moonbug's Motion for Attorneys' Fees and Costs ("Stake Decl.") ¶ 3.

1      Moonbug similarly errs in contending (*id.* at 16) that BabyBus' conduct throughout the course

2 of the litigation rendered its defense objectively unreasonable.   Typical of any hotly-contested

3 litigation, there were discovery disputes between the parties.  In some cases, Moonbug sought relief

4 and prevailed.  But BabyBus also had to seek intervention, and it too prevailed, with Magistrate Judge

5 Westmore finding that "Moonbug's attempt to limit their production … is not well taken."  Dkt. 143;

6 *see also* Dkt. 147 (extending case schedule and ordering Moonbug to serve redacted expert reports

7 within three days in response to BabyBus's request for emergency relief); Dkts. 210, 212 (extending

8 period for expert depositions after Moonbug failed to abide by agreed-to extension).  In particular,

9 BabyBus had to seek judicial intervention to get Moonbug to identify the alleged similarities that

10 were its burden to identify under the extrinsic test, and did not receive these until the latter half of

11 2022.  BabyBus was hardly in a position to make concessions about anything before Moonbug even

12 attempted to satisfy this threshold showing.

13      Moonbug was denied much of the discovery relief it sought.  In one order, Magistrate Judge

14 Westmore declined to compel additional depositions requested by Moonbug, noting that

15 "Defendants…appear[ed] to be acting in good faith."  Dkt. 116; *see also* Dkt. 115 (largely denying

16 Moonbug's requests to compel the production of additional documents).  The parties' discovery

17 disputes did not rise to a situation where one party was "largely non-compliant with the discovery

18 process," as in Moonbug's cited case:  *Alchemist Evolution, LLC v. Smash, Inc.*, No. CV-10-4445-

19 SVW (SSX), 2011 WL 13217214, at *2 (C.D. Cal. Mar. 1, 2011), *on reconsideration*, No. CV 10-

20 4445 SVW (SSX), 2011 WL 13217215 (C.D. Cal. June 24, 2011).  Contributing to the challenges of

21 litigating this case was the scope of discovery, which involved over 360 accused videos and over

22 200,000 associated development documents, even though Moonbug's theory of liability focused on

23 comparing JJ with JoJo.

24      Finally, it would be incorrect to treat BabyBus' overall defense as objectively unreasonable

25 because of the Court's earlier dismissal of BabyBus' affirmative claims and its decision on

26 Moonbug's motion for sanctions.  The Court has already awarded or will award attorneys' fees to

27 compensate Moonbug in relation to those issues.  *See infra* § III (showing that fees awarded pursuant

28 to the court's inherent power are limited to compensate the moving party not penalize the non-

movant).  The use of the 2021 DouDou image, moreover, did not concern "the ultimate legal question submitted to the jury—whether there was a substantial similarity between two [ ] works." *Williams*, 2016 WL 6822309, at *7.  It also did not render BabyBus' overall independent creation defense unreasonable; indeed, BabyBus still presented this defense at trial, without using this image.[2]  *See infra* § III; *see Williams v. Bridgeport Music, Inc.*, No. LACV1306004JAKAGRX, 2021 WL 5756776, at *16 (C.D. Cal. Feb. 12, 2021) ("Even if Thicke and Williams had committed perjury in their testimony about the role of 'Got To Give It Up' in the creation of 'Blurred Lines,' their 'overall defense as to the claims of infringement'—the core issue in this action—would remain 'reasonable and non-frivolous.'"); *Bell v. Oakland Cmty. Pools Project, Inc.*, No. 19-CV-01308-JST, 2020 WL 13695114, at *2 (N.D. Cal. Oct. 14, 2020) (finding claim objectively reasonable even though party made "a false statement in his complaint").  While BabyBus acknowledges the mistakes that occurred, BabyBus' overall arguments against infringement were well grounded, were submitted to the jury, and thus were not objectively unreasonable.

