UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOONBUG ENTERTAINMENT LIMITED, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD, et al.,<br><br>          Defendants. | Case No. 21-cv-06536-EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEY FEES AND MOTION TO AMEND/CORRECT JUDGMENT TO INCLUDE PRE-JUDGMENT INEREST, ORDER DENYING PLAINTIFFS' MOTION FOR ASSIGNMENT**<br><br>Docket Nos. 630, 646, 682 |

## I.     INTRODUCTION

Plaintiffs are Moonbug Entertainment Limited and Treasure Studio, Inc. (collectively, "Moonbug"). Defendants are Babbu Co., Ltd. and BabyBus (Fujian) Network Technology Co., Ltd. ("BabyBus Tech.") (collectively, "BabyBus"). Moonbug sued BabyBus for copyright infringement of its popular animated children's show CoComelon, in particular alleging willfull infringement of specific works and characters and misrepresentation. After a 10-day trial, the jury found BabyBus liable for copyright infringement and misrepresentation and awarded a total of $17,718,114.00 in actual damages and lost profits. Docket No. 579 at 6 (Jury Verdict). The Court entered final judgment in that amount, entered a permanent injunction against BabyBus to prevent further infringement of the copyrighted CoComelon works and characters, and sanctioned BabyBus for misrepresenting evidence at trial. Docket No. 627, 628. The Court then denied BabyBus's post-trial motions for judgment as a matter of law and for a new trial. Docket No. 680.

Now before the Court are Moonbug's remaining motions: Motion for Attorney Fees and

Additional Attorney Fees, Docket No. 630 and 705, Motion for Amendment of Pre-judgment Interest, Docket No. 646, and Motion for Order Assigning Rights to Payments from D's to P's and Restraining D's, Docket No. 682.

For the reasons discussed below, the Court **GRANTS** the motions for attorney fees and motion for pre-judgment interest, with some modifications.  The Court **DENIES** the motion for order assigning rights to payments from D's to P's and restraining D's.

## II.  FACTS AND BACKGROUND

A.    Entry of Judgment, Permanent Injunction, Pre and Post-Judgment Interest

Following the jury's verdict for Moonbug in this case, Moonbug moved the Court for entry of a permanent injunction and final judgment for Moonbug for the total damages awarded by the jury for copyright infringement and misrepresentation, as well as pre-judgment and post judgment interest.  Docket No. 602 (Motion for Entry of Judgment, Pre-judgment and Post-Judgment Interest).  On October 30, 2023, the Court entered judgment for $17,718,114.00 and a permanent injunction against Defendants, and stated that it would determine attorney fees and costs and pre-judgment interest separately.  Docket No. 627.

B.    Sanctions

In October 2023, the Court granted sanctions against BabyBus for knowingly misrepresenting its independent development theory by using a 2021 image of DouDou rather than original images of DouDou from a 2016 YouTube video.  Docket No. 628 at 8.  The Court explained that "BabyBus's failure to use the correct images in support of its independent development theory is inexcusable, and not merely an 'innocent mistake.'  It was used in bad faith with an improper purpose of advancing BabyBus's affirmative defense."  *Id.*  The Court issued sanctions against BabyBus and deferred ruling on the amount of monetary sanctions.  Docket No. 628.

## III.  MOTION FOR ATTORNEY FEES

Moonbug now moves for a total attorney fees award of $7,547,156.84.  Docket No. 630. This includes attorney fees of $5,963,684.85 (including fees for Tyz Law Group, Horvitz & Levy, and subtracting previously sought fees), sanctions of $1,082,338.27 (based on a 1.18 fee multiplier

United States District Court
Northern District of California

United States District Court
Northern District of California

1    and expert witness fees), and $510,008.72 in taxable costs.  *Id.*  It also separately requests

2    additional attorney fees related to the motion for attorney fees of $21,6627.50 ($174,922 for Tyz

3    Law Group, and $41,705.50 for Horvitz & Levy).  Docket No. 705, 706 (McHale Decl.), 707

4    (Boorstin Decl.).

5    A.    Discussion

6          1.    Whether Moonbug is Entitled to Attorney Fees

7          First, the Court must consider whether Moonbug is entitled to fees.  Moonbug requests

8    fees for copyright infringement, copyright misrepresentation, responses to requests for admissions,

9    sanctions, and other costs.  Docket No. 30 at i-ii.

10               a.    Copyright Infringement

11         The prevailing party in a copyright infringement action may recover reasonable attorney

12   fees.  17 U.S.C. § 505.  The purpose of such attorney fees is to deter copyright infringement.

13   *Breffort v. I Had A Ball Co.,* 271 F. Supp. 623, 627 (S.D.N.Y. 1967).  A court has broad equitable

14   discretion in determining attorney Fees awards.  *Fogerty v. Fantasy Inc.,* 510 U.S. 517, 533

15   (1994).  "The Supreme Court [has] identified the following non-exclusive list of factors to guide

16   the award or denial of attorney's fees: 'frivolousness, motivation, objective unreasonableness (both

17   in the factual and in the legal components of the case), and the need in particular circumstances to

18   advance considerations of compensation and deterrence.'"  *Ets-Hokin v. Skyy Spirits, Inc.*, 323

19   F.3d 763, 766 (9th Cir. 2003) (quoting *Fogerty*, 510 U.S. at 534 n.19).  The Ninth Circuit has

20   added the following considerations: "the degree of success obtained, the purposes of the Copyright

21   Act, and whether the chilling effect of attorney's fees may be too great or impose an inequitable

22   burden on an impecunious plaintiff."  *Perfect 10 Inc. v. Giganews, Inc.,* 847 F.3d 657, 675 (9th

23   Cir. 2017) (citations omitted).  These factors may be considered but are not exclusive, and need

24   not all be met.  *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 556 (9th Cir. 1996).

