UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MOONBUG ENTERTAINMENT LIMITED, et al.,

Plaintiffs,

v.

BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD, et al.,

Defendants.

Case No. 21-cv-06536-EMC

**FILED UNDER SEAL**

ORDER GRANTING PLAINTIFF'S MOTION TO AMEND JUDGMENT

Docket No. 738

## I. INTRODUCTION

Plaintiffs Moonbug Entertainment Ltd. and Treasure Studio, Inc. (together, "Plaintiffs" or "Moonbug") operate the CoComelon channel, a top-ranked kids' YouTube channel, featuring animated videos of a child character named JJ and his family. Docket No. 1 (Compl.) ¶ 2, 16. Defendants BabyBus Co., Ltd. and BabyBus (Fujian) Network Technology Co., Ltd. (together, "Defendants" or "BabyBus") run a competitor YouTube channel with videos featuring a character named Super JoJo and his family. In its complaint, Moonbug alleged that BabyBus's Super JoJo videos infringe on its copyrights. Compl. ¶ 4.

On July 27, 2023, a jury found that BabyBus infringed Moonbug's registered copyrights to CoComelon's JJ character, family, and animal characters for 36 out of 39 works at issue. Dkt. 579. Further, the jury found BabyBus liable for copyright infringement and misrepresentation under Section 512(f) of the Digital Millennium Copyright Act (DMCA). *Id.*

On October 30, 2023, the Court entered judgment in favor of Moonbug in the amount of $17,718,114. Dkt. 627. On January 10, 2024, the Court issued a writ of execution in the amount

of $17,908,246.35 with daily interest thereafter in the amount of $2,640.72. Dkt. 675.

Now pending before the Court is Moonbug's motion to amend judgment to add Japan BabyBus Co., Ltd. ("Japan BabyBus") as a judgment debtor. Dkt. 738.

## II. PROCEDURAL BACKGROUND

Since entering judgment in favor of Moonbug and issuing a writ of execution, the Court denied BabyBus's motion for a new trial and judgment as a matter of law. Dkt. 680 (entered on May 15, 2024).

On May 23, 2024, Moonbug filed a motion for an assignment of assets and a restraining order, which the Court denied without prejudice. Dkts. 682, 711. On September 30, 2024, the Court granted Moonbug's emergency motion for an assignment of assets from BabyBus to Moonbug and a restraining order to restrict BabyBus from assigning the relevant assets to any other entity. Dkt. 733. Therein, the Court ordered BabyBus to assign all rights to payments from several entities, including Japan BabyBus. *Id.* at 6.

On November 4, 2024, Moonbug filed the instant motion to amend the judgment to add Japan BabyBus as a judgment debtor. Dkt. 738. On January 15, 2025, the parties filed a joint status report stating that the parties have yet to reach "a final agreement regarding Defendants' payment of the judgment." Dkt. 760 at 2.

## III. LEGAL STANDARD

Usually, amendment or relief from a judgment must be made pursuant to Federal Rule of Civil Procedure 59 or 60. However, under Federal Rule of Civil Procedure 69(a), a court may rely on California Code of Civil Procedure § 187 ("§ 187") to amend a judgment to add additional judgment debtors. *See Katzir's Floor & Home Design, Inc. v. M–MLS.COM*, 394 F.3d 1143, 1148 (9th Cir. 2004); *see also* Cal. Code Civ. Proc. § 187 (providing that, "[w]hen jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code"). "Section 187 is premised on the notion that the amendment 'is merely inserting

the correct name of the real defendant,' such that adding a party to a judgment after the fact does not present due process concerns." *Katzir's*, 394 F.3d at 1148.

An amendment under § 187 generally requires: "(1) that the new party be the alter ego of the old party and (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns." *In re Levander*, 180 F.3d 1114, 1121 (9th Cir. 1999).

Regarding the alter ego prong, courts can be flexible about the alter ego requirement if strict adherence to alter ego requirements would produce an inequitable result. "'The greatest liberality is to be encouraged in the allowance of such amendments in order to see than justice is done.'" *Id.* at 1122 (quoting *Carman v. Athearn* (1947) 77 Cal.App.2d 585, 594, 175 P.2d 926). Specifically, a court may grant amendment under § 187 even if the new party does "not meet the formal requirements for alter ego liability," so long as addition of the new party "fit[s] within the theory underlying amendment of a judgment based on alter ego liability." *Id.; see Carr v. Barnabey's Hotel Corp.*, 23 Cal.App.4th 21, 28 Cal.Rptr.2d 127 (1994) (holding that amendment is proper where "the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant"). Thus, courts may look to the "equitable principles regarding alter ego" to grant amendment under § 187 if doing otherwise would "work an injustice." *Id.* at 21, 23, 28 Cal.Rptr.2d 127.

