UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOONBUG ENTERTAINMENT LIMITED, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BABYBUS (FUJIAN) NETWORK TECHNOLOGY CO., LTD, et al., <br><br> Defendants. | Case No. 21-cv-06536-EMC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR FEES** <br><br> Docket No. 798 |

Following years of hard-fought litigation, Plaintiff Moonbug prevailed in this copyright action against Defendant BabyBus before a jury and on appeal.  This Court entered judgment based on the jury verdict and fees awarded.  The Ninth Circuit affirmed on appeal.

Moonbug now seeks $933,148 in additional fees incurred in the appeal and in its effort to collect on its $25.6 million dollar judgment.  Moonbug seeks $535,155.25 in fees incurred on appeal and $315,488 incurred through judgment enforcement.  Dkt. Nos. 798, 807.  The Ninth Circuit granted Moonbug's request to transfer its fees motion to this court.

Having reviewed the initial and supplemental briefing and heard oral argument, the Court **DENIES** Moonbug's motion for appellate fees but **GRANTS** in part Moonbug's motion for judgment enforcement fees.

## I.      FACTS & BACKGROUND

### A.  Jury Verdict and Fee Award

On July 27, 2023, a jury found Defendant BabyBus liable for willful copyright infringement and awarded Moonbug over $17 million in actual damages and lost profits.  Dkt. No.

United States District Court
Northern District of California

579; Dkt. No. 711. This Court determined that Moonbug was the prevailing party under Section 505 of the Copyright Act. Dkt. No. 711. Applying the *Fogerty* factors, the Court found that (1) "Moonbug achieved nearly complete success on the merits"; (2-3) "there [was] no evidence that BabyBus acted frivolously or had a bad motivation in defending Moonbug's claims of copyright infringement; (4) "BabyBus's overall defense to copyright infringement was not objectively unreasonable," and it was "entirely reasonable for BabyBus to challenge that their works were not substantially similar to the CoComelon copyrighted works as a matter of law because of the unprotectable element," but "several more specific aspects of BabyBus's defense were objectively unreasonable" — including initially denying copying but conceding willful infringement a year later and Babybus' independent development defense, which was "baseless" and relied on "fabricated evidence," — resulting in this factor weighing in favor of fees; and (5) that the need to deter Babybus from further infringement did not weigh in favor of fees because the Court had already issued a permanent injunction. Dkt. No. 711 at 4-7. Overall, the factors weighed in favor of fees. *Id.* at 7. The Court awarded a total of $6,147,482 in attorney fees. *Id.* at 20.

    B. <u>Ninth Circuit Appeal</u>

BabyBus appealed the verdict, and challenged the Court's jury instructions, verdict form, and grant of partial summary judgment to Moonbug on the copyrightability of the JJ character. Dkt. No. 796. The panel affirmed this Court's decision on all issues. The panel held that (1) "The district court properly instructed the jury on filtering," noting that Appellants agreed with the proposed instruction before trial; (2) "There was also no error in the district court's guidance on scenes a faire, merger, and thick/thin protection"; (3) "the district court did not abuse its discretion when it forwent a merger instruction based on insufficient evidence"; (4) "The district court also did not err by finding thick protection and applying the substantial similarity standard," and that any such error would have been harmless; (5) "There was no error in the district court's selection and arrangement instruction," because the Court "provided adequate filtering guidance by distinguishing between the kinds of elements that are typically protected versus those that are not"; (6) "The district court did not improperly grant partial summary judgment to Appellees on

2

the copyrightability of the JJ character," because the JJ character had several unique characteristics that rendered him "especially distinctive"; and (7) "The district court did not abuse its discretion in formulating the verdict form." *Id.* For the issues of providing a merger instruction and applying the substantial similarity standard for thick protection, the panel affirmed on the additional ground that any error was harmless. *Id.* at 3-4. Babybus' petition for panel rehearing and en banc was denied. Dkt. No. 799-6.