**B.      The Remaining Factors Also Weigh Against An Award**

Related to objective unreasonableness, "a frivolous claim under the Copyright Act is one that, in either the factual or legal assertions, is clearly baseless, involving fantastic or delusional scenarios. Put another way, a case is deemed frivolous only when the result is obvious or the arguments are wholly without merit." *Williams*, 2016 WL 6822309, at *6 (with alterations; quoting *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *8 (C.D. Cal. Mar. 24, 2015)).  "The standard for frivolousness appears to be 'somewhat' higher than the standard for objective unreasonableness." *Epikhin v. Game Insight N. Am.*, No. 14-CV-04383-LHK, 2016 WL 1258690, at *6 (N.D. Cal. Mar.

---

[2]    Moonbug's selective quotation of testimony about *one* trial exhibit (which it crops without indication) also does not establish the remainder of BabyBus's independent development defense was unreasonable.  BabyBus has always been consistent that it was not *literally* Mr. Chen's drawing that appeared in the Super JoJo series, but a 3D model that was modified based on the drawing.  *See, e.g.*, Tr. at 1267:14-1269:19; Dkt. 194-9 (noting use of a purchased model).

1    31, 2016).  Because BabyBus' defense was not objectively unreasonable, *supra*, it certainly cannot

2    be said to have been frivolous.[3]

3         The objective reasonableness of BabyBus' arguments also shows that its hard-fought defense

4    of Moonbug's claims furthered the purposes of the Copyright Act.  "[T]he policies served by the

5    Copyright Act are more complex, more measured, than simply maximizing the number of

6    meritorious suits for copyright infringement."  *Fogerty*, 510 U.S. at 526.  The Copyright Act's

7    "ultimate aim is … to stimulate artistic creativity for the general public good."  *Twentieth Century*

8    *Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975).  "Because copyright law ultimately serves the

9    purpose of enriching the general public through access to creative works, it is peculiarly important

10   that the boundaries of copyright law be demarcated as clearly as possible."  *Fogerty*, 510 U.S. at 527.

11   Furthering these policies, this case can "reasonably been seen as contributing to at least an informed

12   discussion on the demarcation of copyright law," considering the difficult questions Moonbug's

13   claims presented, including the level of protection to afford an animated baby character where the

14   range of creative choices is not expansive.  *Williams*, 2016 WL 6822309, at *4; *see also Greg Young*

15   *Publ'g, Inc. v. Zazzle, Inc.*, No. 216CV04587SVWKSX, 2020 WL 3871451, at *10 (C.D. Cal. July

16   9, 2020), *aff'd*, No. 20-55812, 2021 WL 3702005 (9th Cir. Aug. 20, 2021) (denying fee award even

17   though defendant was found to have willfully infringed).

18        That this case was so challenging for the Court and the jury further weighs against a finding

19   that BabyBus made its arguments in bad faith.[4]  "[D]efendants who seek to advance a variety of

20   meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs

21   are encouraged to litigate meritorious claims of infringement."  *Fogerty*, 510 U.S. at 527.  As such,

22   this case comes nowhere near resembling the David-and-Goliath situation of a well-funded party

23

24   _____

25   [3] Moonbug misapprehends the standard, incorrectly asserting (Mot. 15) that this factor is about
     whether *Moonbug*'s claims were frivolous.   The question instead is whether the losing party's

26   position was frivolous, much like whether it was objectively unreasonable.  *Epikhin*, 2016 WL
     1258690, at *6 ("For the same reasons that the Court found Plaintiffs' claims were not objectively

27   unreasonable, the Court finds that Plaintiffs' claims were not frivolous.").

28   [4] Moonbug incorrectly argues (Mot. 15) that *its* "motivation" is the relevant issue.  Again the relevant
     question is the motivation of the losing party.

advancing positions to defeat a competitor through attrition. Moreover, "the amount of time and effort [the parties] devoted to this suit weighs against a finding of bad faith," as it is unlikely that either side would have spent the vast time and resources required here "if they believed their claims lacked merit." *Bisson-Dath v. Sony Computer Ent. Am. Inc.*, No. CV-08-1235 SC, 2012 WL 3025402, at *2 (N.D. Cal. July 24, 2012).