25         Moonbug argues that it is entitled to attorney fees for copyright infringement based on the

26   following factors: the degree of success obtained, frivolousness, motivation, objective

27   unreasonableness, and the need to advance considerations of compensation and deterrence.

28   Docket No. 630 at 13-18.  The Court addresses each factor below.

United States District Court
Northern District of California

1

i.   Degree of Success obtained

Moonbug achieved nearly complete success on the merits.  The jury found that BabyBus willfully infringed 39 of 42 specific copyrighted works, and that BabyBus's Super JoJo character was "virtually identical" to Moonbug's copyrighted JJ character.  Docket No. 579.  The Court entered final judgment and a permanent injunction against BabyBus to prevent it from future unlawful infringement.  Docket No. 627.   This factor weighs in favor of awarding attorney Fees.

ii.   Frivolousness and Motivation

Here, Moonbug's asserts that its claims are not frivolous and it had a proper motivation to litigate, but these arguments do not support these factors.  Docket No. 630 at 14-15.  Courts generally look at whether the *non-prevailing* party pursued a frivolous position or had a bad motivation.  *See, e.g. Leonard v. Stemtech Int'l Inc.,* 834 F.3d 376, 403 (3d Cir. 2016) (finding that a prevailing nutritional supplement company was not entitled to attorney fees against a photographer's second copyright infringement action because there was no evidence that the photographer's decision to file the second suit was objectively unreasonable, frivolous, or in bad faith); *Prunty v. Vivendi,* 195 F. Supp. 3d 107, 111-113 (D.D.C. 2016) (finding that an award of attorney fees was warranted to prevailing defendant in a songwriter's infringement action in part because the songwriter had been a serial filer of meritless copyright actions for more than 15 years and such an award would deter the filing of other frivolous claims).

Here, there is no evidence that BabyBus acted frivolously or had a bad motivation in defending Moonbug's claims of copyright infringement.  As seen in *Leonard* and *Prunty,* courts generally examine these factors with respect to whether a copyright infringement claim, as opposed to a defense, is made frivolously or in bad faith.  A defense, even if ultimately meritless, is not necessarily either.  "A claim is not frivolous" under the Copyright Act "merely because it is unsuccessful." *Bisson–Dath v. Sony Computer Entm't Am. Inc.,* No. CV–08–1235 SC, 2012 WL 3025402, at *2 (N.D. Cal. July 24, 2012).  Moonbug also puts forth no arguments that BabyBus was frivolous or had bad motivation separate from its discussion on the objective unreasonableness factor, which the Court addresses below.

Furthermore, awarding an attorney fee to a prevailing plaintiff on the grounds that the

United States District Court
Northern District of California

plaintiff did not act frivolously or in bad faith does not further the goal of attorney fees for copyright infringement.  "The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" *Feist Publications v. Rural Telephone Svc. Co.,* 499 U.S. 340, 349–50, (1991).  In *Diamond Star Bldg. Corp. v. Sussex Co. Builders, Inc.,* 30 F.3d 503 (4th Cir. 1994), the Fourth Circuit found that the plaintiff's infringement action was "patently frivolous" and that "the goal of deterring a party from pursuing frivolous litigation is furthered by the imposition of attorney's fees and costs here." *Id.* at 506.  In contrast, here, an attorney fee on these grounds would award a prevailing party for pursuing non-frivolous claims, which does nothing to further the goals of attorney fees nor the objective of copyright.  Thus, these factors do not weigh in favor or nor against awarding attorney fees.

### iii.  Objective Unreasonableness of Losing Party's Factual and Legal Arguments

Moonbug argues that BabyBus asserted unreasonable factual and legal theories throughout various stages of litigation.  Docket No. 630 at 15-17.  BabyBus contends that the legal and factual complexities of the case, and the jury's three-day deliberation, support the reasonableness of litigating the various copyright issues.  Docket No. 649 at 4-5 (Opposition).

A claim is objectively unreasonable where the party advancing it "should have known from the outset that its chances of success in this case were slim to none." *SOFA Entertainment, Inc. v. Dodger Prods., Inc.,* 709 F.3d 1273, 1280 (9th Cir. 2013).  "As with frivolity, 'the mere fact that [a party] lost cannot establish his objective unreasonability.'" *Seltzer v. Green Day, Inc.,* 725 F.3d 1170, 1181 (9th Cir.2013).  Still, the standard for objective unreasonableness is somewhat lower than that for complete frivolity.  *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746484, at *11 (C.D. Cal. Mar. 24, 2015)*; see Karam v. City of Burbank,* 352 F.3d 1188, 1195 (9th Cir. 2003) ("A case may be deemed frivolous only when the 'result is obvious or the … arguments of error are wholly without merit.'" (citation omitted)).

### iv.  Overall Defense

Here, BabyBus's overall defense to copyright infringement was not objectively unreasonable.  BabyBus set forth reasonable arguments in its defense, mainly focusing on the

United States District Court
Northern District of California

1  belief that the CoComelon works and characters were unprotectable because they comprised of

2  unprotectable elements that were fairly common in portraying children and in children's television

3  narratives.  The Court denied Moonbug's motion for summary judgment, explaining that

4  "reasonable minds can differ as to whether the traits shared between the CoComelon and Super

5  JoJo characters, even when combined, are protectible" under the extrinsic test.  Docket No. 242 at

6  20.  The Court even had to further intervene after giving the jury instructions and determine

7  whether the JJ character was afforded "thick" or "thin" protection under the extrinsic test because

8  of JJ's unprotectable elements that were minimally creative.  Docket No. 575.  Then, the Court

9  conducted its own extrinsic test analysis to support the jury's verdict in its Order on BabyBus's

10  renewed motion for judgment as a matter of law.  Docket No. 680 at 14.