## IV.   DISCUSSION

Moonbug seeks an amendment under § 187 to add Japan Babybus as a judgment debtor because Moonbug alleges that Defendants have failed to pay the judgment and "have instead sought to thwart enforcement of levies on their U.S. revenues by using Japan BabyBus as a shell to launder the [judgment] money." Dkt. 738 at 21 (Plaintiffs' Mot. to Amend Judgment). This has been accomplished via agreement between Babybus and Japan Babybus wherein the latter has been granted to rights to collect all revenues outside of those generated in China from Babybus' work, including the infringing series at issue in this case. In short, Japan Babybus holds the revenues wrongfully earned by the infringing works.

In a one-page opposition, BabyBus argues that 1) BabyBus need not provide a substantive

3

1  response because Moonbug did not properly serve Japan BabyBus, and 2) "Japan BabyBus has not
2  controlled the litigation or had the opportunity to oppose the judgment." Dkt. 745 at 2 (BabyBus
3  Opp'n).

**A.  Service**

As an initial matter, Defendants argue that "Japan BabyBus has not appeared in this action or otherwise been properly served and provided notice and an opportunity to respond." Dkt. 745 at 2. Defendants contend that "proper service on Japan BabyBus Co., Ltd. ("Japan BabyBus") is required before the Court can address adding Japan BabyBus as a judgment debtor." Dkt. 745 at 1. Under Federal Rule of Civil Procedure 4(c)(1), Plaintiffs are responsible for service. In its Third-Party Claim of Superior Interest filed in this Court, Japan Babybus stated that it "may be served by mail through its counsel, Quinn Emanuel Urquhart & Sullivan, LLP, c/o Sam S. Stake, 50 California Street, 22nd Floor, San Francisco, California 94111." Dkt. 739-1 at 4. Plaintiffs served Japan Babybus by mail at this address. Dkt. 741 at 2 (Proof of Service re Japan Babybus by Mail). Thus, service has been effectuated. Defendants offer no countervailing evidence. Defendants do not contend Japan Babybus is not aware of these proceedings and this motion.

**B.  Amendment Under California Code of Civil Procedure Section 187**

**1.  Alter Ego**

Under the alter ego doctrine, the corporate veil will be pierced, and "under certain circumstances a hole will be drilled in the wall of limited liability erected by the corporate form." *Mesler v. Bragg Mgmt. Co.*, 39 Cal.3d 290, 301 (1985). Thus, "[w]hen it is claimed that a parent corporation should be liable because it is the alter ego of its subsidiary, equity commands that the corporate wall be breached." *Id.* While there is no "litmus test" for alter ego liability, there are "two general requirements: (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Id.* at 300 (citations omitted).

**a.  Unity of Interest**

In *Copperweld Corp. v. Independence Tube Corp.*, the Supreme Court held:

4

> A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate, and their general corporate objectives are guided or determined not by two separate corporate consciousnesses, but one. With or without a formal "agreement," the subsidiary acts for the parent's benefit. If the parent and subsidiary "agree" to a course of action, there is no sudden joining of economic resources that had previously served different interests…

*Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 753 (1984) (finding that because a "parent and its wholly owned subsidiary have a complete unity of interest," the two are not legally capable of conspiring with each other under § 1 of the Sherman Act). Counsel for Japan BabyBus represents BabyBus in the instant action.[1] At the hearing on Moonbug's emergency motion regarding assignment and a restraining order, BabyBus's counsel stated that Japan BabyBus is a "wholly owned subsidiary" of BabyBus Co. Dkt. 740-22 at 14:22–15:3 (Moonbug's Emergency Motion Hearing Tr.). As the Supreme Court held in *Copperweld*, "a parent and its wholly owned subsidiary have a complete unity of interest." *Copperweld,* 467 U.S. at 753. Because Japan BabyBus is a wholly owned subsidiary of BabyBus Co., the two have "a complete unity of interest." *Id.* This finding establishes the first prong of the alter ego doctrine.