BabyBus did not challenge the Section 505 fee award, the Court's findings supporting fees under Rule 37(c)(2), fees under 17 U.S.C. § 512(f) for copyright misrepresentation, and sanctions for its discovery misconduct.

### C. Collection Issues

On October 30, 2023, the Court entered Judgment in this action. Dkt. No. 627. During a January 11, 2024 hearing on BabyBus' post-trial motions, BabyBus requested that the Court stay execution of the judgment pending resolution of those motions, which the Court granted. Dkt. No. 679. On May 15, 2024, the Court denied BabyBus's post-trial motions in their entirety, ending the temporary stay. Dkt. No. 680.

In May 2024, Moonbug sent notices of levy and related documents to the U.S. Marshals' office for registration, and subsequently served those materials on various levied entities. Dkt. No. 799 ¶ 25. Moonbug also filed a Motion for Order Assigning Rights to Payments from Defendants to Plaintiffs and Restraining Defendants from Interfering with the Assignments. Dkt. No. 683. Moonbug resumed pursuit of collection discovery originally served in September and October 2024. Dkt. No. 799 ¶ 25.

On August 6, 2024, the Court issued its Fee Award Order. Dkt. No. 711. As to enforcement of the judgment, the Court denied Moonbug's request for assignment of BabyBus' third-party payments as "premature" in part based on BabyBus' representation that it would post a bond. *Id.* at 20. On August 22, the Court clarified in a minute order that the stay of Moonbug's writ of execution had expired on May 15, when the post-trials motions were resolved, and that there was "no stay in place with respect to Moonbug's writ of execution." Dkt. No. 718.

On August 14, Moonbug learned from Google that back in June, BabyBus' counsel Quinn Emanual had served on Google a Third Party Claim of Superior Interest by Japan BabyBus Co. Ltd. Dkt. No. 799 ¶ 30. Japan BabyBus "purported to notify Google that it had a superior interest in the funds held by YouTube/Google that Moonbug was seeking to levy." *Id.* Two days later, Moonbug filed an emergency motion for an order assigning rights to payments to Moonbug and restraining defendants from interfering with the assigned funds. Dkt. No. 714.

On September 12, at oral argument over Moonbug's motion for an assignment of rights to payment, BabyBus represented that it was unable to put up a bond after all. Dkt. No. 732. The Court reiterated that no stay of judgment was in place. *Id.* The Court also noted that it expected the 30(b)(6) deposition on judgment enforcement to proceed. *Id.*

The Court granted Moonbug's request to be assigned certain rights to payment from third parties and to restrain BabyBus from any other assignment of any of those assets to any other entity. Dkt. No. 733. These third parties included Japan Babybus Co., Ltd., YouTube, Apple, Google, PayPal, Spotify, Amazon, Pandora, Baidu, The Roku Channel, Tencent, iQiyi, Toutiao Pangolin, Youku, Himalaya, Sohu, MangoTV, Wasu TV, LeTV, PPTV, ironSource Ltd., and Beijing Youletong Network Technology Co. *Id.*

On September 26, 2024, the 30(b)(6) deposition of BabyBus on judgment enforcement went forward but the witness was not prepared to answer basic questions on the noticed topics. *See* Dkt. No. 780 ¶ 8; Dkt. No. 777 (J. Westmoore noting that BabyBus does not "seriously dispute" that their proffered witness was unprepared).

On November 4, 2024, Moonbug moved to add Japan BabyBus as a judgment debtor. Dkt. No. 738. Moonbug contended that the BabyBus Defendants, rather than paying the judgment, "have instead sought to thwart enforcement of levies on their U.S. revenues by using Japan BabyBus as a shell to launder the [judgment] money." Dkt. 738 at 21. BabyBus filed a one-page opposition that argued only that BabyBus did not need to provide a substantive response because it had not been properly served and that Japan BabyBus had not controlled the litigation. Dkt. No. 765 at 3-4 (citing Dkt. No. 745 at 2). At the January 9, 2025 motions hearing, the parties represented that they were working on an agreement to satisfy the judgment but the parties

4

subsequently notified the court that they were unable to reach agreement.  Dkt. No. 761, Dkt. No. 763.  Also in January, counsel for Moonbug learned that Amazon has released funds to Japan BabyBus that were subject to the assignment order.  Dkt. No. 799 ¶ 35 (citing Dkt. No. 780-5).