There is also little need for further deterrence. BabyBus has complied with the Court's permanent injunction subject to modification and removed the infringing videos. Dkt. 636. Contrary to Moonbug's contention (Mot. 17), BabyBus' continued publication of videos while the case was pending does not show that there is a "substantial likelihood of future infringement." *Greg Young*, 2020 WL 3871451, at *8. BabyBus' defense was objectively reasonable, and it did not act improperly when releasing videos it believed were lawful. *See Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, No. 12-CV-2472-AJB-KSC, 2019 WL 1429588 at *5 (C.D. Cal. Mar. 29, 2019) (holding that the deterrence concerns did not require an award of fees where both parties' litigation stances were reasonable and therefore did not need deterrence). Moonbug, moreover, is wrong in asserting (Mot. 17) that BabyBus has "encouraged copyright infringement" by allowing its designers to study other works when producing BabyBus content. There is nothing untoward about that practice: Moonbug repeatedly admitted that it does it too. *See* Dkt. 566-1, P. Reese Tr. 24:25-25:2; 25:6-9; 38:5-21; 44:8-14; 47:2-5; 47:13-15 (admitted at trial on July 18, 2023) (CoComelon's general manager testifying that "it is our responsibility and my responsibility to be aware of all kids' content everywhere" and that "yes" he "research[es] the content of other kids' programming series"). Also, additional deterrence in the form of attorneys' fees would be appropriate if, unlike here, the damages award had been small. *See id.* ("Damages are insufficient and attorney's fees are warranted when a small award of damages resulting from willful infringement would not deter future infringement.); *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996) ("[W]e are particularly concerned that the small award for damages in this case is insufficient to deter future copyright infringements such as the one at issue here."). But the judgment against BabyBus was more than $17 million, which is "not small." *Greg Young*, 2020 WL 3871451, at *9 (finding that award of $460,800 was "not small"). That is adequate deterrence, making an additional award of attorneys' fees unnecessary.

Granting the requested fee award of more than $7 million under these circumstances would also risk having a "chilling effect" on those against whom future infringement actions are brought. *Ets–Hokin*, 323 F.3d at 766.  In future situations where "reasonable minds" can disagree about infringement, as here, a fee award that is roughly half the amount of the recoverable damages would discourage, rather than encourage, litigants to advance meritorious positions.  This factor thus joins every other factor, other than degree of success, which, in any event, is not dispositive, in weighing against an award.[5]

## II.      IF AWARDED, THE AMOUNT OF FEES SHOULD BE REDUCED

It is Moonbug's burden to show that the number of hours it spent on the case were "reasonably expended" on the "litigation" and that counsel made "a good faith effort to exclude … hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ((discussing 1909 Act) "Plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their [ ] claims."); *see also Good Job Games Bilism Yazilim v. Pazarlama A.S.*, No. 19-CV-07916-EMC, 2023 WL 3260528, at *9 (N.D. Cal. May 4, 2023) (Chen, J.) ("Reasonable hours are those hours that would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit of a successful recovery." (omitting quotation marks)).  Moonbug falls far short of this burden.

---

[5]   Nor are Moonbug's attorneys fees awardable under Section 512(f), as Moonbug briefly argues. As discussed in more detail below, this provision involves pre-litigation attorney's fees, which are recoverable only as *damages*.  *Lenz v. Universal Music Corp.*, No. C 07-3783 JF, 2010 WL 702466, at *11 (N.D. Cal. Feb. 25, 2010).  Even if its claim for fees under Section 512(f) was viable in theory, Moonbug's request for fees under Section 512(f) should also be denied because Moonbug has failed to identify which fees were incurred "as a result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing…"  17 U.S.C. § 512(f).  Moonbug instead appears to argue that the entire case was "inextricably intertwined with its [512(f)] claim."  (Mot. at 18).  Put simply, that is inaccurate. Moonbug's misrepresentation claim involved a single video link, out of the *hundreds* of videos (and thousands of links) at issue in this case. *See* Dkt. 496.  Moreover, as Moonbug previously admitted, facts giving rise to Moonbug's misrepresentation claim did not occur until late March 2023, after nearly two years of litigation in this matter had already occurred.  *See* Dkt. 266 ("The facts at issue in the supplementation only arose in the last month…").  Moonbug's failure to identify any specific fees that would be recoverable under Section 512(f) even now is an independent reason to deny its request.