11      Thus, even if the average person could observe that SuperJoJo characters and videos

12  shared artistic similarities to the CoComelon copyrighted works, it was still entirely reasonable for

13  BabyBus to challenge that their works were not substantially similar to the CoComelon

14  copyrighted works as a matter of law because of the unprotectable elements.  The extrinsic test for

15  unlawful appropriation under a copyright infringement analysis is a complex area of law, and

16  BabyBus meritoriously supported its interpretation of how to apply the extrinsic test in this case.

17  *See Overman v. Loesser,* 205 F.2d 521, 524 (9th Cir. 1953) (declining to award attorney fees in a

18  copyright infringement case because "the case was hard fought.  There is no indication the appeal

19  was pursued in bad faith.  And the principal question before us presented a complex question of

20  law.").

21      Other aspects of BabyBus's defense were also not objectively unreasonable, such as only

22  partially conceding infringement at summary judgment and attempting to exclude evidence of the

23  conceded videos for the remaining copyright infringement claims that went to trial.  That the Court

24  was not persuaded by BabyBus's arguments did not make them unreasonable.  *See Luken v.*

25  *International Yacht Council, Ltd.,* 581 F. Supp.2d 1226, 1240 (S.D. Fla. 2008) (noting that the

26  trial court's repeated rejection of a theory did not make it unreasonable as it pertained to

27  calculating attorney Fees).

28      However, several more specific aspects of BabyBus's defense were objectively

1    unreasonable.  For example, initially, BabyBus denied any copying of Cocomelon, but over one

2    year later, conceded willfull infringement of six videos that had a significant amount of frame-by-

3    frame similarities.  *See* Docket No. 194 at 8 n.4.  This resulted in unnecessary litigation for over

4    one year as to the conceded works.

5          Additionally, BabyBus's independent development defense was objectively unreasonable

6    for two reasons.  First, there was no evidence of the DouDou character in BabyBus's design and

7    development documents, making it a baseless defense.  Second, BabyBus even fabricated

8    evidence in support of its independent development theory by altering their DouDou character to

9    look more like JoJo, and attempted to write it off as "an innocent mistake."  *See* Docket No. 628.

10   The Court sanctioned BabyBus for this misconduct.  Docket No. 628.  BabyBus's arguments that

11   the fabricated DouDou character was nearly identical to the original DouDou and was not integral

12   to its independent development theory are unpersuasive.

13         Therefore, BabyBus's initial denial of copying of materials it later conceded were directly

14   copied, and its lack of evidence and fabrication of evidence to support its independent

15   development defense, were objectively unreasonable.  Because of the unreasonableness of other

16   aspects of BabyBus's defense, this factor weighs in favor of awarding attorney fees.

17                          v.    Need to advance considerations of Compensation and Deterrence

18         Attorney fees will not necessarily deter BabyBus from infringing Moonbug's copyrighted

19   characters and works in the future, because the Court already issued a permanent injunction

20   against BabyBus that shut down all infringing SuperJoJo content.  Docket No. 627.  BabyBus has

21   also affirmed its compliance with the permanent injunction, as it ceased infringement of all

22   copyrighted works and characters and stated that it would not reproduce, create derivative works

23   of, distribute, display, or publicly performing any of its infringing content.  Docket No. 636 at 2

24   (Yunshan Lin Decl.).  Thus, this factor does not weigh in favor of awarding attorney fees.

25                          vi.   Conclusion

26         Overall, the factors weigh in favor of awarding attorney fees given Moonbug's nearly

27   perfect success at trial and BabyBus's several unreasonable arguments throughout the case.

28                          b.    Copyright Misrepresentation

United States District Court
Northern District of California

7

1    17 U.S.C. § 512(f) provides for the recovery of "any damages, including costs and

2    attorney[] fees."  Therefore, the Court awards reasonable attorney fees for work related to the

3    copyright misrepresentation claim.  *See e.g., Automattic Inc. v. Steiner,* 82 F. Supp. 3d 1011, 1032

4    (N.D. Cal. 2015) (finding that the fee applicant was entitled to recover a reasonable award of

5    attorney fees under 17 U.S.C. § 512(f) of the DMCA).

6        BabyBus makes two arguments contesting attorney fees under 17 U.S.C. § 512(f).  First, it

7    argues attorney fees for misrepresentation are not recoverable here, because the DMCA takedown

8    notices to YouTube were separate actions from the case at bar.  Docket No. 649 at 12.  This

9    argument is meritless because the jury found that BabyBus engaged in misrepresentations in

10   response to Moonbug's takedown notices, making the initial notices integral to the

11   misrepresentation claim.  Secondly, BabyBus also argues that the language of the statute awards

12   attorney fees as a form of damages, as opposed to a separate award, and thus the attorney fees

13   should have been determined by the jury.  This argument is equally meritless, and BabyBus does

14   not cite to any authority that courts should present post-verdict attorney fee awards to a jury.

15   Furthermore, this Court has consistently found that a prevailing party is entitled to attorney fees

16   under 17 U.S.C. § 512(f).  *See e.g. Automattic Inc. v. Steiner,* 82 F. Supp. 3d 1011, 1032 (N.D.

17   Cal. 2015); *Online Policy Group v. Diebold, Inc.,* 337 F. Supp. 2d 1195, 1204-05 (N.D. Cal.

18   2004).  Therefore, Moonbug is entitled to an attorney fees award separate from the jury's damages

19   award.