Further, several alter ego factors favor a finding of a unity of interest between Japan BabyBus and BabyBus. In determining whether there exists an unity of interest and ownership between two entities, the Court must look to a totality of circumstances, where no one factor is conclusive in consideration of factors such as: using the corporation as a mere shell for a single venture or business of an individual or another corporation; commingling funds and other assets; treating the assets of the corporation as one's own; diverting corporate assets to non-corporate uses without authority to do so; holding out as personally liable for corporate debts; having sole ownership of all the stock in a corporation by an individual or members of a family; contracting with another with intent to avoid performance by using a corporation as a shield against personal liability; concealing personal business activities; failing to maintain adequate corporate records;

---

[1] As stated above, Japan BabyBus's preferred method of receiving service is through its counsel Sam Stake at Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"). Dkt. 739-1 at 4. Mr. Stake represents BabyBus in this action. *See* Dkt. 745 at 1 (Sam Stake's signature on BabyBus's Opp'n).

5

disregarding legal formalities; the use of the same office or business location; and the use of the corporate entity to procure labor, services or merchandise for another person or entity. *See Sonora Diamond*, 83 Cal.App.4th at 538–39, 99 Cal.Rptr.2d 824; *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal.App.2d 825, 838–40, 26 Cal.Rptr. 806 (1962) (finding that the trial court's determination to pierce the corporate veil was supported by substantial evidence); *see also Mid– Century Ins. Co. v. Gardner*, 9 Cal.App.4th 1205, 1212–13, 11 Cal.Rptr.2d 918 (1992) (noting that the issue is a question of fact and that "it is the plaintiff's burden to overcome the presumption of the separate existence of the corporate entity"); *Roman Catholic Archbishop v. Superior Court*, 15 Cal.App.3d 405, 406, 411, 93 Cal.Rptr. 338 (1971). Applying these factors to the evidence in the record, Japan Babybus and Babybus possess a unity of interest and ownership.

First, the entities' "employment of the same…attorney" favors an alter ego finding. *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223, 249-50 (1999). As stated, both Japan BabyBus and BabyBus employ the same attorney.

Second, "the identical equitable ownership in the two entities" favors an alter ego determination. *Morrison,* 69 Cal. App. 4th at 249-50. As stated, Japan BabyBus is a "wholly owned subsidiary" of BabyBus Co. Dkt. 740-22 at 14:22–15:3.

Third, "the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation" favors an alter ego determination. *Morrison,* 69 Cal. App. 4th at 249. Here, BabyBus Co. and Japan BabyBus entered into an agency agreement on January 1, 2022 -- during this litigation. Dkt. 740-4 at 4 (sealed translated contract between BabyBus Co. and Japan BabyBus). Pursuant to the agreement, BabyBus Co. appointed Japan BabyBus as its agent to remit to BabyBus revenue for supplying and circulating all BabyBus works, including Super JoJo. *Id.* at 3-4. Under the contract, Japan BabyBus collects and sends this revenue to BabyBus Co. each month. *Id.* Notably, BabyBus Co. maintains ownership of its intellectual property, distribution of its works, and revenue from its works. *Id.* Further, in exchange, BabyBus Co. pays Japan BabyBus a relatively nominal annual agency fee of ¥6 million (Japanese Yen), which is approximately $38,670 (United States Dollars) at the exchange rate in mid-January 2025. These contract terms strongly suggest that Japan BabyBus is a

"mere…instrumentality or conduit" for BabyBus. *Morrison,* 69 Cal. App. 4th at 249.

Fourth, "the disregard of legal formalities and the failure to maintain arm's length relationships among related entities" favors an alter ego finding. *Morrison,* 69 Cal. App. 4th at 249-50. Here, the evidence suggests that a BabyBus executive signed an agreement governing the distribution of Super JoJo on behalf of Japan BabyBus. Specifically, BabyBus produced to Moonbug a contract between Roku and Japan BabyBus regarding the distribution of Super JoJo on Roku's platform. Dkt. 740-5 at 2 (sealed translated contract naming Roku and Japan BabyBus as parties) and 18 (license regarding Super JoJo). Bai Haiyuan signed the agreement on behalf of Japan BabyBus. *Id.* at 19. Bai was part of BabyBus's team for overseas operations until March or April of 2022. Dkt. 740-20 at 10-11(Lijun Tang Deposition Trs. at 16:19-17:6). That a BabyBus employee entered into a contract on behalf of Japan BabyBus suggests a "disregard of legal formalities and the failure to maintain arm's length relationships among related entities." *Morrison,* 69 Cal. App. 4th at 249-50.

In light of the foregoing, it is clear that Japan BabyBus and BabyBus employ the same attorney, the two entities have identical equitable ownership, Japan BabyBus is an instrumentality or conduit for BabyBus, and the entities have failed to maintain arm's length relationships between each other. The evidence provides a firm basis to find that Japan Babybus is a mere shell for Babybus. A unity of interest and ownership exists between Japan Babybus and Babybus to establish the first prong of the alter ego doctrine.