On February 10, the Court granted Moonbug's motion to alter the judgment.  Dkt. No. 765. The Court found that "the evidence provided a firm basis to find that Japan Babybus is a mere shell for Babybus" and that "[w]ere Japan BabyBus not considered the alter ego of BabyBus an inequitable result would occur as BabyBus would be allowed to continue delaying satisfaction of the judgment" since "Japan Babybus is holding the money."  *Id.* at 7-8.  The Court found that BabyBus had offered no evidence to dispute Moonbug's contention that BabyBus has "sought to thwart enforcement of levies on their U.S. revenues by using Japan BabyBus as a shell to launder the money."  *Id.* at 8 (citing Dkt. 738 at 21).

On February 18, the parties entered a stipulation providing that BabyBus would fully satisfy the judgment by early March, which tolled pending discovery disputes.  Dkt. No. 767.  On February 27, Moonbug learned that BabyBus had communicated to Google/YouTube that it would satisfy the judgment by March 10 and that based on BabyBus' representation, Google/YouTube intended to temporarily pause disbursements from the levied BabyBus accounts to avoid overpayment.  Dkt. No. 799 ¶ 40-41 (citing Dkt. No. 780-8, 780-9).

BabyBus did not satisfy the judgment by March 10 and did not provide any explanation to Moonbug for its failure to do so.  Dkt. No. 799 ¶ 42.  Instead, on April 10, BabyBus moved for a stay of enforcement of judgment, which Moonbug opposed.  Dkt. No. 775, 779.  At this time, $12.2 million of the judgment, plus interest, remained due to Moonbug.  Dkt. No. 777. Meanwhile, Judge Westmoore provided guidance to the parties on their judgment collection discovery disputes, noting that further depositions of high BabyBus executives were warranted. Dkt. No. 777.  On June 9, BabyBus withdrew its motion to stay the judgment and on June 20, Moonbug filed a notice of satisfaction of judgment.  Dkt. No. 783, 785.

Procedural History

Moonbug filed the instant motion in this Court on January 14, 2026. Dkt. No. 798. The Court heard oral argument on March 5, 2026. Dkt. No. 805. At the hearing, the Court ordered the parties to file a supplemental joint chart with the collection fees that Moonbug contends reflect extraordinary collection efforts and BabyBus' disputes as to such efforts. *Id.* The supplemental chart of annotated time entries and associated briefing was submitted on March 19. Dkt. No. 807.

## II.    DISCUSSION

### A. Is Moonbug Entitled to Fees Incurred on Appeal?

Under the Copyright Act, a court may not "award[] attorney's fees as a matter of course." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U. S. 517, 533 (1994)). To determine whether fees should be awarded, courts assess the nonexclusive *Fogerty* factors: "the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence." *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016). Courts are to give "substantial weight to the objective (un)reasonableness of a losing party's litigating position." *Kirtsaeng*, 579 U.S. at 205. Losing alone does not establish objective unreasonableness. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013) ("[T]he mere fact that [a party] lost cannot establish his objective unreasonability."). "Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Kirtsaeng*, 579 U.S. at 209.