First, the fee request appears to include over 300 hours (and around $200,000 in fees) for preparing and issuing takedown notices to YouTube to remove BabyBus videos. *See* Dkt 631-1 (counsel time records). Moonbug did not incur these amounts to prosecute its copyright claims before this Court. These amounts instead were for time that Moonbug spent to assert its rights outside of this action. As such, they were potentially recoverable as damages had Moonbug proffered any evidence about them at trial. But they are not recoverable under Section 505, which is limited to awarding fees and costs from "any civil action under this title." 17 U.S.C.A. § 505; *see also Lenz*, 2010 WL 702466, at *11 (in context of Section 512(f) claim, distinguishing pre-litigation attorneys' fees that a party incurred to issue a counternotice, which fees were part of damages, from attorneys' fees that the party incurred to litigate the Section 512(f) claim, which were recoverable under Section 505). This is particularly the case for the more than 16 hours spent relating to takedowns which are explicitly described as takedowns of "third-party YouTube" videos.

Second, Moonbug's time entries are too vague to "properly discern the nature of the work performed … or the reasonableness of the time expended on those tasks." *Lexington Luminance LLC v. Feit Elec. Co., Inc.*, No. CV1810513PSGKSX, 2020 WL 7425320, at *7 (C.D. Cal. Oct. 20, 2020) (reducing hours because of general and repetitive task descriptions). The billing records are replete with vague entries like "Review documents" (S. Apple, Jan. 12, 2022, Jan. 27, 2022, etc.); "Conduct legal research" (D. Hedley, Sept. 23, 2022, Oct. 6, 2022); and "Prepare for trial." (D. Hedley, Jan. 13, 2023; R. Tyz, May 11, 2023). Without further detail, there is little means to safeguard against awarding fees for work that was unnecessary or involved redundancy by multiple attorneys of similar levels of seniority. *See Microsoft Corp. v. United Computer Res. of New Jersey, Inc.*, 216 F. Supp. 2d 383, 394 (D.N.J. 2002) ("Having two high-priced partners oversee a routine task such as discovery is unnecessary.").

Third, the billing requests show numerous examples of excessive time, duplication, or work attorneys performed that was more suitable for more junior attorneys, paralegals, or other support staff. *See AK Futures, LLC v. LCF Labs, Inc.*, No. 821CV02121JVSADSX, 2023 WL 2561729, at *3 (C.D. Cal. Feb. 2, 2023) ("[P]adding in the form of inefficient or duplicative efforts is not subject to compensation." (omitting quotation marks)); *AAA Flag & Banner Mfg., Co. v. Flynn Signs &*

*Graphics Inc.*, No. CV0902053ODWVKBX, 2010 WL 11462990, at *4 (C.D. Cal. July 19, 2010) (adjusting time because "Counsel's billing records include entries by attorneys for paralegal and secretarial tasks").

- The most hours on the case, with the second highest hourly rate, and over $1.2 million of fees are associated with a "senior attorney" (E. Jones) with a Ph.D. in Electrical Engineering and Computer Sciences.  Dkt. 631 ¶¶ 6, 15.  Her tasks included substantial time to "Prepare and produce documents," "Review documents," "Work with team and vendor on production preparation," "Collect and review documents," "Compile and upload documents for production," "Prepare and QC production," "Archive documents," and "Update and communicate with team re discovery tool."

- A senior attorney for Moonbug with the joint highest hourly rate routinely billed exactly 6.0 hours each day (plus 8.5 hours on the date of the charging conference and 5.0 hours on the day of closings) with a billing description of "Attend trial," without ever recording an appearance.  Notwithstanding her attendance at trial, she still billed nearly 10 hours for reviewing trial transcripts.  Many other attorneys also billed for attendance at trial and other proceedings without any suggestion that they participated.  (C. Tung, 45.1 hours for "Attend trial." on July 5, 11, 12, 14, 17-19, 21, 21, 24, 2023); (S. Apple, 26.3 hours for "Attend trial." or "Attend Court." on July 6, 12, 14, 17, and 19, 2023).