20            c.    Response to Requests for Admission

21       Moonbug seeks attorney fees related to BabyBus's denial of a request for admission.  If a

22   party denies a request for admission and the requesting party later proves the matter to be true, the

23   requesting party may move for attorney fees incurred in making that proof.  Fed. R. Civ. P.

24   37(c)(2).  In response to a request for admission, BabyBus initially denied substantial similarity

25   for the following works:  *The Boo Boo Song, Yes Yes Vegetables Song, Colors Song (with*

26   *Popsicles), Bath Song, Car Wash Song, Yes Yes Playground Song, Yes Yes Bedtime Song,* and

27   *Swimming Song.*  Docket No. 631-12 (Tyz Decl. Exhibit 12).  BabyBus conceded that they

28   willfully infringed all of those works except the *Yes Yes Bedtime Song* and the *Swimming Song,*

United States District Court
Northern District of California

8

1   and after trial the jury found that BabyBus willfully infringed those two works.  Docket No. 194 at
2   8 n.4; Docket No. 579 at 3, 5.
3          Therefore, the Court awards attorney fees for work related to fees incurred in proving that
4   BabyBus willfully infringed the following works: *The Boo Boo Song, Yes Yes Vegetables Song,*
5   *Colors Song (with Popsicles), Bath Song, Car Wash Song, Yes Yes Playground Song, Yes Yes*
6   *Bedtime Song,* and *Swimming Song.*
7                 d.      Sanctions
8          As a sanction, Moonbug also requests a multiplier of 1.18 for work related to BabyBus's
9   fabrication of a 2021 DouDou image for its independent development defense.  Docket No. 630 at
10  22.  The Court granted sanctions for BabyBus's conduct.  Docket No. 628 (Order Granting
11  Plaintiffs' Motion for Sanctions in Part).  Additionally, Moonbug requests an award of $8,875 in
12  expert fees incurred in connection with its motion for sanctions.  Docket No. 630 at 22, Docket
13  Docket No. 698 at ¶ 30 (Tyz Decl.).
14          A sanction "when imposed pursuant to civil procedures, must be compensatory rather than
15  punitive in nature."  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017).
16  Therefore, such fees are "limited to the fees the innocent party incurred solely because of the
17  misconduct—or put another way, to the fees that party would not have incurred but for the bad
18  faith."  *Id.* at 103-04.
19          The Court grants attorney fees for sanctions here to compensate Moonbug for the fees
20  incurred because of BabyBus's fabricated evidence, which includes the related expert fees.
21                 e.      Costs
22          In addition to fees, Moonbug requests costs for filing fees, deposition costs, government
23  records, discovery costs, trial exhibits, visual aids, witness fees, and interpreter fees.  Docket No.
24  630 at 22-24.  The Court awards costs pursuant to 28 U.S.C. § 1920(4) and Civil L. R. 54-3(d)(1).
25          2.      The amount that Moonbug is awarded
26          The Court may use the "lodestar" method to determine a reasonable fee award.  *McCown*
27  *v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).  The lodestar is "the number of hours
28  reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v.*

United States District Court
Northern District of California

9

*Eckerhart*, 461 U.S. 424, 433 (1983).  "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary."  *McCown*, 565 F.3d at 1102 (internal citations omitted).  "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services."  *Hensley v. Eckerhart,* 461 U.S. 424, 436-37 (1983).

There are two methods by which the district court can reduce the hours in an attorney fee application.  The first method entails "conduct[ing] an hour-by-hour analysis of the fee request, and exclud[ing] those hours for which it would be unreasonable to compensate the prevailing party."  *Id.* at 1108 (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013)).  The second method entails "mak[ing] across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a [massive] fee application."  *Id.* (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992)).

The Court finds it suitable to reduce hours under the first method, and thus does not engage in across-the-board cuts, for the reasons below.

        a.    <u>Attorney fees for copyright infringement, misrepresentation, and responses to requests for admission</u>

Using the lodestar method, Moonbug calculates a total attorney fee award of $5,963,684.85.  Docket No. 630 at 20-21.  This includes $6,000,803.50 for the Tyz Law Group, $136,409.00 for Horvitz & Levy, and subtracts $173,527.65 from fees previously sought in connection with anti-SLAPP motions.  *Id; see* Docket No. 84 (Order Granting Moonbug's Motion for Attorney Fees).  BabyBus argues that the Court should reduce the attorney fee award because Moonbug's time entries lack specificity.  Docket No. 649 at 12-13.

The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked.  *See Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir. 1992).  Here, Moonbug submitted the complete record of time entries for the timekeepers on the case.  Docket No. 631-1 (Tyz Decl. Exhibit 1); Docket No. 632-1 (Boorstin Decl. Exhibit A).  The Court finds that Moonbug has met its burden to document its

1   time worked with supporting evidence and that its time entries are overall reasonable.  While

2   Moonbug's lead counsel, Mr. Tyz, used somewhat vague billing descriptions such as "prepare for

3   trial" and "trial preparation and strategy" to record 289.6 hours between June 26, 2023 and July

4   21, 2023, Docket No. 649 at 12, the amount of time billed appears reasonable in the context of this

5   case.  These entries equal 11 to 12 hours a day for 25 consecutive days, which is not unusual for

6   the weeks leading up to trial.  Docket No. 631 Exhibit 1.