### b. <u>Inequitable Result</u>

Next, to satisfy the second prong of the alter ego test, Moonbug must make a prima facie showing "that failure to disregard [the separate identities of Japan BabyBus and BabyBus] would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (internal citation omitted)*; see United States v. Standard Beauty Supply Stores, Inc*., 561 F.2d 774, 777 (9th Cir. 1977) (noting that an inequitable result is found where some conduct amounting to bad faith makes it inequitable for the equitable owner of a corporation to hide behind a corporate veil). Were Japan BabyBus not considered the alter ego of BabyBus an inequitable result would occur as BabyBus would be allowed to continue delaying satisfaction of the judgment. *See Innovation*

7

*Ventures, LLC v. N2G Distrib., Inc.,* 2014 WL 10384631, at *8 (C.D. Cal. Feb. 18, 2014) (holding that an "inability to collect on the judgment is an inequitable result"). Simply put, Moonbug cannot collect against Babybus because Japan Babybus is holding the money.

Where Moonbug alleges that BabyBus has "sought to thwart enforcement of levies on their U.S. revenues by using Japan BabyBus as a shell to launder the money," Dkt. 738 at 21, and BabyBus offers no countervailing evidence, "adherence to the fiction of the separate existence of the corporation would promote injustice." *Misik v. D'Arco*, 197 Cal.App.4th 1065, 1074 (2011). The parties' January 15, 2025 status report stating that they have yet to reach "a final agreement regarding Defendants' payment of the judgment" only underscores the importance of enabling the timely satisfaction of the judgment. Dkt. 760 at 2. Thus, the second prong of the alter ego test is satisfied.

## C. Control of the Litigation

Moving to the second requirement to amend a judgment under § 187, Moonbug must demonstrate "'that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns.'" *In re Levander*, 180 F.3d at 1121 (quoting *Triplett v. Farmers Ins. Exchange*, 24 Cal.App.4th 1415, 1421, 29 Cal.Rptr.2d 741 (1994)). Thus, the crux of the second requirement to amend a judgment under § 187 is whether the addition of the new party would frustrate the prospective new party's due process.

Returning to the Supreme Court's decision in *Copperweld*:

> A parent and its wholly owned subsidiary have a complete unity of interest. **Their objectives are common**, not disparate; their general corporate actions are guided or determined **not by two separate corporate consciousnesses, but one.** They are not unlike a multiple team of horses drawing a vehicle **under the control of a single driver.** With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder. If a parent and a wholly owned subsidiary do "agree" to a course of action, there is no sudden joining of economic resources that had previously served different interests…

*Copperweld*, 467 U.S. at 771. In *Copperweld*, the Court held that a parent and its wholly owned subsidiary are legally incapable of conspiring with each other under § 1 of the Sherman Act because they have a "complete unity of interest." *Id.* Applied here, BabyBus and its wholly

8

owned subsidiary Japan BabyBus are legally incapable of having "different interests" because they share common objectives, a single corporate consciousness, and are "under the control of a single driver." *Id.* That is, BabyBus and its wholly owned subsidiary have a shared legal interest because they are "one." *Id.* BabyBus offers no evidence showing otherwise.

And as stated, counsel for BabyBus represents Japan BabyBus. *See* Dkts. 739-1 at 4 (Japan BabyBus identifies Sam Stake as its counsel); 745 at 1 (Sam Stake's signature on BabyBus's Opp'n to Moonbug's motion at bar). BabyBus had the requisite "opportunity to litigate" as demonstrated through the trial ending with a jury verdict in favor of Moonbug. *In re Levander*, 180 F.3d at 1121. BabyBus provides no evidence to demonstrate that BabyBus and Japan BabyBus lack a shared legal interest or strategy. Thus, Moonbug has demonstrated that, in effect, Japan BabyBus "'had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns.'" *Id.*

Finally, Moonbug argues that in the event the Court does not find satisfaction of the alter ego requirements, that Japan BabyBus should be added as a judgment debtor as a successor to BabyBus. However, because addition of Japan BabyBus "fit[s] within the theory underlying amendment of a judgment based on alter ego liability," the Court need not evaluate Moonbug's successor liability theory.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Moonbug's motion to amend judgment to add Japan BabyBus as a judgment debtor under California Code of Civil Procedure § 187.

Out of an abundance of caution, the Court is sealing the entirety of this order. Should any portion of this order requiring sealing, the parties shall file a stipulation containing a narrowly tailored sealing request within 10 days of the filing date of this order. Should the parties fail to do so, the Court will unseal this order.

**IT IS SO ORDERED**.

Dated: February 10, 2025

_____
EDWARD M. CHEN
United States District Judge