As a threshold matter, Moonbug argues that the Court does not need to independently assess the *Fogerty* factors to determine whether appellate fees should be awarded but can simply rely on its prior assessment and award of fees. This position is not supported. The Supreme Court has made clear that assessing copyright fees requires "particularized" inquiry and "case-by-case assessment." *Kirtsaeng*, 579 U.S. at 202. And Ninth Circuit authority reflects that an assessment of appellate fees merits a new, independent inquiry. *See Russell v. Price*, 612 F.2d 1123, 1132

6

(9th Cir. 1979) (affirming trial-level fee award but denying appellate fees where the appeal was "not frivolous" and "[e]quity considerations" favored each side bearing appellate fees). Even where the Ninth Circuit had awarded appellate fees on top of a trial-level fee award, it has done so only after an independent evaluation of the *Fogerty* factors. *See Maljack Productions, Inc. v. GoodTimes Home Video Corp*, 81 F.3d 881, 890-91 (9th Cir. 1996) (applying *Fogerty* factors before awarding appellate fees based on "factually unreasonable" arguments made).

The Court's prior finding that the *Fogerty* factors were satisfied relied on certain unreasonable legal and factual positions taken and sanctionable conduct not necessarily at issue on the appellate record. The Court therefore makes a new, independent assessment of whether the *Fogerty* factors support fees.

The first factor, success obtained, clearly supports Moonbug – the panel rejected each of BabyBus' seven grounds of appeal. However, the other factors, including the factor of objective reasonableness, do not support a fee award. BabyBus' appeal isolated a limited set of issues for appeal that related to questions of copyrightability and protectability: BabyBus appealed the partial summary judgment order of copyrightability, and various jury instructions and verdict form formulations relating to protectable and unprotectable elements. These were reasonable bases for appeal. The Court previously observed in its summary judgment ruling on copyrightability that "reasonable minds can differ as to whether the traits shared between the CoComelon and Super JoJo characters, even when combined, are protectible" under the extrinsic test. Dkt. No. 242 at 20. For the jury instructions, the Court made several modifications from the model instructions based on caselaw. While the Court believes these modifications provided greater clarity, and the Ninth Circuit affirmed them on appeal, the instructions and verdict form were not unreasonable to challenge. Finally, nothing about the panel's decision indicates that the panel found the appeal objectively unreasonable – the panel engaged on the merits of each question.

Notably, BabyBus did *not* appeal rulings on legal positions that the Court previously found unreasonable, including its independent development defense, willfulness, copyright misrepresentation, and the sanctions arising from its fabrication of evidence. *See* No. 24-3748, Ninth Circuit Oral Argument at 10:51-11:31 (9th Cir. Sept. 17, 2025) ("I'm not here to defend at

7

all the DouDou issue… [M]y client was sanctioned below and … Judge Chen handled that…. I'm not here to defend it."). Nor does Moonbug provide any basis from which to impute an improper motive to BabyBus' appeal. *See Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1156 (9th Cir. 1986) (rejecting "contention that [party] brought the appeal merely as a means of further harassment" when that contention was unsupported by evidence); Dkt. No. 711 at 4 (finding "no evidence that BabyBus acted frivolously or had a bad motivation in defending Moonbug's claims of copyright infringement"). Where counsel reasonably believes appealable issues exist, there is nothing improper about pursuing an appeal on those issues to set aside a multimillion-dollar judgment. While Moonbug attempts to characterize the panel's occasional finding of harmless error as an indication that the appeal was frivolous, the panel only found harmless error in the alternative on two discrete issues; the panel did not dispose of the appeal as a whole on harmless error. Had the panel agreed with BabyBus, its client could have been relieved from paying millions. Thus, BabyBus' appeal was not objectively unreasonable, frivolous, or improperly motivated.

Finally, as the Court previously found, the deterrence factor is not implicated because the Court's permanent injunction prevents BabyBus from infringing Moonbug's works going forward. Dkt. No. 711 at 7.

Given that BabyBus limited its appeal to issues where appeal was objectively reasonable and the only factor supporting fees for Moonbug is success on appeal, the Court finds that the *Fogerty* factors do not support an award of appellate fees. *See Seltzer*, 725 F.3d at 1181. Such an outcome furthers the goal of the fees statute to "encourage [] useful copyright litigation." *Kirtsaeng*, 579 U.S. at 205. Parties that lose at trial and are assessed with fees should not be chilled by the potential imposition of further appellate fees from appealing a limited subset of discrete issues on which reasonable minds may differ.