- Moonbug's lead counsel (R. Tyz) routinely engaged in block billing.  Between June 26, 2023, and July 21, 2023, he recorded 289.6 hours using four unique billing descriptions: "Prepare for trial.," "Trial preparation.," "Trial preparation and strategy.," and "Attend trial."  Other billing entries include dozens of hours for "Review documents for production.," (August 25, 29 and 30, 2022, and September 3, 4, 12, 13, and 22, 2022),  "Review BabyBus documents.," (March 19 and March 25, 2022) and "Manage discovery." (October 4-6, 2022).

- Another senior attorney (C. McHale) billed time for tasks like "Work on [REDACTED], including collection and indexing of evidence" (June 29, 2022).  Other attorneys similarly billed time to "Review[] and archive[] materials" (S. Apple, June 14, 2021).

- On October 20, 2021, another attorney (D. Hedley) billed 7.7 hours to "[m]anage discovery deadlines."  The same attorney then billed the exact same amount of time (7.7) to perform the exact same task ("Manage discovery deadlines") the next day.  The same attorney also spent 5.1 hours on January 17, 2023, to "[m]anage pre-trial deadlines."  If these entries were intended to denote time spent identifying deadlines and assigning tasks, the amounts are disproportionate.  If they were intended to describe some other activity, they failed to do so.

- Three attorneys (D. Hedley, C. Tung and C. McHale) spent 22 hours collectively between April 13 and 14, 2023, "[d]raft[ing]" or "[w]ork[ing] on" Moonbug's motion for a continuance of the trial.  The motion was 4 pages long.  Dkt. 275.

- On December 7, 2022, an attorney (S. Apple) spent 9.7 hours drafting an unspecified declaration in support of Moonbug's motion for summary judgment.  He then spent 9.1 hours doing the same task on December 8, 2022.  Then, *on the same day*, billed another 8.0 hours and 1.7 hours for the same tasks.  If these 28.5 hours to Docket 165 (Supporting Apple Decl.), that declaration mostly attached the exhibits to the summary judgment motion and should have been prepared by a paralegal.

These few examples justify "across-the-board percentage cuts" as the Court finds appropriate.  *Good Job Games*, 2023 WL 3260528, at *9 (rather than go through a fee application hour-by-hour, "the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat").

Moonbug's claimed costs in excess of half a million dollars are also unreasonable.[6]  Moonbug seeks reimbursement for more than $1,200 in costs for one employee to fly round trip to San Francisco from Santa Ana, and more than *thirty six thousand dollars* in costs for two employees to fly round trip to San Francisco from London.  To justify these rates, Moonbug cites to a supposed "GSA Rate" that its own exhibit makes clear is the rate for "Privately owned vehicle" (i.e., private aircraft) travel.  *See* Dkt. 631 ¶ 23 and Dkt. 631-7.  The amounts Moonbug requests are plainly

---

[6]   Pursuant to N.D. Cal. Local Rule ("L.R.") 54-2, counsel for BabyBus met and conferred with counsel for Moonbug on November 27, 2023 regarding BabyBus's objections to these costs.  *See* Stake Decl. ¶ 4.

excessive, *see* 28 U.S.C. § 1821 (instructing a witness travelling via common carrier to use "the most economical rate reasonably available…") and this $37,811.07 in costs should be disallowed.[7]