7       Similarly, while Moonbug's attorney Erin Jones's also used non-specific billing

8   descriptions such as "prepare and produce documents," "review documents," "collect and review

9   documents," "compile and upload documents for production," *see e.g.,* Docket No. 631-1 at 44-

10  52, the amount of time she spent on tasks appears reasonable.  Entries such as 5.3 hours across two

11  days to "plan document collection."  *Id.* at 46, 7.0 hours in one day to "review discovery

12  responses,"  *id.* at 45, and 9.4 hours in one day to "draft ancillary documents, identify and prepare

13  exhibits, and cite check motion, Docket No. 631-1 at 44, are not so extraordinary as to warrant a

14  reduction in this case.  Neither do the infrequent entries from other attorneys that were similarly

15  vague, such as "reviewed and archived materials," "conduct legal research," and "prepare for

16  trial," warrant reductions.  *See* Docket No. 631-1.[1]

17      Furthermore, Moonbug's attorneys were not performing needlessly duplicitous tasks to

18  warrant reductions.  Some overlap among Moonbug's team in attending trial and reviewing

19  documents is reasonable given the relatively sparse team of nine attorneys compared to BabyBus's

20  team of at least seventeen attorneys.  *See* Docket No. 656 ¶ 16.  Nor has BabyBus given good

21  reason for the Court to question Moonbug's trial strategy.  *See Huhmann v. FedEx Corp.,* 2015

22  U.S. Dist. LEXIS 141372 at *20 (S.D. Cal. 2015) ("The Court will not second guess the strategy

23  that went into Plaintiff's trial preparation.").

24      Furthermore, the Ninth Circuit previously upheld a similar attorney fee award of

25  $5,637,352.53 in an even shorter copyright and trademark infringement case that did not go to

26

27  [1] The court notes that vague and non-specific entries raise the risk that if the court were to question
    the reasonableness of hours spent on the case, such documentation might not support the claim

28  hours and questionable hours claimed could be subject to discount for want of proper
    documentation.

trial. *Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657, 675 (9th Cir. 2017).  In *Perfect 10,* the district court found the prevailing defendant's billed hours and rates reasonable, granted summary judgment for Giganews, and denied reconsideration of the motion.  Significantly longer than *Perfect 10,* the instant case lasted over two years from August 2021 to final judgment October 2023, involved extensive discovery, dozens of motions from summary judgment to motions for new trial, and a 10-day jury trial.  Thus, an award of $5,963,684.85 in this copyright infringement case is reasonable after a 20% reduction for all block billing entries.

Therefore, the Court GRANTS a total attorney fee award in the amount of $5,963.684.85.

b.   Attorney Fees for sanctions

i.   Multiplier

First, Moonbug requests a 1.18 multiplier on the total attorney fee award because it estimates that roughly 18% of its time was spent on issues relating to DouDou that are "inextricably intertwined" with Defendants' improper alteration of the DouDou image.  Docket No. 630; Docket No. 698 at ¶ 29 (Tyz Decl.).  This multiplier results in an additional $1,073,463.27 in fees, which would amount to a total attorney fee award of $7,037,148.12. Docket No. 630 at 24.

Here, application of an across-the-board 1.18 multiplier is unwarranted.  First, Moonbug's lodestar calculation for the total attorney fee award already includes fees directly related to the sanctions motion.  Docket No. 698 at ¶ 28 (Tyz Decl.); Docket No. 631-9 (Exhibit 9).  The total amount associated with sanctions is $156,137.50.  *Id.*  To adopt a multiplier that adds an additional more than $850,000, on the reason that the sanctions issues were "inextricably intertwined" with DouDou overall, makes little logical sense.  The Court grants an attorney fee award for sanctions as already included in the lodestar for the total attorney fee awards.  This is adequate to compensate Moonbug for Babybus' sanctionable conduct.  Second, Moonbug's assertion that it spent 18% of its entire fees on issues related to the fabricated 2021 DouDou is an overreach.  Not only was the fabricated 2021 DouDou just one aspect of BabyBus's independent development theory, but the independent development theory was a peripheral defense to its main unprotectability defense.  This case was at least two years long and involved a ten-day trial; 18%

1    of that was certainly not realistically spent on this issue.

2                            ii.      Expert witness fees

3           Lastly, Moonbug requests an additional $8,875 for expert witness fees related to the

4    motion for sanctions.  Docket No. 630 at 22.  The amount refers to work done on a declaration in

5    support of the motion, by Moonbug's expert witness Fran Krause, who spent 17.75 hours on the

6    declaration at a rate of $500 per hour.  Docket No. 698 at ¶ 30 (Tyz Decl.).  Because attorney fees

7    for work related to sanctions are warranted and these expert witness fees are separate from the

8    lodestar calculation for the total attorney fee award, the Court awards the additional expert witness

9    fees.

10          Therefore, the Court grants attorney fees for sanctions as already included in the general

11   lodestar, and additionally grants $8,875.00 in expert witness fees in connection with the motion

12   for sanctions.  The total attorney fee award is therefore $5,972,559.85 ($5,963,684.85 in attorney

13   fees plus $8,875.00 in expert witness fees for the motion for sanctions).

14                     c.      Costs

15          The breakdown of the total costs of $510,008.72 are below:

16   •   Filing fees $402.  Docket No. 698 at ¶ 17 (Tyz Decl.).

17   •   Deposition costs $94,519.85.  *Id.* at ¶ 18.

18   •   Reproducing and certifying government records such as certifications of registration,

19       certificates of deposit, and deposit materials related to copyrights.  $21,713.  *Id.* at ¶ 19.

20   •   Discovery costs $35,634.81.  *Id.* at ¶ 20.

21   •   Reproducing Trial exhibits $23,603.76.  *Id.* at ¶ 21.

22   •   Preparing visual aids such as charts, diagrams, videotapes $236,696.05.  *Id.* at ¶ 22.

23   •   Witness fees and travel costs $47,337.36.  *Id.* at ¶ 23.