Moonbug's motion for appellate fees is **DENIED**.

**B. Is Moonbug Entitled to Judgment Enforcement Fees?**

Moonbug also seeks to recover fees for its post-judgment enforcement and collection work. Dkt. No. 798 at 4. Moonbug originally sought $407,550.75 in fees for 532.5 hours of work, but in supplemental briefing revised its request to $315,488.00 in fees for 416.6 hours of work. Dkt. No. 807.

Motions for fees incurred in obtaining judgments are "supplemental proceedings" such that Federal Rule 69(a)(1) applies. *Carnes v. Zamani*, 488 F.3d 1057, 1060 (9th Cir. 2007). Under Rule 69(a)(1), such proceedings "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Proceedings here took place in California; Cal. Civ. Proc. Code § 685.040 provides that "Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law." California procedure thus brings the inquiry back to Section 505 of the Copyright Act, which "neither expressly allows nor expressly bars recovery of post-judgment costs and fees." *WB Music Corp. et al. v. Royce Int'l Broad. Corp. et al.*, No. DCV16600JGBSPX, 2021 WL 4330876, at *2 (C.D. Cal. May 7, 2021).

Courts in this circuit have granted collection fees under the Copyright Act where unusual or extraordinary collection efforts were required. *See Odnil Music Ltd. v. Katharsis LLC*, No. CIV S-05-0545WBSEFBP, 2008 WL 958109, at *2 (E.D. Cal. Apr. 8, 2008), *report and recommendation adopted*, No. S-05-0545 WBS EFB, 2008 WL 1930301 (E.D. Cal. May 1, 2008). (granting fees for post-judgment collection efforts to amend a judgment to reflect the true infringer, where the party seeking fees had disclaimed "traditional[]" collection costs); *Erickson Prods. Inc. v. Kast*, No. 13-CV-05472-DMR, 2021 WL 3887797, at *6 (N.D. Cal. Aug. 31, 2021) (awarding post judgment collection fees based on an "unrebutted" record that the party had taken "unreasonable, uncooperative positions on the issue of collection"); *WB Music Corp.*, 2021 WL 4330876, at *3 (awarding post-judgment collection fees).

The parties dispute whether BabyBus' post-judgment conduct was "routine" or objectively unreasonable. BabyBus argues that there was "no manufactured receivership, no serial motions to withdraw counsel, no fraudulent conveyances, no concealment of assets, and no threats against

opposing counsel" and that Moonbug's costs were incurred by its "own aggressive litigation choices, not from any misconduct by BabyBus." Dkt. No. 800 at 11, 12. While BabyBus' conduct may not rise to the level of evasion that occurred in some other cases, multiple instances of its conduct were unreasonable or evasive, including (1) BabyBus' service of a Third Party Claim of Superior Interest by Japan BabyBus Co. Ltd. on assets Moonbug sought to levy without informing Moonbug; (2) BabyBus' proffer of an unprepared 30(b)(6) witness on collection topics and subsequent opposition to Moonbug's attempt to hold a further 30(b)(6), despite not "seriously disputing" that the prior 30(b)(6) witness was inadequate; (3) the Court's finding that BabyBus has "sought to thwart enforcement of levies on their U.S. revenues by using Japan BabyBus as a shell to launder the money"; (4) BabyBus's repeated representations to the Court, to Moonbug, and to levied third-parties (without Moonbug's knowledge) that BabyBus was on the verge of satisfying the judgment, rendering further levied payments or court actions unnecessary, only to leave those representations unfulfilled; and (5) BabyBus' eleventh-hour move for a stay of judgment after failing to meet its own proposed deadline for satisfying the judgment. While BabyBus attempts to characterize its post-judgment conduct as overall reasonable because it paid the judgment in full in less than a year, the record reflects that this payment came almost exclusively from levied third-parties due to *Moonbug*'s "aggressive" collection efforts, not any compliance by BabyBus. Indeed, the vast majority of BabyBus' affirmative conduct during the collection process only served to delay and proliferate litigation costs and collection proceedings.