Moonbug's other claims for costs are similarly unwarranted.  Moonbug failed to provide itemized receipts for the $236,696.05 it seeks to recover for "preparing" its visual aids.  Without these records, Moonbug has not proven – and BabyBus and the Court cannot assess – which costs are truly related to the *costs of preparing* visual aids that were *reasonably necessary* to assist the jury or the Court.  *See, e.g.*, *Phoenix Techs. Ltd. v. VMWare, Inc.*, No. 15-CV-01414-HSG, 2018 WL 4700347, at *6 (N.D. Cal. Sept. 30, 2018) (excluding from a recovery for the preparation of visual aids the "on-site technical support" and "meeting and consultation expenses" shown through a "detailed itemized receipt"); *Fitbug Ltd. v. Fitbit, Inc.*, 2015 WL 2251257, at *4 (N.D. Cal. May 13, 2015) ("Other[ entries] likely include some taxable expenses, however the Court finds Fitbit has not sufficiently shown that these costs stem from the physical preparation of the demonstrative exhibits and not the creation and preparation of the content of demonstrative exhibits, which is not taxable.") (internal citation omitted).  Because Moonbug has failed to supply "adequate documentation" of these costs, exclusion of this entire amount is warranted.[8]  *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2014 WL 4745933, at *9 (N.D. Cal. Sept. 19, 2014) (excluding all copying costs where the prevailing party failed to supply adequate documentation to support its request).  Finally, Moonbug's attempt to recover $40,196.25 for video recordings of *every* deposition is an overreach.  *See Total Recall Techs. v. Luckey*, No. C 15-02281 WHA, 2017 WL 2118297, at *1 (N.D. Cal. May 16, 2017) (rejecting a "blanket omnibus approach to videotap[ing] every deposition").  Moonbug's claim for recovery exceeds the Rules' allowance for "[t]he cost of an original and one copy of any deposition," particularly because Moonbug's order forms indicate it separately received an "Original & 1 Certified Transcript" from the court reporter.  *See, e.g.*, Dkt. 631-2 at 2, 4, 6.   Moreover, no disputes in this case "involved deposition conduct or any other issue that might have been resolved

---

[7]  BabyBus objects to this $37,811.07 in costs as exceeding the recoverable scope provided for by 28 U.S.C. § 1821 and L.R. 54-3(e).

[8]  BabyBus objects to this $236,696.05 in claimed costs relating to Visual aids as exceeding the recovery afforded by L.R. 54-3(d)(5).

with videotapes," thus rendering these orders excessive. *Total Recall Techs.*, 2017 WL 2118297, at *1. Indeed, Moonbug scarcely used these videotapes at trial. This amount should be discounted.[9]

## III.   MOONBUG'S REQUESTED SANCTIONS AWARD IS PUNITIVE IN NATURE AND IMPERMISSIBLE UNDER *GOODYEAR TIRE*

Finally, "rather than request specific fees" as a sanction for the 2021 DouDou image (Mot. 22), Moonbug asks the Court to apply a 1.18 times multiplier to the total amount of its claimed fees. Such an award is unavailable as a matter of law. As the Supreme Court "made clear" in *Goodyear Tire & Rubber Co. v. Haeger*, a sanction "when imposed pursuant to civil procedures" and the court's inherent powers "must be compensatory rather than punitive in nature. In other words, the fee award may go no further than to redress the wronged party for losses sustained; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." 581 U.S. 101, 108 (2017) (omitting quotation marks). "That means, pretty much by definition, that the court can shift only those attorney's fees incurred because of the misconduct at issue." *Id.* This requires "a causal link [] between the litigant's misbehavior and legal fees paid by the opposing party." *Id.* "That kind of causal connection … is appropriately framed as a but-for test: The complaining party … may recover only the portion of his fees that he would not have paid but for the misconduct." *Id.* at 109 (omitting quotation marks).[10]

Moonbug's request for a multiplier runs counter to these clear principles because it is, by Moonbug's admission (Mot. 22), not based on the "fees [Moonbug calculated as being] directly related to the sanctions motions and custodial depositions," which it claims were $156,137.50. Dkt. 631 (Tyz Decl.) ¶ 28. This figure already goes beyond "fees incurred because of the misconduct at issue;" Moonbug includes in this $156,137.50 the timekeeping for both its *prior* sanctions motions, which largely involved different files, *see* Dkt. 142, and for *all* custodial depositions ordered by the

---

[9]   BabyBus objects to $40,196.25 in costs relating to Deposition transcripts/video recordings as exceeding the recovery afforded by L.R. 54-3(c)(1).