24   •   Interpreters $50,101.89.  *Id.* at ¶ 24.

25          Documentation supports that these costs are reasonable.  Moonbug's witness travel costs,

26   although high, all are consistently below the GSA rates.  Docket No. 698 at ¶ 23.  The cost of

27   preparing visual aids, although high, are supported by an invoice.  This case is even easier than

28   *Perfect 10, Inc. v. Giganews, Inc.,* 2015 WL 1746484 at *1 (C.D. Cal. 2015), where the Ninth

United States District Court
Northern District of California

1    Circuit affirmed the district court's award of non-taxable costs in the amount of $424,235.47,

2    which is comparable to the amount here when adjusted for inflation.  Whereas *Perfect 10* did not

3    even go to trial, the costs here inclusive of trial costs are even more reasonable.

                        d.    <u>Additional attorney fees</u>

4

5          Moonbug also filed an additional motion for attorney fees for post-judgment work,

6    including work related to the execution of judgment and administrative motions.  Docket No. 706.

7    The fees also include work on post-trial motions such as the motions currently at issue, the motion

8    for new trial, and the motion for judgment as a matter of law.  *See* Docket No. 706-1 at 3.  The

9    total hours worked is 303.7, amounting to $174,922 in fees.

10         The entries are detailed enough to make these costs reasonable.  For example, entries such

11   as "research and draft analysis related to motion for assignment," Docket No. 7061 at 4, or

12   "review and finalize judgment enforcement materials," *id.* at 5, are specific and exemplary of all

13   of the provided entries.

                        e.    <u>Conclusion</u>

14

15         The Court GRANTS the award of total attorney fees in the amount of $5,972,559.85.  It

16   DENIES a 1.18 multiplier for sanctions.  The Court GRANTS costs in the amount of $510,008.72.

17   It GRANTS additional attorney fees in the amount of $174,922.

18         The total amount of attorney fees and costs is therefore $6,657,490.57.

19              **IV.    MOTION TO AMEND PRE-JUDGMENT INTEREST**

20         Moonbug also seeks to amend the judgment to include an award of pre-judgment interest.

21   Docket No. 646 at 1-2.  Moonbug argues pre-judgment interest compensates for the profits it was

22   deprived of during the period of infringement, addresses BabyBus's unjust enrichment and delay

23   in compensating Moonbug, and deters further infringement and delay.  *Id.*

24   A.   <u>Discussion</u>

25         Pre-judgment interest is available under the 1976 Copyright Act.  *Polar Bear Prods., Inc.*

26   *v. Timex Corp.,* 384 F.3d 700, 716 (9th Cir. 2004).  Its application in a particular case hinges on

27   whether such an award would further the Copyright Act's purpose.  *Id.* at 718.  The purpose of 17

28   U.S.C. § 504(b) is to compensate fully a copyright owner for the misappropriated value of its

property and to avoid unjust enrichment from defendants who would otherwise benefit from their unlawful use of another's work. *Id.* Awarding pre-judgment interest on the apportioned share of defendant's profits is consistent with the purposes underlying the profits remedy. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.,* 886 F.2d 1545, 1552 (9th Cir.1989).

The Ninth Circuit has consistently entered awards of pre-judgment interest on lost profits in copyright cases. In *Metro-Goldwyn-Mayer,* the Ninth Circuit remanded to the district court to enter an award of pre-judgment interest for the defendant's profits for the primary purpose of preventing the defendant from being unjustly enriched. *Metro-Goldwyn-Mayer,* 886 F.2d 1545 at 1552. In *Polar Bear,* court found that pre-judgment interest could be necessary to discourage needless delay and compensate the copyright holder for time it is deprived of lost profits or license fees. *Polar Bear,* 384 F.3d at 718. The court stated that pre-judgment interest is "a different remedy for a different harm" and was "necessary at times to effectuate the legislative purpose of making copyright holders whole and removing incentives for copyright infringement." *Id.*[2]

To be sure courts in other circuits have denied pre-judgment interest when damage awards are sufficient to compensate the plaintiff. In *Robert R. Jones Assocs. v. Nino Homes,* 858 F.2d 274, 282 (6th Cir. 1988), the court vacated the district court's decision to award pre-judgment interest under the 1976 Act. Finding that the district court's purpose in granting pre-judgment interest was "to provide an effective sanction against copyright infringement," the court held that such a remedy was unnecessary to deter infringements in light of the availability under the 1976 Act of an award of profits and damages, as well as costs and attorney fees. *Id.* In *John Wiley & Sons v. Book Dog Books, LLC,* 327 F. Supp. 3d 606 (S.D.N.Y. 2018), the court declined to award pre-judgment interest because the jury's award of $32.4 million in damages for willfull infringement sufficiently compensated plaintiffs for their injuries. *Id.* at 636.

---

[2] Moonbug also cites *Excelsior Coll. v. Frye,* 2007 WL 672517 (S.D. Cal. Feb. 21, 2007). In that case, the court awarded pre-judgment interest on both actual damages and lost profits for a copyright infringement claim against the same defendant. 2007 WL 672517, at *4. It found that "that an award of prejudgment interest to mitigate harm caused by the delay in making reparations is appropriate." *Id.* In awarding pre-judgment interest on lost profits, the court reasoned that there were no facts weighing against such an award "on this element of compensation and an award of prejudgment interest on profits earned furthers the legislative purpose of 'removing incentives for copyright infringement.'" *Id.* (quoting *Polar Bear Prods.,* 384 F.3d at 718).