As for the other *Fogerty* factors, looking only to issues litigated in the judgment enforcement process, Moonbug had a high degree of success, winning a motion to assign assets, a motion to amend the judgment, and obtaining practical success on its post-collection discovery disputes. Further, in the BabyBus Japan assignment motion, the Court accepted Moonbug's contention that BabyBus's actions were motivated by an intent to "thwart enforcement" of the judgment, indicating improper motive. BabyBus' conduct in opposing a further 30(b)(6) when it did not deny that its prior offeree was inadequate was also frivolous. Only the final factor of deterrence slightly favors BabyBus. As noted above, Moonbug has obtained a permanent injunction against future infringement. On sum, the factors indicate that an award of collection

10

fees is warranted, but only for conduct that the Court determines to be objectively unreasonable; Moonbug cannot claim its routine collection costs.

Following the Court's order at oral argument, the parties submitted a chart detailing the collection costs that Moonbug contends reflect extraordinary efforts.  In the supplemental brief, Moonbug reduces its collection fee demand to $315,488 for 416.6 hours.  This reflects a reduction of 23% for hours that Moonbug concedes to reflect routine collection work that is not compensable.  Dkt. No. 807.  BabyBus does not dispute that 158.3 of Moonbug's collection hours, totaling $115,906.75 in fees, represent extraordinary efforts, but contend that the remaining hours involved only routine collection work.

The parties categorize their disputes into four categories.  According to Moonbug, these categories encompass: (1) BabyBus Japan's role, including "BabyBus Japan's assertion that it held a superior interest in funds subject to Moonbug's levies (including the notice served on Google), evaluating BabyBus Japan's purported ownership and entitlement theories, pursuing discovery into BabyBus Japan's assets and relationship with BabyBus Co., and litigating related issues in connection with Moonbug's levies, the motion to assign assets, and the motion to add BabyBus Japan as a judgment debtor"; (2) Babybus "unreasonable discovery conduct", including "work necessitated by BabyBus' efforts to stonewall post-judgment discovery into its assets, including drafting and serving targeted document requests and interrogatories, preparing for and taking post-judgment depositions, conferring with BabyBus over its deficient responses and unprepared Rule 30(b)(6) witness, and preparing submissions regarding BabyBus' discovery misconduct"; (3) BabyBus' reliance on a nonexistent stay and its last-minute stay motion, including "time spent addressing BabyBus' insistence that a stay existed when no stay was in place (because BabyBus never posted a sufficient security), responding to BabyBus' changing stay-related positions or lack thereof during meet-and-confer and in court, and opposing BabyBus' belated motion to stay enforcement based on purported difficulties in securing a bond and an inadequate proposal to substitute an attorney-controlled U.S. bank account as security"; (4) fees incurred preparing Moonbug's fees motion.  Dkt. No. 807 at 1-2.

Within these categories, BabyBus disputes: (1) fee entries that "reflect routine

11

enforcement—levy follow-ups, demand letters, payment tracking, and generic strategy conferences with no link to the Japan BabyBus motions"; (2) fee entries for "drafting interrogatories and document requests, scheduling depositions, corresponding with opposing counsel about objections, preparing joint discovery letters for Magistrate Judge Westmore, and conferring about the scope of asset discovery," including discovery "aimed at identifying assets, accounts, and debts," which BabyBus contends is routine collection work, and billing entries for unfiled or improperly filed motions; (3) research on motions to stay in the Ninth Circuit, which BabyBus contends relates to an appellate stay, rather than district court stay, and Moonbug's work opposing BabyBus' request for a stay in April 2025; (4) Moonbug's fees on fees request, which BabyBus contends was overbroad in requesting appellate fees and routine collection fees that the Court has declined to grant.  Dkt. No. 807 at 6-10.