[10] Although a court may impose sanctions as a punishment, "[t]o level that kind of separate penalty, a court would need to provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof. When (as in this case) those criminal-type protections are missing, a court's shifting of fees is limited to reimbursing the victim." *Id.*

court, including several where the image in question was (aside from a single yes/no question in one deposition) never discussed or marked as an exhibit.  *Compare, e.g.*, C. McHale, May 9, 2023 (referencing deposition of Lijun Tang), *with* Stake Decl., Ex. A (index of exhibits used during Tang deposition); C. McHale, May 10, 2023 (referencing the deposition of Huiping Liu), *with* Stake Decl., Ex. B (index of exhibits used during Liu deposition).  These amounts should be excluded.[11]

The multiplier (of 1.18 times) goes further still; it is based on Moonbug's claimed estimate that it spent 18% of its time on the supposed conduct underlying the sanctions order.  That claimed estimate overreaches.  Moonbug did not spend 18% of its time in this case on the 2021 DouDou image.  Rather, Moonbug claims to have spent 18% of its time on the DouDou character overall, including on BabyBus' "independent development defense throughout discovery and trial."  *Id.* ¶ 29.  But the sanctions order did not find that BabyBus fabricated the DouDou character or that its independent development defense was wrongful.  Rather, the Court acknowledged that "BabyBus has consistently taken the position that the DouDou character was created for the 2016 'Barber' YouTube video," which has been publicly available since then.  Dkt. 628 at 6; *see also* Stake Decl., Ex. F (October 5, 2023 Hearing Transcript) at 48 ("[Y]ou're not entitled to say there was no defense without this 2021 [image]. They would have had this argument. Maybe it was slightly weaker because it didn't have the line in the tooth and the mouth was slightly a different shape, but still…").  Moonbug's requested multiplier thus seeks to recover fees it incurred to litigate a defense that it has not shown, and that the Court did not find, to be in bad faith.  These are not fees that Moonbug would have paid but for the conduct underlying the sanctions order.  In all cases, the requested multiplier is impermissible, and neither of Moonbug's citations shows otherwise.[12]

---

[11] The records of other timekeepers are insufficiently detailed enough to afford such a distinction.  *See, e.g.*, R. Tyz, May 4 ("Prepare for depositions."); May 8, 9 ("Prepare and take deposition of custodian witness.").  A further discount on this basis is merited.

[12] Neither case involved sanctions.  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), involved statutory attorney's fees under the Clean Air act and merely acknowledged the availability of upward multipliers "only in certain rare and exceptional cases," such as contingency matters.  *Dang v. Cross*, 422 F.3d 800, 812 (9th Cir. 2005), involved fees in relation to a section 1983 action.  There, the Ninth Circuit simply observed that a court may "adjust the lodestar amount after considering other factors" that are not subsumed in the lodestar.  *Id.* The

1

## **<u>CONCLUSION</u>**

2

Moonbug's Section 505 motion should be denied.  If not, its requested fees should be

3  discounted as the Court finds appropriate.  Finally, any sanctions award regarding Docket 628 should

4  be limited to at most $156,137.

5

6  DATED:  November 27, 2023                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

7

8                                                       By _____ */s/ Sam S. Stake*_____
                                                            Sam S. Stake (Bar No. 257916)
9                                                           50 California Street, 22nd Floor
                                                            San Francisco, California 94111
10                                                          Telephone:    (415) 875-6600
                                                            Facsimile:     (415) 875-6700
11                                                          samstake@quinnemanuel.com

12                                                          Attorneys for BabyBus Co., Ltd. and BabyBus
13                                                          (Fujian) Network Technology Co., Ltd.

14

15

16

17

18

19

20

21

22

23

24

25

26
_____

27  Ninth Circuit has otherwise held that "[t]here is a strong presumption that the lodestar figure represents a reasonable fee [and that] [o]nly in rare instances should the lodestar figure be adjusted
28  on the basis of other considerations."  *Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996) (omitting quotation marks).