1    Here, like in *Metro-Goldwyn-Mayer,* the Court should grant pre-judgment interest to

2   prevent BabyBus from being unjustly enriched from any interest that could have accrued on its

3   profits from infringement.  And like in *Polar Bear,* pre-judgment interest will compensate

4   Moonbug for time it is deprived of lost profits.  While the Court does not need to follow precedent

5   from the cases *Nino Homes* and *John Wiley* that are outside this circuit, even so, this case is

6   distinguishable.  Here, damages alone without interest does not fully compensate Moonbug for the

7   full earnings potential it possesses during the time of infringement.

8    BabyBus argues that Moonbug is not entitled to pre-judgment interest "windfall" on

9   Defendant's profits because the jury awarded amounts to compensate for damages and lost profits,

10   but this argument fails to appreciate the purpose of pre-judgment interest as a "different remedy

11   for a different harm."  *Polar Bear,* 384 F.3d at 718.  The full value of the copyrights during the

12   time of infringement includes not just Moonbug's lost profits, but interest on the lost profits.

13    BabyBus also argues that the Court should not grant pre-judgment interest because

14   Moonbug needlessly delayed its infringement claim.  Docket No. 608 at 7.  For example,

15   Moonbug first sent BabyBus a notice of infringement July 2021, two years after the first date of

16   infringement.  *Id.* at 9.  There is some caselaw that supports this claim.  *See Kaneka Corp. v. SKC*

17   *Kolon PI, Inc.*, 198 F. Supp. 3d 1089, 1124 (C.D. Cal. 2016).  In *Kaneka*, plaintiffs had no

18   compelling explanation for why it waited four years to file suit when it was initially aware of a

19   possible claim for infringement.  *Id.*  The court held that the delay likely caused damages owed by

20   the competitor to escalate, and thus did not award pre-judgment interest.  *Id; see also Crystal*

21   *Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,* 246 F.3d 1336, 1362 (Fed. Cir. 2001)

22   (affirming a district court's denial of pre-judgment interest where the plaintiff's two-year delay in

23   filing suit was self-serving and resulted in prejudice to the defendants).

24    However, this argument fails for several reasons.  First, BabyBus would still be unjustly

25   enriched for the profits earned during the entire period of infringement, since they had no right to

26   publish infringing content.  Second, in contrast to *Crystal Semiconductor,* there is no evidence that

27   Moonbug behaved in unreasonable self-serving conduct; nor has BabyBus argued that the delay

28   was prejudicial.  Moonbug attempted to reach out to BabyBus to discuss further collaboration or

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1   acquisition months before the infringement notice from 2020 to 2021.  *See* Docket No. 588, Trial

2   Tr. 1480:24-1481:8 (Direct Examination of Lin); Docket No. 606, Trial Ex. at 2368, 2511 (Perahia

3   Decl.) (showing emails between Moonbug and BabyBus from March 2020-2021 about potentially

4   partnering, and showing Moonbug expressed interest in potential acquisition (page 2368) and IP

5   licensing (page 2511).  If anything, it was BabyBus who engaged in needless delay by

6   misrepresenting that the 2021 DouDou image was originally from 2016 as part of its independent

7   development theory.  The Court sanctioned BabyBus for fabricating material evidence.  Docket

8   No. 628.

9       Therefore, The Court adopts the general rule that interest accrues from the date of

10  infringement to the date of judgment.

11  B.      Interest accrual time

12      Moonbug seeks pre-judgment interest on the jury's award commencing from the start of

13  infringement to the date of entry of judgment, compounded annually.  Docket No. 646 at 1.

14  BabyBus contends that pre-judgment interest should start accruing from the date of the verdict to

15  the date of entry of judgment, because no evidence shows revenues earned from 2019 to 2022.

16  Docket No. 608 at 12-14 .

17      Pre-judgment interest generally "should be awarded from the date of infringement to the

18  date of judgment."  *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988)

19  (citing *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 656); *see also TMTV, Corp. v. Mass*

20  *Prods., Inc.*, 645 F.3d 464, 474 (1st Cir. 2011) (finding that pre-judgment interest dating from the

21  infringements compensated the plaintiff for the time value of monies it should have had— "just as

22  if a contract debt had not been paid on time.")  This rule is consistent with the Ninth Circuit

23  standard to awarding pre-judgment interest on the apportioned share of defendant's profits.

24  *See Metro-Goldwyn-Mayer Inc.,* 886 F.2d at 1552.

25      In *Oracle USA, Inc. v. Rimini Street, Inc.,* 209 F. Supp. 3d 1200, 1212 (D. Nevada 2016),

26  the court granted Oracle's motion to set the pre-judgment interest rate at the Treasury rate at the

27  start of infringement rather than at the time of judgment.  *Id.*  It reasoned that the jury awarded

28  damages to Oracle in an amount based on when Rimini began infringing Oracle's copyrights in

1    2016.  *Id.*  Further, the defendant engaged in discovery delays and other litigation tactics.  *Id.*

2    Like the jury's award of damages starting on first date of infringement in *Oracle,* here, the

3    jury awarded damages starting on the first date of infringement.  BabyBus's cite to the unreported

4    case *Williams v. Bridgeport Music, Inc.,* 2015 WL 4479500, at *47 is inapposite.  *See* Docket No.

5    646 at 13.  In that case, the court calculating pre-judgment interest from the date of the jury's

6    verdict because the plaintiffs failed to offer evidence of the defendant's revenues that were

7    received as of the earlier dates that they propose.  *Williams,* 2015 WL 4479500 at *47.

8    *Williams* does not apply because the jury verdict awarded Moonbug actual damages and lost

9    profits based on BabyBus's revenues between the full duration of infringement from 2019 to 2022.

10   Trial Exhs. 85, 807, 808, 813, 816, 822, 825, 828, 831, 834, 837, 840 (showing Super JoJo

11   revenue was earned over time between 2019 and 2022).