As a general matter, as to category one, the Court agrees with BabyBus that fee entries that reflect initial levy demands are routine collection work for which fees are not appropriate.  But the additional follow-on collection work caused by Japan BabyBus' assertion of superior interest is not routine work.  Regardless of whether the time entries referred to Japan BabyBus by name, the delay in third-party collection and the additional work required was due to the complications caused by BabyBus Japan's notice of superior interest and BabyBus' ex parte representations to third parties about the status of collection.  Moonbug became aware of BabyBus Japan's interference on August 14, 2024; the Court finds that Moonbug's levying and collection work after this date is tainted by the Japan BabyBus issue and compensable.

As to category two, it is true that in some cases, discovery aimed at identifying assets may be reasonable, routine discovery work, particularly where the defendant's ability to pay is unclear. In this case, however, BabyBus is a large, well-resourced company with sophisticated counsel. Asset discovery should not have been required for BabyBus to make timely payment of its judgment; the Court therefore finds that in this case, Moonbug's discovery work into assets reflected efforts above and beyond the typical case, which was necessitated by BabyBus' pattern of stonewalling.  BabyBus' behind-the-scenes maneuvering with Japan BabyBus and shifting representations to both Moonbug and third-parties demonstrate that Moonbug's decision to seek

judgment enforcement discovery does not reflect overzealousness on the part of counsel but rather a prudent assessment of BabyBus' ongoing efforts to delay or avoid payment.

In this category, BabyBus also disputes work on two motions it labels as "Improper/Abandoned" motions. The first concerns a motion to compel that Moonbug improperly filed before the Court, rather than the magistrate judge. The second concerns a motion for sanctions that was never filed. The Court credits BabyBus' argument as to the first motion, which Magistrate Judge Westmore terminated as improperly filed as a motion, rather than a joint discovery letter. Dkt. No. 756. BabyBus is not responsible for fees for Moonbug's error. As to the second motion, Moonbug represents that the work originally intended as a sanctions motion was ultimately repurposed for its successful motion to add BabyBus Japan to the judgment. Hrg. Tr. 16:2-5. The timing and progression of the billing entries in October, leading up to the November 4 filing of the BabyBus Japan motion, support this representation. Dkt. No. 807-1 at 13-16; Dkt. No. 738. However, several of the billing entries regarding this motion refer to drafting a portion of the motion "related to depositions," presumably, the 30(b)(6) deposition that occurred in late September, at which BabyBus presented an unprepared witness. Given that Moonbug chose not to file this motion but instead to seek relief for the unprepared deposition witness in other ways (for which it will recover its costs), the Court will not hold BabyBus compensable for work on the unfiled motion that related to depositions. Accordingly, the Court excludes most but not all of the time entries labeled by BabyBus as "Disputed - Improper /Abandoned Motions."

Regarding the stay category, the Court agrees with BabyBus that work relating to a stay imposed by the Ninth Circuit is out-of-scope.[1] However, the Court agrees with Moonbug that its work opposing BabyBus' stay in April, 2025 is compensable. The stay motion was filed at the eleventh hour, after BabyBus had missed its own deadline – agreed to in a filed stipulation – for satisfying the judgment, and BabyBus withdrew the motion after Moonbug filed its opposition.

---

[1] Other than the three billing entries called out by BabyBus, the Court finds no other references to stay work in the Ninth Circuit specifically. Therefore, while the Court credits this reduction, it represents less than five hours of work.

The motion was unreasonable and time-wasting, and BabyBus should bear its expense.   Finally, as to fees on fees, the Court applies a fifty percent discount to the fee work to reflect that Moonbug was unsuccessful as to the appellate fees sought.

Having reviewed the joint time entry chart in light of the above, the Court finds that Moonbug incurred **$279,962.75** in compensable fees for extraordinary collection work.

### III.    CONCLUSION

Moonbug's motion for appellate fees is **DENIED**.  Moonbug's motion for judgment enforcement fees is **GRANTED** in part; Moonbug is awarded **$279,962.75** in fees.

**IT IS SO ORDERED**.

Dated: 4/22/2026

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

14