12   Therefore, the Court applies pre-judgment interest to the exact same time frame in which

13   evidence of revenue resulted in the jury's finding of actual damages and lost profits.

14   C.      Interest rate

15   Moonbug requests the interest rate be based on the average 1-year constant maturity

16   Treasury yield for the calendar week preceding entry of judgment, pursuant to 28 U.S.C. §

17   1961.  Docket No. 646 at 6, n.2.  The interest rate as of September 8, 2023 is 5.42%.  Docket No.

18   664 at 8.  BabyBus contends that the court should use the average rate over the entire period of the

19   pre-judgment interest award, suggesting 1.81% from the date of filing the action in June 2019 to

20   the judgment in September 2023.  Docket No. 646 at 15 (Opposition); Docket No. 609-1 (Aaron

21   Perahia Decl. Exhibit A).

22   Some courts have used the statutory post-judgment interest rate under 28 U.S.C. § 1961(a)

23   to calculate pre-judgment interest, "unless the equities of a particular case demand a different rate.

24   *See In re Bloom,* 875 F.2d 224, 228 (9th Cir. 1989); *Columbia Brick Works, Inc. v. Royal Ins. Co.,*

25   768 F.2d 1066, 1071 (9th Cir. 1985) (declining to use the local rate of interest because the fifty-

26   two week U.S. Treasury bill rate fairly compensated defendant for its loss).  The post-judgment

27   rate is based on the fifty-two week Treasury bill rate for the calendar week preceding the date of

28   final judgment.  28 U.S.C. § 1961(a); *see Metro-Goldwyn-Mayer,* 886 F.2d at 1552-53.

In contrast, in *Brighton Collectibles, Inc. v. Renaissance Group Int'l,* 2008 WL 11339958 (S.D. Cal. 2008), the court calculated the interest rate as the average rate from the date of filing the action to the date of judgment. *Id.* at 5 (citing *Nelson v. EG & G Energy Measurements Group, Inc.,* 37 F.3d 1384, 1391 (9th Cir. 1994). It computed the average rate using each weekly published rate for the time period specified, and ordered the parties to meet and confer on the calculation and submit a calculation to the Court. *Id.* In *Nelson,* the Ninth Circuit held that "pre-judgment interest is intended to cover the lost investment potential of funds to which the plaintiff was entitled, from the time of entitlement to the date of judgment. It is the Treasury bill rate during this interim that is pertinent, not the Treasury bill rate at the time of judgment. The Treasury bill rate at the time of judgment has no bearing on what could have been earned prior to judgment." *Id.* at 1392.

The Court finds the approach in *Brighton Collectibles* and *Nelson* reasonable. Here, the entire period of entitlement is from the first infringement to the final judgment, so an average rate of interest over that entire period fairly compensates Moonbug for BabyBus's harms. It is inequitable to grant a static rate at the end of that period in October 2023, that is also trending historically high. Use of the average rate here is consistent with the purpose of a pre-judgment interest rate.

The Court orders the parties to calculate the average interest rate based on the fifty-two week Treasury bill rate between the time period running from the date of filing the action on August 24, 2021, Docket No. 1, to the date of entering final judgment on October 30, 2023, Docket No. 627, and calculate the total pre-judgment interest owed. Both parties must meet and confer on the calculation and submit their calculation to the Court within 30 days of this order.

D.    Conclusion

For the foregoing reasons, the Court GRANTS pre-judgment interest at the average rate between August 24, 2021 and October 30, 2023, the calculation of which parties will submit. The interest rate will then be applied to the final judgment award, based on the jury's award, of $17,718,114; the parties will provide that final calculation of pre-judgment interest owed.

**V.        MOTION FOR ORDER ASSIGNING RIGHTS TO PAYMENTS FROM
DEFENDANTS TO PLAINTIFFS AND RESTRAINING DEFENDANTS FROM
INTERFERING WITH ASSIGNMENTS**

A.       Discussion

Here, Moonbug requests assignment of BabyBus's rights of payments from third party entities, ones from which it appears to receive ongoing revenue streams.  Docket No. 682 at 2-3. It lists a number of third party entertainment properties that publish BabyBus's SuperJoJo show. *Id.* at 3-4, 7-8.  It noted that BabyBus has not made any payments in satisfaction of the Court's $17,718,114 judgment.

The Court finds this request premature, as it stated at the July 18, 2024 motion hearing. BabyBus filed a notice of appeal to the Ninth Circuit and requested a stay of judgment, and has also indicated that it would post a bond.  The Ninth Circuit has stayed the appeal pending this Court's resolution of the motion on attorney fees.  Docket No. 693; *see Moonbug v. BabyBus,* Case No. 24-3748 (9th Cir.).  Moonbug shall wait until the appeal has been effected and related motions to stay filed before seeking further relief.  The Court also stated at the hearing that it will address future concerns about Defendants' ability to pay if and when such issue becomes salient.

Therefore, the Court DENIES the motion for assignment.

**VI.       CONCLUSION**

The Court GRANTS in part and DENIES in part the motion for attorney fees and awards total attorney fees and costs in the amount of $6,657,490.57 ($5,972,559.85 for total attorney fees, $510,008.72 for costs, and $174,922 for additional attorney fees).

The Court GRANTS in part and DENIES in part the motion for pre-judgment interest and awards an amount to be determined by parties' submitted calculation.

The Court DENIES the motion for assignment.

Parties are to submit a joint statement concerning the pre-judgment interest calculation within 30 days of this order.

**IT IS SO ORDERED**.

20

Dated: August 6, 2024

_____
EDWARD M. CHEN
United States District Judge